The following transaction was entered on 12/13/2022 at 2:50 PM CST and filed on 12/13/2022

**Case Name:**      USA v. Constantinescu

**Case Number:**    1:22-mj-00996-DH

**Filer:**

**Document Number:** 6

**Notice to Southern District of Texas, Houston Division of a Rule 5, Rule 32, or Rule 40 Appearance as to Edward Constantinescu. Your case number is: 4:22-CR-612(1). Docket sheet and documents attached. (If you require certified copies of any documents, please send a request to TXWD_ECF_help@txwd.uscourts.gov. If you wish to designate a different email address for future transfers, send your request to InterDistrictTransfer_TXND@txnd.uscourts.gov.) (afd)**

**1:22-mj-00996-DH-1 Notice has been electronically mailed to:**

G. Karthik Srinivasan      karthik.srinivasan@usdoj.gov, alexandria.anderson@usdoj.gov, usatxw.ecfau@usdoj.gov

**1:22-mj-00996-DH-1 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1080075687 [Date=12/13/2022] [FileNumber=27773845
-0] [ab3c60c4431ade0f2d522f0ff783e535be185fda14a0aff54ddc7ea07dbcf89a9
cd8a1c6a67dc271a362acdc55addbc55513d3f60d615fd331217a7cb1c03da5]]

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order

United States Courts
Southern District of Texas
FILED

*December 07, 2022*

Nathan Ochsner, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**UNITED STATES OF AMERICA**

v.

**EDWARD CONSTANTINESCU,**

**PERRY "PJ" MATLOCK,**

**JOHN RYBARCZYK,**

**GARY DEEL,**

**STEFAN HRVATIN,**

**TOM COOPERMAN,**

**MITCHELL HENNESSEY,**

**DANIEL KNIGHT,**

**Austin case 1:22-MJ-996-DH**

**INDICTMENT**     **4:22-cr-612**

Case No. _____

Violations:  18 U.S.C. § 1349;
18 U.S.C. §§ 1348 & 2; and
18 U.S.C. § 1957(a).

**UNDER SEAL**

Defendants.

1

# INDICTMENT

The Grand Jury charges that:

## General Allegations

At times relevant to this Indictment:

1.      From in or around January 2020 to in or around April 2022, the defendants—
EDWARD CONSTANTINESCU, also known as Edward Constantin ("CONSTANTIN"),
PERRY "PJ" MATLOCK, JOHN RYBARCZYK, GARY DEEL, STEFAN HRVATIN, TOM
COOPERMAN, MITCHELL HENNESSEY, and DANIEL KNIGHT—engaged in a scheme to
"pump and dump" securities based on false and misleading information and material omissions
about those securities that the defendants published on social media platforms, including Twitter,
Inc. and Discord, Inc.  To carry out the scheme, the defendants (1) purchased shares of a security
in their trading accounts; (2) posted messages on social media platforms with false, positive
information about the security—including as to, among other things, the defendants' position in
the security, how long the defendants intended to hold the security, the defendants' view that the
security would increase in price, and the price the security could reach—to induce other investors
to buy the security and artificially drive up its price, and (3) secretly sold their own shares of the
security at a higher price to secure a profit for themselves, at or around the time they posted
messages to induce other investors to purchase the same security and concealed their intent to sell.
From in or around January 2020 to in or around April 2022, the defendants profited at least
approximately $114 million from their scheme.

<u>The Defendants</u>

2.      CONSTANTIN, who resided in the Southern District of Texas in or around the relevant period, used the Twitter account "@MrZackMorris" and had over 500,000 followers on Twitter.  CONSTANTIN also used the Discord account "Zack Morris#0001."  CONSTANTIN co-founded Atlas Trading, which purported to be a stock trading community, and encouraged investors to join Atlas Trading's free chatroom or server on Discord purportedly to learn how to trade securities and receive "alerts" or messages from CONSTANTIN and others about securities. Over time, Atlas Trading Discord grew to become one of the largest stock-trading chat rooms, with over 250,000 members.  CONSTANTIN posted alerts in Atlas Trading Discord and Twitter about the securities that the defendants traded as part of the pump and dump scheme.

3.      MATLOCK, who resided in the Southern District of Texas in or around the relevant period, used the Twitter account "@PJ_Matlock" and had over 300,000 followers on Twitter. MATLOCK used the Discord account "PJ Matlock#0001."  MATLOCK co-founded Atlas Trading, encouraged investors to join Atlas Trading Discord, and frequently messaged or posted "alerts" in Atlas Trading Discord and Twitter about securities that the defendants traded as part of the scheme.

4.      RYBARCZYK also resided in the Southern District of Texas in or around the relevant period.  RYBARCZYK used the Twitter account "@Ultra_Calls" and had over 275,000 followers on Twitter.  RYBARCZYK used the Discord account "Ultra#0374" and was a member of Atlas Trading Discord.  RYBARCZYK encouraged investors to join Atlas Trading Discord, messaged or posted "alerts" in Atlas Trading Discord and Twitter about securities that the defendants traded as part of the scheme, and later started a similar trading chatroom on Discord named Sapphire Trading.

3

5.      DEEL, who resided in California in or around the relevant period, used the Twitter account "@notoriousalerts" and had over 145,000 followers on Twitter.  DEEL used the Discord account "Mystic Mac 🍀#7345" and was a member of Atlas Trading Discord.  DEEL encouraged investors to join the Atlas Trading Discord and messaged or posted "alerts" in Atlas Trading Discord and Twitter about securities that the defendants traded as part of the scheme.

6.      HRVATIN, who resided in Florida in or around the relevant period, used the Twitter account "@LadeBackk" and had over 140,000 followers on Twitter.  HRVATIN used the Discord account "Lade Backk#6083."

7.      COOPERMAN, who resided in California in or around the relevant period, used the Twitter account "@ohheytommy" and had over 125,000 followers on Twitter.  COOPERMAN used the Discord account "TOMMY COOPS #5323" and was a member of Atlas Trading Discord.  COOPERMAN encouraged investors to join the Atlas Trading Discord and messaged or posted "alerts" in Atlas Trading Discord and Twitter about securities that the defendants traded as part of the scheme.

8.      HENNESSEY, who resided in New Jersey in or around the relevant period, used the Twitter account "@hugh_henne" and had over 225,000 followers on Twitter. HENNESSEY used the Discord account "HOODHUGHBEAR🐻#4034" and was a member of Atlas Trading Discord.  HENNESSEY encouraged investors to join the Atlas Trading Discord and messaged or posted "alerts" in Atlas Trading Discord and Twitter about securities that the defendants traded as part of the scheme.  HENNESSEY also co-hosted the podcast Pennies: Going in Raw ("PGIR"), which HENNESSEY and others advertised as the "#1 Stock Market Podcast."

9. KNIGHT, who resided in the Southern District of Texas in or around the relevant period, used the Twitter account "@DipDeity" and had over 175,000 followers on Twitter. KNIGHT used the Discord account "Dan, Deity of Dips#8114" and was a member of Atlas Trading Discord. KNIGHT encouraged investors to join the Atlas Trading Discord and messaged or posted "alerts" in Atlas Trading Discord and Twitter about securities that the defendants traded as part of the scheme. KNIGHT co-hosted the PGIR podcast with HENNESSEY.

<u>The Defendants Used Social Media Platforms to Maximize Their Trading Profits</u>

10. In or around the relevant period, the defendants held themselves out to investors on Twitter, Discord, and elsewhere as skilled stock traders. The defendants, for example, frequently posted on Twitter the profits of their trading activities. The defendants also frequently posted pictures on Twitter of luxury residential properties, vehicles, jewelry, and other luxury items. The defendants also frequently encouraged investors to join Atlas Trading Discord purportedly so that other investors could share in the defendants' financial gains by trading securities.

11. As KNIGHT wrote in a private direct message to another Twitter user on or about January 10, 2021: "So much credibility . . . We own fintwit." "Fintwit" describes a community of Twitter users who discuss finance and stock trading.

12. The defendants used their credibility to maximize their own trading profits through their tweets and posts in Atlas Trading Discord, often at the expense of their Twitter followers and members of Atlas Trading Discord. Indeed, the defendants used their social media influence to pump and dump securities for their own financial gain.

13. To do so, one or more of the defendants first purchased a security, often notifying other defendants of the purchase so that they, too, could "load" and buy the security. After purchasing or "loading" the security, one or more of the defendants sought to "pump" the price of

that security by posting false and misleading information about the security on Twitter and Atlas Trading Discord so that other investors were induced to purchase the security and artificially increase its price. The defendants "pumped" the price of securities by posting on Twitter and Atlas Trading Discord the following types of false and misleading messages, among others:

    a.  Messages representing that a defendant intended to hold the security, including for a "swing" or a longer-term trade, as opposed to a short-term trade or day trade;

    b.  Messages representing that a defendant "joined" another defendant in purchasing the security or was "adding" to a position in the security;

    c.  Messages concerning a purported price target for the security that was significantly higher than the price at which the security was currently trading, and that was higher than the defendants actually valued the security; and

    d.  Messages concerning "due diligence" about the security and purported catalysts that would increase the security's price over time.

    14.    These messages were false and misleading, and omitted material information, because the defendants concealed their intent to use these messages to induce other investors to purchase the securities so that defendants could sell their shares at a higher price at and around the time of the messages. Indeed, because the defendants recognized that their followers on Twitter and members of Atlas Trading Discord frequently purchased securities based on the defendants' social media posts, the defendants sought to conceal from, and further mislead, their Twitter followers and members of Atlas Trading Discord about the defendants' true trading positions and intentions. In this way, the defendants used social media to induce other investors to purchase and hold the same securities that the defendants were selling or dumping so that the defendants could maximize their own profits.

