UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Case No. 4:22-cr-612 |
| CONSTANTINESCU, *et al.* | § § | The Honorable Andrew S. Hanen |
| Defendants. | § § | |

**United States' Response in Opposition
to Defendant Constantinescu's Motion to Dismiss Count Twenty-One**

The United States, by and through undersigned counsel, respectfully submits this Response in Opposition to Defendant Constantinescu's Motion to Dismiss Count Twenty-One of the Indictment ("Motion") (ECF No. 170). The Court should deny the Motion because the relevant statutes' text, structure, history, and interpretation demonstrate that they apply to the Defendant's charged conduct. The statutes' plain terms make clear that "*any offense* involving . . . fraud in the sale of securities . . . punishable under *any law* of the United States" is "specified unlawful activity" subject to the money laundering statutes. 18 U.S.C. §§ 1956, 1957, 1961(1)(D) (emphasis added). The Defendant's alleged securities fraud falls squarely under the plain meaning of this unambiguous text.

I.   **Background**

Defendant Constantinescu and seven alleged coconspirators are charged in the 21-count Superseding Indictment with conspiracy to commit securities fraud (18 U.S.C. § 1349) and substantive counts of securities fraud (18 U.S.C. § 1348). (ECF No. 134.) Count 21 of the Superseding Indictment also charges Constantinescu with a violation of 18 U.S.C. § 1957, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, commonly called money laundering. (*Id.* ¶¶ 122–126.) In the Motion, Defendant Constantinescu

seeks to dismiss that Count, arguing that the text of the statutes do not cover securities fraud. (ECF No. 170.) The Defendant is wrong. The statutes' text, structure, history, and treatment by courts compel the conclusion that the statutes apply to the Defendant's charged conduct.

## II. Legal Standard

An indictment is constitutionally sufficient if it (1) contains the offense elements, (2) fairly informs the defendant of the charge, and (3) enables him to plead an acquittal or conviction as a bar to future prosecutions of the same offense. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). In assessing a motion to dismiss, the Court is "required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (internal quotation and citation omitted).

## III. The Court should deny the Motion because the statutes apply to "fraud in the sale of securities" and the charged conduct fits that plain language.

### A. The statutes' text, structure, legislative history, and judicial interpretation all demonstrate that they apply to "any offense involving . . . fraud in the sale of securities," including securities fraud under Section 1348.

The Motion presents a question of statutory interpretation. But the question is not close. Every possible basis of decision—the statutes' (1) text, (2) structure, (3) history, and (4) interpretation—all compel the same answer: the statutes apply to "any offense involving . . . fraud in the sale of securities . . . punishable under any law of the United States . . . ." 18 U.S.C. § 1961(1)(D). That necessarily includes Section 1348 securities fraud and Section 1349 conspiracy to commit the same, with which the Defendant is charged. To arrive at this compelled conclusion, the inquiry begins, as it must, with the plain text of the statute. *E.g.*, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute. . . . And where the statutory language provides a clear answer, it ends there as well." (internal quotation and citation omitted)).

### 1. The statutes' plain language unambiguously cover "any offense involving . . . fraud in the sale of securities . . . punishable under any law of the United States[.]"

One violates Section 1957 when he "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from *specified unlawful activity* . . . ." 18 U.S.C. § 1957 (emphasis added). The statute gives "the term[] 'specified unlawful activity' . . . the meaning given th[at] term[] in section 1956 of this title." 18 U.S.C. § 1957(f)(3).

Section 1956 defines "specified unlawful activity" in multiple ways. Most relevant to this analysis, the statute includes in the definition, "any act or activity constituting an offense listed in section 1961(1) of this title . . . ." 18 U.S.C. § 1956(c)(7)(A). Section 1961(1) contains a list of specified unlawful activity that includes "**any offense involving** . . . **fraud in the sale of securities . . . punishable under any law of the United States** . . . ." 18 U.S.C. § 1961(1)(D) (emphasis added).[1] Thus, by the statute's plain terms, *any offense* involving fraud in the sale of securities punishable under *any law* of the United States is specified unlawful activity under Section 1957. *See Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019) ("Congress' use of the word 'any' suggests an intent to use that term expansively." (internal quotation and citation omitted)).

