IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**EDWARD CONSTANTINESCU,**<br>**PERRY "PJ" MATLOCK,**<br>**JOHN RYBARCZYK,**<br>**GARY DEEL,**<br>**STEFAN HRVATIN,**<br>**TOM COOPERMAN,**<br>**MITCHELL HENNESSEY,**<br>**DANIEL KNIGHT.** | No. 4:22-CR-00612-S |

**DEFENDANT EDWARD CONSTANTINESCU'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS COUNT TWENTY-ONE OF THE INDICTMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

1. **Section 1348 was intentionally excluded from the definition of "specified unlawful activity" required to form the predicate for a section 1957 money laundering change** .... 2

    A. *The text of section 1961(1)(D) does not align with the language of the securities fraud statutes and its legislative history demonstrates that exclusion of the phrase "purchase or sale" was intentional* ................................................................................................. 3

    B. *Section 1961(1)'s structure further demonstrates that section 1348 was intentionally omitted, especially in light of section 1348's exclusion from its list of Title 18 offenses and Chapter 63 fraud offenses* .............................................................................. 4

    C. *Interpretation of section 1961(1) makes clear that the phrase was designed not to cover all securities fraud offenses, but instead to target specific conduct—namely, fraud in the sale of securities by issuers, their agents, and related parties acting on their behalf* ........ 5

2. **The issue before this Court is a clear matter of first impression in the Fifth Circuit** ....... 7

CONCLUSION ..................................................................................................................... 9

# **TABLE OF AUTHORITIES**

*United States v. Deeb*,
    175 F.3d 1163 (9th Cir. 1999) .............................................................................................. 1, 3

*United States v. Vampire Nation,*
    451 F.3d 189 (3d Cir. 2006) ........................................................................................................ 2

*Barnhart v. Peabody Coal Co*,
    537 U.S. 149 S.Ct. 748 L.Ed.2d 653 (2003) ............................................................................... 4

*Holcombe v. United States*,
    388 F. Supp. 3d 777 (W.D. Tex. 2019) ....................................................................................... 4

*United States v. Johnson,*
    440 F.3d 1286 (11th Cir. 2006) ................................................................................................... 6

*United States v. Ayers*,
    386 F. App'x 558 (6th Cir. 2010) ................................................................................................ 6

*United States v. Poulsen*,
    568 F. Supp. 2d 885 (S.D. Ohio 2008) ........................................................................................ 6

*United States v. Simmons,*
737 F.3d 319 (4th Cir. 2013) ........................................................................................................ 6

*United States v. All Funds on Deposit at Citigroup Smith Barney Acct. No. 600-00338 held in the Name of Kobi Alexander* No. 06-cr-3730,
    2008 WL 3049895 (E.D.N.Y. Aug. 1, 2008) .............................................................................. 6

*Laird v. Integrated Res., Inc*,
    897 F.2d 826 (5th Cir. 1990) ....................................................................................................... 6

*Corwin v. Marney Orton Invs*,
    778 F.2d 200, 202 (5th Cir. 1985) ............................................................................................... 7

*Smith v. Ayres*,
    845 F.2d 1360 (5th Cir. 1988) ..................................................................................................... 7

*United States v. Stein*,
    No. 11-80205-CR, 2012 WL 4089896, (S.D. Fla. Sept. 13, 2012) *report and recommendation adopted* No. 11-CR-80205, 2012 WL 4089891 (S.D. Fla. Sept. 17, 2012) .................................... 8

*United States v. Schneider,*
    853 F. App'x 463 (11th Cir. 2020) .............................................................................................. 8

*United States v. Stein*,
   846 F.3d 1135 (11th Cir. 2017) .......................................................................................... 9

**Statutes and Rules:**

18 U.S.C. § 1348 ........................................................................................................... passim

18 U.S.C. § 1961 ........................................................................................................... passim

18 U.S.C. § 1957 ........................................................................................................... passim

15 U.S.C. § 78j ................................................................................................................ 1, 3

18 U.S.C. § 1956 ............................................................................................................. 2, 6

18 U.S.C. § 1962 .................................................................................................................. 7

**INTRODUCTION**

Edward Constantinescu respectfully submits his Reply to the government's Response to his Motion to Dismiss Count Twenty-One of the Indictment. (ECF 190).

