UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA § | | |
| § | | |
| v. § | Case No. 4:22-cr-612 | |
| § | | |
| CONSTANTINESCU, *et al.* § | The Honorable Andrew S. Hanen | |
| § | | |
| § | | |
| Defendants. § | | |

### United States' Motion to Enforce and otherwise Modify Defendant Constantinescu's Conditions of Release

The United States, by and through its undersigned counsel, respectfully requests that the Court enforce Defendant Constantinescu's conditions of pre-trial release to prohibit any further communications about this case, including through public social media and private messages, and impose any additional modification to Defendant's pre-trial release that the Court deems necessary to protect the public and enforce the existing Court Orders in this case.

Since indictment, Defendant has sought to circumvent his pre-trial conditions of release that were aimed at preventing inappropriate conduct. Those efforts have escalated more recently and now include harassment and intimidation of potential witnesses in this case, through direct messages and social-media postings. These efforts of Defendant Constantinescu represent a violation of his existing pre-trial conditions of release and the Court's Protective Order in this case. It has become apparent that Defendant Constantinescu is determined not to abide by his existing conditions of pre-trial release. The Court should therefore take whatever measures it deems appropriate to cure Defendant Constantinescu's violations of his pre-trial conditions of release, ensure that further violations cease, and impose any other relief the Court deems necessary.

## I. Background

### A. Relevant Procedural History

On December 16, 2022, Defendant Constantinescu was arraigned in this District, and a Magistrate Judge issued an Order setting the Defendant's conditions of release. (*See* Doc. No. 64.) Those conditions include the standard condition to "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution . . . ." (*Id.* at 2.) The Order also includes bespoke conditions stating that the Defendant "may not communicate with others about trading positions" and "***may not post on social media***." (*Id.* at 3 (emphasis added).)

On January 18, 2023, the Court granted the United States' Unopposed Motion for a Stipulated Protective Order Governing Discovery (Doc. No. 116). (Doc. No. 119.) The Court entered a Protective Order that states that, with certain irrelevant exceptions, "all materials provided by the United States in this case . . . are subject to this protective order and considered 'Protected Materials.'" (Doc. No. 119 ¶ 1.) Those "Protected Materials may be used by the defendants and defendants' counsel . . . solely in connection with the defense of this case . . . . Neither the defendants nor defendants' counsel may use Protected Materials for any other purpose . . . without further order from this Court." (*Id.* ¶ 2.) The Protective Order also plainly states that "Defendants and defendants' counsel shall not disclose protected materials or their contents directly or indirectly to any person or entity other than persons employed to assist in the defense, persons who are interviewed as potential witnesses, counsel for potential witnesses, and other persons to whom the Court may authorize disclosure . . . ." (*Id.* ¶ 3.)

Contained within the Protected Materials produced by the United States in this case were the identity and pictures of an individual who provided information to the SEC in connection with

this case and who is a prospective witness in this matter ("Witness-1"). The United States produced to the defense on January 27, 2023 the materials provided by Witness-1. Contained within that production were images of Witness-1 and Defendant Constantinescu, some of which are attached here in Exhibit 1. (*See* Ex. 1.)

### B. Relevant Facts

Based on the below facts, the United States submits that Defendant Constantinescu has engaged in a campaign to skirt his conditions of release, insult parties, and now intimidate a potential witness in this case.

The United States first spoke with Witness-1 in connection with this matter on January 20, 2023.[1] During that discussion, Witness-1 indicated that, at some point after the Indictment in this matter, Defendant Constantinescu reached out to Witness-1 to discuss the case. Witness-1 indicated that, during those discussions, Defendant Constantinescu attempted to enlist Witness-1 to run social media account(s) to post information about the case and parties.

