UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:22-cr-612 |
| | § | |
| CONSTANTINESCU, *et al.* | § | The Honorable Andrew S. Hanen |
| | § | |
| | § | |
| Defendants. | § | |

**United States' Reply to Defendant's Opposition to the Motion
for Revocation and an Arrest Warrant as to Defendant Constantinescu**

Defendant's response does not even confront, let alone rebut, the clear proffered evidence showing Defendant engaged in attempted witness tampering for the second time in this case. The United States, by and through its undersigned counsel, respectfully urges the Court to revoke Defendant Constantinescu's bond and issue an arrest warrant for again violating his pre-trial conditions of release, attempting to obstruct justice, and demonstrating, repeatedly, there are no conditions of release that are suitable for Defendant Constantinescu or by which he will abide.

**I.   Defendant's response does not address facts that demonstrate he violated his terms of release and engaged in attempted witness tampering.**

In response to the proffered evidence that Defendant engaged in a sustained campaign of witness intimidation to attempt to convince his wife to change her statements to the FBI and then foist that information upon the Court to try to help himself, Defendant provided only text messages from June that pre-date most of the relevant events by several weeks. He does not deny or even address the facts that:

- Defendant texted his wife the original FD-302 of her conversation with the agent, which itself is a violation of the Protective Order in this case (*compare* ECF No. 119 *with* Opp'n at 6);

- Defendant engaged in several conversations with his wife in which he asked her to change her story to the FBI and she declined, repeatedly, to do so; and

- Defendant asked his wife several times to meet with his attorney to discuss the issue, which she again declined, repeatedly.

Nor does Defendant deny that his wife told him, repeatedly, the original FD-302 was accurate in all material respects, or that she said she wishes contact between them to cease going forward.

Defendant on the one hand seeks to use his wife's purported statements to help himself, but on the other questions her veracity and chides the United States for crediting her actual statements to an agent. (Opp'n at 5.) In the same breath, Defendant criticizes the agent for not "even bother[ing]" to ask the wife whether she had previously told Defendant what Defendant claims she said. (*See id.*) But the entire purpose of her calls to the agent was to say Defendant's claims were not true.

The first time she and the agent talked about it on July 20, 2023, she said, "[s]he had not told the Writer during the original interview that Constantine had not engaged in the fraud, as Constantine wanted her to tell Attorney Ford." (ECF No. 343, Ex. 2 at 1.) She said, she "believed Attorney Ford received the information from Constantine and/or had lied in the motion." (*Id.*) The next time she reached out to the agent the following day after another attempt by Defendant to get her to change her story, she reaffirmed those statements: "[She] told Constantine the FD-302 was correct except for his trading career beginning with penny stocks. [She] never said that Constantine was not capable of committing fraud. [She] told Constantine that they should not have communication with each other going forward." (ECF No. 343, Ex. 3 at 1.).

Defendant's response addresses *none* of that information. Text messages from the prior month do not contradict those reported facts. And those facts alone are far more than the law requires to support revocation. *See, e.g.*, *United States v. Aron*, 904 F.2d 221, 222–23 (5th Cir. 1990) (affirming revocation for witness tampering where defendant "expressed disappointment" at what a witness told the grand jury, and that "although [defendant] did not threaten [the witness],

2

did not raise his voice while speaking, and did not ask [the witness] to change his testimony, [the witness] nevertheless felt intimidated by the visit"); *see also United States v. Amato*, 86 F. App'x 447, 450 (2d Cir. 2004) (explaining that Section 1512(b) was "written broadly to encompass non-coercive efforts to tamper with a witness . . . the government need only prove that the defendant's attempts to persuade were motivated by an improper purpose" (internal quotations and citation omitted)); *United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000) (recognizing that "attempt[s] to influence a witness" by a "white-collar criminal" support a finding of dangerousness to the community, even where "evidence of tampering does not include either actual violence or threats of violence against any trial witness," that a "single incident of witness tampering" may be "sufficient to revoke bail," and that the "harm to the integrity of the trial is the same no matter which form the tampering takes").

That is particularly so in this case where Defendant now demonstrates repeated attempts to influence or intimidate potential witnesses, which presents a clear danger to the community. *See id.*; (ECF No. 237). The United States will soon produce its witness list on August 11, 2023 in accordance with the Amended Scheduling Order (ECF No. 254). That will provide a list of individuals, including many ostensible victims who have come forward and are expected to testify. Defendant has their contact information and will have a short-list of their names, along with a demonstrated penchant for repeated problematic witness behavior. Those individuals deserve to be safe from similar efforts.

