UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Case No. 4:22-cr-612 |
| § | |
| CONSTANTINESCU, *et al.* § | The Honorable Andrew S. Hanen |
| § | |
| Defendants. § | |

### United States' Sur-Reply to Defendants' Motion to Exclude

The United States, by and through its undersigned counsel, files this sur-reply to respond briefly to arguments raised in Defendants' reply (ECF No. 429), which counsel for Defendant Rybarczyk has indicated is mis-styled as a new motion. A few points merit the Court's consideration.

First, the United States respectfully urges the Court to adopt its sensible approach to impose time limits on both sides in this case. Sept. 7, 2023 Hr'g Tr. at 78:10–11 ("The Court: . . . I'm probably going to do a timing order on everybody."). The United States is confident that it will use its time wisely and efficiently. The United States, however, cannot fathom how its streamlined case of approximately ten to twelve trial days will require "several months" of additional testimony. Words such "misleading" and "disingenuous" have been cross-levied too many times to count in this case's short history; so the United States will not continue down that path. It is worth noting, however, that Defendants are seeking to limit the United States from meeting its burden by precluding critical intent and pattern evidence based on an incomplete record and dubious legal authority. The United States has already stripped its case down to brass tacks at the Court's urging. To excise more would cut too thinly, especially in light of the United States' heavy burden as to seven Defendants. The United States respectfully submits that to preclude the United

States' trial proof and further limit its presentation of the intrinsically intertwined episodes at this juncture and on such a record is not warranted under the law and would be an abuse of discretion.

Second, Defendant argues about numbers of episodes, and Defendants trading in them, to explain how the United States will present the intrinsically intertwined episodes. ECF No. 429 at 1. But as Defendants *know* because of the United States' disclosures, only certain Defendants made false statements in connection with each intrinsically intertwined episode. These are the statements that critically prove intent in this case and the charged offenses, which Defendants contest at every turn and opportunity. That not every Defendant made a false statement in every episode, along with Defendants' vigorously contesting fraudulent intent, demonstrates why the United States must be allowed to introduce proof of the conspiracy and scheme beyond the charged substantive counts. *See, e.g.*, *United States v. Martinez*, No. 21-10383, 2022 WL 2315877, at *1 (5th Cir. 2022) ("To prevent the government from invoking 'intent' as a basis for extrinsic act evidence, the defendant must affirmatively remove the issue of intent . . . ." (internal quotations and citation omitted)).

Third, Defendants seek to take the Court (and the jury) down rabbit holes that are not probative of at-issue facts. For example, as to SNOA, the Defendants seek to explore the price movement of SNOA at the time it opened on May 3, 2021 through the market close. *See* ECF No. 429 at 3. As Defendants know and as demonstrated by the exhibit (ECF No. 424, Ex. 2 at 3-4 ("GX 36B"), their scheme was to pump SNOA in ***after hours*** (after the market closed at 4 p.m.), and they discussed acquiring shares to that end in and around mid-day on May 3. As Defendant Deel told Defendants Cooperman, Matlock, and Rybarczyk in a private Discord messaging group among themselves, the plan was to "***slowly add and we can rip in AH*** [*after hours*]," that "***we will moon*** [***SNOA***]," and how he "will get the [purported due diligence] ready [to post]." After they

had acquired shares, Defendants Deel, Matlock, and Cooperman in concert posted falsely about SNOA in after hours so that each could secretly sell their respective shares at a profit.

That Defendants sought to pump SNOA with old news is not helpful to them. ECF No. 429 at 5-6. Once Defendants recognized that they were trying to pump SNOA with old news, they doubled down on their deception at the expense of their followers. Each schemed to, and did, sell their respective shares *before* telling their followers that they were circulating old information. Defendant Deel did not "publish[] an immediate correction, explaining that he made a mistake," as Defendant Rybarczyk suggests. ECF No. 429 at 5. As Defendant Deel instructed his co-Defendants in the same private chat with his co-Defendants, "sell what shares you guys have [of SNOA] and I will alert on twitter that I'm hearing it could be older news here." Defendants did just that. They closed their positions in secret *and then*, once *they* were safe, told their followers the news was old. That is not the stuff of "lament" or "the antithesis of fraud." ECF No. 429 at 6. It is fraud—coordinated and executed in real time—and the jury must see it.

