IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*Plaintiff*<br><br>v.<br><br>EDWARD CONSTANTINESCU, *et al.*,<br>*Defendants.* | CRIMINAL ACTION NO. 4:22-CR-612 |

### ORDER

On September 12, 2023, following a hearing on the matter, this Court ordered the Government to produce all exculpatory records from the SEC and FINRA. The Government is hereby ordered to provide to the SEC and FINRA a copy of this Order, the Superseding Indictment, and records identified herein, within 10 days of the date of this Order to ensure that appropriate *Brady* information is collected and produced in this case. It is hereby,

**ORDERED** that the SEC and FINRA are to review and produce to the Department of Justice for production to defendants all exculpatory information that the SEC and/or FINRA have in its possession, custody, or control. If there is a question as to whether information is exculpatory, the SEC and FINRA should err on the side of disclosure. Information is exculpatory if it favorable to any defendant on any issue of guilt or punishment.

For the avoidance of doubt, the following is a non-exhaustive list of exculpatory information in this case on issues of either guilt or punishment:

1.  The Superseding Indictment in this case alleges that the defendants engaged in a scheme to "pump and dump" certain securities from in or around January 2020 to in or around April 2022, and profited at least $114 million from that scheme. The Government has noticed in the Superseding Indictment that it intends to seek a money judgment of up to $114 million

1

against each of the defendants upon any conviction, and will seek to forfeit the defendants' property until the $114 million money judgment is satisfied.  The Government is ordered to provide the SEC and FINRA with a copy of the stocks and trading periods that the Government relied upon to present to the Grand Jury this $114 million figure (the "$114 Million Stocks").  Any information tending to show that any of the $114 Million Stocks' price fluctuation and/or the defendants' profits derived from trading the $114 Million Stocks were caused by something other than a "pump and dump" scheme caused by the defendants is exculpatory to the issue of guilt and is also exculpatory on the issue of punishment because it could reduce the sentencing exposure of the defendants and could affect the money judgment ordered in this case.  This includes any information analyzing the cause of a $114 Million Stock's price fluctuation regarding any of the $114 Million Stocks that is not attributed to the defendants and/or a "pump and dump," all information discussing market conditions during the defendants' trading of any of the $114 Million Stocks that could be a cause of a stock's price fluctuation as opposed to a "pump and dump" scheme caused or attempted to be caused by the defendants, including all analysis behind "meme stocks," Gary Gensler's May 2021 testimony before Congress and analysis underlying the SEC's October 14, 2021 Staff Report on Equity and Options Market Structure Conditions in Early 2021.

2. To the extent the Government intends to introduce any other stock trades by any of the defendants at sentencing in support of an appropriate loss amount figure to be used in a Sentencing Guidelines calculation, a forfeiture order, or a restitution order, the Government is ordered to identify such trades to the defendants and produce a list of such trades to the SEC and FINRA (the "Additional Sentencing Trades").  The SEC and FINRA are ordered to search for and produce any exculpatory information regarding Additional Sentencing Trades in the same

manner as ordered for the $114 Million Stocks. Such information is exculpatory because it could reduce the sentencing exposure of, restitution liability of, and/or amount to be forfeited by, the defendants.

3. The Government has noticed that it intends to introduce at trial expert testimony from Dr. Maria Garibotti and Mr. Peter Melley regarding the defendants' alleged "pump and dump" scheme. The Government is directed to produce Dr. Garibotti's report and Mr. Melley's report to the SEC and FINRA. To the extent the SEC or FINRA has information that could be used to impeach the credibility of Dr. Garibotti's or Mr. Melley's report, analyses, and conclusions, those materials should be produced as exculpatory impeachment material. Dr. Garibotti calculated the alleged profits derived from the defendants for the alleged scheme. Exculpatory information would include information that, for any of the 397 episodes Dr. Garibotti concluded were caused by the defendants' illegal actions, tends to show that the cause of the defendants' profits or the price fluctuation of the stock is caused by something other than an illegal "pump and dump" scheme by the defendants. The Government has noticed that Mr. Melley intends to testify about the meaning of certain terms he opines are used in the securities community. To the extent the SEC or FINRA are aware of meanings other than that definition provided by Mr. Melley, that information is exculpatory impeachment material that should be produced. Mr. Melley has further expressed his intention to opine that "[o]n certain trading days when the Defendants posted publicly about the at-issue stocks, those stocks have increased trading volume compared to other days the stocks traded when Defendants were not posting about the stocks." The Government is ordered to produce a list of Mr. Melley's "at issue" stocks to the SEC and FINRA, and must also provide to defense counsel, the SEC, and FINRA, a list identifying the "certain trading days" to which Mr. Melley's report refers. To the extent that

3

SEC or FINRA are aware of any information that would explain increased trading volume for the "at issue stocks" on the identified "certain trading days" that is a reason other than the defendants' actual or attempted "pump and dump" scheme, this information should be produced as exculpatory impeachment information.

4. The Superseding Indictment has charged defendant Edward Constantinescu with money laundering and alleges that his Brokerage Account held $4 million of criminally derived property that was used on March 18, 2021 to purchase property that the Government has encumbered. The Government must prove that when the $4 million was withdrawn from the Brokerage Account, there was not at least $4 million worth of money in the Brokerage Account that was from "clean" funds, that is, money that came from sources other than criminally derived funds from the alleged "pump and dump" scheme. *See United States v. Loe*, 248 F.3d 449, 467 (5th Cir. 2001). Accordingly, the Government is ordered to provide the SEC and FINRA with a list of stocks that Edward Constantinescu traded using this Brokerage Account from 2020 through March 18, 2021 (the "Brokerage Stocks"). Any information tending to show that trading conducted in, and profits from, Brokerage Stocks in Constantinescu's Brokerage Account were attributable to factors other than a "pump and dump" scheme orchestrated by the defendants is exculpatory to the issue of guilt, could reduce this defendant's sentencing exposure, could eliminate the ability of the government to encumber his property, could reduce his forfeiture exposure, and could reduce restitution. This includes any information analyzing a cause of any of the Brokerage Stock's price fluctuations that is a cause not attributed to the defendants.

Signed this _____ day of October 2023.

_____
ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE