IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD CONSTANTINESCU,<br>PERRY "PJ" MATLOCK,<br>JOHN RYBARCZYK,<br>GARY DEEL,<br>STEFAN HRVATIN,<br>TOM COOPERMAN,<br>MITCHELL HENNESSEY,<br>DANIEL KNIGHT. | No. 4:22-CR-00612-S |

**DEFENDANT EDWARD CONSTANTINESCU'S REPLY IN FURTHER SUPPORT OF MOTION TO SUPPRESS EVIDENCE FROM AN ILLEGAL GENERAL SEARCH JOINED BY DEFENDANTS PERRY MATLOCK, JOHN RYBARCZYK, GARY DEEL, STEFAN HRVATIN, TOM COOPERMAN, AND MITCHELL HENNESSEY**

As laid out in our opening brief, the government's handling of the Defendants' private Twitter and Discord data inappropriately ignored the limitations of the search warrants authorized by a Court and was unconstitutionally unreasonable. Several courts have made clear that when the government ignore a warrant's limitations, the remedy is blanket suppression of the data obtained. Courts impose this remedy to promote absolute respect for the warrants themselves and the private data obtained from those warrants.

In response, the government downplays the severity of its conduct, attempting to recast its conduct as "technical" violations and to shift the blame to codefendant Hennessey for its repeated mishandling of the warrant data. In doing so, it advances the extraordinary position that the government is permitted to wholesale seize and produce private data of a third party that is outside the scope of a warrant to other codefendants (notwithstanding that the warrant papers did

not assert or authorize such a thing). And, it asks the Court to bless this misconduct, claiming: no harm, no foul.

Even more troubling, the government now admits that it did not undertake an appropriate review of the search warrant data for *Brady* material and instead relied on search terms to target only the purportedly culpable portions of the data (almost certainly taken out of context) without checking to see if data in its possession, custody, and control was exculpatory. The Defendants' privacy interests have been violated by the government's deliberate, unconstitutional mishandling of the data, and it now appears that the government made no attempt to review data in its possession for *Brady* material; blanket suppression under these circumstances is appropriate.

I. **The government's finger-pointing at Mr. Hennessey for its warrant violations is specious, as evidenced by the government's continued violations even after Mr. Hennessey's counsel made it very clear that she was not requesting the private, unresponsive warrant data.**

First, the government asserts that it violated the limitations set forth in the Warrants because Mr. Hennessey asked it to. *See* Gov't Resp. at 5. The government's characterization of its decision to violate the Warrants as a problem of Mr. Hennessey's making is completely contradicted by the email correspondence memorializing the request. Mr. Hennessey requested his own Rule 16 discovery—not all of the Defendants' private, unresponsive data. Even if the three government attorneys on this case did not understand what Rule 16 discovery included, immediately following the government's initial production of the nonresponsive data, counsel for Mr. Hennessey emailed the entire group stating unequivocally that she was not seeking this data—her exact words being: "We did not make this request." *See* Ex. R (May 19, 2023 email from L. Cordova). Notwithstanding the clear message that Mr. Hennessey *was not* asking the government to violate the Fourth Amendment, the government continued to make *additional*

2

productions of the nonresponsive materials and did not attempt to claw back the unresponsive, private data. The Court should disregard outright the government's suggestion in their brief that seasoned prosecutors mistakenly believed that any of the Defendants had blessed their improper actions.

> II. **A defendant cannot authorize the government to violate a codefendant's Fourth Amendment rights.**

The government states that the Defendants should "lodge their complaints" with Mr. Hennessey for the government's mishandling of the warrant data and Fourth Amendment violations because he made a request for his own Rule 16 discovery. Gov't Resp. at 7. Elsewhere in its brief, the government states that its seizure and production of the private data it already determined was not responsive to the Warrants was properly produced to the Defendants wholesale "so that they may conduct their own review and evaluation." *Id.* at 11. The government characterizes this disregard of the warrant limitations as being done for "discovery parity" for the Defendants. *Id.* at 10.

