# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Case No. 4:22-cr-612 |
| CONSTANTINESCU, *et al.* | § § | The Honorable Andrew S. Hanen |
| Defendants. | § § § | |

### United States' Motion to Quash Impermissible Rule 17 Subpoenas

The United States, by and through undersigned counsel, respectfully requests that the Court quash numerous impermissible Rule 17 subpoenas Defendant Constantinescu served on multiple witnesses—including victims—appearing on the United States' previously filed witness list (ECF No. 351). The subpoenas are unlawful for multiple reasons, including that they are unduly broad and lack required specificity, seek inadmissible information, and seek witness statements expressly prohibited by Rule 17(h). Defendant's subpoenas bear the hallmarks of the "generalized fishing expedition" squarely prohibited under Rule 17 and the specificity, relevance, and admissibility requirements set forth in *United States v. Nixon*, 418 U.S. 683 (1974). Accordingly, the Court should quash the subpoenas.

**I.   Brief Background**

The United States is aware of at least eleven Rule 17 subpoenas Defendant has issued to individuals appearing on the United States' previously filed witness list (ECF No. 350). The United States included an example copy of the subpoenas served on individual H.B., attached as Exhibit 1. Other individuals appearing on the United States' previously filed witness list report having received similar subpoenas, including S.B., J.H., L.A., S.N., B.M., C.S., P.S., J.M., and J.T. The

subpoenas to others the United States has seen appear substantially identical to the subpoena to H.B.

The subpoenas initially came to the United States' attention when S.B and L.M. telephoned case agents in late October to say that service processers served those individuals with subpoenas from the Ford firm. S.B. reported that receipt of the subpoena induced significant stress and anxiety. L.M. described the subpoena essentially as overly broad and burdensome, and expressed interest in the United States doing what it could to quash the subpoena. The United States subsequently confirmed other victim-witnesses had received similar subpoenas. Each witness the United States talked to expressed interest in the United States doing what it could to quash the subpoenas.

The subpoena to H.B. came to the United States' attention when a lawyer who represents H.B. in civil matters called undersigned counsel stating that his client, H.B., was concerned when he believed a process server attempted to serve him at his home but was unsuccessful. That counsel called the United States again on November 15, 2023, stating that H.B. had received a subpoena from the Ford firm, which H.B. found burdensome and stressful, and represented that H.B. was supportive of anything the United States could do to quash the subpoena. H.B.'s counsel subsequently provided a copy of the subpoena attached as Exhibit 1.

The subpoenas seek the following broad categories of documents and information:

1. An export of all the data associated with your X, formerly known as Twitter account from 2019 to the present. . . .

2. Documents sufficient to show: (1) all "Friends" on your Discord account; (2) all servers associated with or on your Discord account; and (3) any conversations on your Discord account from 2019 to the present pertaining to investments, stocks, or financial matters, including direct messages, emails, and mentions. . . .

2

3. Documents sufficient to show your usernames on other social media accounts, including but not limited to, Facebook Instagram, Discord, Snapchat, & TikTok.

4. For any brokerage account you held from January 2019 to April 2022, all stock trading records for each account, including copies of all trade records, buy orders, sell orders, invoices, statements, and 1099-B forms.

5. Documents sufficient to show statements and information, if any, you contend that you relied upon while trading any of the following stocks from January 2019 to April 2022: ONTX, SXTC, CBAT, TRCH, VISL, GTT, RGLS, SURF, ALZN, UPC, ABVC, CEI, DATS, NAKD, EZFL, MYSZ, PIXY, BBI, AIHS, BAOS, BBLG, CNTX, FCEL, HCWB, METX, MFH, MITQ, SFET, SNOA, SUPV, SURG, VRPX, XRTX, ZSAN, ACST, ADMP, APRE, AVGR, or BBIG.

