**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | |
| v. | |
| | |
| EDWARD CONSTANTINESCU, | No. 4:22-CR-00612-S |
| PERRY "PJ" MATLOCK, | |
| JOHN RYBARCZYK, | |
| GARY DEEL, | |
| STEFAN HRVATIN, | |
| TOM COOPERMAN, | |
| MITCHELL HENNESSEY, | |
| DANIEL KNIGHT. | |

**DEFENDANT EDWARD CONSTANTINESCU'S OPPOSITION TO GOVERNMENT'S**
**MOTION TO QUASH EVIDENCE HE NEEDS TO PRESENT A COMPLETE DEFENSE**

Defendant Edward Constantinescu ("Constantinescu") respectfully submits the following memorandum of law in opposition to the government's motion to quash his third-party subpoenas. (Dkt. 466).

## PRELIMINARY STATEMENT

The government's motion to quash should be denied for several reasons. First, the government has refused to meet and confer. Instead, the government sent an email threatening, "withdraw these subpoenas" or "[i]f not, a call to discuss will not be fruitful."[1] The government's failure to meet and confer to narrow the scope or address any (as of yet unidentified) deficiencies in the subpoenas is inconsistent with Rule 6.A of this Court's Rules of Criminal Procedure. Constantinescu needs the documents for a complete defense and the government's attempt to thwart his ability to obtain them while disregarding local rules and practice represents a pattern of needless recalcitrance and misconduct that continues to permeate these proceedings. The motion should be denied outright.

Second, the government lacks standing to file this motion. Take for example, Hutchinson Bernot, the primary focus of the government's motion and for whom the government seeks to quash a subpoena. Mr. Bernot worked assisting Dan Knight on his podcast and is now seeking a windfall recovery of up to 30% of any judgment against the defendants. Mr. Bernot is represented by separate counsel, and his counsel has raised no issues with the subpoena. The government has no standing to move to quash on his behalf.

As to the remaining witnesses, documents recently produced by the government reveal that the government sought to manufacture standing to stop Constantinescu's access to critical records in this case by affirmatively (i) contacting witnesses, (ii) encouraging them not to speak with

---

[1] *See* Ex. 1.

defense counsel to address any concerns they might have with the subpoena, and (iii) asking the witnesses' permission to seek to quash the subpoenas. There is no need for the government to step in the shoes of these witnesses—the government has no legitimate interest in these records, it asserts no privilege over any of these records, and its only interest here is illegitimate: to interfere with Constantinescu's access to documents he needs to defend himself in this case. While the government vaguely claims in its motion that some witnesses it spoke with mentioned that some of the requests are seeking records the witnesses do not understand to be relevant, the government has refused to relay those concerns to defense counsel.

Defense counsel remains amenable to narrowing the scope of records to alleviate (as yet unidentified) particular concerns; indeed, we have communicated with other witnesses, who have had no problem communicating with us and providing us with documents requested. In fact, more than one of the witnesses on the Government's witness list expressed shock that the government named them as a government witness and had not been informed that the government intended to have them testify at trial. Importantly, one of these witnesses relayed exculpatory information that the witness stated had been previously provided to the FBI, but which the government did not disclose to the defense. It is not surprising that the government is attempting to interfere with our access to the witnesses and records at issue in this case—they have good reason to fear that doing so will expose what seems to be a repeated problem with this prosecution team: being advised of exculpatory information and failing to appropriately document and disclose it to Constantinescu.

Nor do the government's boiler-plate objections to the subpoenas provide a basis to quash. Constantinescu does not seek "all documents" or a litany of topics in a fishing expedition. The subpoenas seek only a discrete set of seven requests seeking specific items that form the basis of each witness's anticipated testimony at trial. If the government intends to present these witnesses

to support the outlandish proposition that they were "defrauded" by Constantinescu's tweets and statements on Discord, then he is entitled to information about the witnesses trading and social media activity that contradict and dispel that proposition.

