UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Case No. 4:22-cr-612 |
| CONSTANTINESCU, *et al.* | § § | The Honorable Andrew S. Hanen |
| Defendants. | § § | |

**United States' Reply in Support of Motion to Quash Impermissible Subpoenas**

Defendant's Response (ECF No. 469, "Resp.") to the United States' Motion to Quash (ECF No. 466, "Br.") does not meet his burden to establish the subpoenas are permissible under *United States v. Nixon*, 418 U.S. 683 (1974), which governs. Rather, the Response demonstrates the subpoenas for what they are: impermissible attempts to end-run *Nixon* because Defendant cannot satisfy the law. Defendant is fishing for red herring. The Court should shut down this wayward expedition and quash the improper subpoenas.

**I.   The Court has plenary power to quash improper subpoenas, and the United States has standing to assert its legitimate interests as well as the those of interested witnesses.**

Defendant spends much of his response on standing. But the Court need not even address standing to exercise its plenary power to quash the improper subpoenas. *See, e.g.*, *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) ("Every subpoena must be a good faith effort to obtain evidence and the district court may ensure that Rule 17(c) is used only to that end through the court's power to quash or modify subpoenas." (cleaned up)). Regardless, the United States has demonstrated both a legitimate interest in protecting its trial witnesses from undue harassment, as

well as at least eleven witnesses who have received subpoenas and expressed interest in the United States quashing them. (*See* Br. at 6–7.)

Defendant claims that "[t]he government has failed to show that any witness is being harassed and does not have a good faith basis to claim otherwise." (Resp. at 6.) But in an FBI FD-302 *defense counsel attached to their own brief*, a victim-witness reported the subpoena "was intimidating and made her nervous to receive it." (Resp., Ex. 2 at 3.) That report, coupled with the impermissibly broad and irrelevant demands imposed by the subpoenas and the defense's bad faith in withholding returns allegedly already received, supply more than sufficient basis to establish the United States' interest in protecting victim-witnesses from harassment. (*See* Ex. 1.) There are FD-302s that the defense has beyond those which the defense self-selected and attached to their brief in which other victim-witnesses raise similar concerns.

Defendant makes much of the fact that H.B. has counsel. That counsel explained to the undersigned that he represents H.B. in civil matters, does not represent H.B. in this matter, and both counsel and H.B. wanted the United States to move to quash the subpoena he received. If the Court desires further information, H.B.'s civil counsel offered to provide whatever the Court would like. Further, the United States does not believe any of the other ten victim-witnesses who expressed desires for the United States to quash the subpoenas they received have counsel in this matter.

Defendant's Response addresses only "Witness-1." The undersigned asked defense counsel to identify Witness-1 to better understand defense's representations with respect to that single witness. Defense counsel declined to identify Witness-1. (*See* Ex. 1.)

2

> **II.    The Supreme Court's *Nixon* factors apply to Defendant's subpoenas, not a New York district court test reserved for subpoenas issued "on the eve of trial" for information "material" to a defense.**

Defendant's main substantive argument is that *Nixon* does not apply. But, of course, *Nixon* does apply and governs Rule 17 subpoenas in this circumstance. Defendant cites *United States v. Goldstein*, 21-cr-550, 2023 WL 3662971 (E.D.N.Y. May 25, 2023), and its predecessors claiming those cases stand for the proposition that it is "not appropriate" to apply *Nixon* "when a criminal defendant is seeking documents from a third-party that may be material to a defendant's defense." (Resp. at 11.) But that is not the standard those courts applied. Defendant *omits* the applicable four-part test, likely because it requires the request to be *on the eve of trial*, which is fatal to his claim.