15. Certain of the defendants, for example, sought to mislead their Twitter followers and members of Atlas Trading Discord by, among other things, falsely representing that they (a) did not sell shares of a security or "dump" shares on their Twitter followers and members of Atlas Trading Discord; and (b) did not "scalp" or secure short term profits at or around the time of their social media posts. For example:

    a. On or about November 10, 2020, MATLOCK falsely maintained on Atlas Trading Discord that he did "NOT post plays so I can scalp 2 cents on my followers like they want you to believe. I WOULDN'T BE HERE IF I DID THAT. . . . My GOAL is to help THIS group [make] money and help make THIS group successful."[1]

    b. On or about June 11, 2021, COOPERMAN falsely claimed in a tweet: "I just wanna make it clear cause I have no reason to hide it… I BUY A STOCK . . then I LET YALL KNOW what I bought. That doesn't mean I'm dumping shares or contracts on ANYONE. I'm not here to scalp 2cents on people . I want us all to win together! LETS F*CKING KILL IT."

    c. On or about August 4, 2021, DEEL falsely claimed in a tweet: "I buy stocks that I think have a good chart and good news. That's how I always play it and sometimes it goes the wrong way. That's trading. I never dump shares on alerts."

    d. On or about February 20, 2022, CONSTANTIN falsely claimed in a tweet, "I never dump on my followers . . . ."

---

[1] Quotes from social media posts used throughout this Indictment present the text largely as it was written and generally do not correct or identify typographical or grammatical errors.

16.     Certain of the defendants also criticized on Twitter and Atlas Trading Discord other people who lost money from purchasing securities that the defendants pumped and dumped and who questioned whether the defendants were in fact trading in the way that they represented on social media.

17.     Indeed, the defendants' efforts to mislead and conceal material information from other investors concerning the defendants' true trading activity was critical to the continued success of the scheme, as reflected in the following exchange on or about July 8, 2020, between MATLOCK and Co-Conspirator-1 ("CC-1"), who participated in running Atlas Trading Discord:

| | |
|---|---|
| CC-1: | hey the patterns is becoming to obvious with Atlas [Trading Discord].  quickly gonna become exposed like the stocktwits pump bros |
| CC-1: | Hugh/Mystic [HENNESSEY/DEEL] post an idea ... .2 mins later the other one joins! |
| CC-1: | [Individual-1] posts a swing idea ... 2 mins later PJ [MATLOCK] joins! |
| CC-1: | we cant do it on 95% of the plays |
| CC-1: | have to start treating it like we do with the goons |
| MATLOCK: | coo |
| CC-1: | sweet convo! |
| MATLOCK: | They didn't even send it to me I seriously joined after [Individual-1] posted lol |
| MATLOCK: | but i know how it looks |
| CC-1: | ya i mean they just gotta tone that sh*t down a notch lol |

18.    Similarly,  CONSTANTIN instructed MATLOCK in a private Discord exchange

on or about January 20, 2021:

| CONSTANTIN: | It looks like we are front loading |
| CONSTANTIN: | Yea when you post right after |
| CONSTANTIN: | With [Individual-1] too |
| CONSTANTIN: | Just save yours for a dip |
| CONSTANTIN: | You post when there is a dip and say you joined then |
| CONSTANTIN: | Works better because well save more plays that way |
| CONSTANTIN: | No you're good |
| CONSTANTIN: | Just been seeing a lot of Twitter trash talking about it |
| CONSTANTIN: | So we gotta look less obvious |
| CONSTANTIN: | The dip buy sh*t is the best |

19.    KNIGHT expressed the following views during a recorded conversation on or about

February 24, 2021:

> . . . I mention a stock the less likely I get involved whenever all of Atlas gets a class action lawsuit . . . I'm playing this extremely smart, for the very long term. If you don't think all these f*ckers go to jail or at least get sued, you are crazy. . . . PJ is posting McLarens, $10 mill accounts, green 400 f*cking days in a row, come on. Every purchase over $10,000 immediately gets turned to the SEC. And it's like everything he f*cking buys. . . . Just wait and see. . . . It's market manipulation.

9

## SXTC

20.     From on or about September 11, 2020 to on or about September 14, 2020, DEEL, RYBARCZYK, and MATLOCK collectively sought to pump and dump the security of the issuer China SXT Pharmaceuticals, Inc., trading on the NASDAQ stock exchange under the ticker SXTC, through false representations, pretenses, and material omissions.

21.     On or about September 11, 2020 (Friday), DEEL informed RYBARCZYK on a direct message on Discord how he "added SXTC today" and planned to "post" about the stock on the following trading day (Monday).  RYBARCZYK responded in part, "Thanks bro . . . I'll add."

22.     On or about September 11 and September 14, 2020, DEEL purchased approximately 62,103 shares of SXTC at an average price of approximately $0.242 per share.  On or about September 11, 2020, RYBARCZYK purchased approximately 400,000 shares of SXTC at an average price of $0.247 per share.

23.     On or about September 14, 2020 (Monday), DEEL forwarded to RYBARCZYK a draft of the tweet that he planned to publish to his followers on Twitter.  RYBARCZYK advised DEEL to include the number of shares DEEL was purportedly purchasing "[j]ust to make it more appealing [to DEEL's Twitter followers] and if they see you're adding 100,000-200,000 shares they'll likely be enticed to add with size."  RYBARCZYK also advised DEEL to add price targets to his post.  RYBARCZYK also explained to DEEL that he will "retweet [DEEL's Twitter post] on the first dip" of SXTC.

24.     On or about September 14, 2020, between approximately 9:09:00 EST and 9:31:00 EST, MATLOCK purchased approximately 146,097 shares of SXTC at the approximate price of $0.257 per share.

10

25.     On or about September 14, 2020, at approximately 9:32:06 EST, DEEL posted the following false and misleading tweet, while omitting that he intended to sell his own shares in SXTC:

> SXTC- Added 100k here extremely oversold RSI on this one recently granted NASDAQ extension to get price over $1 and insiders own 51% of this. Great set up for a big runner. A break of .30 takes us to .40 then .52 then .61. Love the setup here

By approximately 9:38:00 EST, DEEL sold all 62,103 shares of SXTC at an approximate price of $0.280 per share, for an approximate profit of $2,381.24.

26.     At approximately 9:33:00 EST, MATLOCK similarly started selling shares of SXTC.  At approximately 9:33:16 EST, MALOCK falsely claimed in Atlas Trading Discord how he "grabbed a few SXTC with you," while he concealed that he was in the process of liquidating his position.  By approximately 9:34:00 EST, MATLOCK sold all 146,097 shares of SXTC at an approximate price of $0.27 per share and for an approximate profit of $1,863.47.

27.     At approximately 9:33:48 EST, RYBARCZYK posted on Atlas Trading Discord how he similarly "Added sxtc too . . . very bottomed penny."  At approximately 9:34:46 EST, RYBARCZYK falsely claimed in a Twitter post that he was "[a]dding SXTC at these levels with you" and included in his tweet the above-referenced tweet of DEEL that RYBARCZYK helped DEEL draft to "entice" others to purchase shares of SXTC.  At approximately 9:35:00 EST, RYBARCZYK also started to sell his shares of SXTC.  Between approximately 9:35:00 EST and 10:29:00 EST, RYBARCZYK sold all 400,000 of his shares at an approximate price of $0.285 per share and for an approximate profit of $15,079.12.

28.     DEEL and RYBARCZYK respectively continued to post false and misleading information about SXTC on Twitter and Atlas Trading Discord in or around the time they continued to sell shares of SXTC.

11

29.     After he had sold all of his shares in SXTC, DEEL falsely claimed in a tweet at approximately 9:50:06 EST that "$SXTC we holding above .30 now we were very early here and this honestly should run for days to come from these levels."

30.     By approximately 10:29:00 EST, DEEL, MATLOCK and RYBARCZYK had sold every share of SXTC they respectively held at an approximate average price of $0.281 and for approximate combined profits of $19,323.83.

<u>TRCH</u>

31.     In or around February 2021, MATLOCK, DEEL, HENNESSEY, and others collectively sought to pump and dump the security of the issuer Torchlight Energy Resources, Inc., which at the time traded on the NASDAQ under the ticker TRCH (currently trading as MMAT), through false representations, pretenses, and material omissions.

32.     On or about February 10, 2021, and between approximately 7:00:00 EST and approximately 10:11:00 EST, MATLOCK, RYBARCZYK, DEEL, COOPERMAN, HENNESSY and KNIGHT had collectively purchased 964,947 shares of TRCH at an approximate average price of $1.83.

33.     On or about February 10, 2021, at approximately 10:11:04 EST, HENNESSEY posted on Atlas Trading Discord that he was "Long TRCH for merger."  At approximately 10:11:08 EST, HENNESSY falsely claimed in a tweet:  "New swing $TRCH[.]  They HAD to do an offering to get to the level of cash they needed[.]  NOW the merger is full steam ahead baby . . . ."  A "swing" is a term used to describe a position in a security that is held over the medium or long term, as opposed to a day trade.

34.     On or about February 10, 2021, at approximately 9:50:00 EST, DEEL had started selling shares of TRCH.  At approximately 10:11:48 EST, DEEL misleadingly claimed on Atlas

Trading Discord that he "added TRCH," while omitting the material information that he had begun to sell his own shares. By approximately 10:16:00 EST, DEEL had sold all of his shares of TRCH at an approximate average price of $2.12.

35.     On or about February 10, 2021, and between approximately 10:12:00 EST and approximately 10:13:00 EST, COOPERMAN, RYBARCZYK, DEEL, KNIGHT and MATLOCK collectively sold 214,017 shares of TRCH at an approximate average price of $2.09.

36.     On or about February 10, 2021, at approximately 10:13:38 EST, MATLOCK falsely claimed in a tweet: "$TRCH probably going to 3 today. Merger to be done soon. Ripping right now. I have some under $2 but adding dips on it with Hugh." At the approximate time of this tweet, TRCH was trading at an approximate price of $2.15 per share.

37.     On or about February 10, 2021, and between approximately 10:13:39 EST and approximately 10:22:00 EST, RYBARCZYK, DEEL, KNIGHT, COOPERMAN, HENNESSEY, and MATLOCK collectively sold approximately 286,413 shares of TRCH at an approximate average price of $2.22. In or around the time they were selling or dumping TRCH shares, DEEL, MATLOCK and HENNESSY continued to post purportedly positive information about TRCH on Atlas Trading Discord and Twitter.