That plain language necessarily includes securities fraud under 18 U.S.C. § 1348 and conspiracy to commit securities fraud under 18 U.S.C. § 1349 because they are offenses that involve "fraud in the sale of securities." 18 U.S.C. § 1961(1)(D). For example, Section 1348(2) imposes liability when one "knowingly executes, or attempts to execute, a scheme or artifice– . . . to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or

---

[1] Section 1961 is part of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), Pub. L. No. 91-452, 84 Stat. 922 (1970). Section 1961 is incorporated by reference in the money laundering statutes, which were first passed in the Money Laundering Control Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207 (1986). *Compare* 18 U.S.C. §§ 1956, 1957 *with* 18 U.S.C. §§ 1961–1968.

3

property in connection with the . . . **sale of any . . . security** . . . ." 18 U.S.C. § 1348 (emphasis added). There is no sensible reading of this text in which it does not constitute an "offense involving . . . fraud in the sale of securities" by its plain terms. 18 U.S.C. § 1961(1)(D). Thus, the Court need look no further than the text of the relevant statutes to conclude that specified unlawful activity in Section 1957 includes securities fraud under Section 1348. *See, e.g.*, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020) ("This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end."); *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) ("If the words of a statute are unambiguous, th[e] first step of the interpretive inquiry is our last.").

### 2. The statutes' structure reinforces the proper reading of their plain terms.

Although the Court need look no further than the statutes' plain language, when it does, it sees that the structure of the statutes supports their plain meaning. Specifically, Section 1961(1), which contains the "fraud in the sale of securities" language, also contains a long string of expressly enumerated offenses included in the definition of specified unlawful activity. 18 U.S.C. §§ 1956(c)(7)(A), 1961(1). As the Defendant points out, this list includes various offenses like mail and wire fraud (18 U.S.C. §§ 1341, 1343), but it does not include securities fraud statutes, either Section 1348 or any other. The Defendant asks the Court to conclude from Section 1348's absence in this list that, under the *expressio unius* canon, Congress did not intend for the plain language including "any offense involving . . . fraud in the sale of securities . . . punishable under any law of the United States" to cover Section 1348. (ECF No. 170 at 5–6.) But this reading makes no sense.

The long list of crimes enumerating specified unlawful activity does not contain *any* specifically referenced securities fraud provisions. *See* 18 U.S.C. § 1961(1). Just as there is no

4

reference to Section 1348, there is no reference at all to Title 15 or any of its various securities fraud provisions, like 15 U.S.C. § 78j, or to SEC Rule 10b-5, for example. *See id.* In fact, other than the clause including "any offense" under "any law" in the broadest terms, the statute does not reference securities fraud at all. For the *expressio unius* cannon to apply sensibly, there must actually be a list of securities fraud crimes that does not include Section 1348; there is not. *See NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) ("The *expressio unius* canon applies only when circumstances support a sensible inference that the term left out must have been meant to be excluded." (internal quotation and citation omitted)). The only way, then, to apply the Defendant's reading is for the Court to conclude that the statute includes "*no* offenses" involving fraud in the sale of securities. That construction defies logic. The text of the statue means exactly what it says—it includes "**any offense** involving . . . fraud in the sale of securities . . . punishable under **any law** of the United States." *See* 18 U.S.C. § 1961(1)(D) (emphasis added); *Smith,* 139 S. Ct. at 1774.

The Court must read Section 1961(1)(D) to have effect. *See Clark v. Remeker*, 573 U.S. 122, 131 (2014). The Defendant's nonsensical argument—reading the words "*any* offense" as "*no* offense" because no securities fraud statutes are listed—effectively eliminates the entire clause from the statute. This violates the applicable cannon of statutory construction that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." *Clark*, 573 U.S. at 131 (internal quotations and citations omitted). By including "any offense involving . . . fraud in the sale of securities," but not specifically enumerating *any* statutes covering securities fraud, Congress could not possibly have intended for any and all statutes criminalizing "fraud in the sale of securities" not to be included.[2] It is far more sensible to read