The government asks this Court to: (1) ignore the fact that section 1348 securities fraud is omitted from the definition of "specified unlawful activity" and (2) give section 1961(1)'s phrase "fraud in the sale of securities" a far broader meaning "than the words can bear."[1] Specifically, the government asks this Court not only to assume that section 1961(1)'s exclusion of "*any* specifically referenced securities fraud provisions" (ECF 190 at 4) must mean that *all* securities fraud statutory offenses are automatically covered by the language "fraud in the sale of securities," but also to read that phrase to include conduct "in connection with the purchase or sale of any . . . security." *See* 18 U.S.C. § 1961(1)(D); 18 U.S.C. § 1348.

The government's theory leaves many questions unanswered: (1) Why was section 1348 excluded from section 1961(1)(B), which lists over ninety Title 18 offenses and four of the six Chapter 63 fraud offenses?, (2) Why does section 1961(1) not list *any* securities fraud statutes?, and relatedly, (3) Why does the statute use the limiting language "fraud in the sale of securities" as opposed to "in connection with the purchase or sale of any security?"

The statute's text, structure, history, and interpretation answer these questions. Section 1961(1)'s phrase "fraud in the sale of securities" was intentionally limited to a specific kind of conduct RICO was designed to target—namely, fraud in the sale of securities *by issuers, their*

---

[1] *See United States v. Deeb*, 175 F.3d 1163, 1167 (9th Cir. 1999) ("By clear and unambiguous language, the statute's coverage is limited to 'fraud in the sale of securities.' If Congress had intended to include fraud in the purchase of securities in RICO's definition of 'racketeering activity,' it would only have needed to insert the words 'or purchase' after 'sale' as it did in 15 U.S.C. § 78j. It chose not to do so, and *we will not punish the appellants in this case by torturing the explicit terms of the RICO statute to mean something more than the words can bear*.") (emphasis added)

*agents, and related parties acting on their behalf.* The Indictment contains no such allegations against Mr. Constantinescu.

1. **Section 1348 was intentionally excluded from the definition of "specified unlawful activity" required to form the predicate for a section 1957 money laundering charge.**

As a preliminary matter, we know that the legislature, in drafting the money laundering statutes, contemplated individual securities offenses because it specifically included one in section 1956. *See* 18 U.S.C. § 1956(c)(7)(D) (including section 513 as "specified unlawful activity," which "imposes liability for counterfeit securities of states and private entities." *See* (ECF 190 at 5, n.2)).[2]

With respect to RICO's definition of "racketeering activity," the government's position hinges on its proposed reading of section 1961(D) to include all offenses involving "fraud in the sale of securities." (ECF 190 at 2). Its assumption that the legislature meant for that phrase to cover every statutory securities fraud offense is incorrect for multiple reasons: (1) its text does not track the language of the securities fraud statutes, (2) its legislative history illustrates that inclusion of the "purchase or sale" language was contemplated, but rejected as an amendment to the statute, (3) section 1961's structure demonstrates section 1348 was intentionally omitted, and (4) through interpretation, the cases applying section 1961(1)'s definition of "racketeering activity" in the securities context always feature fraud in the sale of securities by issuers, their agents, and related parties acting on their behalf, demonstrating that the phrase was designed to target not specific offenses, but specific conduct.[3]

---

[2] Section 513 is not included in section 1961(1)'s list of Title 18 offenses, but still meets the definition of "specified unlawful activity" to form the predicate for a section 1957 violation. *See United States v. Vampire Nation*, 451 F.3d 189, 194, 200, 209 (3d Cir. 2006) (affirming forfeiture judgment predicated on mail fraud and section 1957 money laundering where defendant was found guilty of three counts of mail fraud (section 1341) and one count of uttering and possessing counterfeit and forged securities (section 513)).

[3] Still, even if conduct involving fraud in the sale of securities by an issuer may be present in a section 1348 case to fit within the interpretation of section 1961(1), no Court in the Fifth Circuit has concluded so thus far and that factual scenario is not present here.

2

> A. *The text of section 1961(1)(D) does not align with the language of the securities fraud statutes and its legislative history demonstrates that exclusion of the phrase "purchase or sale" was intentional.*

The government repeatedly emphasizes its understanding that "any offense involving . . . fraud in the sale of securities . . . punishable under any law of the United States . . ." meets the definition of "racketeering activity" under section 1961(1)(D).[4] But no part of section 1961(1) uses the broader language present in the securities fraud statute at issue: "in connection with" or "in connection with the purchase or sale of any security." *See* 18 U.S.C. § 1348; *see also* 15 U.S.C. § 78j, Rule 10b-5 ("in connection with the purchase or sale of a security").