Witness-1 provided to the United States pictures of some of Witness-1's text conversations with Defendant Constantinescu, which were included in the United States' production to the defense and some are appended as Exhibit 2. As noted in Exhibit 2, Defendant Constantinescu sought the assistance of Witness-1 in posting derogatory information on Twitter about one of the prosecutors in this case, after Defendant Constantinescu was informed as a condition of pre-trial release that he shall not post on social media. (*See* Ex. 2 at 3–4.) That information was ultimately posted on Twitter in and around January 2023 and included a post describing AUSA Carter as a "dumb fucking prosecutor" and how AUSA Carter "love[s] margaritas and making stuff up in

---

[1] As of the filing of the Motion, the FBI case agents are in the process of finalizing the FD-302s for Witness-1. Those materials will be produced to the Defendants as soon as they are finalized.

order to put innocent people in jail." (*See* Ex. 3.) That information remained on Twitter for a period of time and is no longer active as of the date of this Motion.

Over the recent months, Defendant Constantinescu has also noted with approval, via "liking" on Twitter, numerous posts on Twitter commenting on the merits of this case. Such "likes" are consistent with his above-described efforts (Ex. 2) to use others as his indirect mouthpiece to comment on social media about this case, which he is prohibited from doing. For example, on April 4, 2023, Defendant Constantinescu "liked" the following post that attacked alleged victims in this case: "Dude, YOU lost YOUR OWN money. Stop trying to blame others for your own inexperience. Take responsibility for your own screw ups." (Ex. 4.) Defendant Constantinescu liked this post just three days after the United States informed counsel for Defendant Hennessey that it would be collecting and producing in April information provided by individuals who have reached out to the victim-witness coordinator about this case.

After the United States produced to Defendants in discovery information indicating that Witness-1 was providing information about Defendant and his co-conspirators in this case, Defendant Constantinescu apparently contacted Witness-1 via WhatsApp, an encrypted messaging service, on or about March 25, 2023. (*See* Ex. 5.) The messages from Defendant Constantinescu to Witness-1 read: "You ready? ***Karma is coming buddy***. Good luck to you[.]" (*See* Ex. 5 at 4 (emphasis added).)

On April 4, 2023, the United States contacted Witness-1 because Witness-1 was concerned about the content of Defendant Constantinescu's messages. During that interview, Witness-1 explained that Witness-1 received the above-referenced messages via WhatsApp from the account of Defendant Constantinescu. Witness-1 reported that Witness-1 felt threatened by the messages and wanted to bring them to the United States' attention.

4

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ (*See* Ex. 6 at 2.) The Account appears to be either an account of a close affiliate of Defendant Constantinescu, partially or wholly run by Defendant Constantinescu himself, or both. The Account, for example, consistently posts personal pictures and videos of Defendant Constantinescu. (*See, e.g.*, Ex. 7 at 2–5.) Further, the Account appears to respond directly to messages, or use Twitter's "like" function to express approval of messages, that are directed to Defendant Constantinescu. Many, if not all, of these responses appear to be from Defendant Constantinescu himself.[2] (*See, e.g., id.* at 6–13.) The Account posts about stock trading. (*See, e.g., id.* at 6, 15.) The Account also frequently comments on, or "likes" posts about, this case and Defendant Constantinescu's prior stock-market activity that is the subject of this case. (*See, e.g., id.* at 9, 11.) Defendant Constantinescu's original Twitter account, @MrZackMorris, also "likes" many of the Account's posts, as do the accounts of other Defendants and others associated with Defendant Constantinescu. (*See, e.g., id.* at 14, 18–21.) Many of those "likes" include Defendant Constantinescu and other Defendants liking posts by the Account that disparage another Twitter user who often posts updates about the filings and proceedings in this case. (*Compare id.* at 11 *with id.* at 19–21.) Other Twitter users appear to communicate with the account as if it is run by Defendant Constantinescu. (*See, e.g., id.* at 6–8.) The Account also posts pictures of Defendant Constantinescu's lavish lifestyle, including a recent

---

[2] Of particular note in this regard is the sequence depicted on pages 6 through 8 of Exhibit 7. For example, in response to a post by the Account about trading strategy that concludes with the statement "[t]his is NOT ZACK MORRIS," another Twitter user writes: "[t]his is totally Zack Morris and I'm here for it." (Ex. 7 at 6.) A conversation ensues, which ends with the other Twitter user writing, "[d]on't worry your secret is safe with me," which is then "liked" by the Account, acknowledging the secret that it is in fact Defendant Constantinescu behind the Account. (Ex. 7 at 7–8.)

photo of what appears to be two of the cars subject to the stayed seizure warrant parked in front of a mansion. (*See id.* at 22.)