There is no "bloodlust" or "vindictiveness" in the United States' efforts to do its job upholding the law and protecting the community from a Defendant who continues to demonstrate no conditions but detention can secure those interests. *See, e.g.*, *United States v. Gulkarov*, No. 22-cr-20, 2022 WL 205252, at *3 (S.D.N.Y. Jan. 24, 2022) ("As with dangerousness, [a court

considering pretrial release] must first determine whether the defendant presents a risk of obstruction, and then whether any condition or combinations of conditions will reasonably assuage that risk." (internal quotations and citation omitted)).

Similarly, Defendant does not deny the fact of his monetary transfers in violation of his pretrial release. And as to additional transfers, Defendant's claim that suggestion is "misleading" is belied by the factual record. There are other violative transfers, such as two transfers from Defendant to American Express on December 27, 2022 in the amounts of $50,000 and $13,646.69 clearly reflected in his bank records.[1] There is also the purported sale of property in Mexico "despite being ordered not to sell any property by the judge." (ECF No. 343, Ex. 1 at 3.) The list of violations grows like ticker tape and points to the inescapable conclusion that Defendant will not respect the law or any conditions of release.

## II.     Other issues raised by Defendant are not relevant.

As to Defendant's $100,000 transfer to Special Agent B, the timeline of this case makes clear why, among other reasons, the case team did not begin a campaign attempting to claw back assets from third parties before trial: the Court stayed the seizure warrants as to Defendant Constantinescu. The case team learned of the $100,000 transfer on or about February 24, 2023, made clear in the FD-302 memorializing the conversation with Special Agent B, precipitated by Defendant's own self-serving text message. (*See* ECF No. 328 at 5.) That conversation took place only two-and-a-half weeks before the March 14, 2023 hearing at which the Court stayed the seizure warrants as to Defendant Constantinescu. At that point, the case team essentially ceased pursuing additional seizure warrants. The work for the warrants regarding Defendant Rybarczyk had largely been done at that time, and indeed some papers already filed, so the case team followed through

---

[1] DOJ-PROD-0000354574.

with finishing that work. But, as to new leads and new pursuits, the case team followed both the letter and spirit of the Court's Order and ceased further efforts at pretrial seizures from *the defendants themselves*, let alone pursuing pretrial claw-backs from third parties. There is simply nothing inconsistent about the positions taken in the warrants—which were stayed and are irrelevant at this point—and with respect to any third-party transfers in this case. Regardless, this issue cannot be "exculpatory" because it has nothing to do with Defendant's underlying conduct or the merits of the case. Of course, the United States still maintains the allegations of the Superseding Indictment and plans to prove them at trial.

As to the divorce attorney communications, the contact was not sought by the prosecutor and, as described, the prosecutor's involvement was limited to attempting to avoid tension between the two court proceedings and alleviate the administrative burdens on this Court. Regardless, no one involved in the conversations will be testifying in the trial, so those issues are utterly irrelevant to any of the actual issues before this Court, which should return to focus.

## Conclusion

Given Defendant's continued willful and intentional violations of his pre-trial conditions, repeated problematic efforts to influence potential witness testimony, and the impending disclosure of the United States' witness list, the Court must revoke Defendant's bail to protect the community and maintain the integrity of these proceedings.

Dated: July 31, 2023                                    Respectfully submitted,

                                                        GLENN S. LEON
                                                        Chief, Fraud Section
                                                        Criminal Division, Department of Justice

By:    */s/ John J. Liolos*
       Scott Armstrong, Assistant Chief
       John J. Liolos, Trial Attorney
       Fraud Section, Criminal Division
       United States Department of Justice
       1400 New York Ave. NW
       Washington, DC 20005
       Tel.: (202) 768-2246

ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

By:    */s/ Thomas Carter*
       Thomas H. Carter
       Assistant United States Attorney
       State Bar No.: TX24048387
       1000 Louisiana Street, 25th Floor
       Houston, Texas 77002
       Tel.: (713) 567-9470

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2023, I will cause the foregoing brief to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

                */s/ John J. Liolos*
                John J. Liolos, Trial Attorney
                U.S. Department of Justice
                Criminal Division, Fraud Section