Put simply, the intrinsically intertwined episodes prove exactly how Defendants conspired and schemed to commit the charged offenses. The Court should not bar the jury from seeing this damning evidence based on Defendants' one-sided spins of the underlying conduct. Defendants desperately want to exclude evidence of such episodes because it guts their defense theory: that either select facts deflect a false message or this extraneous detail unrelated to the Defendants shows certain of Defendants' statements lack fraudulent intent. Execution of the Defendants' scheme—over and over again—proves the charged case by showing fraudulent intent and lack of mistake or accident. The United States should be allowed to meet its high burden with its ammunition: Defendants' own conduct.

Fourth, Defendants' efforts to launder into evidence their "state of mind" through assorted press releases is wrong and legally deficient. Defendants should not be able to introduce evidence of what people in the market "generally saw" or were generally aware of. Doing so would end around the Rules of Evidence and impermissibly allow a Defendant to introduce evidence unmoored from his state of mind. Courts routinely reject it for this reason. *See, e.g.*, Order, *United States v. Bankman-Fried*, 22-cr-673, at 9 (S.D.N.Y. Sept. 26, 2023) (ECF No. 289) ("[A]ny relevance of the actions of others in any event would seem to depend upon the defendant's knowledge of those actions at the relevant time or times."); Order, *United States v. Bases*, 18-cr-48, at 7 (N.D. Ill. July 15, 2021) (ECF No. 602) (granting motion to bar evidence of documents where defendants "were not aware of these documents"). Such proffered evidence necessarily relies on naked speculation, a fact Defendants cannot even try to hide. For example, Defendants' unwarranted assumption that "if the Defendants are tweeting about a particular stock, they will, at the very least, have seen the 'general market news' about that particular stock on Twitter," is a conclusion they can only infer through impermissible speculation. ECF No. 429 at 10. Without a foundation in the admissible record that certain Defendants actually saw the news in question, as in the SNOA example, the Court cannot permit Defendants to proceed on the speculative general presumption that Defendants were omniscient of all existing market news on Twitter or otherwise. This legally deficient defense should not be allowed at trial and is certainly not a basis to curtail the United States' legitimate, probative trial proof centered on Defendants' own words and deeds.

Finally, there is no shift in the United States' theory or anticipated proof. Defendants sought to capture gains for themselves by pumping the price of stocks through their social-media platforms and then dumping their shares in secret. Nothing has changed. The fraud was directed at, and executed at the expense of, Defendants' social-media followers. That other third parties

may have purchased a stock for a reason wholly unrelated to the charged scheme and without any connection to Defendants' conduct has no relevance to the issues in dispute and, thus, no basis for admission at this trial.

Dated: September 26, 2023          Respectfully submitted,

                                         GLENN S. LEON
                                         Chief, Fraud Section
                                         Criminal Division, Department of Justice

By:     */s/ Scott Armstrong*
            Scott Armstrong, Assistant Chief
            John J. Liolos, Trial Attorney
            Fraud Section, Criminal Division
            United States Department of Justice
            1400 New York Ave. NW
            Washington, DC 20005
            Tel.: (202) 768-2246

            ALAMDAR S. HAMDANI
            United States Attorney
            Southern District of Texas

By:     */s/ Thomas Carter*
            Thomas H. Carter
            Assistant United States Attorney
            State Bar No.: TX24048387
            1000 Louisiana Street, 25th Floor
            Houston, Texas 77002
            Tel.: (713) 567-9470

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2023, I will cause the foregoing brief to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

/s/ Scott Armstrong
Scott Armstrong
U.S. Department of Justice
Criminal Division, Fraud Section