Contrary to the government's assertion, *none* of these actions were authorized by the Warrants. And the government cites to *zero* legal authority for the proposition that it does not have to follow the limitations of a search warrant so long as it violates the warrants in the same way for all defendants. The government identifies no reason why it was appropriate, much less necessary, for it to produce nonresponsive warrant data to any of the Defendants in this case. It is not surprising that the government is unable to cite to any legal authority for this proposition; the idea that codefendants can—and should—participate in a warrant's execution is plainly and obviously not the law. A contrary ruling would completely eviscerate the important Section II limitations in the Warrants and would create an entirely new rule permitting prosecutors to ignore the plain language of a warrant whenever they want to, and for no reason.

3

The only cases cited by the government do not support the creation of this new rule. Instead, they stand for the unremarkable proposition that, during the course of a search, law enforcement will end up reviewing items that ultimately are not responsive to what they are permitted to seize. But that does not mean that the government can take those nonresponsive items from the search premises and produce them to defendants, obviously. Here, the government *knew* that private data was *not responsive to the Warrants* and chose to nonetheless send that private, unresponsive data to codefendants in violation of the Warrants and without any other legal authority. The government cites no legal authority for the proposition because it is not the law. The Fourth Amendment does not authorize the government to act contrary to the terms of a search warrant's particularity limitations.

The government cites to *In re Search of Cellular Tel. Towers*, 945 F. Supp. 2d 769 (S.D. Tex. 2013) as a "notabl[e]" difference in that—unlike that case—the magistrate judges here did not require the government to return or delete nonresponsive records. Gov't Resp. at 9. The government's characterization of this case as notably different seems to suggest that the government believes it was free to do whatever it pleases with the nonresponsive warrant data because the Court did not demand that the data be returned or deleted. But the Warrants by their plain terms make clear that the government only had authority to seize those records that were responsive to the Attachment B, Section II terms. This Court should not credit the government's suggestion that absent a court order further clarifying that it cannot misuse nonresponsive data for which it has no legal authority to seize and contrary to the limitations set forth in the warrant, the government is free to mishandle nonresponsive private data and produce it to third parties so long as they are codefendants in criminal cases. This completely unreasonable suggestion

4

demonstrates further that blanket suppression is necessary to deter government mishandling of nonresponsive electronic data.

### III. The Fourth Amendment does not permit multiple returns to the proverbial well under the authority of an expired warrant.

The government confuses the issue of its return to the data house with an expired warrant. The government urges that requiring Providers like Twitter and Discord to produce data within the 14-day limitation required by the warrant would be "unworkable and illogical," Gov't Resp. at 14, but completely ignores the fact that the government's warrant papers included the provision that the Providers must produce the data within 14 days. If the government had no intention of requiring that "illogical" limitation, it should not have been included in its Warrants.

The government's reliance on *United States v. Farrad* and *United States v. Allen*—two out-of-circuit decisions—is misplaced. *Farrad* rejected a *pro se* defendant's argument that a late-dated business records certification meant that the warrant was not timely executed by the government; the case did not address the propriety of the government returning back to a Provider for additional materials with a warrant that had been expired for seven months. 895 F.3d 859, 889 (6th Cir. 2018). Similarly, in *Allen*, the court declined to suppress evidence where the execution date contained a typographical error and the Provider responded with data responsive to the warrant within a month of receiving the warrant; the case, again, did not address the propriety of the government returning back to a Provider for additional materials with an expired warrant several months after the Provider had complied and produced data. *See* 2018 WL 1726349, at *8 (D. Kan. Apr. 10, 2018).

Here, by contrast, Twitter promptly produced what it thought was responsive to the Warrants. Far from "promptly," the government waited *seven months* to return to the well and attempt to retrieve more data under the authority of Warrants that were long expired from a

Provider who believed that it had complied. The government does not—because it cannot—explain what "unworkable" framework prevented it from seeking a second search warrant based on articulated probable cause why the government believed there was more data to be had. To hold otherwise eviscerates the temporal limitations of the Warrants.