6. Copies of all communications you have had regarding Edward Constantinescu, Perry Matlock, John Rybarczyk, Gary Deel, Stefan Hrvatin, Tom Cooperman, Mitchell Hennessey, and/or Daniel Knight, including conversations that refer to any of their social media accounts and/or activity.

7. Copies of all communications you have regarding Twitter accounts @PJ_Matlock; @MrZackMorris, @ohheytommy, @Ultra_Calls, @hugh_henne, @dipdiety, @LadeBackk, or @notoriousalerts, Discord accounts PJ Matlock#0001, Zack Morris#0001, MrZackMorris#9856, TOMMY COOPS#5323, Ultra#0374, HUGHBEAR:bear:#4034, Dan, Deity of Dips#8114, LadeBackk#6083 and Mystic Mac #7345, and the Discord Atlas Trading Server.

(Ex. 1 at 5.)

The subpoena packages also include letters addressed to the recipient stating:

> If you would like to produce these records to us prior to the April 1, 2024 trial date, please let us know. If you choose to produce these records prior to trial and we are satisfied that you have complied with what the subpoena requires you to produce, your appearance at trial to comply with this subpoena will be unnecessary. If you have any questions, please feel free to reach out to Matt Ford or Jamie Solano, both listed on the subpoena.

(*Id.* at 6.)

## II. Legal Standard

Federal Rule of Criminal Procedure 17 authorizes subpoenas to compel the testimony of witnesses at criminal proceedings and the production of evidentiary documents. But "Rule 17(c) was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). Rather, Rule 17 subpoenas are for the limited purpose of procuring *evidence* that will be introduced at trial. *See, e.g., Nixon*, 418 U.S. at 698–99. "An order quashing a subpoena is proper if 'compliance would be unreasonable or oppressive.'" *United States v. Butler*, 429 F.3d 140, 149 (5th Cir. 2005) (quoting Rule 17(c)(2)).

To ensure Rule 17 subpoenas are used only for appropriate purposes, they must meet the "strict standard" set by the Supreme Court of the United States in *United States v. Nixon*, 418 U.S. 683, 699–700 (1974):

> (1) the documents sought must be evidentiary and relevant;
>
> (2) the materials are not otherwise procurable in advance of trial by the exercise of due diligence;
>
> (3) the party seeking documents cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial; and
>
> (4) the application is made in good faith and is not intended as a general fishing expedition.

To show that the documents are "evidentiary and relevant," *Nixon* held that the party requesting the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon*, 418 U.S. at 700; *United States v. Wilson*, 732 F.2d 404, 412 (5th Cir. 1984) (affirming quashing of subpoena found to be general and overbroad, seeking immaterial and irrelevant information). As many courts have explained, failure to show relevance, admissibility, and specificity indicate Rule 17 subpoenas are impermissible fishing expeditions that should be quashed. *See, e.g., United*

*States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.").

In this instance, Defendant bears the burden of satisfying all the Rule 17 and *Nixon* factors. *See Nixon*, 418 U.S. at 700. Defendant cannot meet his burden where the subpoena is for a purpose beyond the scope of Rule 17, such as to gather "discovery" information. As the Fifth Circuit has stated: "Rule 17 is clearly not a discovery device." *United States v. Hegwood*, 562 F.2d 946, 952 (5th Cir. 1977). "Rule 17 was not intended to provide the defendant a mechanism by which to troll the waters of the sea's otherwise undiscoverable material in the small hope that something beneficial might rise to the surface." *United States v. Potts*, 16-cr-0147, 2017 WL 1314193, at *1 (S.D. Tex. Apr. 6, 2017) (internal quotations and citation omitted). Where the subpoena is nothing more than a "fishing expedition," the subpoena is unreasonable, oppressive, and should be quashed. *See, e.g.*, *Nixon*, 418 U.S. at 699; *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992).