The subpoenas seek records that are directly relevant to the witnesses' testimony but the government—likely strategically—did not obtain or bother to review. Thus, if this Court were to quash these subpoenas, all defendants will be forced to proceed to trial against these witnesses without the relevant, best evidence necessary to rebut the government's case in chief and without the records that form the basis of these witness's anticipated testimony. The government's sudden realization about the weaknesses of its investigative methods is, obviously, not an appropriate basis to quash the subpoenas.

If this Court has any question as to how these discrete requests are seeking relevant evidence for trial, the appropriate remedy is not to quash the subpoenas outright as the government has requested. Instead, the Court should hold a hearing *ex parte* to permit Constantinescu further to explain how these records are important to his defense strategy and should, if necessary, narrow the scope of the requests. But, for the reasons discussed below, this motion should simply be denied.

## ARGUMENT

"[T]he Fifth Amendment protects the defendant from improper governmental interference with his defense." *United States v. Girod*, 646 F.3d 304, 310 (5th Cir. 2011); *see also United States v. Jindal*, 2022 WL 997174, at *3 (E.D. Tex. Apr. 1, 2022) (denying government's motion to quash defendants' trial subpoenas and noting that "the Court is also cognizant of [defendant's] right to adequately present evidence that supports his defensive theory."). As discussed further below, the government has no interest in these records other than interfering with Constantinescu's defense,

which is improper. Further, Constantinescu needs these records to protect his constitutional right to a complete defense, and thus, the government's motion should be denied.

1. ***The government does not have standing to quash all of a defendant's third-party trial subpoenas.***

As a threshold matter, the government has failed to establish that it has standing to quash Constantinescu's third-party trial subpoenas. Several courts have denied similar efforts by the government to interfere with a defendant's right to obtain documents necessary for his defense. *See, e.g.*, *United States v. Robinson*, 2020 WL 2309568, at *2 (W.D. La. May 8, 2020) (government failed to show a legitimate interest being infringed by the subpoena and thus lacked standing); *United States v. Ray*, 337 F.R.D. 561, 569 (S.D.N.Y. 2020) ("the Government has no standing to oppose or move to quash subpoenas for which the Court has not received a specific objection from a victim. . . . The Rule itself [] provides no requirement that the non-moving party be notified, and no right for the Government to oppose or move to quash ex parte subpoenas."); *United States v. Nachamie*, 91 F. Supp. 2d 552 (S.D.N.Y. 2000) (rejecting argument that government properly had standing to quash third-party subpoenas based on any of its own interests).

The government contends that it has standing to quash third-party subpoenas, citing to *United States v. Cole*, 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021). (Dkt. 466 at 7). *Cole* involved a subpoena for records involving a cooperating defendant's employment records, a posture completely different from the subpoenas here. *Cole*, 2021 WL 912425, at *1-2. The court stated that the government has standing to move to quash a subpoena *only* if the alleged victim has asked it to or the government can assert legitimate interests of its own. *Id.* at *2; (Dkt. 466 at 7).

The government fails to show that each of these witnesses asked the government to step in and quash the subpoenas. The government has not identified a specific objection to the subpoenas that any witness has requested the government raise on its behalf. Instead, the government has

recently produced several reports reflecting that *the government* initiated contact with at least some of these witnesses, told the witnesses they did not need to confer with defense counsel about the scope of the subpoenas, and asked permission from these witnesses to try to quash their subpoenas. *See, e.g.*, Ex. 2 (redacted reports of witness interviews conducted regarding Constantinescu's subpoenas).

But the government's interests are not aligned with these witnesses. If the witnesses have, as the government alludes to vaguely in its brief, expressed actual, specific concerns with some of the requests, the government has refused to relay those concerns to defense counsel to see if the issue can be resolved. In other words, the government is attempting to use these witnesses to stand in their shoes but is not actually advocating on their behalf.

A generalized hope that a third-party witness might not have to produce records that form the basis of their anticipated trial testimony is not a legitimate interest to afford standing on the government, nor is it an appropriate basis to quash the subpoenas. *See* Fed. R. Crim. P. 17(c)(1)(2) (the court may quash a subpoena only "if compliance would be unreasonable or oppressive"). That is especially true of Mr. Bernot's subpoena, who is not a victim and who is represented by separate counsel in this case, who has chosen not to address the subpoena with defense counsel. The Court should not encourage the government's gamesmanship under circumstances that significantly threaten to violate a defendant's constitutional rights.