What those courts actually said was that *Nixon* "is inappropriate where production is requested by (A) a criminal defendant; (B) *on the eve of trial*; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be *material* to his defense." *Goldstein*, at *2 (quoting *United States v. Tucker*, 249 F.R.D. 58, 65 n.43 (S.D.N.Y. 2008) (emphasis added)). The court in *Tucker* that announced this standard made clear:

> Tucker's position is bolstered by the status of the proceedings. Were his request made six months before trial, the government's argument that it would be a "fishing expedition" would be much stronger. But Tucker asked this Court to issue the subpoena one business day before trial was scheduled to begin.

*Tucker*, 249 F.R.D. at 66.

And even those courts emphasize that "materiality" is critical because "Rule 17(c) subpoenas are not to be used as broad discovery devices, but must be reasonably targeted to ensure the production of material evidence." *Id.* ("Under this standard, a subpoena of all telephone recordings made by cooperating witnesses while in custody would not always be appropriate because a defendant may not have articulable suspicion that the recordings would be material to

3

the defense."); *see also Goldstein*, at *3 ("This standard does not change the fundamental characteristic of Rule 17(c) subpoenas . . . . The 'fishing expedition' prohibited under *Nixon* is still inappropriate under *Tucker*." (cleaned up)).

Defendant's response lays bare the subpoenas for what they are: attempts to end-run around the applicable law because Defendant cannot satisfy the *Nixon* factors. Defendant recognizes that and, thus, asks this Court to disregard Supreme Court precedent. The Court cannot (and should not) disregard the Supreme Court, particularly under a New York district court test that does not apply by its own terms.

### III. Defendant cannot meet his burden to satisfy the *Nixon* factors.

In attempting to defend the improper subpoenas, Defendant chides the United States for failing to identify "particular concerns" or lodging "specific objections." Setting aside the fact that the United States identified many specific concerns with these subpoenas, it is not the United States' burden to do so. Rather, it is Defendant's burden to meet the *Nixon* factors. *See, e.g.*, *Nixon*, 418 U.S. at 700; *United States v. Barnes*, No. 04-cr-186, 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008) ("The defendant has the burden of specifically identifying the materials sought, and showing that they are relevant and admissible."). And Defendant fails even to apply those factors, let alone to meet his burden.

Defendant's half-hearted attempt to articulate the relevance (let alone admissibility) of the demanded materials does not come close to meeting the *Nixon* factors. Describing requests as "simple" and "limited" does not make them so. On their face, these requests are overly broad, burdensome, and should be quashed. For example, demanding documents from 2019, as two demands do, is not "limited" in a case charging a scheme beginning in 2020. Needless to say, those records would not be relevant, let alone admissible as *Nixon* requires.

Defendant's brief is replete with statements that similarly underscore how attenuated these materials are from being the *specific admissible evidence* that properly may be obtained by a Rule 17 subpoena under *Nixon*. For example, simply exporting a victim-witness's entire social media account from Twitter or Discord does not transform the reems of underlying hearsay into business records. If Defendant has specific posts he wants to obtain and can articulate which ones they are and how they are not inadmissible hearsay under a specific viable legal theory—and show that he cannot obtain those posts from other means like searching the internet—that could be a legitimate attempt to satisfy of the *Nixon* factors. *See, e.g.*, *Nixon*, 418 U.S. at 700. But what Defendant has offered does not come close and shows this fishing expedition for what it is.

In fact, Defendant already has substantial relevant material for these witnesses that undercuts the subpoena demands. For example, Defendant has the SEC "blue sheets" for the securities fraud counts. The blue sheets are trading records that show everyone who traded in the substantive count tickers during the relevant time periods, including the victim-witnesses. Thus, Defendant already has the exact trading data—down to the date, time, price, and quantity—that is at issue in this case with respect to the victim-witnesses. Defendants can match that up with their own social media activity to see exactly which of their social media posts were at issue on the relevant days. And beyond the blue sheets, many of the victim-witnesses themselves produced their brokerage records to the United States, which the United States of course already turned over to Defendant and were noticed on the United States' initial exhibit list.