38.     Despite claiming on or about February 10, 2021, at approximately 10:11:00 EST that he was "long" TRCH and trading it for a "swing," HENNESSEY had sold his entire position of approximately 196,000 TRCH shares on or about February 10, 2021, by approximately 12:39:00 EST at an approximate price of $2.60 per share and for an approximate profit of $166,274.40.

13

39.    On or about February 16, 2021, at approximately 13:36:37 EST, MATLOCK tweeted: "$TRCH adding 100k shares here just now 4.22.  We're setting up beautifully for power hour."  Approximately one minute later, at 13:37:49 EST, MATLOCK falsely tweeted that he believed "$TRCH will be a $10+ stock IMO."  Starting at approximately 13:38:00 EST, MATLOCK started to sell his TRCH shares.  By approximately 14:01:00 EST, MATLOCK had sold his entire position of approximately 100,000 TRCH shares at the approximate price of $4.45 per share and for an approximate profit of $22,828.62.

40.    Despite trading in and out of TRCH in or around the times of his social media messages, MATLOCK falsely claimed that he was a longer-term holder in TRCH on February 16, 2021, and tweeted:  "$TRCH our core swing is from 2.50's to 2.60's[.]  no need to worry.  We need dips for health, keep rollin baby."

41.    In or around February 2021, MATLOCK, RYBARCZYK, DEEL, COOPERMAN, HENNESSEY, and KNIGHT profited approximately $876,106 from the pump and dump of TRCH.

<u>GTT</u>

42.    In or around March 2021, RYBARCZYK and MATLOCK collectively sought to pump and dump the security of the issuer GTT Communications, Inc., trading on the New York Stock Exchange under the ticker GTT, through false representations, pretenses, and material omissions.

43.    On or about March 1, 2021, by approximately 13:37:00 EST, RYBARCZYK, DEEL, COOPERMAN, and KNIGHT collectively had purchased and held approximately 301,300 shares of GTT at an average price of $1.76.

14

44.     On or about March 1, 2021, at approximately 13:37:35 EST, RYBARCZYK falsely claimed in a tweet that "$GTT 24RSI +++ major multi billion $$$ catalyst," while omitting the material information that he intended to sell his own shares of GTT.  At or about the time of RYBARCZYK's tweet, KNIGHT stated in a recorded conversation in reference to RYBARCZYK's tweet:  "Oh, there it is!  Tweet, tweet, tweet.  There's the tweet!" At approximately 13:38:00 EST through approximately 13:39:00 EST, COOPERMAN, KNIGHT and DEEL collectively sold approximately 35,750 shares of GTT at an approximate average price of $1.84 for an approximate profit of $1,999.56.

45.     In the same recorded conversation and on or about the time as RYBARCZYK's tweet, KNIGHT stated:  "I don't think [RYBARCZYK] will accept [the price of GTT] not going this much.  I refuse to believe it.  He's got more pumpers in him."

46.     At approximately 13:39:26 EST, RYBARCZYK tweeted:  "$GTT 110M market cap with 2B+ deal in place."  From approximately 13:40:00 EST to approximately 14:45:00 EST, RYBARCZYK, DEEL, and KNIGHT collectively sold 243,300 shares of GTT at an approximate average price of $1.86 for an approximate profit of $24,349.18.

47.     In the same recorded conversation, KNIGHT described selling his shares of GTT and how "I'm making it look natural . . . . you know, shares going in, shares coming out" and that he was "dumping into the bid . . . ."

48.     Later in that same recorded conversation, KNIGHT and Co-Conspirator-2 ("CC-2") had the following exchange about trading GTT:

> KNIGHT:        . . . my first buy was 35,000, my next was 7,500 . . .
>
> CC-2:          I know, I just, I don't wanna . . .
>
> KNIGHT:     Why?

| CC-2: | . . . get caught, so I'll just add slowly. |
|---|---|
| KNIGHT: | Get caught? |
| CC-2: | I just wanna do it the right way, I don't wanna like . . . |
| KNIGHT: | The f*cking right way? **We're robbing f*cking idiots of their money.** |

49.     Later in the same recorded conversation, COOPERMAN described in part how RYBARCZYK used social media to pump the price of securities:

> Like, what [RYBARCZYK] does is he alerts it, and then, like, five minutes later all his little minions start, like, retweeting it, and saying 'added with him,' so it, like, builds the hype back up. It happens every single time. They have this sh*t down to a f*cking science. It's great.

50.     On or about March 1, 2021, between approximately 15:51:00 EST and 15:57:00 EST, MATLOCK purchased approximately 317,916 shares of GTT at an approximate average price of $1.83.  At approximately 16:07:46 EST, MATLOCK falsely claimed in Atlas Trading Discord that "I just added GTT with Ultra," a reference to the Discord account of RYBARCZYK, and without disclosing his intent to immediately sell his shares.  Starting at approximately 16:08:00 EST, MATLOCK started to sell shares of GTT.  By approximately 16:22:00 EST, MATLOCK had sold his entire position of approximately 317,916 GTT shares at the approximate price of $1.99 per share and for an approximate profit of $50,709.00.  After selling all of his shares in GTT, MATLOCK falsely claimed in Atlas Trading Discord that he "will [hold] overnight GTT . . . ."

51.     On or about March 1, 2021, at approximately 16:06:57 EST, RYBARCZYK falsely claimed in a tweet a goal of "$GTT Short Squeeze to $3" when GTT was trading at approximately $2 per share.  At approximately 16:08:00 EST, RYBARCZYK sold 90,708 shares of GTT.  At approximately 16:09:17 EST, RYBARCZYK falsely claimed in a tweet that "$GTT won't end

pretty on the short side. Book value $3.44," on or about when GTT was trading at approximately $1.98 per share. Between 17:19:00 EST and 17:22:00 EST, RYBARCZYK sold an additional 50,000 shares of GTT. After selling his shares throughout the day, RYBARCZYK tweeted: "$GTT Insane weekly; One of the most beat up technology names out there. Just playing the bounce here."

52. Around March 2021, RYBARCZYK, MATLOCK, DEEL, HRVATIN, COOPERMAN, and KNIGHT profited approximately $199,530.17 from the pump and dump of GTT.

<u>SURF</u>

53. In or around May 2021, MATLOCK, DEEL, COOPERMAN, and HENNESSEY collectively sought to pump and dump the security of the issuer Surface Oncology, Inc., trading on the NASDAQ under the ticker SURF, through false representations, pretenses, and material omissions.

54. From on or about May 10, 2021 to on or about May 19, 2021, at approximately 9:51:00 EST, MATLOCK, DEEL, COOPERMAN, HENNESSEY, and KNIGHT collectively purchased and held approximately 539,389 shares of SURF at an approximate average price of $8.24.

55. In between purchasing these shares, on or about May 18, 2021, MATLOCK privately messaged Co-Conspirator-1 on Discord that he "got a couple surf" and "Hugh [HENNESSEY] gonna post. Im gonna wait a while then post." MATLOCK continued: "Not posting until tomorrow [May 19, 2021] just because not enough time and he [HENNESSEY] didn't get everything ready."

17

56. On or about May 19, 2021, at approximately 9:51:27 EST, HENNESSEY claimed in a tweet and in a post on Atlas Trading Discord: "I am long $SURF - have been stalking this company and would be shocked if acquisition deal was not done by EOY . . . ." HENNESSEY also cited to positive information about SURF for the "short term." In the following minutes, HENNESSEY continued to tweet and post in Atlas Discord Trading positive information about SURF.

57. On or about May 19, 2021, at approximately 9:57:20 EST, MATLOCK misleadingly claimed in a post in Atlas Trading Discord that he was "Long SURF with [HENNESSEY] adding here on this pullback . . . ," without disclosing his intent to sell his own shares. By the end of the day, MATLOCK had sold all of his shares of SURF at an approximate price of $8.871 per share and for an approximate profit of $102,507.18.

58. On or about May 19, 2021, at approximately 10:00:32 EST, COOPERMAN falsely claimed in a tweet that he was "swinging this $SURF with [HENNESSEY] he just dropped insane DD [or due diligence] on his twitter." At approximately 9:57:00 EST, and after falsely claiming that he was swinging or holding SURF for a longer-term position, COOPERMAN started to sell his shares of SURF. By approximately 10:08:00 EST, COOPERMAN had sold 35,000 shares of SURF and closed his position at an approximate price of $9.03 per share for an approximate profit of $28,702.58. Later in the day and while holding zero shares of SURF, COOPERMAN falsely claimed in a tweet: "Added to my $SURF position right before close. Still scaling into my swing. . . . Ill swing by for $12 or june 4. whatever happens first . . . I have more money to add if it continues to go down… THIS IS MY LAST TWEET ABOUT IT. You know my plan !"

59. On or about May 19, 2021, at approximately 10:01:23 EST, DEEL falsely claimed in a post in Atlas Trading Discord that he was "[a]dding some SURF with you guys below 9.20

18

here.  Nice find with this daily chart breaking outta downtrend."  At approximately 10:04:00 EST, DEEL started selling shares of SURF.  By approximately 11:30:00 EST, DEEL sold approximately 167,300 shares of SURF at an approximate price of $8.76 per share and for an approximate profit of $129,873.87.

60.    On or about May 19, 2021, at approximately 10:04:00 EST and approximately thirteen minutes after falsely claiming that he was "long" SURF, HENNESSEY started selling shares of SURF.  In between selling his shares of SURF, HENNESSEY falsely claimed in a tweet that he "[w]on't need to post about her much. $Surf already tons of dd out there[.]  Unless new DD comes out. Only way I'll be out of this one is if bad catalyst. Long and strong babyyy . . . ."  On or about May 19, 2021, and by approximately 10:44:00 EST, HENNESSEY had sold approximately 76,500 shares of SURF at an approximate price of $8.86 per share.  On or about June 1, 2021, HENNESSEY sold his remaining 10,000 shares of SURF for an approximate profit of $125,825.90.

61.    In or around May 2021, MATLOCK, DEEL, COOPERMAN, HENNESSY, and KNIGHT profited approximately $392,651 from the pump and dump of SURF.

ALZN

62.    In or around June 2021, MATLOCK, DEEL, COOPERMAN, and HENNESSEY collectively sought to pump and dump the security of the issuer Alzamend Neuro, Inc., trading on the NASDAQ under the ticker ALZN, through false representations, pretenses, and material omissions.