---

[2] The only reference to any statute criminalizing securities fraud in any of these related statutes is in another long list of conduct included in Section 1956 also falling within the definition of "specified unlawful activity." *See* 18 U.S.C. § 1956(7)(D). That section includes 18 U.S.C. § 513, which imposes liability for counterfeit securities of states and private entities. It simply cannot be the case that Congress

5

"any offense" as "all offenses," including Section 1348. *See Smith*, 139 S. Ct. at 1774. Congress' use of broad language demonstrates its intent of broad applicability. *Id.*

The Defendant's strained interpretation implicating Section 1962's unrelated reference to *purchases* of securities does not change that fact. (*See* ECF No. 170 at 8–9.) Section 1962 is wholly irrelevant to this analysis, as it is not cited or referenced in any of the operative statutes. Nor does Section 1962 anywhere mention anything about the *sale* of securities. Rather, it discusses *purchases* of securities and expressly limits its application to "this subsection." 18 U.S.C. § 1962(a). It strains credulity to conclude that reference shows that a different subsection concerned with sales of securities, Section 1961(1)(D), "was clearly directed at *issuers* of fraudulent securities" rather than "any offense involving . . . fraud in the sale of securities." (*See* ECF No. 170 at 9.) The term "issuers" does not appear in Section 1961(1)(D), and the Court should not graft the Defendant's self-serving language upon the plain terms of the statute. *See, e.g.*, *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020) ("[T]his Court may not narrow a provision's reach by inserting words Congress chose to omit."); *Rotkiske*, 140 S. Ct. at 360–61 ("It is a fundamental

---

used broad language encompassing any offense involving fraud in the sale of securities under any law, but intended that language to apply only to this single section in a different statute and no other securities fraud statutes. Such an interpretation effectively reads out the operative language of Section 1961(1)(D), which the Court must not do. *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 574 (1995) ("[T]his Court will avoid a reading which renders some words altogether redundant."). If Congress intended Section 513 to be the only securities fraud crime included in the definition of specified unlawful activity, it would not have included the Section 1961(1)(D) language at all because the Section 1956(7)(D) language would have sufficed. *See id.*

Nor is it sensible to conclude that Congress, in using the words "any offense" under "any law," could have meant only those securities fraud offenses that could be prosecuted as, for example, wire fraud rather than under any of the securities fraud statutes. If that were the case, Congress need not include the securities fraud language in Section 1961(1)(D), because the language including wire fraud would suffice. Such an interpretation also improperly reads out the operative Section 1961(1)(D) language and should be rejected. *See Gustafson*, 513 U.S. at 574.

6

principle of statutory interpretation that absent provisions cannot be supplied by the courts." (internal quotation and citation omitted)).

*Even if there was* some evidence that Congress' intent was for Section 1961(1)(D)'s provision to apply only to issuers (there is not), the Court *still* should interpret the plain terms as written. *See, e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) ("[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."); *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 212 (1998) ("As we have said before, the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." (internal quotations and citation omitted)).

The statute means what it says, and its structure further demonstrates that conclusion. "[A]ny offense involving . . . fraud in the sale of securities," including under Section 1348, is specified unlawful activity subject to Section 1957. 18 U.S.C. § 1961(1)(D). The Court need look no further. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. Where, as here, that examination yields a clear answer, judges must stop." (internal citation omitted)).

### 3. The legislative history further supports the proper reading of the statutes' plain text and structure.

Since the inclusion of Section 1348 in the prosecutor's toolkit for combatting securities fraud with the passage of the Sarbanes–Oxley Act of 2002, Pub. L. No. 107–204, 116 Stat. 745 (2002), Congress has amended Section 1961 numerous times. *See* 18 U.S.C. § 1961 (prior versions in various years). None of those amendments have altered the statute's expansive text including

7

"any offense involving . . . fraud in the sale of securities," which has remained the same since the RICO Act passed in 1970. 18 U.S.C. § 1961(1)(D) (originally enacted in Pub. L. No. 91-452, 84 Stat. 922 (1970)).