The Ninth Circuit recognized this in *Deeb v. United States*, concluding:

> By clear and unambiguous language, the statute's coverage is limited to "fraud in the sale of securities." If Congress had intended to include fraud in the purchase of securities in RICO's definition of "racketeering activity," it would only have needed to insert the words "or purchase" after "sale" as it did in 15 U.S.C. § 78j. It chose not to do so . . . .

175 F.3d 1163, 1167 (9th Cir. 1999).

Five years after *Deeb*, and two years after section 1348's enactment, Congress was presented with the opportunity to insert the language "fraud in the purchase or sale of securities" into section 1961(1)(D)'s language.[5] Indeed, the government concedes that interpreting Congress's rejection of that contemplated amendment as evidence of its intentional exclusion of certain types of securities fraud is a "plausible reading." (ECF 190 at 8). But, "equally plausible," the government asserts, is that the legislature wanted to cover "securities fraud laws with multiple different linguistic formulations." Of course, section 1348(2), 18 U.S.C. § 78j, and Rule 10b-5 all

---

[4] It bears mentioning that there is a viable argument that section 1961(1)(D)'s use of the language "any offense involving" is a modifier only of its immediate subsequent language regarding "fraud connected with a case under title 11," and that the phrase "fraud in the sale of securities" stands on its own, although the Court need not reach that issue here.

[5] 150 Cong. Rec. S9959-01, 150 Cong. Rec. S9959-01, S9977, 2004 WL 2186117.

feature some iteration of the language "in connection with" or "in connection with the purchase or sale of any security." The government's suggestion that Congress may have been worried about unintentionally omitted securities fraud laws with "different linguistic formulations" is unconvincing, especially where its only example is section 1348(1), which its admits does not mention purchase *or* sales. (ECF 190 at 8, n.3). In fact, it makes no sense that the legislature would have selected the narrow, targeted phrase "fraud in the sale of securities" as a way of capturing all securities fraud offenses rather than the broader "in connection with" language that appears throughout the securities laws, rules, and regulations.

Simply put, the common language of the securities fraud statutes is well-known to the legislature, was proposed but rejected, and, thus, was evidently intentionally omitted from section 1961(1)'s definition of "racketeering activity."

> B. *Section 1961(1)'s structure further demonstrates that section 1348 was intentionally omitted, especially in light of section 1348's exclusion from its list of Title 18 offenses and Chapter 63 fraud offenses.*

The government suggests that the *expressio unius est exclusion alterius* canon of construction cannot apply because section 1961(1) does not list "*any* specifically referenced securities fraud provisions." (ECF 190 at 4–5). It incorrectly claims that, for the canon to apply, "there must actually be a list of securities fraud crimes that does not include Section 1348 . . . ." (ECF 190 at 5).

But section 1961(1) does include a list of statutes that are "members of an associated group or series," which section 1348 would fit squarely within. *See Holcombe v. United States*, 388 F. Supp. 3d 777, 797 (W.D. Tex. 2019) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003)) (internal quotations omitted). As if subsection (B)'s exclusive list of *over ninety* Title 18 offenses was not an obvious enough "group or series" of

associated statutes which 18 U.S.C. § 1348 fits squarely within, the same subsection lists *four of the six* fraud offenses included in Chapter 63. 18 U.S.C. § 1961(1)(B). So, section 1961(1)'s definition of racketeering activity specifically includes mail fraud (section 1341), wire fraud (section 1343), financial institution fraud (section 1344), and fraud in foreign labor contracting (section 1351)—but *omits* section 1347 health care fraud and section 1348 securities fraud.

From its inception, section 1961(1) has included mail fraud, wire fraud, and financial institution fraud. Pub. L. 103-394, Title III, § 312(b), Oct. 22, 1994, 108 Stat. 4140. It has been amended numerous time since the enactment of section 1348 in 2002. Notably, section 1351 concerning fraud in foreign labor contracting was added to the list in 2013, Pub. L. 113-4, Title XII, § 1211(a), Mar. 7, 2013, 127 Stat. 142, but section 1348 has remained absent. It defies logic that the legislature, when amending section 1961(1)(B) to include an additional Chapter 63 fraud offense in 2013, shrugged off section 1348, assuming its entirety was covered under subsection (D)'s reference to "fraud in the sale of securities"—*especially because section 1348(1) makes no reference to the sale of securities*. 18 U.S.C. § 1348(1). The only plausible inference is that the legislature considered including section 1348 in its list of Title 18 and Chapter 63 fraud offenses, but intentionally chose not to.