The Account also makes posts that appear to be disparaging to potential victims (*see, e.g., id.* at 13), and threatening posts, like stating "[d]on't be a rat" with a news reference to a video of a violent assault on an informant in a separate case, which was posted approximately two days after Defendant Knight's notice of re-arraignment was publicly filed in this case.[3] (*See, e.g., id.* at 16.) On or around March 22, 2023 (and again two days after public notice of Defendant Knight's re-arraignment), Defendant Constantinescu "liked" via Twitter a post of the Account that links to a video of the beating of the informant in the other case.

█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
████████████████████████ And the Account recently posted a message stating: "It sucks but ***karma will get everyone been doing Zack wrong***." (Ex. 6 at 5.) That post has obvious similarities to the threatening message sent to Witness-1. (*Compare id. with* Ex. 5 at 4.)

█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████

---

[3] Note that the post stating "[d]on't be a rat" appears to have been subsequently deleted.

## II. Argument

The United States respectfully requests that the Court enforce the Protective Order in this case, modify the conditions of Defendant Constantinescu's pretrial release to ensure no further contact with witnesses and the public about this case, and impose any additional relief the Court deems necessary. Such steps are required to protect the integrity of these proceedings.

The Bail Reform Act provides that, should the judicial officer determine that conditions of release are necessary to "reasonably assure the appearance of the person as required" or to avoid "endanger[ing] the safety of any other person or the community," the judicial officer "shall order the pretrial release of the person . . . subject to the least restrictive further condition or combination of conditions" necessary to achieve those twin goals of assuring the defendant's appearance and protecting the community. *See* 18 U.S.C. § 3142(c). Section 3142(c)(3) of the Bail Reform Act permits the Court to, "at any time[,] amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3).

The above-referenced facts compel the conclusion that Defendant Constantinescu has violated several of his conditions by, most critically, contacting Witness-1 in a threatening manner and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in a campaign ostensibly designed to intimidate and insult Witness-1. This conduct indicates that Defendant Constantinescu is becoming more brazen in his efforts to skirt his pre-trial conditions of release and existing Court Orders in this case.

Ensuring that Defendant Constantinescu both comply with the terms of the Protective Order in this case and cease further communications about this case is required to serve the interests of justice and otherwise protect the community. Defendant Constantinescu already has demonstrated a willingness to skirt his conditions of release. That willingness has now escalated

7

into direct contact with, and harassment of, a potential witness in this case.

The Court should therefore enforce Defendant Constantinescu's existing pre-trial conditions of release and ensure compliance with the Protective Order in this case. Curative measures are required now because the United States will soon be producing voluminous information about alleged victims in this case, who Defendant Constantinescu seeks to undermine publicly and attack through the posts of others. Protection of the community's interest to be free from harassment and contact by any defendant in this case is therefore paramount and must be ensured.

Thus, the United States respectfully requests that the Court enforce the existing Court Orders, prohibit Defendant Constantinescu from any further communications in any way concerning this case on social media, and order any further relief the Court deems just and necessary to ensure compliance moving forward, the integrity of these proceedings, and the safety and interests of potential witnesses, victims, and the community.

Dated: April 7, 2023               Respectfully submitted,

                                      GLENN S. LEON
                                      Chief, Fraud Section
                                      Criminal Division, Department of Justice

By:   */s/ John J. Liolos*
        Scott Armstrong, Assistant Chief
        John J. Liolos, Trial Attorney
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Ave. NW
        Washington, DC 20005
        Tel.: (202) 768-2246

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2023, I will cause the foregoing motion to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section

**CERTIFICATE OF CONFERENCE**

I hereby certify that the United States conferred with counsel for Defendant Constantinescu about the subject of this motion. Defendant's counsel did not state a clear position in response, which the United States understands to be opposition to the motion.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section