The government cites to *United States v. Jarman*, 847 F.3d 259 (5th Cir. 2017), for the proposition that the Fourth Amendment does not impose limits on the duration of a warrant's execution. Gov't Resp. at 9. But the Fifth Circuit actually made clear in *Jarman* that "[t]he general touchstone of reasonableness which governs the Fourth Amendment analysis [also] governs the method of execution of the warrant." 847 F.3d 259, 266 (5th Cir. 2017) (cleaned up). *Jarman* did not address what the government did here. *Jarman* addressed whether the government took an unreasonable amount of time in finishing its search of evidence from an electronic device it had already seized, something that is expressly contemplated and permitted by Rule 41. Neither Rule 41 nor the Fourth Amendment, by contrast, permits the government to return to a Provider several months after the Provider believes it has complied with the terms of the warrant and demand that the Provider turn over more data on the legal authority of a long-expired warrant. That, along with the other actions mishandling the warrant data, is unreasonable and violated Defendants' constitutional rights.

### IV. The government's failure to review the search warrant data for *Brady* material further warrants blanket suppression.

Blanket suppression of the warrant data is also appropriate because it does not appear that the government undertook a diligent review for *Brady* material. "In order to comply with *Brady,* therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'" *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)).

6

It appears from the government's response that the government did not undertake a *Brady* review when reviewing the data produced in response to the Warrants. Gov't Resp. at 3-4. The government appears to concede that the balance of the materials that it determined were unresponsive to the Warrants went unreviewed without a determination as to whether they could constitute *Brady* material. *Id*. at 11. Instead, the government relied on search terms to cherry pick what it believed would be favorable evidence for the prosecution and did not bother to conduct a diligent search to make sure that it was appropriately complying with its *Brady* obligations. Perhaps realizing that it had not conducted an appropriate *Brady* review for exculpatory material, it has now dumped private data deemed unresponsive to the Warrants onto the Defendants. This, too, is unreasonable and violates the Defendants' due process rights. The government's failure to conduct a *Brady* review of the search warrant data further supports blanket suppression.

**V.     Blanket suppression is the appropriate remedy when government actors intentionally disregard a warrant's limitations and engage in a general search.**

The government requests that the Court ignore the government's Fourth Amendment violations and put it in the same position as if it had not deliberately ignored the limitations in the Warrants. Tellingly, the government also ignores the cases cited in the opening brief with similar facts where courts found blanket suppression the appropriate remedy under these circumstances; instead, it incorrectly states that the Defendants have offered "no legal or factual basis" for blanket suppression. Gov't Resp. at 19. In reality, the Defendants' opening brief cited the following four cases where courts held that blanket suppression was appropriate:

- *United States v. Rettig,* 589 F.2d 418, 423 (9th Cir. 1978)
- *United States v. Schlingloff,* 901 F. Supp. 2d 1101, 1106 (C.D. Ill. 2012)
- *United States v. Wey,* 256 F. Supp. 3d 355, 410-11 (S.D.N.Y. 2017)

- *United States v. Nasher-Alneam,* 399 F. Supp. 3d 579, 595 (S.D. W.Va. 2019)

*See* Mot. to Supp. at 23-24.  The government offers no reason why the Court should not follow these cases; its wholesale failure to acknowledge them is telling.[1]

Instead of addressing the cases above, the government claims that *United States v. Kimbrough* supports denial of this motion but fails to come to terms with the Fifth Circuit's pronouncement in that case:  "Blatant disregard by executing officers of the language of a search warrant can transform an otherwise valid search into a general one and, thus, mandate suppression of all evidence seized during the search."  69 F.3d 723, 728 (5th Cir. 1995).  Indeed, the Fifth Circuit declined to apply blanket suppression in *Kimbrough* not because it found that such a remedy was inappropriate where the agents had engaged in a general search, but because—following a hearing on the matter where an agent who participated in the search testified—the defendant failed to show that the manner in which the search was conducted violated the terms of the warrant and transformed it into a general search.  *Id.*  This reasoning, in part, was based on the fact that "the record reflect[ed] significant numbers of documents were left at the scenes after an initial review showed them to be not within the scope of the warrants" and the defendant could not show that the agents seized anything that they did not believe was "described in the warrants."  *Id.*  Here, by contrast, per the government's own admission, it seized and produced to the Defendants on several occasions data that it *knew* was unresponsive to the Warrants.