Courts have long held that, given the detailed rules set forth in Rule 16 regarding the government's disclosure obligations before and during trial, a defendant may not circumvent Rule 16 by seeking broader discovery through the use of Rule 17(c) subpoenas. *See, e.g.*, *Bowman Dairy*, 341 U.S. at 220 ("It was not intended by Rule 16 to give a limited right of discovery and then by Rule 17 to give a right of discovery in the broadest terms. . . . Rule 17(c) was not intended to provide an additional means of discovery."). "Because of this, courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of

5

discovery in criminal cases found in Rule 16." *United States v. Barnes*, No. 04-cr-186, 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008) (internal quotations and citation omitted).

Rule 17(h) is clear: "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule." Rule 17(h); *see also United States v. Benanti*, 15-cr-177, 2017 WL 78734, at *3 (E.D. Tenn. Jan. 6, 2017) (denying request for subpoena for telephone recordings under Rule 17(h)); *United States v. Phoenix*, 14-cr-00318, 2015 WL 6094882, at *3 (N.D. Cal. Oct. 16, 2015) (finding Rule 17(h) disallows subpoenas to obtain witness statements from non-parties); *United States v. Yudong Zhu*, 13-cr-761, 2014 WL 5366107, at *3 n.3 (S.D.N.Y. Oct. 14, 2014) (rejecting defendant's argument that Rule 17(h) only applies to witness statements the United States has).

Further, subpoenas seeking pre-trial discovery such as material otherwise governed by the Jencks Act, *Brady v. Maryland*, 273 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), are routinely quashed. *See, e.g.*, *Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); *United States v. Hughes*, 895 F.2d 1135, 1145–46 (6th Cir. 1990) (finding improper a Rule 17(c) subpoena to a third party for impeachment material); *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) (finding improper a Rule 17 subpoena to obtain impeachment material); *United States v. Cuthberton*, 651 F.2d 189, 195 (3d Cir. 1981) (finding Rule 17 subpoena not available to obtain hearsay evidence that could only be used for impeachment).

Courts are clear that the United States has standing to move to quash such subpoenas. "It is well settled that a party 'has standing to quash subpoena addressed to another if subpoena infringes on movant's legitimate interest.'" *United States v. Avalos–Martinez*, 299 F.R.D. 539, 541 (W.D. Tex. Feb. 6, 2014); *see also United States v. Ocasio*, 11-cr-2728, 2013 WL 12442496, at *2 (W.D. Tex. May 28, 2013) ("The government may challenge a subpoena duces tecum issued to

6

a third party if the government has a legitimate interest related to the materials sought." (collecting cases)). "The government has a legitimate interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on the witness's credibility." *Ocasio*, at *2.

### III. The United States has standing to move to quash the subpoenas because the recipients expressed their interest in the United States doing so and the subpoenas infringe the United States' legitimate interests.

Each of the victim-witnesses the United States spoke with reported their concern with the subpoenas and their interest in having the United States do what it can to quash them. *See, e.g., United States v. Cole*, 19-cr-869, 2021 WL 912425, at *2 (S.D.N.Y. Mar. 10, 2021) ("[T]he Government has standing to quash a subpoena of a non-party only if the alleged victim has asked it to, or if the Government can assert legitimate interests of its own in quashing the subpoenas." (internal quotation and citation omitted)). The undersigned also conferred with counsel for HB who indicated HB supports the United States' efforts to quash the subpoena served on him and authorized the undersigned to make this representation to the Court. And, of course, the United States has an interest in preventing its witnesses from being harassed. *See, e.g., Ocasio*, 2013 WL 12441496, at *2; *Cole*, 2021 WL 912425, at *2.

Further, even if the United States lacked standing, the Court has plenary authority to quash Rule 17 subpoenas. *See, e.g., United States v. Dominick*, 15-cr-289, 2016 WL 1408558, at *6 (E.D. La. Apr. 11, 2016) ("[W]hether the government has standing to move to quash the [subpoenas] is also of no moment as courts have consistently held that this Court has an independent obligation to assess each subpoena for compliance with the *Nixon* factors.").