Nor has the government shown a legitimate interest in these records or these subpoenas. The government has failed to show that any witness is being harassed and does not have a good faith basis to claim otherwise. The Fifth Circuit has made clear that "as a general rule, witnesses . . . are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them." *Girod*, 646 F.3d at 311 (cleaned up). The

witnesses were served by professional process servers for documents in a white-collar fraud case. It is not surprising that more than one of these witnesses has had no problem communicating with defense counsel directly regarding the logistics and scope of producing records in response to the subpoena. Indeed, a conversation defense counsel had with a witness reflects not only that the witnesses are not being harassed, but also that there is no confusion about the subpoenas and defense counsel is working in good faith with the witnesses to avoid any undue burden. The conversation also provides significant color as to why the government is attempting to interfere with Constantinescu's access to these witnesses and the documents that only they possess.

Witness-1, who the government represented to this Court was a "victim," spoke with defense counsel about the subpoena at issue. Witness-1 did not have any problem or reservation speaking to us and producing the requested records to us. Witness-1 was very surprised to hear that the government had listed Witness-1 as a testifying government witness and was not aware that the government expected Witness-1 to be a testifying witness in the government's case-in-chief. Witness-1 relayed that Witness-1 had felt pressured to speak with the FBI and told the FBI that Witness-1 took full responsibility for the trades Witness-1 elected to undertake because, even though Witness-1 may have followed some of the defendants on Twitter, Witness-1 chose to engage in the trades and did not blame any of the defendants for losing money on those trades. Witness-1 proffered further that Witness-1 had impulse issues, knew nothing about the stock market, was financially irresponsible, and viewed that Witness-1 lost money on the trades, in Witness-1 own words: "on my own." Witness-1 had no desire to be involved in the government's case.

After discussing the logistics of Witness-1 producing the records subject to the subpoena, at the end of the call, Witness-1 commended the undersigned attorney on her professionalism and

thanked Constantinescu's counsel. Under these circumstances, the government fails to establish that it should be involved in this subpoena process. *Accord Jindal*, 2022 WL 997174, at *2 (denying motion to quash and noting that the defendant "remains willing to negotiate the scope and timing of the document productions to alleviate any potential burden in that respect." (internal quotations omitted)).

Nor do the government's cases suggest that it has standing. The government cites to *United States v. Avalos-Martinez* in support of its argument that it has standing to quash subpoenas issued to witnesses. But *Avalos-Martinez* has no application here. *Avalos-Martinez* involved a defendant's subpoena to GAO, an arm of the United States government, and the court pointed out that "the DOJ represents the U.S. government, including the GAO, in litigation," and in any event, found that DOJ's representation of the "United States of America" included a legitimate interest "in preventing one of its instrumentalities from being compelled" from producing irrelevant information in a criminal prosecution. *United States v. Avalos-Martinez*, 299 F.R.D. 539, 541 (W.D. Tex. 2014). Here, none of the witnesses subpoenaed are employed by the government and there is no question that any of the records sought are in the hands of the government or a government agency.

The government cites to *United States v. Ocasio*, but there, the court *denied* the government's attempt to quash a defendant's trial subpoenas under Rule 17, holding that the government *did not* have standing because it failed to establish that it had a legitimate interest related to the materials the defendant sought via subpoena. 2013 WL 12442496, at *4 (W.D. Tex. May 28, 2013) (finding government lacked standing to quash subpoenas). The government cites to *Ocasio* for the proposition that it has a legitimate interest in "preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on the witness's

credibility." (Dkt. 466 at 7). This proposition derives from *United States v. Giampa*,[2] which, in turn, relies on *United States v. Raineri*.[3] The posture of what occurred in *Raineri* has absolutely no bearing to the defendant's trial subpoenas here. *Raineri* involved a trial subpoena issued in the middle of trial to a witness who had already testified and been subject to significant cross-examination. As summarized by one court:

> The problem with *Giampa*'s analysis is its concept of the 'movant's legitimate interests". The *Giampa* court cited *Raineri, supra,* as the touchstone for this concept. *Raineri,* however, involved a very different situation than the one at issue in *Giampa* or the one at issue here. In *Raineri,* the prosecution called a Ms. Gasbarri as its first witness. The defense counsel then used a trial subpoena to compel her appearance as a defense witness, and the Government moved to quash this trial subpoena. The court found that the Government had standing to quash because the subpoena infringed on its legitimate interest in 'preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial overemphasis on [the witness'] credibility.' *United States v. Raineri,* 670 F.2d at 712. Unlike in *Giampa* or in this case, the Government's legitimate interest in *Raineri* involved preventing a redundant and time-consuming reexamination of a witness who had already been subjected to a lengthy and effective cross-examination.

*Nachamie*, 91 F. Supp. 2d at 558–59. It did not involve a subpoena for documents and has no application to Constantinescu's trial subpoenas. Here, the witnesses have not yet testified and seeking records directly pertinent to their testimony is not harassment—it is an assertion of a constitutionally protected right to present a complete defense.

### 2. Each of the seven limited requests in the subpoenas seek material in good faith to be used at trial in support of Constantinescu's complete defense.

Even if this Court is inclined to review the substance of the subpoenas, the government's motion should be denied. Rule 17(c) states plainly that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c). The Supreme Court has made clear that the "the plain words of the Rule are not to

---

[2] 1992 WL 296440 (S.D.N.Y. 1992).
[3] 670 F.2d 702 (7th Cir. 1982).

be ignored" and "must be given their ordinary meaning to carry out the purpose of establishing a more liberal policy for the production, inspection and use of materials at the trial." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). The Supreme Court was clear: "[t]here was no intention to exclude from the reach of process of the defendant any material that . . . could be used at the trial." *Id*. at 221. Subpoenaed materials do not actually need to be used as evidence; instead, it "is only required that a good-faith effort be made to obtain evidence." *Id*. at 219–20.

The Supreme Court addressed the government using a Rule 17 subpoena to obtain evidence in *United States v. Nixon*, acknowledging that "[t]he right to the production of all evidence at a criminal trial . . . has constitutional dimensions . . . [T]he allowance of [a privilege assertion] to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of the law and gravely impair the basic function of the courts." 418 U.S. 683, 711–12 (1974). Indeed, "[t]he very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." *Id.* at 709; *accord United States v. Valenzuela-Bernal*, 458 U.S. 858, 875 (1982) (concurrence) ("In short, the right to compulsory process is essential to a fair trial.").

The same year *Nixon* was decided, the Fifth Circuit addressed a defendant's ability to subpoena witnesses in *Thor v. United States*, where the Court recognized that "[t]he right of defendants to subpoena witnesses afforded by Rule 17 . . . rests ultimately upon the Sixth Amendment guarantee of compulsory process." 574 F.2d 215, 218 (5th Cir. 1978) (citations omitted). *Thor* addressed a defendant attempting to subpoena trial witnesses and an address book. Citing *Nixon*, in passing, the Fifth Circuit noted that the address book, to be properly subpoenaed, needed to be evidentiary.

Following *Nixon*, in *United States v. Arditti*, the Fifth Circuit addressed a defendant's Rule 17 subpoenas issued to the government; specifically, the IRS, and applied the standard articulated in *Nixon*. 955 F.2d 331 (5th Cir. 1992). A few years later, in *United States v. Smith*, 135 F.3d 963, 971 (5th Cir. 1998), the Fifth Circuit applied the *Nixon* standard to the government's burden to seek materials through a Rule 17 subpoena.

"[A]lthough *Nixon* did not determine the propriety of a Rule 17(c) subpoena issued by a defendant to a third party, most lower courts have embraced the standard announced in *Nixon* as applicable to this circumstance." *United States v. Goldstein*, 2023 WL 3662971, at *2 (E.D.N.Y. May 25, 2023) (citation omitted) (Chin, Circuit Judge, sitting by designation). Applying *Nixon* when a criminal defendant is seeking documents from a third-party that may be material to a defendant's defense, however, is not appropriate. *Id.* Indeed, "requiring a defendant to specify precisely the documents he wants without knowing that they are borders on rendering Rule 17 a nullity." *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 322 n.1 (S.D.N.Y. 2011) (citation omitted). Instead, a defendant should only be required to show that the request is "(1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." *Goldstein*, 2023 WL 3662971, at *2 (quoting *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008)). And, of course, the Rule 17(c) subpoena "must be reasonably targeted to ensure the production of material evidence." *Goldstein*, 2023 WL 3662971, at *3.