Regardless, this trading-records demand and Defendant's proffered use should concern the Court. How some irrelevant trading a victim-witness may have done in some other stock not at issue simply is not related to this case, let alone admissible evidence properly subject to a Rule 17 subpoena. Instead of focusing on the relevant trading, which Defendant already possesses, he

5

apparently intends to attempt to conduct a mini-trial for each victim-witness about his or her general trading patterns in tickers or time periods that are not at issue in this case. Some of the defense's confusion may result from misunderstanding the materiality standard, which their brief repeatedly, mistakenly refers to as a victim-witness having "reasonably relied" on Defendant's posts. *Compare* Resp. at 16, 17, 18 *with United States v. Ghilarducci*, 480 F.3d 542, 543 (7th Cir. 2007) ("The defendants' joint argument fails, however, because they confuse materiality—a genuine element of criminal fraud—for reliance, a concept without bearing in criminal fraud prosecutions."); *In re Crazy Eddie Secs. Litig.*, 812 F. Supp. 338, 350 (E.D.N.Y. 1993) (reliance not an element of fraud). Whatever the cause of confusion, the Court should shut down this fishing expedition and nip in the bud these irrelevancies.

Similarly, Defendants already have the FD-302s of the interviews the United States conducted with victim-witnesses, which generally include information regarding their social media accounts and activity. In some instances, the United States identified when victim-witnesses commented on a Defendant's relevant social media post. Where applicable, Defendant already has those posts attached to the FD-302s or produced in discovery. And the Defendant has made no showing demanded by *Nixon* that "the materials are not otherwise procurable in advance of trial by the exercise of due diligence," such as looking for the victim-witness's social media accounts online. *See Nixon*, 418 U.S. at 700. Defendant has also failed to make that required showing with respect to social media "friends" of victim-witnesses, which the subpoenas also demand.

Defense counsel's responses belie their hope that this fishing expedition will produce impeachment material—which is precisely *not* the *specific admissible evidence* germane to Rule 17 subpoenas under *Nixon*. *See, e.g.*, *Nixon*, 418 U.S. at 700; *United States v. Cuthbertson*, 651 F.2d 189, 144–45 (3rd Cir. 1981) (affirming district court quashing Rule 17 subpoenas where

6

defendants had not demonstrated evidentiary use of materials beyond impeachment material); *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) (finding trial court erred in denying motion to quash subpoena where only evidentiary use advanced was impeachment); *United States v. Flanagan*, 308 F.2d 841, 842 (5th Cir. 1962) (affirming no abuse of discretion in denying subpoena for impeachment material); (Ex. 1).

Similarly, Defendant's confused references to the "best evidence rule"—which obviously applies only in situations where a party seeks to prove the contents of an original writing—has no application to the hearsay Defendant hopes to find in his fishing expedition. *See* Fed. R. Evid. 1002. The "best evidence of each witness's trial testimony" is not inadmissible hearsay or irrelevant trading records—it is the witness's testimony. (*See* Resp. at 16.)

The Court should carefully scrutinize Defendant's brief because the defense's misstatements are too numerous to correct and demonstrate their vitriol for the empty rhetoric it is. In addition to misstating the legal standard they hope for the Court to apply, Defendant makes misstatements of fact that are falsified by his own exhibits. As but one example, Defendant writes: "While the government vaguely claims in its motion that some witnesses it spoke with mentioned that some of the requests are seeking records the witnesses do not understand to be relevant, the government has refused to relay those concerns to defense counsel." (Resp. at 3.) But an FBI FD-302 of a victim-witness interview that *defense counsel attached to their own brief* states: "On October 31, 2023, [witness] called SA Hale and stated that he felt the subpoena was asking for information which was not relevant." (Resp., Ex. 2 at 3.) At best, Defendant's representation is

careless. It calls into question the defense's other representations, which the Court should carefully scrutinize.