63.    On or about June 30, 2021, between approximately 12:24:00 EST and 13:01:00 EST, DEEL, COOPERMAN, and MATLOCK purchased approximately 82,209 shares of ALZN at an approximate average price of $11.11 per share.

19

64.     On or about June 30, 2021, at approximately 12:37 EST, DEEL exchanged the
following private messages with RYBARCZYK about the forthcoming plan relating to ALZN:

| | |
|---|---|
| DEEL: | we are loading these shares back down here on ALZN to send to nhod [new high of the day] after lunch if you want anymore . . . . |
| RYBARCZYK: | Yes sir! |
| | . . . |
| DEEL: | hugh [HENNESSEY] says get size . . . . |
| DEEL at 12:59:50 p.m.: | posting |

65.     On or about June 30, 2021, at approximately 13:01:57 EST, DEEL falsely claimed
in a tweet how "$ALZN is now my largest swing position open. We broke 12 earlier, but that was
a tease on what this will do. I added these dips through lunch and now I will ride this for new highs
and more. I like the potential here and the market is hot for it."  At approximately 13:02:07 EST,
DEEL posted the same message on Atlas Trading Discord.

66.     On or about June 30, 2021, at approximately 13:02:00 EST and through
approximately 13:11:00 EST, MATLOCK sold 24,000 shares of ALZN at an approximate price
of $11.66 per share and closed his position.  While selling his shares, MATLOCK posted in Atlas
Trading Discord about ALZN and falsely claimed that he was "holding ALZN" approximately 24
minutes after he closed his position.

67.     On or about June 30, 2021, at approximately 13:02:00 EST, COOPERMAN sold
his entire position in ALZN at an average price of $11.43 per share.  After selling his position and
holding zero shares, COOPERMAN falsely claimed in Atlas Trading Discord that he was "still
holding and added to ALZN . . . ."

20

68.     On or about June 30, 2021, at approximately 13:03:00 EST and 13:06:00 EST and approximately one minute after claiming that he "will ride [ALZN] for new highs and more," DEEL sold approximately 13,149 shares of ALZN at an approximate price of $11.63 per share.

69.     On or about June 30, 2021, at approximately 13:08:49 EST, DEEL falsely claimed in a tweet that "$ALZN the market is expected to exceed 10 BILLION by 2025. This is a great swing potential and we will see new high of day before close."  At approximately 13:09:00 EST, DEEL continued to sell shares of ALZN.  By approximately 13:26:00 EST, DEEL had sold approximately 34,851 shares of ALZN at an average price of $11.87 per share and closed his position.  Approximately three minutes after closing his position in ALZN, DEEL falsely claimed in a tweet:  "$ALZN 12 broke for a sec and pulled back for now. I am still swinging this one so not really worrying about 12 reject there yet."

70.     In or around June 2021, MATLOCK, DEEL, COOPERMAN, and HENNESSEY profited approximately $212,822 from the pump and dump of ALZN.

### UPC

71.     In or around July 2021, RYBARCZYK, COOPERMAN, and DEEL collectively sought to pump and dump the security of the issuer Universe Pharmaceuticals, Inc., trading on the NASDAQ under the ticker UPC, through false representations, pretenses, and material omissions.

72.     On or about July 22, 2021, as of approximately 17:00:00 EST, RYBARCZYK, COOPERMAN, and DEEL collectively purchased and held 303,898 shares of UPC at an approximate price of $3.359 per share.

73.     On or about July 22, 2021, at approximately 17:03:15 EST, DEEL falsely claimed in a tweet:  "$UPC I just went back and looked at this chart. Back in March the price went from 5.16 to 11.99. Volume is coming into this name this evening and in AH. I added here for an

21

overnight hold. I am looking for a gap up and for this to be tomorrow's runner. Added 100k shares."
At approximately 17:03:44 EST, DEEL falsely claimed in Atlas Trading Discord that "I just added
UPC for an overnight [hold] too."  At approximately 17:03:47 EST, COOPERMAN falsely
claimed in a tweet how he "added 50,000 shares of this $UPC i think it can be a big over night
rapper chart looks nice for a big over night move."

74.     At approximately 17:05:00 EST, DEEL and COOPERMAN started to sell shares
of UPC at an approximate price of $4.464 per share.  In between selling shares of UPC,
COOPERMAN claimed in a post in Atlas Trading Discord that he purchased or "took" shares of
UPC "because ultra [RYBARCZYK] was talking about it . . . ."

75.     By approximately 17:15:00 EST and despite claiming approximately ten minutes
earlier that UPC would be an "overnight" hold COOPERMAN had sold all 50,000 shares of UPC
at an approximate price of $4.619 for an approximate profit of $21,177.69.

76.     At approximately 18:14:58 EST, DEEL falsely claimed in a tweet that he was
"riding full $UPC for tomorrow.  We are in at good prices from when I first posted, but I'm holding
for morning.  That's just MY plan because I think it runs hard.  YOU do what you want.  I'll
holler."   By approximately 19:58:00 EST, DEEL had sold approximately 110,000 of
approximately 154,098 shares of UPC that he had purchased before first tweeting and posting in
Atlas Trading Discord about UPC.

77.     At approximately 17:37:13 EST, COOPERMAN—after he had sold all 50,000
shares of UPC—falsely claimed in a tweet how he was "holding 50K $UPC over night . you guys
are all green on it manage your trade from here. you know MY plan."  COOPERMAN included in
that tweet a picture that purported to show a holding of 50,000 shares of UPC.  Another Twitter
user commented on the tweet and wrote, "Dude you are a joke . . . you already dumped [clown

22

face emoji]."  COOPERMAN responded in a tweet, "ok!  Haha crazy how the tape doesn't show a 50k dump . . . ANYWHERE haha."

78.     On or about July 23, 2021, at approximately 7:19:19 EST, RYBARCZYK falsely claimed in a tweet:  "$UPC no BS here.  Full position intact, I don't dump.  I think we get a halt up at open . . . ."  At approximately 7:34:00 EST, RYBARCZYK sold approximately 50,000 shares of UPC.  By approximately 9:39:00 EST, RYBARCZYK had sold all of his shares of UPC at an approximate price of $4.437 per share for an approximate profit of $193,923.02.

79.     On or about July 23, 2021, between 08:54:00 EST and 9:41:00 EST, COOPERMAN purchased new shares and proceeded to sell all of those shares while falsely claiming on Twitter:  "UPC still holding the over night lets gooooooo."  During the same period, DEEL sold all of his remaining shares of UPC in between falsely claiming in a tweet:  "$UPC popping off at open.  This is why I didn't sell in the PM lets halt up."

80.     In or around July 2021, MATLOCK, RYBARCZYK, DEEL, and COOPERMAN profited approximately $365,550 from the pump and dump of UPC.

<u>ABVC</u>

81.     In or around August 2021, RYBARCZYK pumped and dumped the security of the issuer ABVC BioPharma, Inc., trading on the NASDAQ under the ticker ABVC, through false representations, pretenses, and material omissions.

82.     On or about August 11, 2021, and by approximately 8:11:00 EST, RYBARCZYK had purchased and held approximately 303,289 shares of ABVC at an approximate price of $3.489 per share.

83.    On or about August 11, 2021, at approximately 8:24:28 EST, RYBARCZYK tweeted: "$ABVC Soaked a ton between yesterday and a few fills when I got up. High conviction play $6+ first target. Keep on your WL for coming days."  At approximately 9:30:03 EST, RYBARCZYK claimed in a tweet:  "$ABVC LONG $6+++."

84.    Starting at approximately 9:35:00 EST, RYBARCZYK started selling his shares of ABVC.

85.    In between selling shares of ABVC at approximately 9:40:29 EST, RYBARCZYK falsely claimed in a tweet that "$ABVC Still goes $6+."

86.    In between selling more shares of ABVC at approximately 10:05:02 EST, RYBARCZYK falsely claimed in a tweet:  "$ABVC Not anywhere near done.  Full position intact. 90% of swings all explode."

87.    In between continuing to sell more shares of ABVC at approximately 10:34:59 EST, RYBARCZYK falsely claimed in a tweet:  "$ABVC Near entry now.  Holding 300k full."

88.    By approximately 12:25:00 EST, RYBARCZYK closed his position in ABVC after selling approximately 303,289 shares of ABVC at an approximate price of $3.685 per share and for an approximate profit of $59,345.48.

89.    Despite profiting over $59,000 on the trade of ABVC and selling all of his shares while falsely maintaining that he was holding his position, RYBARCZYK falsely claimed in a tweet at approximately 16:49:17 EST that he was a "[b]ag holder"—at or about the time that the price of ABVC had declined—and falsely maintained that "I hold my word and don't dump on anyone."

24

90.     On August 11, 2021, ABVC closed at an approximate price of $3.58 per share.  On August 12, 2021, ABVC opened at a price of $2.71 per share.  On or about August 12, 2021, at approximately 10:30:02 EST, RYBARCZYK claimed "sorry all about $ABVC[.]  Taking time to make sure next is a big winner.  I'll make sure it's available to discord and Twitter same time too . . . ."

CEI

91.     From in or around August 2021 to in or around October 2021, CONSTANTIN, MATLOCK, RYBARCZYK, DEEL, HRVATIN, and COOPERMAN collectively pumped and dumped the security of the issuer Camber Energy, Inc., trading on the New York Stock Exchange under the ticker CEI, through false representations, pretenses, and material omissions.

92.     From in or around August 2021 to in or around October 2021, the defendants collectively sought to pump the price of CEI by tweeting and posting in Atlas Trading Discord approximately one thousand times.  Indeed, the price per share of CEI rose from approximately $0.46 a share on or about August 3, 2021, to an approximate high of $4.37 per share on or about September 30, 2021, and closed at an approximate price of $1.30 per share on or about October 29, 2021.