The Defendant points to Congress's decision in 2004 to reject a contemplated amendment of 1961(1)(D)'s language as evidence for the "intentional exclusion of the type of securities fraud contemplated by Section 1348." (ECF No. 170 at 7.) But an equally plausible reading is that Congress did not alter the text because there are multiple different securities fraud laws with multiple different linguistic formulations. Choosing to add language present in some formulations, like "in connection with the purchase or sale," (*see, e.g.*, 15 U.S.C. § 78j), but absent in others (*see* § 1348(1))[3] could render the law's application narrower than intended. Or perhaps Congress was concerned about confusing Section 1961(1)'s securities fraud prohibition with Section 1962(a)'s express disclaiming of criminal liability for certain *purchases* of securities. *See* 18 U.S.C. § 1962(a). Avoiding the term "purchase" in Section 1961(1) helps avoid this potential confusion.

Whichever speculation is most compelling is irrelevant, however, because it is unclear why the amendment was rejected. That lack of clarity renders the rejected amendment's influence negligible in this interpretive project. *See, e.g.*, *Bostock*, 140 S. Ct. at 1737 ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit."); *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011) ("Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it.").

---

[3] Section 1348(1) imposes liability for "a scheme or artifice . . . to defraud any person in connection with . . . any security" and nowhere mentions purchases *or* sales. 18 U.S.C. § 1348(1).

8

Other legislative history bearing directly on these statutes supports reading the text as broadly as its plain terms demand. For example, in the Fraud Enforcement and Recovery Act of 2009, Pub. L. 111-21, 123 Stat. 1617 (2009), Congress made amendments expanding the scope of both Section 1348 and the money laundering statutes. In Section 1348, Congress added provisions encompassing fraud regarding certain commodity derivatives. *See* 155 Cong. Rec. S4531-01 (daily ed. Apr. 22, 2009). With respect to the money laundering statutes, the Act made several amendments to Sections 1956 and 1957, including defining the term "proceeds" and adding crimes to the definition of "specified unlawful activity." *See id.* The Act also authorized $165 million in appropriations to bolster the federal government's ability to investigate and prosecute financial crimes, expressly including "securities fraud," in the wake of the financial crisis. *See id.* at S4531, S4536.

In passing the Act, multiple Senators commented on the Act's expansion of these statutes as tools to combat fraud, never stating or even suggesting that the money laundering statutes did not cover Section 1348 securities fraud. Rather, their expansive commentary on the Act and its amendments to these statutes further indicates the money laundering statutes include Section 1348. For example, in commenting on the Act, one Senator referenced the need to grow the ranks of fraud prosecutors in order to combat the "scourge of fraud" that emerged during the financial crisis. That "scourge" included "financial frauds" that "have robbed people of their savings, their retirement accounts, their college funds for their children," as well as "stock scams" and Bernard Madoff's securities fraud. 155 Cong. Rec. S4774-02, S4775–76 (daily ed. Apr. 28, 2009). The Senator then stated that the Act "ma[de] a number of straightforward, important improvements to fraud and money laundering statutes to strengthen prosecutors' ability to combat this growing wave of fraud." *Id.* at S4775–76.

Another Senator commented directly on the amendments to both Sections 1348 and 1956 in the same breath, stating that the Act:

> would **expand securities antifraud provisions** to cover fraud involving options and futures contracts for commodities. The act would **strengthen our antimony laundering regime**. The current money laundering statute outlaws financial transactions using the proceeds from **certain listed unlawful activities**. This act would add tax evasion to that list. . . . Additionally, recent court decisions have misdefined the term "proceeds" from the money laundering statute to mean only the net receipts from unlawful activities. **By defining that term so narrowly, these court decisions have reduced the efficacy of the statute: preventing prosecutions for numerous crimes.** This act will **fix these decisions** and explicitly define "proceeds" to include not only net but gross receipts from unlawful activities. This small modification will **restore the money laundering statute to its rightful place as a critical tool in the battles against fraud and illicit activity.**

*Id.* at S4776 (emphasis added).[4] This passage alone leaves the reader with the impression that the Senator would construe a court opinion defining "fraud in the sale of securities" as narrowly as the Defendant suggests to be an error meriting correction. It defies common sense for a senator to fail to make clear, if it was indeed the case, that the securities fraud statute he just discussed has no application whatsoever to the money laundering statute the Act returns to its rightfully broad scope as a "critical tool in the battles against fraud and illicit activity." *See id.* That is particularly so when the Act also appropriated $165 million to bolster the prosecution of financial crimes, expressly including securities fraud; presumably, the Senator would not want those funds to be used for specifically unintended purposes.