> C. *Interpretation of section 1961(1) makes clear that the phrase was designed not to cover all securities fraud offenses, but instead to target specific conduct—namely, fraud in the sale of securities by issuers, their agents, and related parties acting on their behalf.*

Juxtaposed with the government's assertion that there is no evidence the Congress meant for section 1961(1)(D) to apply only to issuers, (ECF 190 at 7), is the fact that the cases cited by the government in its opposition were premised on a factual situation where the defendant was the issuer, its agent, or a related party acting on behalf of the issuer.

5

For its proposition that "specified unlawful activity includes securities fraud charged under statutes that do not appear in either Section 1956's or Section 1961(1)'s lists of enumerated crimes," the government cites to several cases from other jurisdictions, (ECF 190 at 12–13)—each featuring charges tied to the defendant's connection to the company issuing securities. To illustrate:

i. In *United States v. Johnson*, the defendant raised proceeds from "bogus stock offerings" in a company for which he served as president, majority shareholder, chairman, and chief executive officer. 440 F.3d 1286, 1289–90 (11th Cir. 2006).

ii. In *United States v. Ayers*, a company defrauded investors of more than $2.4 million and the defendant was one of the company's three original founders, considered a "principle," and served as chief operating officer and vice chairman of the board of directors. 386 F. App'x 558, 561 (6th Cir. 2010).

iii. In *United States v. Poulsen*, following nearly a decade of fraud perpetrated by the company, criminal charges were brought against eleven owners and senior executives. 568 F. Supp. 2d 885, 889 (S.D. Ohio 2008).

iv. In *United States v. Simmons*, the defendant operated a $35 million Ponzi scheme (and his convictions for money-laundering were reversed on other grounds). 737 F.3d 319, 320 (4th Cir. 2013).

v. Finally, in *United States v. All Funds on Deposit at Citigroup Smith Barney Acct. No. 600-00338 held in the Name of Kobi Alexander*, the defendant in the underlying criminal action was the company CEO and engaged in a scheme with others to defraud investors by backdating stock option grants. No. 06-cr-3730, 2008 WL 3049895 (E.D.N.Y. Aug. 1, 2008).

The same applies to the cases cited by the government to assert that the Fifth Circuit has stated "that securities fraud provisions not listed in section 1961(1) are predicate acts for RICO violations.[6] *See e.g. Laird v. Integrated Res., Inc.*, 897 F.2d 826, 828–29 (5th Cir. 1990) (defendants were an investment marketing company, its subsidiaries, and an investment advisor who served as a registered representative of the company, recommended and sold securities to the plaintiffs, and earned commissions for those sales; the investment advisor defendant "possessed

---

[6] All of which were based at least in part on Rule 10b-5 violations and several featured mail or wire fraud violations.

an interest in the securities he recommended" based on his relationship with the investment marketing company and the fact that he would receive "compensation as a broker" for completed securities transactions); *Smith v. Ayres*, 845 F.2d 1360, 1362 (5th Cir. 1988) (shareholder of a family corporation sued other shareholders and the corporation's attorney alleging securities fraud under Rule 10b-5 and a RICO violation); *Corwin v. Marney Orton Invs.*, 778 F.2d 200, 202 (5th Cir. 1985) (plaintiff investors sued several entities in connection with a private investment offering).

Each case makes clear that section 1961(1)'s interpretation of the phrase "fraud in the sale of securities" targets *a specific type of fraudulent sale of securities tied to the defendant's role with respect to the issuer*. This point is further elucidated by section 1962's "prohibited activities" explaining that purchases of securities may be deemed unlawful when they confer a level of control over the issuer. 18 U.S.C. § 1962(a). Despite basing its opposition on analogies, the government dismisses that explanation as "wholly irrelevant to this analysis, as it is not cited or referenced in any of the operative statutes." (ECF 190 at 6).