---

[1] In a footnote, the government cites to *Davis v. United States*, 564 U.S. 229 (2011) as "significant authority" that blanket suppression is not the legal remedy for an illegal, general search conducted by law enforcement ignoring the terms of the search warrant.  *See* Gov. at 19.  *Davis* did not hold such a thing.  Instead, *Davis* held that when police officers reasonably rely on binding appellate precedent, the exclusionary rule does not apply.  *Davis* did not involve law enforcement disregarding the terms of a search warrant and seizing data that they knew to be unresponsive to the warrant.  In any event, *Kimbrough*, which authorizes blanket suppression when the government disregards a warrant's limits, has long been binding precedent in this Circuit.

The other cases upon which the government relies involve instances where the magistrate judge erred in issuing a search warrant: that is not the argument here. It is the *government's* actions in disregarding the limitations set forth in the Warrants, not the Warrants themselves, which transformed the handling of the data into a general search. Under those circumstances, courts (including the Fifth Circuit in *Kimbrough*) are clear that blanket suppression is appropriate.

**VI.    *Leon's* good-faith exception to the exclusionary rule does not apply when the warrant is disregarded.**

The government lists the often-cited carve-outs to the *Leon* good-faith exception to the exclusionary rule, claiming that the Court need not reach whether the government's conduct violated the Fourth Amendment. But "'[g]ood faith is not a magic lamp for [the government] to rub whenever they find themselves in trouble.'" *Wey,* 256 F. Supp. 3d at 408 (finding blanket suppression of electronic evidence appropriate, notwithstanding the issuance of search warrants) (quoting *United States v. Reilly,* 76 F.3d 1271, 1280 (2d Cir. 1996)). The government completely ignores that *Leon* itself made clear that the good-faith exception does not apply where, as here, the government disregards the warrant's limitations.

The two cases the government cites had nothing to do with allegations that the government violated the limits of a search warrant while executing the warrant, rendering it a general search outside of *Leon*'s good-faith exception. *Pawlak* was a child pornography case that addressed the magistrate judge's authority to issue the warrant and the agent's reasonable reliance on the warrant—it did not involve allegations that the government ignored the warrant while executing it in a way that rendered in a general search. *United States v. Pawlak*, 935 F.3d 337, 342, 347 (5th Cir. 2019). *Beverly* also did not involve government actors ignoring a validly issued warrant when executing the warrant outside the scope of its terms. *United States v.*

9

*Beverly*, 943 F.3d 225, 233 (5th Cir. 2019). The government does not provide this Court with any reason to disregard the Supreme Court's plain language in *Leon* that the good-faith exception is unavailable when the government disregards the warrant's limitations.

\* \* \* \*

Accordingly, the Defendants respectfully request that the Court conduct an evidentiary hearing or rule that the data obtained by the Warrants be suppressed.

Dated: November 8, 2023

                                          Respectfully submitted,

                                          */s/ Jamie H. Solano*

                                          Matthew A. Ford
                                          Texas Bar No. 24119390
                                          mford@fordobrien.com
                                          Jamie Hoxie Solano
                                          Admitted Pro Hac Vice
                                          jsolano@fordobrien.com
                                          Stephen R. Halpin III
                                          S.D. Tex. Bar No. NY5944749
                                          FORD O'BRIEN LANDY, LLP
                                          3700 Ranch Road 620 South, Suite B
                                          Austin, Texas 78738
                                          Telephone: (512) 503-6388
                                          Facsimile: (212) 256-1047

                                          Attorneys for Defendant
                                          Edward Constantinescu

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2023, a true and correct copy of the foregoing document has been electronically served on all counsel of record via the Court's CM/ECF system.

*/s/ Jamie H. Solano*
Jamie H. Solano