7

### IV. The Court should quash Defendant's subpoenas because they fail to comply with Rule 17 and *Nixon*.

Defendant's subpoenas fail almost every relevant inquiry under *Nixon* and Rule 17, including that they:

1. Lack required specificity;

2. Fail to meet Defendant's burden of demonstrating they seek relevant and admissible material;

3. Demand witness statements in direct contravention of Rule 17(h); and

4. Launch prohibited general fishing expeditions;

*First*, and most obviously, Defendant cannot show the subpoenas are "evidentiary and relevant," including because they lack the required specificity. *See, e.g.*, *Nixon*, 418 U.S. at 700. The broad categories of documents sought by Defendant are precisely the types of requests courts routinely quash under Rule 17 and *Nixon*. *See, e.g.*, *id.*; *Barnes*, 2008 WL 9359654, at *4 ("In order to satisfy the specificity requirement of *Nixon*, the party seeking production of the materials must reasonably specify the information contained or believed to be contained in the documents sought rather than merely hope that something useful will turn up." (internal quotations and citation omitted)); *Avalos–Martinez*, 299 F.R.D. at 540 ("The specificity and relevance elements require more than the title of a document and conjecture as to its contents. Instead, a movant must generally request specific documents and cannot request entire categories of files." (internal quotations and citations omitted)).

Each subpoena demand fails this specificity requirement because each demands entire categories of files. For example, demand 1 seeks "all the data associated with your X, formerly Twitter, account." Not a single document is specified. Similarly, demands 6 and 7 seek "copies of all communications you have" regarding Defendants and their social media accounts. (Ex. 1 at 5.)

8

"The request for 'all' such documents and communications without a whiff of specificity as to why [defendant] requires them is nothing more than an impermissible fishing expedition." *United States v. Shah*, 19-cr-833, 2022 WL 1284550, at *2 (S.D.N.Y. Apr. 29, 2022); *United States v. Carriles*, 263 F.R.D. 400, 402 (W.D. Tex. 2009) ("If the [issuing] party cannot reasonably specify the information contained or believed to be contained in the documents sought, but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.").

*Second*, Defendant similarly cannot meet his burden of showing the materials are evidentiary and relevant because vast quantities of the material sought appear plainly inadmissible or otherwise irrelevant. *See, e.g.*, *Barnes*, 2008 WL 9359654, at *3 ("The defendant has the burden of specifically identifying the materials sought, and showing that they are relevant and admissible."). For example large quantities of hearsay Defendant seeks would be inadmissible for anything other than potential impeachment, which is an impermissible purpose for Rule 17 subpoenas. *United States v. Skelos*, 15-cr-317, 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) ("Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds or would otherwise be inadmissible as evidence at trial.").

Similarly, Defendant's broad requests for witness trading records—including from January 2019, a year prior to the charged conspiracy—seek wholly irrelevant information that smack of general fishing expeditions. *See, e.g.*, *Gilmore v. United States*, 256 F.2d 565, 568 (5th Cir. 1958) (affirming trial court's quashing of subpoena where defense made no showing that the information sought "would be relevant or material to the issue of the guilt or innocence of defendant"); *United States v. Stanford*, 9-cr-342, 2011 WL 13202537, at *2 (S.D. Tex. Sept. 2, 2011) ("The documents must have 'real relevance to the particular counts for which [the defendant was charged.'" (quoting *United States v. Butler*, 429 F.3d 140, 149 (5th Cir. 1992)). Given the materials demanded and

9

form of the demands, Defendant simply cannot make the required showing that the evidence sought is "relevant to the offenses charged in the indictment," as well as admissible. *Arditti*, 955 F.2d at 345; *Potts*, 2017 WL 1314193, at *2 ("Absent detailed information about the documents sought in a Rule 17(c) subpoena, a court is only left 'to speculate as to the specific nature of their contents and its relevance.' *Arditti*, 955 F.2d at 346. Conclusory allegations of relevance are insufficient.").