Here, the government summarily claims, but does not explain how, the subpoenas' seven discrete requests do not seek relevant, material evidence for the defense. The records here are seeking specific topics, are limited by a specific date range, and in many instances pertain to particular accounts that the witnesses maintained and used that forms the basis of their testimony. Courts in this Circuit have approved of trial subpoenas seeking a far broader range of documents.

*See, e.g.*, *United States v. Gas Pipe, Inc.*, 2018 WL 5262361 (N.D. Tex. June 18, 2018) (denying government's motion to quash subpoena request for "any documents regarding the process or protocols" of DEA's chemical compound determinations, and similar requests related to documents reflecting dissent regarding indicted controlled substance determinations).

The government glosses over the fact that it intends to elicit testimony about the substance of these accounts, and summarily claims that the requested material would be hearsay, ignoring the Federal Rules of Evidence.[4]  Importantly, the government has not shown how a witness complying with any of the seven requests would be unreasonable or oppressive.  And, notably, the witnesses that have reached out to us directly do not seem to be confused about the records we are seeking by these subpoenas.  To the extent any of the witnesses are confused about what needs to be produced, those conversations are better handled with defense counsel, who remains willing and able to answer the witness's questions and reasonably address any concerns with sensitive or irrelevant material and has successfully done so.  The government, by contrast, has refused repeatedly to confer in good faith.

> ### a.     Request One:  A digital export of the witness's Twitter account from 2019 to the present.

The government has alleged that these witnesses followed and/or viewed the defendants' Twitter accounts and purportedly relied on certain posts and comments displayed on these Twitter accounts for financial advice.  This request seeks an export of the Twitter account data for a limited time-period for the account that the witness purportedly used to do what the government is going to elicit testimony about at trial.  There is no question that these records are relevant—the government obtained these records for each defendant and is relying heavily on those records for

---

[4] Because the government elected not to address specific objections to any of the evidence sought by these subpoenas, Constantinescu reserves his right to address any such objections first raised in a reply brief.

its case-in-chief at trial. These are records that the government should have obtained during the course of their investigation but chose not to. And, absent compliance with this subpoena request, there is no other way for the defendants to obtain this data for trial. The Twitter account of a witness who is going to testify that he used his Twitter account to follow the defendants' Twitter accounts is the heart of the witness's testimony.

The relevance of these records is obvious.[5] The records will show when the witness started following accounts, which particular defendants' accounts the witness followed, all of which is relevant to their testimony. Records reflecting each witness's posts, comments, and other activity on Twitter will also be material to rebut the notion that these witnesses used their Twitter accounts to obtain legitimate financial information, as opposed to engaging in entertainment that no reasonable person would have viewed as actionable financial advice.

These records will also show other accounts that the witness followed during the relevant time-period, which is relevant for the jury to determine whether a particular post or comment that the government is trying to criminalize was actually material to that witness's purported trading decisions. Evidence that a witness was following other social media accounts providing similar financial information during the time-period would be material to the witness's trading decision.

Far from "irrelevant hearsay," the export of the witness's account is a business record from Twitter and largely consists of computer-generated data that is not hearsay. Nor is the evidentiary value of the statements and posts contained therein dependent on the truth of the matters asserted. Their relevance largely is derived from the effects of this additional data on the "listener," here, the witness.

---

[5] Constantinescu is not including all possible evidentiary bases for the introduction of these records, as he is not required to disclose his trial strategy to the prosecutors in this case to obtain evidence material to his defense.

Additionally, we are not aware of a single witness who followed each of the Defendants' opinions on social media for all of the "at issue" trades. Records reflecting that these witnesses reviewed other posts and statements by Defendants but chose not to trade—or chose to engage in trades and profited from the defendants' free tips and opinions—cuts against the government's current theory.