Defendant also argues the Court should deny the Motion, claiming the "government has refused to meet and confer." (Resp. at 2.) The claim is ironic given Defendant's penchant for filing motions without any prior notice to the United States, let alone attempts to meet and confer, and without any certificate of conference. (*See, e.g.*, ECF Nos. 286, 322, 328.) It is doubly ironic given the United States *did* explain its position to defense counsel who declined to withdraw the impermissible subpoenas. (*See* Ex. 1.) That is the only proper relief, rendering further conferral useless.

Finally, the Court need not even reach Rule 17(h)'s bar on obtaining witness statements to quash these subpoenas. But it, too, provides the Court solid ground to quash the subpoenas under its plain terms. (*See* Br. at 6, 10.) A New York court's contrary thoughts notwithstanding, the plain text of the Rule as well as significant other authority supports the proposition that the Rule means what it says: "No party may subpoena a statement of a witness or of a prospective witness under this rule." Rule 17(h); (Br. at 6, 10).

### IV. The defense's refusal to produce returns already received further demonstrates the subpoenas' impropriety.

The defense's gamesmanship with the returns Defendant allegedly already received should tell the Court all it needs to know about the bad faith in which these subpoenas are issued. Defendant claims already to have received requested documents from unidentified individual(s), anonymized in his brief as "Witness-1." (Resp. at 3, 7.) After seeing these claims, the United States requested production of the materials. (*See* Ex. 1.) The defense declined to produce materials. (*Id.*)

This response highlights Defendant's impermissible gamesmanship with these subpoena returns. Rule 17 materials are to be returned to the Court. The Rule states plainly that "[w]hen the

8

items arrive, the court may permit the parties and their attorneys to inspect all or part of them." Rule 17 is not intended to provide information only to one party to gain a tactical advantage. *See, e.g.*, *id.*; *United States v. Litos*, 12-cr-175, 2014 WL 806022, at *5 (N.D. Ind. Feb. 24, 2014) ("The plain language of Rule 17(c) negates any assumption that production should be on an ex parte basis." (cleaned up) (collecting cases)); *United States v. Al-Amin*, 2013 WL 3865079, at *4 (E.D. Tenn. July 13, 2013) ("Since the records must be returned to the Court, there is no occasion for just one party to the litigation having knowledge of, possession of, or access to the records. *It is an abuse of Rule 17(c) for parties or their attorneys to obtain such records or objects from subpoenaed persons and to retain the records or objects prior to their return to the Court.*" (emphasis added)).

Thus, the Court should order Defendant to direct any returns received under these improper subpoenas to the Court and permit their inspection by the United States as well. To the extent the Court is not inclined to quash these subpoenas in their entirety (which it should do), the Court should order Defendant to similarly handle all future returns. To the extent the Court wishes to hold a hearing on the matter, it certainly should not be an *ex parte* proceeding as Defendant suggests, further demonstrating the gamesmanship.

## Conclusion

The Court should quash Defendant's subpoenas because Defendant's brief and correspondence demonstrate the subpoenas for what they are: unveiled fishing expeditions attempting to end-run the Supreme Court's "strict standard" from *Nixon* and then withhold the returns in bad faith. The Court should not permit it.

Dated: December 7, 2023　　　　　　　　　　Respectfully submitted,

                                        GLENN S. LEON
                                      Chief, Fraud Section
                                      Criminal Division, Department of Justice

By:   */s/John J. Liolos*
        Scott Armstrong, Assistant Chief
        John J. Liolos, Trial Attorney
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Ave. NW
        Washington, DC 20005
        Tel.: (202) 768-2246


        ALAMDAR S. HAMDANI
        United States Attorney
        Southern District of Texas

By:   */s/ Thomas Carter*
        Thomas H. Carter
        Assistant United States Attorney
        State Bar No.: TX24048387
        1000 Louisiana Street, 25th Floor
        Houston, Texas 77002
        Tel.: (713) 567-9470

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2023, I will cause the foregoing brief to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section