93.     During this period, certain of the defendants made false tweets and posts in Atlas Trading Discord relating to CEI to induce individual investors to purchase the security, while at the same time selling shares of CEI at a profit without disclosing their true trading intentions.  For example:

   a.  On or about August 4, 2021, at approximately 15:38:17 EST, MATLOCK falsely claimed in Atlas Trading Discord that he was "[a]dding CEI with [DEEL] that's cheap AF."  Starting at approximately 15:39:00 EST, MATLOCK began to sell the 825,429 shares of CEI that he had previously purchased at an approximate price of

25

$0.465.  By approximately 15:54:00 EST, MATLOCK had sold approximately all shares of CEI for an approximate profit of $11,836.51.

b.  On or about August 4, 2021, at approximately 15:43:59 EST, COOPERMAN falsely claimed in a tweet that he was "adding CEI here for a swing[,] last time it touched these levels on the daily we saw a move of 3+ . . . ."  In this post, COOPERMAN also claimed that there was "lots of DD" or due diligence on DEEL's Twitter account.  In or around this tweet, COOPERMAN was selling his shares of CEI and closed his position in CEI at approximately 15:45:00 EST at an approximate price of $0.474 and for an approximate profit of $3,440.41.

c.  On or about August 4, 2021, at approximately 16:06:11 EST and 16:15:33 EST, DEEL falsely claimed in a tweet and in a post in Atlas Trading Discord that he was "holding and adding more" CEI share in afterhours and that he was "holding full into tomorrow."  Prior to and after these messages, DEEL had been consistently selling out of his position in CEI.

d.  On or about August 5, 2021, at approximately 11:11:22 EST, DEEL falsely claimed in a tweet:  "Don't panic on $CEI and tag me every 20 minutes. It's a swing. I'm adding all day. I alerted this yesterday at .46 and we are holding nicely right under .50 currently. I think we get a close over .50 by end of day and start the climb higher. There was hint of a PR tomorrow too."  At approximately 11:47:00 EST, DEEL started selling out of his position in CEI.  By approximately 12:03:00 EST, DEEL closed his position in CEI, selling approximately 508,822 shares at an approximate price of $0.513 and for an approximate profit of $37,565.93.

26

94.     On or about August 11, 2021, and after he had closed his position in CEI on or about August 5, 2021, COOPERMAN falsely claimed in a tweet that he was still holding CEI and wrote: "On swings like CEI ETC . You guys think that me not saying anything means I'm not in. It doesn't . I just don't see the need to keep tweeting or pushing swings. Let them do their thing. When the move happens and we bank I'll let you know."

95.     In or around September 2021, certain of the defendants continued seeking to pump and dump CEI by publishing false messages on Twitter and Atlas Trading Discord in order to sell their own shares of CEI for a profit.  For example, on or about September 10, 2021, at 15:45:00 EST, MATLOCK purchased approximately 130,000 shares of CEI at approximately $1.507 per share.  At approximately 15:46:24 EST, MATLOCK falsely claimed in Atlas Trading Discord that "CEI looking good."  At approximately 15:47:00 EST, MATLOCK sold all 130,000 shares of CEI at an approximate price of $1.511 for an approximate profit of $165.49.

96.     In or around September 2021, certain of the defendants also falsely claimed to be holding shares of CEI when they were not.  For example:

    a.  On or about September 1, 2021, at approximately 15:05:32 EST, COOPERMAN tweeted:  "when me @MrZackMorris @notoriousalerts @LadeBackk are in something. you strap your f*ckin boner pants on and you say thank you. $CEI."

    b.  On or about September 9, 2021, at approximately 16:02:06 EST, RYBARCZYK tweeted:  "$CEI That's a triple now @LadeBackk @MrZackMorris loving the action. Thanks for mentioning this idea. On the way to the $2 dolla bill next."

    c.  On or about September 26, 2021, at approximately 16:01:28 EST, RYBARCZYK falsely claimed in a tweet:  "$CEI I'm still full on this too.  I wouldn't be tweeting about it every other day if I wasn't."

27

97. In or around September 2021, certain of the defendants sought to pump the share price of CEI by falsely claiming in tweets that CEI could reach $10 per share in or around the time CEI was trading below and around $3 per share. For example:

    a. On or about September 24, 2021, at approximately 11:51:12 EST, HRVATIN falsely claimed in a tweet that "$CEI this can go to $10." Between approximately 12:17:00 EST and approximately 12:33:00 EST, HRVATIN sold his entire position of CEI at an approximate price of $2.187 and for an approximate profit of $10,898.24.

    b. On or about September 27, 2021, at approximately 14:26:36 EST, HRVATIN falsely claimed in a tweet: "$CEI it's not a game. Just based on #OIL and #GAS we should be a $10 stock because we are seeing commodity prices or #GAS up 500% from the 2020 lows. You do the math. I already did it. And we're just starting . . . ." Between approximately 14:28:00 EST and approximately 14:57:00 EST, HRVATIN closed his position by selling approximately 150,000 shares of CEI at an approximate price of $2.563 and for an approximate profit $15,953.48.

    c. On or about September 27, 2021, and on or about the approximate time of HRVATIN's tweets, CONSTANTIN retweeted a tweet of HRVATIN's in which HRVATIN falsely claimed that "$CEI is a $10 stock all day long" and also falsely claimed that "OIL going to $100 $CEI going to $10."

    d. On or about October 3, 2021, at approximately 9:02:53 EST, COOPERMAN tweeted: "Looking directly into @MrZackMorris eyes as he whispers '$CEI is going to 10 to me . . . ."

28

98. On or about October 5, 2021, at approximately 10:32:12 EST, CONSTANTIN falsely claimed in a tweet "$CEI 10+" and provided a link to a tweet of a Reuters.com news article describing how the price of oil would rise to "100+ in Winter months." Between approximately 11:06:00 EST and approximately 11:11:00 EST, CONSTANTIN sold approximately 2,070,000 shares at an approximate price of $2.609 for an approximate profit of $4,301,439.70 and closed his position.

99. In or around August 2021 to in or around October 2021, the defendants collectively profited approximately $5,462,312.75 on the pump and dump of CEI.

DATS

100. From in or around August 2021 to in or around October 2021, CONSTANTIN, MATLOCK, RYBARCZYK, DEEL, HRVATIN, COOPERMAN, HENNESSEY, and KNIGHT collectively pumped and dumped the security of the issuer DatChat, Inc., trading on the NASDAQ under the ticker DATS, through false representations, pretenses, and material omissions.

101. From on or about August 15, 2021 to on or about September 1, 2021, CONSTANTIN, RYBARCZYK, DEEL, HRVATIN, COOPERMAN, HENNESSEY, and KNIGHT collectively purchased and held approximately 833,054 shares of DATS at an approximate price of $3.729.

102. On or about August 23, 2021, CONSTANTIN privately messaged on Twitter Individual-2 the following:

| | |
|---|---|
| CONSTANTIN: | [forwarding a link to a chat room] |
| CONSTANTIN: | That's my secret dat chat |
| CONSTANTIN: | I'm keeping the room locked |
| CONSTANTIN: | We're only buying on float ipos and locking up the float |
| CONSTANTIN: | Without pumping on Twitter |

29

| CONSTANTIN: | Keep this to yourself. I'm only inviting people I think are good |
| Individual-2: | I'm in |
| Individual-2: | Lips are sealed |
| CONSTANTIN: | We have the dats float locked |
| Individual-2: | YES. I'm holding. In at 4.76 |

103.    In or around September 2021 to in or around October 2021, the defendants collectively sought to pump the price of DATS by tweeting and posting in Atlas Trading Discord approximately three hundred times. Indeed, the price per share of DATS rose from approximately $4 a share in or around August 2021—in or around the time when CONSTANTIN secretly planned to load shares of DATS with others—to an approximate high of $15.09 per share on or about October 12, 2021. On or about December 2, 2021, DATS closed at approximately $3.74 per share.

104.    Certain of the defendants made false and misleading tweets and posts in Atlas Trading Discord about DATS to induce other investors to purchase the security, while at the same time selling shares of DATS for a profit. For example:

a.   On or about September 14, 2021, between approximately 14:38:00 EST and approximately 14:40:00 EST, HRVATIN purchased approximately 10,000 shares of DATS at an approximate price of $7 per share. On or about 14:48:09 EST, HRVATIN falsely claimed in a tweet: "$DATS loading here for a swing. $7 will be cheap when it squeezes." Between approximately 14:51:00 EST and approximately 14:52:00 EST, HRVATIN closed his position by selling all 10,000 shares of DATS at an approximate price of $7.360 per share and for an approximate profit of $3,602.00.

b.   On or about September 17, 2021, between approximately 9:46:00 EST and approximately 9:54:00 EST, COOPERMAN purchased approximately 14,000

shares of DATS at an approximate price of $8.715 per share. At approximately 9:54:57 EST, COOPERMAN falsely claimed that he was "adding dips on DATS, holding this support nice. 9 break sends us to 9.50 – 10." At approximately 9:56:00 EST, COOPERMAN closed his position in DATS by selling approximately 14,000 shares at the approximate price of $8.887 per share and for a profit of approximately $2,404.25.

105.   In or around September and October 2021, CONSTANTIN, while holding shares of DATS, falsely claimed purported price targets for DATS that were significantly higher than its current price per share and falsely claimed that DATS had longer-term catalysts. For example:

    c.   On or about September 23, 2021, CONSTANTIN falsely claimed in a tweet: "$DATS I want $30+ with all the upcoming catalysts." On or about September 23, 2021, DATS closed at the approximate price of $10.29 per share.

    d.   On or about September 24, 2021, CONSTANTIN falsely claimed in a tweet: "$DATS We're early and shorts are trying hard. We'll squeeze that seeking alpha hoe. He's short. See you at over $30 b*tches." CONSTANTIN included in this tweet a picture of purported upcoming milestones of DATS through Q4 2021. On or about September 24, 2021, DATS closed at an approximate price of $12.99 per share.

    e.   On or about September 28, 2021, CONSTANTIN falsely claimed in tweet: "$DATS $30+ maybe $50 or $100." On or about September 28, 2021, DATS closed at the approximate price of $14.61 per share.

    f.   On or about October 8, 2021, CONSTANTIN falsely claimed in a tweet: "$DATS has nothing to do with CEI. The scam paid room was grouping them together.