---

[4] The fact that this Act added tax evasion to the offenses specifically listed in Section 1956 does not suggest that this Congress—speaking in bold terms about the "scourge" of financial fraud and the necessity of empowering prosecutors to combat it—intended the money laundering statutes to be unable to reach Section 1348 securities fraud. 155 Cong. Rec. S4774-02, S4775–76

Senators on other occasions also mentioned the amendments to Sections 1348 and the money laundering statutes in the same breath, in similar broad terms, without comment on their purported lack of relationship. *See, e.g.*, 155 Cong. Rec. S4408-02, S4410–12 (daily ed. Apr. 20, 2009).

At best for the Defendant, the legislative history is ambivalent, as it often is. *See Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 568 (2005) ("Judicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in 'looking over a crowd and picking out your friends.'" (internal citation omitted)). The Court need not (indeed, should not) look to it in the face of the unambiguous text. *See, e.g.*, *Bostock*, 140 S. Ct. at 1737. Nonetheless, the legislative history buttresses the common sense reading of the plain text as covering "any offense involving . . . fraud in the sale of securities," including under Section 1348. 18 U.S.C. § 1961(1)(D).

### 4. Courts have routinely concluded that "specified unlawful activity" includes "fraud in the sale of securities."

Courts have uniformly adopted a reading of the statutes that aligns with their text, structure, and history. It does not seem that a single court has adopted the Defendant's proposed reading. Rather, courts appear repeatedly to conclude that Section 1961(1)'s language means what it says, covering fraud in the sale of securities under the various securities fraud statutes not included expressly in Section 1961(1).

The United States Court of Appeals for the Fifth Circuit has plainly stated on numerous occasions that securities fraud provisions not listed in Section 1961(1) are predicate acts for RICO violations, which is another statutory use of the same list of crimes in Section 1961(1). *See, e.g.*, *Laird v. Integrated Res., Inc.*, 897 F.2d 826, 838 (5th Cir. 1990) ("Rule 10(b)-5 violations are predicate acts under RICO."); *Smith v. Ayres*, 845 F.2d 1360, 1366 n.19 (5th Cir. 1988) ("A Rule 10b-5 violation can constitute a predicate act under RICO. *See* 18 U.S.C. § 1961(1) ('racketeering activity' includes 'fraud in the sale of securities')."); *Corwin v. Marney Orton Invs.*, 788 F.2d 1063, 1069 (5th Cir. 1986) (noting violations of Rule 10b-5 constitute RICO predicate acts); *James v. Meinke*, 778 F.2d 200, 204 (5th Cir. 1985) (finding securities fraud under 15 U.S.C. § 78j(b)

11

and Rule 10b-5 premised on material misstatements and omissions in connection with sale of stock constituted "any offense involving . . . fraud in the sale of securities" (quoting § 1961(1)(D))). Other courts agree. *See, e.g.*, *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 786 n.7 (9th Cir. 1996) ("Securities fraud violations under 10b-5 . . . are predicate acts for RICO."); *United States v. Blinder*, 10 F.3d 1468, 1472 (9th Cir. 1993) (finding Title 15 securities fraud charges could constitute RICO predicates as "fraud in the sale of securities" under § 1961(1)).

*United States v. Deeb* presents the most significant case analysis of this issue. 175 F.3d 1163 (9th Cir. 1999). There, the United States Court of Appeals for the Ninth Circuit held that Section 1956's "specified unlawful activity" as defined by Section 1961(1) "is specifically defined to include 'fraud in the sale of securities.'" 175 F.3d at 1167 (quoting 18 U.S.C. § 1961(1)(D)). The court noted that the plain terms of the statute excluded fraud only in the purchase of securities, not their sale, but found the defendants' conduct to include fraud in the sale of securities. *Id.* Thus, the defendants' convictions for securities fraud under 15 U.S.C. § 78j(b)—a provision noticeably absent from Section 1961(1)—were "specified unlawful activity" sufficient to support the money laundering conviction. *See id.* at 1168–69.