But section 1962 only bolsters what the cases cited by the government already show: the definition of "racketeering activity" under section 1961 targets "fraud in the sale of securities" *by issuers*, *their agents, and related parties acting on their behalf*. The statute's interpretation, demonstrated by examples of its application, does not cover the charged conduct here, as there are no allegations that Mr. Constantinescu's alleged securities fraud was in any way tied to a relationship with the issuer. The conduct contemplated by 1961(1)'s definition of "racketeering activity" does not cover the charged conduct here.

    2.   **The issue before this Court is a clear matter of first impression in the Fifth Circuit.**

7

With respect to *United States v. Stein*, the government's sleight of hand is to no avail. Despite its assertion that "the Defendant's diligent search fell short," the government apparently similarly could not find another case where defendants were convicted of section 1348 securities fraud and section 1957 money laundering.[7] Instead, the government dove into the docket to emphasize the district court's conclusion on a motion to dismiss that the money laundering counts were not *impermissibly merged* with the securities fraud counts because the section 1348 violations were complete prior to the time of the wire transfers upon which the money laundering charges were based. (ECF 190 at 13) (citing *See United States v. Stein*, No. 11-80205-CR, 2012 WL 4089896, at *6–7 (S.D. Fla. Sept. 13, 2012) *report and recommendation adopted* No. 11-CR-80205, 2012 WL 4089891 (S.D. Fla. Sept. 17, 2012)).

Of course, the report and recommendation adopted by the Southern District of Florida (and corresponding unpublished opinion) is not binding authority on this Court. Nor is it persuasive. Rather, the government's attempted reliance on it further emphasizes that, not only has this issue not been addressed by any court within the Fifth Circuit, but even scouring district court opinions from other jurisdictions makes clear that it has not been resolved (or even considered) at all. There is no question that any argument concerning section 1348's application as a predicate for section 1957 is absent from the record in the Southern District of Florida's unpublished opinion in *Stein*. The argument before this Court simply was not made in that case (or any others) at the trial level or the two times it was before the Eleventh Circuit. The government's suggestion that the district court in *Stein* decided "that the Section 1348 charges, not the other charges, formed the basis for Section 1957 liability," (ECF 190 at 14), is not right. Not only did the district court there never

---

[7] Other than *Stein*'s affiliated case already cited in Constantinescu's Motion, *United States v. Schneider*, 853 F. App'x 463 (11th Cir. 2020).

8

reach the issue before this Court, it had no need to because the Indictment made clear that the property at-issue in the money laundering charges was:

> derived from a specified unlawful activity as provided in Title 18, United States Code, Section 1956(c)(7), incorporating Title 18, United States Code, Section 1961(1), **to wit: mail fraud** (Title 18, United States Code, Section 1341); **wire fraud** (Title 18, United States Code, Section 1343); **and securities fraud** (Title 18, United States Code, Section 1348)."

*See* Indictment, ¶ 24, *Stein*, 9:11-cr-80205 (S.D. Fla. Dec. 13, 2011) (ECF No. 3) (emphasis added).

And, like every other case cited by the government to suggest that *any* securities fraud violation satisfies the requisite "fraud in the sale of securities" to be considered "racketeering activity" under 1961(1), Stein similarly was closely associated to the company at-issue, as he was the company's attorney. *United States v. Stein*, 846 F.3d 1135, 1139 (11th Cir. 2017). His conduct at issue involved his fabricated press releases and purchase orders *to inflate the stock price of his client*, a publicly-traded manufacturer of medical devices. *Id* (emphasis added). Clearly, through his relationship with the company, Stein's conduct involved fraud *in the sale* of securities in manner totally dissimilar to the charged conduct here.

## CONCLUSION

For the reasons set forth herein and in his Motion to Dismiss Count Twenty-One of the Indictment, Defendant Edward Constantinescu respectfully requests the Court dismiss Count Twenty-One of the Indictment.

Respectfully Submitted,

_____
Matthew A. Ford
Texas Bar No. 24119390
mford@fordobrien.com

9

Lead Attorney

Cara J. Filippelli
Texas Bar No. 24126183
cfilippelli@fordobrien.com
Associate Attorney

Ford O'Brien Landy, LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Telephone: (212) 858-0040
Facsimile: (212) 256-1047

*Attorneys for Defendant*
*Edward Constantinescu*

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2023, a true and correct copy of the foregoing was served electronically on all persons via the Court's CM/ECF system.

           */s/ Matthew A. Ford*
           Matthew A. Ford