*Third*, the subpoenas also specifically call for numerous statements by the subpoenaed individuals, which is information expressly precluded from such subpoenas by Rule 17(h). The Rule states: "Information Not Subject to a Subpoena. No party may subpoena a statement of a witness or of a prospective witness under this rule." Rule 17(h). The subpoenas are permeated by demands in direct contravention of this express preclusion, seeking all information from the witness' X (Twitter) account, "any conversations on your Discord," and "copies of all communications you have" regarding Defendants and their social media accounts. Such demands are expressly prohibited by Rule 17(h) and the Court should summarily quash them.

*Finally*, given the subpoenas' breadth, they are precisely the broad discovery devices prohibited by *Nixon* and Rule 17. Rather than a potentially permissible subpoena targeted at obtaining "identified evidence," the subpoenas by their own broad terms launch an impermissible "general fishing expedition." *See United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980). The subpoenas demonstrate on their face that Defendant is trying to use them impermissibly to obtain discovery, not evidence, which the law does not allow. *See, e.g.*, *Arditti*, 955 F.2d at 346 ("[I]t appears that [defendant] was attempting to use the subpoena to gain knowledge that he could not obtain under rule 16(a)(1), as much as to obtain evidence, *i.e.*, that he was trying to use the

subpoena duces tecum as a discovery device, which it is not. In this context, the district court did not abuse its discretion in quashing the subpoena." (internal quotations and citation omitted)).

Further, the subpoenas appear designed to intimidate witnesses into compliance with that fishing expedition prior to trial and outside the view of the Court or the United States—in effect to do an end run around *Nixon* and Rule 17. *See, e.g.*, *United States v. Marcello*, 423 F.2d 993, 1006 (5th Cir. 1970) (affirming quashing of "unreasonable" subpoena where defendant "was clearly attempting to use Rule 17(c) as a discovery device, which it is not."). Obviously, Defendant would need to seek Court approval to obtain early-return trial subpoenas. Rather than do that, and alert the Court and United States to this impermissible fishing expedition, Defendant dated the subpoenas for trial, but included the letter stating that if the recipient complies prior to trial, their presence at trial may not be necessary. (Ex. 1 at 6.) The Court should not countenance this effort to undertake an impermissible fishing expedition to burden victim-witnesses with unwarranted discovery demands outside Rules and the guise of the Court or opposing party. *See Arditti*, 955 F.2d at 345 ("Every subpoena must be a good faith effort to obtain evidence and the district court may ensure that Rule 17(c) is used only to that end through the court's power to quash or modify subpoenas." (cleaned up)).

## Conclusion

The Court should quash Defendant's subpoenas because they fail to comply with the strict requirements of *Nixon* and Rule 17, and Defendant cannot meet his burden to show otherwise.

Dated: November 17, 2023                      Respectfully submitted,

                                               GLENN S. LEON
                                               Chief, Fraud Section
                                               Criminal Division, Department of Justice

By:        */s/ John J. Liolos*
               Scott Armstrong, Assistant Chief
               John J. Liolos, Trial Attorney
               Fraud Section, Criminal Division
               United States Department of Justice
               1400 New York Ave. NW
               Washington, DC 20005
               Tel.: (202) 768-2246


               ALAMDAR S. HAMDANI
               United States Attorney
               Southern District of Texas

By:        */s/ Thomas H. Carter*
               Thomas H. Carter
               Assistant United States Attorney
               State Bar No.: TX24048387
               1000 Louisiana Street, 25th Floor
               Houston, Texas 77002
               Tel.: (713) 567-9470

**Certificate of Conference**

I hereby certify that counsel for the United States conferred with counsel for Defendant Constantinescu by email exchange in which Jamie Hoxie Solano indicated they would consider narrowing the subpoenas but that they were unwilling to withdraw the subpoenas.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2023, I will cause the foregoing Motion to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section