The government has failed to show that complying with Request One would be unreasonable or unduly burdensome. Rather, Request One seeks the export of the account data[6] during the relevant time-period because it is the undersigned's understanding that Twitter permits a user to export the account data wholesale in this fashion, and thus producing the export is the least burdensome way for a witness to provide this material to the defense. The defense remains willing and available to further negotiate the scope with particular witnesses who have concerns. *Accord Jindal*, 2022 WL 997174, at *3 (denying motion to quash and noting that the defendant "remains willing to negotiate the scope and timing of the document productions to alleviate any potential burden in that respect." (internal quotations omitted)). The government certainly does not suggest an alternate method that would be less burdensome.

   **b.**   ***Request Two: Digital copies of "Friends" and "Servers" from the witness's Discord account, along with Discord conversations from 2019 to the present pertaining to investments, stocks, or financial matters.***

This request is similar to Request One but seeks certain records from the witness's Discord account as opposed to the Twitter account. Again, the government has claimed that these witnesses followed and relied on Defendants' Discord server and accounts and intends to elicit testimony and evidence of these witness's activity using their Discord accounts. To access Discord and the

---

[6] The government's argument that the Court should quash this request as non-specific because it does not request a "document," (Dkt. 466 at 8), reflects the government's ignorance of Rule 17(c), which plainly permits subpoenaing "data" and "other objects." Fed. R. Crim. P. 17(c).

Atlas Trading server, the witness must have had his own Discord account. Frankly, permitting any witness to testify about their activity on Discord without producing the underlying records reflecting that activity would violate the best evidence rule. Further, any witness who entered the Atlas Trading server had to agree to several disclaimers and rules, which are pertinent to rebut the government's theory of materiality. Copies of the witness's Friends and Servers will provide evidence of whether and who the witness actually followed on Discord, whether the witness followed one or more of the defendants, and whether and when the witness gained access to the Atlas Trading server. These records will also show other accounts—including other financial friends and accounts—that the witness followed, which is material to evaluate the government's claim that the witnesses reasonably relied on one or more defendants' social media posts.

Like the requested Twitter data, the defendants cannot obtain this data absent compliance with this subpoena request, and compliance with this request is neither unreasonable nor unduly burdensome. Much of the data will be computer generated, and its evidentiary value is not necessarily based on the truth of the matter asserted.

> **c.** **_Request Three: Documents sufficient to show the witness's username on other social media accounts._**

This simple request is specific, material to the defense, and not unduly burdensome. Identifying the testifying witness's additional social media accounts will permit the defense to obtain records relevant to rebut the government's assertion that any of these witnesses reasonably relied on specific posts on certain defendants' Twitter and Discord accounts. Specifically, these records can show that the witnesses used social media for entertainment, not financial advice, and that given what they followed on social media, it was not reasonable for any of them to rely on the memes Constantinescu posted as financial advice. Nor is this request unduly burdensome—the

defense is seeking only usernames, not complete sets of records of these other social media accounts.

<blockquote>

**d.**          ***Request Four: Copies of the witness's brokerage accounts from January 2019 to April 2022, including all trade records.***

</blockquote>

The government intends to elicit testimony from these witnesses that they engaged in stock trades as a direct result of one or more defendants' social media posts, from which they allegedly lost money. This request is specific and evidentiary—it seeks business records of the witness's brokerage accounts, which the government has alleged these witnesses used to execute trades on the advice of one or more of the defendants. Like the social media records, the trading records are the best evidence of each witness's trial testimony. These records will show when and whether the witnesses executed trades during the relevant time-period and will reflect that these witnesses did not execute each trade that each defendant recommended, which is material and exculpatory evidence to cut against the idea that any of the at-issue posts or statements were material to the witness's trading behavior.