We're going to $10 $20 $30 maybe $50. Sick app and only 12 million float with lots of catalysts on the way."  On or about October 8, 2021, DATS closed at the approximate price of $11.72 per share.

106.    In or around October 2021, certain of the defendants continued to try to pump the price of DATS through false messages relating to DATS while secretly selling their own shares for a profit.  For example:

g.    On or about October 13, 2021, at approximately 6:24:32 EST, HRVATIN falsely claimed in a tweet: "$DATS 8-K out.  I like this part.  See you at $20."  Between approximately 7:00:00 EST and 7:03:00 EST, HRVATIN closed his position in DATS by selling approximately 24,703 shares of DATS at an approximate price of $16.006 and for an approximate profit of $21,318.25.

h.    On or about October 13, 2021, at approximately 9:18:13 EST, CONSTANTIN falsely claimed in a tweet:  "$DATS See you on Mars[,]"  a Fintwit reference for the share price of security to rise considerably.   Between approximately 9:35:00 EST  and  approximately  10:32:00  EST,  CONSTANTIN sold approximately  466,880  of  approximately  512,822  shares  in  DATS  at  an approximate price of $15.567 and for an approximate profit of $5,337,820.52.  On or about October 13, 2021, at approximately 7:22:32 EST and after selling approximately 466,880 shares of DATS, CONSTANTIN falsely claimed in a tweet "$DATS I'm holding shares LT [long term].  I could careless of [sic] a short report comes out.  I'll gobble up the dip and f them."

i.    On or about October 14, 2021, at approximately 11:30:02 EST, CONSTANTIN falsely claimed in a tweet: "$DATS Let's do a short report at the bottom.  Lol idiots

32

squeeze these hoes.  $DATS $30++."  Between approximately 11:36:00 EST and 11:48:00 EST, CONSTANTIN sold approximately 300,000 of approximately 695,942 shares of DATS at an approximate price of $11.476 and for an approximate profit of $715,943.76.

107.    On or about October 18, 2021, CONSTANTIN closed his positions in DATS.

108.    On or about November 3, 2021, and after falsely touting the long-term prospects of DATS for weeks through posts on Twitter, CONSTANTIN was asked in a Twitter direct message by another Twitter user:  "You holding large on DATS still?"  CONSTANTIN responded, "No lol."

109.    Nonetheless, CONSTANTIN publicly claimed to still hold positive views of DATS, all the while holding zero shares of the security.  On or about November 15, 2021, and in response to a Twitter question about "how come your interest died on [DATS] (if it died)[,]" CONSTANTIN responded, "It hasn't.  They just go in cycles.  DATS will go again."  On or about December 2, 2021, on or about the date when DATS was trading at approximately $3.74 per share, CONSTANTIN similarly falsely claimed, "DATS will go again.  I like these prices."

<u>BBI</u>

110.    In or around April 2022, CONSTANTIN pumped and dumped the security of the issuer Brickell Biotech, Inc., trading on the NASDAQ under the ticker BBI (currently trading under the ticker of FRTX) through false representations, pretenses, and material omissions.

111.    On or about April 18, 2022, by approximately 15:37:00 EST, CONSTANTIN had purchased approximately 3,090,936 shares of BBI at an approximate price of $0.330 per share. On or about April 18, 2022, at approximately 15:58:00 EST, CONSTANTIN started to post on Twitter about BBI and that he "added big on the dip."

33

112.    On April 19, 2022, CONSTANTIN posted on Twitter false claims about BBI in or around the time he sold or dumped shares of BBI, including:

    a.    At approximately 9:20:48 EST, CONSTANTIN falsely claimed:  "$BBI 1-2 week hold for me.  Looking for .50–$1."

    b.    At approximately 9:43:49 EST, CONSTANTIN falsely claimed in a tweet:  "$BBI .33 is my add zone."

    c.    At approximately 13:22:57 EST, CONSTANTIN falsely claimed in a tweet:  "$BBI I'm pumping while it's still cheap.  Don't tag me when you chased over .50 [cents per share.]"

    d.    Between approximately 13:47:00 EST and approximately 14:42:00 EST, Constantin sold approximately 1,111,000 shares of BBI at an approximate price of $0.393 per share for an approximate profit of $81,372.64.

    e.    At approximately 15:05:01 EST, CONSTANTIN falsely claimed in a tweet:  "$BBI dips for my crips.  We're going over .50 and higher.  We got catalysts baby . . . ."

    f.    At approximately 17:08:39 EST, CONSTANTIN falsely claimed in a tweet, "$BBI to $1."

    g.    At approximately 21:33:50 EST, CONSTANTIN falsely claimed in tweet that he was "still fully in $BBI."

113.    On or about April 20, 2022, CONSTANTIN continued to post on Twitter false claims about BBI in or around the time he sold or dumped additional shares of BBI, including:

    h.    At approximately 11:41:58 EST, CONSTANTIN falsely claimed in a tweet:  "$BBI It's going past .50 I feel it in my heart."

i.    Between approximately 13:34:00 EST and approximately 14:37:00 EST, CONSTANTIN sold approximately 1,180,936 shares of BBI at an approximate price of $0.372 per share and for an approximate profit of $45,655.81.

j.    At approximately 16:28:21 EST, CONSTANTIN falsely claimed in a tweet, "$BBI Bullish!!!!!!"

114.    On or about April 22, 2022 at approximately 11:26:06 EST, CONSTANTIN falsely claimed in a tweet: "$BBI You're going to feel so stupid when this hits .50+." Between approximately 12:26:00 EST and approximately 14:43:00 EST, CONSTANTIN closed his position by selling approximately 356,800 shares of BBI at an approximate price of $0.331 per share and for an approximate profit of $124,725.19.

**COUNT ONE**

**CONSPIRACY TO COMMIT SECURITIES
FRAUD
(18 U.S.C. § 1349)**

115.    Paragraphs 1 through 114 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

116.    From at least in or around January 2020 through at least in or around June 2022, in the Southern District of Texas, and elsewhere, the defendants,

**EDWARD CONSTANTINESCU,
PERRY "PJ" MATLOCK,
JOHN RYBARCZYK,
GARY DEEL,
STEFAN HRVATIN,
TOM COOPERMAN,
MITCHELL HENNESSEY,** and
**DANIEL KNIGHT,**

did knowingly and intentionally, that is, with the intent to advance the conspiracy, combine, conspire, and agree with other individuals, known and unknown, to commit an offense against the

35

United States, namely, securities fraud, that is, to knowingly, and with the intent to defraud, execute, and attempt to execute, a scheme and artifice (1) to defraud any person in connection with any security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*) and that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78*o*(d)), including China SXT Pharmaceuticals, Inc. (SXTC), Torchlight Energy Resources, Inc. (TRCH), GTT Communications, Inc. (GTT), Surface Oncology, Inc. (SURF), Alzamend Neuro, Inc. (ALZN), Universe Pharmaceuticals, Inc. (UPC), ABVC BioPharma, Inc. (ABVC), Camber Energy, Inc. (CEI), and DatChat, Inc. (DATS), and (2) to obtain, by means of materially false and fraudulent pretenses, representations, promises, and material omissions, any money and property in connection with the purchase and sale of any security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*) and that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78*o*(d)), including China SXT Pharmaceuticals, Inc. (SXTC), Torchlight Energy Resources, Inc. (TRCH), GTT Communications, Inc. (GTT), Surface Oncology, Inc. (SURF), Alzamend Neuro, Inc. (ALZN), Universe Pharmaceuticals, Inc. (UPC), ABVC BioPharma, Inc. (ABVC), Camber Energy, Inc. (CEI), and DatChat, Inc. (DATS) in violation of Title 18, United States Code, Section 1348.

<u>Purpose</u>

117.    It was the purpose of the conspiracy for the defendants and their co-conspirators, known and unknown to the Grand Jury, to unlawfully enrich themselves by pumping and dumping securities of the above-described issuers, and others, through false and misleading posts and material omissions on Twitter and the Atlas Trading Discord.

<u>Manner and Means</u>

118.    Paragraphs 10 through 114 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH ELEVEN

### SECURITIES FRAUD
### (18 U.S.C. §§ 1348 & 2)

119.    Paragraphs 1 through 114 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

120.    On or about the dates specified in the chart below as to each count, in the Southern District of Texas, and elsewhere, the defendants,

**EDWARD CONSTANTINESCU,
PERRY "PJ" MATLOCK,
JOHN RYBARCZYK,
GARY DEEL,
STEFAN HRVATIN,
TOM COOPERMAN, and
MITCHELL HENNESSEY,**

did knowingly, and with the intent to defraud, execute, and attempt to execute, a scheme and artifice (1) to defraud any person in connection with any security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*) and that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 and (2) to obtain, by means of materially false and fraudulent pretenses, representations, promises, and material omissions, any money and property in connection with the purchase and sale of any security of an issuer with a class of securities registered under Section 12 of the Securities

37

Exchange Act of 1934 (15 U.S.C. § 78*l*) and that is required to file reports under section 15(d) of

the Securities Exchange Act of 1934 (15 U.S.C. § 78*o*(d)), as set forth below:

| Count | Defendants | On or about Date and Time | Issuer |
|:---:|:---:|:---:|:---:|
| 2 | DEEL, RYBARCZYK, MATLOCK | September 2020 | China SXT Pharmaceuticals, Inc. (SXTC) |
| 3 | HENNESSEY, MATLOCK, DEEL | February 2021 | Torchlight Energy Resources, Inc. (TRCH) |
| 4 | RYBARCZYK, MATLOCK | March 2021 | GTT Communications, Inc. (GTT) |
| 5 | HENNESSEY, MATLOCK, COOPERMAN, DEEL | May 2021 | Surface Oncology, Inc. (SURF) |
| 6 | DEEL, MATLOCK | June 2021 | Alzamend Neuro, Inc. (ALZN) |
| 7 | COOPERMAN, RYBARCZYK, DEEL | July 2021 | Universe Pharmaceuticals, Inc. (UPC) |
| 8 | RYBARCZYK | August 2021 | ABVC BioPharma, Inc. (ABVC) |
| 9 | CONSTANTINESCU, HRVARTIN | September through October 2021 | Camber Energy, Inc. (CEI) |
| 10 | CONSTANTINESCU, HRVATIN | August through October 2021 | DatChat, Inc. (DATS) |
| 11 | CONSTANTINESCU | April 2022 | Brickell Biotech, Inc. (BBI) |

All in violation of 18 U.S.C. §§ 1348 and 2.