Myriad other courts have (seemingly uniformly) held that Section 1956's "specified unlawful activity" includes securities fraud charged under statutes that do not appear in either Section 1956's or Section 1961(1)'s lists of enumerated crimes. *See, e.g.*, *United States v. Simmons*, 737 F.3d 319, 322 (4th Cir. 2013) (finding Section 1956 "specified unlawful activity" includes securities fraud charged under 15 U.S.C. § 78j(b)); *United States v. Johnson*, 440 F.3d 1286, 1289–90 (11th Cir. 2006) (finding securities fraud charged under 15 U.S.C. § 78j(b) a predicate for Section 1957 where the defendant "knowingly engaged in securities fraud (*i.e.*, a specified unlawful activity)"); *United States v. Poulsen*, 568 F. Supp. 2d 885, 912–13 (S.D. Ohio

2008) (finding Section 1956 "specified unlawful activity" includes securities fraud) *aff'd in part, rev'd in part on other grounds sub nom. United States v. Ayers*, 386 F. App'x 558 (6th Cir. 2010); *United States v. All Funds on Deposit at Citigroup Smith Barney Acct. No. 600-00338 held in the Name of Kobi Alexander*, No. 06-cr-3730, 2008 WL 3049895, at *3 (E.D.N.Y. Aug. 1, 2008) (finding that the government "properly alleg[ed] fraud in the sale of securities, a specified unlawful activity within the meaning of 18 U.S.C. § 1961(1)" [5]).

Even the lower court in a case cited by the Defendant appears to have concluded that Section 1348 securities fraud was a proper predicate for a money laundering count under Section 1957. The Defendant claims that "[a]fter diligent search we have been unable to find a section 1957 conviction predicated on section 1348," and cited to two Eleventh Circuit cases charging, among other counts, securities fraud (§ 1348), wire fraud (§ 1343), and money laundering (§ 1957). (ECF No. 170 at 3 n.2 (citing *United States v. Schneider*, 853 F. App'x 463 (11th Cir. 2021); *United States v. Stein*, 964 F.3d 1313 (11th Cir. 2020)).)

But the Defendant's diligent search fell short. The district court in a case cited by the Defendant, *United States v. Stein*, relied on the conduct constituting the three Section 1348 securities fraud charges as the bases for the three Section 1957 money laundering counts. *See United States v. Stein*, No. 11-80205-CR, 2012 WL 4089896, at *6–7 (S.D. Fla. Sept. 13, 2012) *report and recommendation adopted* No. 11-CR-80205, 2012 WL 4089891 (S.D. Fla. Sept. 17, 2012). There, the charges were so close in time that the defendant argued the securities fraud charges "impermissibly merge[d]" with the money laundering charges, because the securities fraud

---

[5] Examination of the operative complaint demonstrates that the government alleged securities fraud under both Title 15 and Section 1348. *See* Second Amended Complaint, *United States v. All Funds on Deposit at Citigroup Smith Barney Acct. No. 600-00338 held in the name of Kobi Alexander*, No. 06-cv-3730 (E.D.N.Y. July 8, 2008) (ECF No. 128-1).

13

offenses were not completed by the time the money laundering occurred. *See id.* at \*6. The court rejected that argument, writing:

> Following the sale of those shares, the funds obtained from those sales were deposited into the accounts listed as the origin accounts in the money laundering counts. It was only after these violations of 18 U.S.C. § 1348 had occurred that the wire transfers alleged in the money laundering counts moved the money . . . .