Additionally, the records will reflect the witness's prior trading history prior to encountering any of the defendants' statements that the government is trying to criminalize. The witness's prior trading history is relevant to show that the witness was not materially relying on the defendants' statements, but instead was trading consistently with how they traded prior to encountering the defendants' posts. By way of example, at least one of the witnesses that the government claims is a victim was employed as a professional market-making trader. Business records reflecting this witness's trading activity *prior* to his purported reliance on the defendants' social media activity is crucial to show that the memes Constantinescu posted did not meaningfully alter the witness's trading behavior. These records will also show the volume of the witness's trading, which is material evidence to further cut against the notion that they reasonably relied on

any of the defendants' trades. The witness's trading records will reflect whether the witness followed this advice (which it does not appear they did), which, in turn, cuts against any argument that they conducted these trades by reasonably relying on anything that the defendants posted.

These trading records are also essential evidence of whether the witnesses executed trades after they purportedly reviewed a post. The records reflecting the timing of the purchase and sale decisions of these witnesses is essential to permit Constantinescu to test the government's theory that these trades were executed as a result of the defendants' statements, and that there was a loss that was realized following the disclosure of the alleged misstatements.

The government cannot reasonably contend that this is not admissible evidence—the government is seeking to admit created summaries of some of these records, notwithstanding that the government did not choose to obtain complete sets of these business records in the course of its investigation. Constantinescu must have these records to determine the appropriateness of these summaries or whether the government has created these summaries in a misleading manner, as it has with other of its trial exhibits.

And, like the other data requested by these subpoenas, Constantinescu cannot obtain this information by other means. Requiring production of routine account records at the heart of trial testimony is plainly not unreasonable or unduly burdensome.

> **e.**    ***Request Five:   Documents sufficient to show the statements and information the witness contends he relied upon while trading the stocks identified by the government at issue in this case.***

The government's objection to the defendant seeking records reflecting information that the witness believed to be material when conducting trades at issue at trial is inappropriate. This request seeks specific information for those trades that the government has identified it intends to proceed forward on at trial. The jury must be permitted to evaluate all of the information that the

witness considered material in undertaking the stock trade in order to determine whether the witness's reliance on the defendants' statements was reasonable. None of this information is hearsay—it is not being sought for the truth of the matter asserted, but instead to provide an accurate picture of what the witness believes he relied upon when undertaking the decision to buy or sell the stock he intends to testify about.

### f. Request Six: Copies of communications the witness engaged in about the defendants.

This is specific, relevant evidence about each witness's testimony, and the Court has already set a deadline in this case for the exchange and production of witness statements. A witness's statements about the defendants the witnesses are testifying against is relevant and material to the defense. In the event the witness never spoke of any of the defendants, the absence of those statements is also relevant to rebut the government's theory that any of these witnesses seriously considered the defendants important sources of financial advice or viewed them responsible for the witness's trading losses.

### g. Request Seven: Copies of communications the witnesses have regarding the social media accounts identified by the government in the indictment as belonging to the defendants.

This request seeks nearly the same information as Request Six and is appropriate for the same reasons set forth for Request Six.

### 3. Rule 17(h) only bars the use of trial subpoenas to get witness statements in a party's possession because Rule 26.2 governs the timing for disclosure of those statements (the deadline for which this Court has already set and has passed).

The government's attempt to block the defendants from obtaining from the witnesses their written communications about the subject matter of their testimony ignores the second half of Rule 17(h) itself, which the government omits from its brief. The current version of Rule 17(h) states: "No party may subpoena a statement of a witness or of a prospective witness under this rule. *Rule*

*26.2 governs the production of the statement*." Fed. R. Crim. P. 17(h) (emphasis added). Rule 26.2, in turn, addresses the timing of producing witness statements in the possession of the government or the defendant. Rule 26.2 does not address witness statements in the possession of third parties. This Court previously ordered that witness statements be produced back in July 2023, and the government did not object to that earlier disclosure deadline. (Dkt. 254).

As originally enacted, Rule 17(h) provided that "[s]tatements made by witnesses or prospective witnesses may not be subpoenaed *from the government or the defendant* under this rule, but shall be subject to production only in accordance with the provisions of Rule 26.2." *See* Order of the Supreme Court, 207 F.R.D. 89, 440 (2002) (emphasis added). When Rule 17(h) was amended to its current version in 2002, the italicized language above was removed. But the Advisory Committee made clear that this "change[] [was] intended to be stylistic only," and was simply "part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules." 207 F.R.D. at 443.