## COUNT TWELVE

### ENGAGING IN MONETARY TRANSACTIONS IN PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY
### (18 U.S.C. § 1957)

121.     Paragraphs  1 through  114 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

122.     In or about 2021, CONSTANTIN maintained an account ending in -9349 at Brokerage 1 (the "Brokerage Account"), which he used to trade securities, including securities described in this Indictment. The Brokerage Account held criminally derived property from the scheme described herein.

123.     In or about 2021, CONSTANTIN maintained an account ending in -7878 at Bank 1 (the "Bank Account"). Bank 1 is a financial institution as defined in Title 18, United States Code, Section 1956(6).

124.     On or about March 8, 2021, the Bank Account's balance was approximately $1,174,157.36. From on or about March 8, 2021 to on or about March 16, 2021, CONSTANTIN caused approximately $4,000,000 in criminally derived property to be wired from the Brokerage Account to the Bank Account. On or about March 16, 2021, the Bank Account's balance was approximately $5,394,774.16, and no further funds entered the Bank Account until after March 18, 2021.

125.     On or about March 18, 2021, in the Southern District of Texas and elsewhere, the defendant,

**EDWARD CONSTANTINESCU,**

did knowingly engage and attempt to engage in a monetary transaction, by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, a transfer and withdrawal of funds, to wit, a wire transfer in the amount of approximately $3,450,000.00 from the Bank Account, payable to Title Company 1's account at Bank 2, to purchase real property located at or about 142 Bentwater Bay Drive, Montgomery, TX 77356, legally described as:  **Block 1, Lots 2 and 3, of Bentwater Sec. 82, Montgomery County, TX,** property being derived from a specified unlawful activity, that is, conspiracy to commit securities fraud in violation of Title 18, United States Code, Section 1349 as described in Count One of this Indictment.

All in violation of Title 18, United States Code, Section 1957(a).

## FORFEITURE ALLEGATIONS

The Grand Jury further states that there is probable cause that:

### NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c))

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Sections 2461(c), the United States of America gives notice to the defendants,

**EDWARD CONSTANTINESCU,**
**PERRY "PJ" MATLOCK,**
**JOHN RYBARCZYK,**
**GARY DEEL,**
**STEFAN HRVATIN,**
**TOM COOPERMAN,**
**MITCHELL HENNESSEY, and**
**DANIEL KNIGHT**

that, in the event of conviction of a violation of Title 18, United States Code, Sections 1349, 1348 and 2 as charged in Count One through Count Eleven of the Indictment, the United States of America shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

### NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(1))

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States of America gives notice to the defendant,

**EDWARD CONSTANTINESCU**

that, in the event of conviction of a violation of Title 18, United States Code, Section 1957 as charged in Count Twelve of the Indictment, the United States of America shall forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

## Property Subject to Forfeiture

The property subject to forfeiture includes, but is not limited to, the following:

126.     The real property located at 74 N. Lamerie Way, Spring, Texas 77382, together with all improvements, buildings, structures, and appurtenances, and legally described as:  Lot 12, Block 1, of Woodlands Village of Carlton Woods Section 15, Montgomery County, Texas;

127.     The real property located at 138 Bentwater Bay Dr., Montgomery, Texas 77356, together with all improvements, buildings, structures, and appurtenances, and legally described as: Lot 1, Block 1, Bentwater Sec. 82, Montgomery County, Texas;

128.     The real property located at 142 Bentwater Bay Dr., Montgomery, Texas 77356, together with all improvements, buildings, structures, and appurtenances, and legally described as: Block 1, Lots 2 and 3, of Bentwater Sec. 82, Montgomery County, Texas;

129.     The real property located at 151 Bentwater Bay Dr., Montgomery, Texas 77356, together with all improvements, buildings, structures, and appurtenances, and legally described as: Lot 2, Block 2, Bentwater Sec. 82, Montgomery County, Texas;

130.     The real property located at 258 Pinerock Ln., Montgomery, Texas 77356, together with all improvements, buildings, structures, and appurtenances, and legally described as:  Lot 6, Block 2, Bentwater Sec. 47, Montgomery County, Texas;

131.     The real property located at 299 W. Pines Dr., Montgomery, Texas 77356, together with all improvements, buildings, structures, and appurtenances, and legally described as:  Lot 8, Block 2, Bentwater Sec. 47, Montgomery County, Texas;

132.     The real property located at 7115 Julie Pond Lane, Spring, Texas 77389, together with all improvements, buildings, structures, and appurtenances, and legally described as:  Lot 3, Blk. 1, Shadow Creek South Sec. 3, Harris County, Texas;

133.    The real property located at 6917 W. Warwick Lane, Spring, Texas 77389, together with all improvements, buildings, structures, and appurtenances, and legally described as:  Lot 36, Block 1, Shadow Creek South, Sec. 2, Harris County, Texas;

134.    The real property located at 15 Congressional Circle, The Woodlands, Texas 77389, together with all improvements, buildings, structures, and appurtenances, and legally described as:  Lot 4, Block 1, The Woodlands Carlton Woods, Creekside 2, in the Village of Creekside Park, Harris County, Texas; and

135.    The real property located at 6913 W. Warwick Lake Ln., Spring, Texas 77389, together with all improvements, buildings, structures, and appurtenances, and legally described as: Lot 35, Blk. 1, Shadow Creek South Sec. 2, Harris County, Texas.

## MONEY JUDGMENT AND SUBSTITUTE ASSETS

The United States gives notice that it will seek a money judgment up to $114,000,000 against the Defendants.  In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the Defendants up to the amount of the money judgment.

A TRUE BILL:

Original Signature on File

_____
Foreperson

Date: _____December 07, 2022_____

_SA for GL_____
GLENN S. LEON
Chief, Fraud Section
Criminal Division, Department of Justice

JENNIFER LOWERY
U.S. Attorney
Southern District of Texas

_Scott Armstrong_____
Scott Armstrong
Assistant Chief

_Thomas Carter III_____
Thomas Heyward Carter, III
Assistant U.S. Attorney

John J. Liolos
Trial Attorney

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

United States of America

v.                                         Criminal No.:  **AU:22-M -00996(1)**

(1) Edward Constantinescu              Date Appeared:  December 13, 2022
*Defendant*                            Time:           11:05-11:22 AM (17 minutes)

# PROCEEDING MEMO - INITIAL APPEARANCE

1. Indictment Filed          ___12/7/22___      Warrant Issued:     ___12/7/22___
                                *Date*                                  *Date*

   Arrested                  ___12/13/22___      Agency:              ___FBI___
                                *Date*                                  *Agency*

2. COURT PERSONNEL:

   U.S. Magistrate Judge:    DUSTIN M. HOWELL
   Courtroom Deputy:         Laura Thomson
   Pretrial Officer:
   Interpreter:              N/A
   Court Reporter:           FTR Gold - ERO

3. APPEARANCES:

   AUSA:
   DEFT:

4. PROCEEDINGS:

   a.  Age        ___38___     Education   some college            Gender    M
   b.  Defendant understands proceedings and is mentally competent.          Y
   c.  Defendant is informed of constitutional rights.                       Y
   d.  Defendant understands charges.                                        Y
   e.  If charged on complaint, Defendant informed of right to Preliminary Hearing.   N/A
   f.  Defendant informed of right to legal counsel.                         Y
            1)  Defendant waives counsel.
       _X_  2)  Defendant states he will retain counsel.
            3)  Defendant states he/she has retained:
                            Phone No.:
            4)  Defendant requests appointment of counsel.
                _____   Defendant HAS NOT completed the CJA23 financial affidavit.
                         _____  Court will appoint counsel in the interest of justice based on deft's verbal accounting
                                 of his current financial status.
                _____   Defendant HAS completed the CJA23 financial affidavit and the Court will appoint counsel
                         because:
                         _____  The defendant is indigent at this time.
                         _____  Even though the defendant is not indigent, counsel will be appointed in the interests
                                 of justice.
                _____   The Court finds that the defendant is NOT eligible and denies request.

PROCEEDING MEMO - INITIAL APPEARANCE
In Re:  (1) Edward Constantinescu
Page 2 of 2 Pages

g.    PRE-TRIAL RELEASE:
_____  1)    The Government makes ☐ oral    or    ☐ written motion for detention under 18 USC 3142.
                Court sets detention  hearing for _____
_____  2)    The Court sua sponte moves for detention.  The detention hearing is set for
                _____ at _____
  X      3)    The Defendant ☒ is released    ☐ will be released on the following conditions:
                Bond is set at $ _____

                ***(Check the following that apply:)***

                _____  unsecured                    _____  unsecured with 10% posted to the registry
                _____  cash or corporate            _____  additional sureties
                _____  3rd party custodian            X      as set forth in the order setting conditions of release

h.    Temporary Detention issued _____  Arraignment set for _____

i.    REMOVAL PROCEEDINGS:
      The Defendant is advised of Rule 20 and Rule 5 rights and ....
_____  1)    The Defendant waives Rule 5(c)(3)(D)(ii) and is detained pending removal to the
                _____. Detention hearing is to be held in that district.
  X      2)    The Defendant waives Rule 5 and is released on bond.  The Defendant is ordered to appear in the
                SDTX, Houston Division _____ ☐ on    December 28 at 2pm before Judge
                                                                              Sheldon
                or ☐ when notified by the prosecuting district.
_____  3)    The Defendant is ☐ detained    ☐ released on bond and requests Rule 5(c)(3) hearing.  The
                Court sets hearing for _____

j.    Other:  Waives identity hearing on the record.  Signed waiver. _____

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

United States of America

v.