*Id.* at \*6. It is true that the defendant in that case was also charged with mail and wire fraud. But the district court's opinion makes clear that the Section 1348 charges, not the other charges, formed the basis for Section 1957 liability.[6]

Like the money laundering statutes, the forfeiture statutes also look to Section 1961(1) for the same list of specified unlawful activity suitable for forfeiture. Courts interpreting these statutes also routinely hold that Section 1961(1)'s "fraud in the sale of securities" includes securities fraud charged under various statutes not listed in Section 1961. *See, e.g.*, *United States v. $8,000,000.00 USD in Funds*, No. 16-cv-06228, 2017 WL 11636205, at \*4 (C.D. Cal. Feb. 2, 2017) (finding Section 1348 securities fraud and Section 1349 conspiracy to commit the same constituted "specified unlawful activity" under Sections 1956 and 1961); *United States v. Real Property Located at 11211 E. Arabian Park Dr., Scottsdale, Arizona*, 05-cv-768, 2009 WL 10677611, at \*2, 5 (D. Ariz. Aug. 6, 2009) (finding that "[s]ecurities fraud is one of the listed offenses in 18 U.S.C. § 1961(1)" and that the defendant's argument "that securities fraud does not constitute 'specified unlawful activity' . . . . cannot succeed . . . .").

The right result is clear. The statutes' plain text, structure, history, and uniform interpretation by courts show that "specified unlawful activity" includes "fraud in the sale of

---

[6] Review of the indictment in that case further supports this conclusion. The indictment shows that the dates of the three charged counts of securities fraud are either on the same day, or the day before, the dates for the three money laundering counts, whereas the dates of the mail and wire fraud counts are much more remote. *See* Indictment ¶¶ 18–24, *Stein*, 9:11-cr-80205 (S.D. Fla. Dec. 13, 2011) (ECF No. 3).

securities" under whichever statute it is charged, including Section 1348. 18 U.S.C. §§ 1956, 1961(1)(D).

### B. The Defendant's charged conduct involves "fraud in the sale of securities."

Having determined that the statute squarely covers fraud in the sale of securities under Section 1348, the remaining question is whether the Defendant's conduct, as charged, in fact involved fraud in the sale of securities. The answer is unequivocally yes. Taking the Superseding Indictment's allegations as true as the Court must on a motion to dismiss, there is no question the Defendant's conduct involved fraud in the sale of securities. *Kay*, 359 F.3d at 742.

The Defendant's charged conduct absolutely constitutes fraud. *See, e.g.*, 18 U.S.C. § 1348; *United States v. Steven Gallagher*, No. 1:22-cr-122 (S.D.N.Y. July 6, 2022) (ECF Nos. 1, 11, 28) (securities fraud guilty plea for social media-based pump and dump); *United States v. Enger*, 427 F.3d 840, 854 (10th Cir. 2005) (affirming securities fraud conviction where "[t]he record show[ed] that at the same time as Wenger had been advising readers to buy PanWorld stock, Wenger himself was selling his shares"); *SEC v. Huttoe*, 96-cv-2543, 1998 WL 34078092, at *7 (D.D.C. Sept. 14, 1998) ("[The] practice of selling when . . . recommending buying has long been understood to operate as a fraud or deceit upon investors."); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1265–66 (9th Cir. 1979) (finding that financial columnist's failure to reveal to readers his practice of "scalping" the stocks of companies he wrote about was a material nondisclosure creating liability).

As a factual matter, that fraud involved the sale of securities. "Sale" should be understood in its ordinary meaning. *See, e.g., Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 769 (2019) ("[T]he legislative purpose is expressed by the ordinary meaning of the words used." (internal quotation and citation omitted)). That ordinary meaning encompasses the Defendant's conduct of selling his securities on public exchanges. *See id.*

Fraud in the sale of securities is inherent in a pump and dump scheme's very nature. The Defendant and his coconspirators are not charged only with "pumping," but also "dumping," or selling securities. The "pump" included the defendants making false and misleading representations to the market. They did so hoping to create inflated prices and trading volumes of the securities they "pumped." The "dump" is the "sale" of their shares, which they hoped would be at inflated prices created by the pump. Thus, their pump and dump scheme necessarily constituted fraud in the sale of securities. (*See, e.g.*, ECF No. 134 ¶ 1.)