The government makes no attempt to explain what the second half of Rule 17(h) means if its unreasonably strained interpretation is accepted by this Court. Nor does the government explain how the defendants are to obtain the statements of testifying witnesses that relate to the heart of their testimony. The government's argument was recently addressed and rejected by Judge Chin of the Second Circuit, sitting by designation, in *United States v. Goldstein*, 2023 WL 3662971 (E.D.N.Y. May 25, 2023). There, the government made the same argument: that defendants could not subpoena witness communications from witnesses. Judge Chin rejected that argument, noting that "several district courts have concluded that Rule 17(h) only applies to witness statements in the possession of a party." *Id.* at *5 (citing *United States v. Chavez,* 2020 WL 109703, at *3 (N.D. Cal. Jan. 9, 2020) (noting that "[n]o appellate court appears to have considered whether Rule

17(h)'s prohibition against subpoenaing witness statements applies to statements that are not . . . in the United States' possession" and concluding that Rule 17(h) "should not be interpreted to prevent a party from subpoenaing witness statements in the possession of a non-party." (citing *United States v. Hussain,* 2018 WL 1091083, at *2 (N.D. Cal. Feb. 28, 2018); *United States v. Young,* 2004 WL 784840, at *2 (W.D. Tenn. Mar. 4, 2004)))).  The court noted further that while some district courts have held differently, "these conclusions were reached summarily, without addressing the history or purpose of the rule." *Goldstein*, 2023 WL 3662971, at *5.  Noting that practically speaking, accepting the government's reading would mean that defendants would have "no ability to obtain prior statements from witnesses that are not in the possession of the Government," the court rejected the government's argument, noting that the prior version of the Rule supported the reading that it should only apply to statements in a parties' possession, and noting further that the rule's amendment was intended to be stylistic only. *Id.* at *6.

**4. *In the event the Court has concerns regarding the relevance or evidentiary nature of these items, it should permit an* ex parte *hearing to permit further disclosure of the defendants' case, in camera review of the records, and the narrowing of the requests, if necessary.***

As outlined above, the subpoenas that have been issued to certain witnesses in this case are appropriate.  But even if the Court has concerns, quashing the subpoenas outright is not the appropriate remedy.  The Fifth Circuit has made clear that "[g]enerally, modification of a subpoena is preferable to quashing it outright." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).  And the Supreme Court went a step further, noting that in the event a subpoena seeks items that are overbroad, "it is not upon the person who faces punishment to cull the good from the bad." *Bowman Dairy Co.*, 341 U.S. at 221.

Likely following the Fifth Circuit's guidance that modification is preferable to quashing a subpoena, courts in Texas have rejected the government's attempt to quash subpoenas outright,

and instead have made minor adjustments to the language of subpoenas. *See, e.g.*, *Gas Pipe, Inc.*, 2018 WL 5262361 (modifying slightly subpoena requests rather than quashing subpoena outright). In the event the Court needs more information, the Court should hold an *ex parte* hearing to permit Constantinescu to elaborate further on how these documents are relevant and material to his defense without making him reveal further his trial strategy further to the prosecutors. And, the Court should be mindful of the Fifth Circuit concurrence in *Arditti* noting that, if the Court is inclined to quash a request, "[i]n the ordinary case, [the Fifth Circuit] would expect the district court to *review* the material *in camera* to determine whether the specificity, relevancy and evidentiary nature of the material warrants its production." *Arditti,* 955 F.2d at 347 (concurrence).

Dated: December 1, 2023

Respectfully submitted,

Matthew A. Ford
Texas Bar No. 24119390
mford@fordobrien.com
Jamie Hoxie Solano
Admitted Pro Hac Vice
jsolano@fordobrien.com
Stephen R. Halpin III
S.D. Tex. Bar No. NY5944749
shalpin@fordobrien.com
FORD O'BRIEN LANDY, LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Telephone: (512) 503-6388
Facsimile: (212) 256-1047

*Attorneys for Defendant*
*Edward Constantinescu*

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2023, a true and correct copy of the foregoing document has been electronically served on all counsel of record via the Court's CM/ECF system.

/s/ Jamie H. Solano
Jamie H. Solano