(1) Edward Constantinescu

Case No: AU:22-M -00996(1)
Charging District: Southern District of
Texas, Houston Division
Charging District's Case No: 4:22-cr-612

**ORDER REQUIRING A DEFENDANT TO APPEAR IN THE DISTRICT
WHERE CHARGES ARE PENDING AND TRANSFERRING BAIL**

After a hearing in this court, the defendant is released from custody and ordered to appear in the district court where the charges are pending to answer those charges. If the time to appear in that court has not yet been set, the defendant must appear when notified to do so. Otherwise, the time and place to appear in that court are:

| Place: | US District Courthouse 515 Rusk St. Houston, TX Honorable Judge Sam Sheldon | Courtroom No.: Date and Time: 12/28/2022 at 2pm |
|---|---|---|

The clerk is ordered to transfer any bail deposited in the registry of this Court to the clerk of the court where the charges are pending.

December 13, 2022

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE

**FILED**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

DEC 1 **3** 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

United States of America

v.                                             Case Number:   AU:22-M -00996(1)

(1) Edward Constantinescu                       *Charging District's Case No.: 4:22-cr-612*

### Waiver of Rule 5 & 5.1 Hearing
(Complaint/Indictment)

I understand that I have been charged in another district,  the Southern District of Texas, Houston Division.

I have been informed of the charges and of my rights to:

(1)  retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)  an identity hearing to determine whether I am the person named in the charges;

(3)  production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)  a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)  a hearing on any motion by the government for detention;

(6)  request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

( ✓ )  an identity hearing and production of the warrant.

(   )  a preliminary hearing.

(   )   a detention hearing.

(   )  an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district. I request that any preliminary or detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

_____
(1) Edward Constantinescu, *Defendant*

_____
*Date*

_____
*Counsel for Defendant*

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

**FILED**

DEC 1 3 2022

United States of America

v.

Edward Constantinescu

*Defendant*

)
)
)
)
)

Case No.   22-M-996

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
**DEPUTY CLERK**

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)   The defendant must not violate federal, state, or local law while on release.

(2)   The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)   The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)   The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at:   U.S. Courthouse for the Southern District of Texas-Houston Division

*Place*

515 Rusk St. Houston, TX

on ___as directed 12/28/2022 2:00 pm___

*Date and Time*

If blank, defendant will be notified of next appearance.

(5)   The defendant must sign an Appearance Bond, if ordered.

53

AO 199B (Rev. 10/20) Additional Conditions of Release

## ADDITIONAL CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( [ ] ) (6) The defendant is placed in the custody of:
Person or organization _____
Address *(only if above is an organization)* _____
City and state _____   Tel. No. _____
who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____   _____
                    *Custodian*                                    *Date*

( [✓] ) (7) The defendant must:
( [✓] ) (a) submit to supervision by and report for supervision to the   U.S. Pretrial Services Office   ,
telephone number   713-250-5703   , no later than   as directed   .
( [ ] ) (b) continue or actively seek employment.
( [ ] ) (c) continue or start an education program.
( [✓] ) (d) surrender any passport to:   U.S. Pretrial Services   _____
( [✓] ) (e) not obtain a passport or other international travel document.
( [ ] ) (f) abide by the following restrictions on personal association, residence, or travel: _____
_____

( [✓] ) (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution,
including:   victims/witness/co-defendants   _____
_____

( [ ] ) (h) get medical or psychiatric treatment: _____
_____

( [ ] ) (i) return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling,
or the following purposes: _____

( [ ] ) (j) maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers
necessary.
( [ ] ) (k) not possess a firearm, destructive device, or other weapon.
( [ ] ) (l) not use alcohol ( [ ] ) at all ( [ ] ) excessively.
( [ ] ) (m) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed
medical practitioner.
( [ ] ) (n) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with
random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of
prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy
of prohibited substance screening or testing.
( [ ] ) (o) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or
supervising officer.
( [✓] ) (p) participate in one of the following location restriction programs and comply with its requirements as directed.
( [ ] ) (i)   **Curfew.** You are restricted to your residence every day ( [ ] ) from _____ to _____ , or ( [ ] ) as
directed by the pretrial services office or supervising officer; or
( [ ] ) (ii)   **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services;
medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other
activities approved in advance by the pretrial services office or supervising officer; or
( [ ] ) (iii)   **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and
court appearances or other activities specifically approved by the court; or
( [✓] ) (iv)   **Stand Alone Monitoring.** You have no residential curfew, home detention, or home incarceration restrictions. However,
you must comply with the location or travel restrictions as imposed by the court.
**Note:** Stand Alone Monitoring should be used in conjunction with global positioning system (GPS) technology.
( [✓] ) (q) submit to the following location monitoring technology and comply with its requirements as directed:

# ADDITIONAL CONDITIONS OF RELEASE

( ☐ ) (i)   Location monitoring technology as directed by the pretrial services or supervising officer; or
( ☐ ) (ii)  Voice Recognition; or
( ☐ ) (iii) Radio Frequency; or
( ☑ ) (iv) GPS.

( ☑ ) (r)  pay all or part of the cost of location monitoring based upon your ability to pay as determined by the pretrial services or supervising officer.

( ☑ ) (s)  report as soon as possible, to the pretrial services or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

( ☑ ) (t)  No posting on social media about securities and no trading in securities

AO 199C (Rev. 09/08) Advice of Penalties

Page __4__ of __4__ Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

_____
*City and State*

### Directions to the United States Marshal

(✓) The defendant is ORDERED released after processing.

(☐) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: __12/13/22__          _____
*Judicial Officer's Signature*

U.S. Magistrate Judge Dustin Howell
*Printed name and title*

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL SERVICE   U.S. ATTORNEY   U.S. MARSHAL

AO 442 (Rev. 11/11) Arrest Warrant

**FILED**

December 13, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
JF
DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern ___ District of ___ Texas

RECEIVED
UNITED STATES MARSHAL

2022 DEC -8 PM 4:13

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order

United States of America

v.

EDWARD CONSTANTINESCU

Defendant

)
)
)
)
)
)

Case No. 4:22-cr-612-001

**Austin case 1:22-MJ-996-DH**

## ARREST WARRANT

To:     Any authorized law enforcement officer

       **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    EDWARD CONSTANTINESCU,                                      ,
who is accused of an offense or violation based on the following document filed with the court:

☒ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

Ct. 1: Conspiracy To Commit Securities Fraud [18 U.S.C. § 1349]
Cts. 2-11: Securities Fraud [18 U.S.C. §§ 1348 & 2]
Ct. 12: Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity [18 U.S.C. § 1957]

Date:    December 7, 2022                                                             
                                                             *Issuing officer's signature*

City and state:     Houston, TX                                   Rebecca Becknal, Deputy Clerk
                                                               *Printed name and title*

| **Return** |
|---|
|        This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ <br> at *(city and state)* _____ . <br><br> Date: _____                                           _____ <br>                                                     *Arresting officer's signature* <br><br>                                                     _____ <br>                                                     *Printed name and title* |

3

**Sealed**

Public and unofficial staff access
to this instrument are
prohibited by court order

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RECEIVED
UNITED STATES MARSHAL

2022 DEC -8 PM 4:13

SOUTHERN DIST. S. TEX

| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO: 22 CR 612 |
| | § | **SEALED** |
| EDWARD CONSTANTINESCU | § | **Austin case 1:22-MJ-996-DH** |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## ORDER FOR ISSUANCE OF BENCH WARRANT

A    CRIMINAL INDICTMENT    has been returned against the defendant listed

below.

It is ORDERED that a warrant be issued for the arrest of said defendant. Upon arrest and

appearance, a judicial determination shall be made as to detention or release on conditions. The

United States Government recommends to the Court the following:

Defendant

EDWARD CONSTANTINESCU

☐ DETENTION

☑ RELEASED ON CONDITIONS

☐ APPEARANCE BOND IN THE
   AMOUNT OF: $

SIGNED at Houston, Texas, on December 7, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

4

# U.S. District Court [LIVE]
# Western District of Texas (Austin)
# CRIMINAL DOCKET FOR CASE #: <u>1:22−mj−00996−DH−1</u>

Case title: USA v. Constantinescu

Date Filed: 12/13/2022

Other court case number: 4:22−CR−612(1) Southern District of Texas, Houston Division

Assigned to: Judge Dustin M. Howell

**<u>Defendant (1)</u>**

**Edward Constantinescu**

| **<u>Pending Counts</u>** | **<u>Disposition</u>** |
|---|---|
| None | |

| **<u>Highest Offense Level (Opening)</u>** | |
|---|---|
| None | |

| **<u>Terminated Counts</u>** | **<u>Disposition</u>** |
|---|---|
| None | |

| **<u>Highest Offense Level (Terminated)</u>** | |
|---|---|
| None | |

| **<u>Complaints</u>** | **<u>Disposition</u>** |
|---|---|
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT MAIL FRAUD; 18:1348.F SECURITIES FRAUD; 18:1957−5800.F ENGAGING IN MONETARY TRANSACTIONS | |

**<u>Plaintiff</u>**

**USA**

represented by **G. Karthik Srinivasan**
US Attorney's Office − Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
512−370−1253
Fax: 512−916−5854
Email: karthik.srinivasan@usdoj.gov

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 12/13/2022 | 1 | | Arrest (Rule 5 – Southern District of Texas, Houston Division) of Edward Constantinescu (jf) (Entered: 12/13/2022) |
| 12/13/2022 | 2 | | Minute Entry for proceedings held before Judge Dustin M. Howell:Initial Appearance in Rule 5(c)(3)/ Rule 32.1 Proceedings as to Edward Constantinescu held on 12/13/2022 (Minute entry documents are not available electronically.) (Court Reporter FTR Gold – ERO.) (afd) (Entered: 12/13/2022) |
| 12/13/2022 | 3 | | ORDER REQUIRING A DEFENDANT TO APPEAR IN THE DISTRICTWHERE CHARGES ARE PENDING AND TRANSFERRING BAIL as to Edward Constantinescu. Signed by Judge Dustin M. Howell. (afd) (Entered: 12/13/2022) |
| 12/13/2022 | 4 | | WAIVER – Rule 5/Rule 32.1 as to Edward Constantinescu. (afd) (Entered: 12/13/2022) |
| 12/13/2022 | 5 | | ORDER Setting Conditions of Release. Signed by Judge Dustin M. Howell. (afd) (Entered: 12/13/2022) |