Beyond the nature of a pump and dump, courts have found that otherwise legal open-market securities sales can involve fraud in the sale of securities under § 1961(1)(D). For example, in *Laird v. Integrated Resources, Inc.*, the Fifth Circuit plainly stated that "Churning, a type of rule 10(b)-5 violation, is also a predicate act under RICO." 897 F.2d at 838. The Court explained that "Churning occurs when a securities broker enters into transactions and manages a client's account for the purpose of generating commissions and in disregard of the clients interest" and involves "trading in [the client's] account [that] was excessive . . . ." *Id.* (internal quotation and citation omitted). That trading entailed otherwise legal open-market securities sales to accomplish the fraud, just like the Defendant's alleged scheme did. *See id.*

The Defendant cites to numerous cases in which securities offerings, rather than securities sales on an exchange, have been held to constitute fraud in the sale of securities. (*See* ECF No. 170 at 9.) The United States agrees that the statute also applies to those cases by its plain terms. But those cases operate as a subset to which the definition is applicable, not a limitation on the plain words of the definition. They certainly constitute *any* offense involving fraud in the sale of securities, but they are not the *only* offenses involving such fraud. The Defendant's charged conduct, and conduct in cases like it, also fall under the definition. *See, e.g.*, *Salinas v. United*

*States*, 522 U.S. 52, 60 (1997) ("A statute can be unambiguous without addressing every interpretive theory offered by a party. It need only be plain to anyone reading the Act that the statute encompasses the conduct at issue."). Further, the statute says "fraud in the sale of securities," not "sale of fraudulent securities," rendering unpersuasive the Defendant's attempted sophistic sleight of hand. (*See* ECF No. 170 at 13.) Thus, the facts in the Superseding Indictment compel the conclusion that the Defendant's alleged conduct constituted "fraud in the sale of securities." *See* 18 U.S.C. § 1961(1)(D).

### C. The Superseding Indictment provides proper notice of property subject to forfeiture.

Finally, to clarify the Defendant's misconception about forfeiture so there is no misunderstanding: in the Superseding Indictment, the United States has not "incorrectly identified properties belonging to other defendants as being owned by Constantinescu." (ECF No. 170 at 5.)

The properties listed in the distinct "Property Subject to Forfeiture" heading refer back to both prior sections providing notice of forfeiture, not solely the second section with Defendant Constantinescu alone. (ECF No. 134 at 40–43.) Indeed, Defendant Constantinescu appears in both sections, but none of his properties are listed solely in the first, demonstrating the Defendant's reading makes little sense. (*See id.*) The real property listed may be subject to forfeiture under the statutes cited in each section and, thus, is noticed for each respective section. (*See id.*); *see also* 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1); 28 U.S.C. § 2461. This section was styled by the forfeiture experts in this District, consistent with their routine practice. There was no "rush to include this dubious count." (*See* ECF No. 170 at 5.) As this brief shows, the count is far from dubious.

Presumably, the relevant defendants are aware of the properties to which they each hold title and recognize those as listed. Indeed, Defendant Rybarczyk's counsel indicated they

understand the forfeiture allegations by noting in a recent filing that the allegations include his "substantial real property holdings in this district." (ECF No. 160 at 8.)

## Conclusion

The text, structure, history, and interpretation of the relevant statutes lead to the inescapable conclusion that they mean what they say: they apply to "any offense involving . . . fraud in the sale of securities . . . punishable under any law of the United States." The Defendant's charged conduct unmistakably falls under this plain language. Accordingly, the Court should deny the Defendant's motion to dismiss Count Twenty-One.

Dated: March 2, 2023

Respectfully submitted,

GLENN S. LEON
Chief, Fraud Section
Criminal Division, Department of Justice

By:  /s/ John J. Liolos
Scott Armstrong, Assistant Chief
John J. Liolos, Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Ave. NW
Washington, DC 20005
Tel.: (202) 768-2246

ALMDAR HAMDANI
United States Attorney
Southern District of Texas

By: */s/ Thomas Carter*
Thomas H. Carter
Assistant United States Attorney
State Bar No.: TX24048387
1000 Louisiana Street, 25th Floor
Houston, Texas 77002
Tel.: (713) 567-9470

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2023, I will cause the foregoing motion to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section