UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Case No. 4:22-cr-612 |
| CONSTANTINESCU, *et al.* | § § | The Honorable Andrew S. Hanen |
| Defendants. | § § | |

**United States' Response in Opposition to Defendant Constantinescu's Motion to Continue**

The United States, by and through undersigned counsel, responds to Defendant Constantinescu's Motion for a Continuance (ECF No. 501), which the Court should deny. The timing and circumstances of this Motion belie its true intent: delay and obfuscation. The defense raised no issues with the United States' response to the Court's September 12, 2023 discovery Order since October 2023, over three months ago. (*See* ECF No. 448.) None of these topics were addressed at the lengthy discovery hearing in December. It is only the Monday after the United States filed its updated exhibit and witness lists, and again provided courtesy copies of its trial exhibits to the defense, that Defendants attempt to manufacture a continuance with bluster. The Court should see this unveiled gamesmanship for what it is: an increasingly desperate delay tactic that's thinner on substance and thicker on *ad hominem* each time it's presented.

The United States understands its discovery obligations and takes them seriously. So does the SEC staff that investigated Defendants ("SEC Investigative Team"). In response to the Court's prior rulings on this topic, the United States told the Court exactly what it planned to do, was doing, and did. (*See* ECF Nos. 446, 450.) The United States, of course, ensured the SEC was aware of the Court's September 12, 2023 Order, as well as explained what was required under *Brady*, and requested any *Brady* material related to the Defendants or Trial Episodes.

As the United States clearly explained in its October 13, 2023 Notice updating the Court on discovery efforts, those efforts involved the United States collecting and producing the SEC Investigative Team's Investigative File,[1] which the United States substantially completed. (ECF No. 446.) The SEC Investigative Team, at the request of the United States, also made broader inquiries within the SEC for relevant material information pertaining to Defendants or the Trial Episodes,[2] as discussed more thoroughly below. Thus, the United States transparently set about complying with the Court's Order, explaining its process and producing the results. There is no basis for feigned surprise or outrage. The Court should shut down this side show and proceed to the inevitable trial on the merits.

Stripped of invective, non-sequitur, and facially incorrect recount of the case's history, the Motion boils down to demands for two categories of information: (1) information in the SEC Investigative Team's Investigative File about an expected United States witness, H.B.; and (2) information about trading in stock tickers and/or time periods that is irrelevant to the Trial Episodes—the only stock trading at issue for trial. The Court should deny the Motion because (1) the United States has already produced to Defendants everything related to H.B. from the SEC's Investigative File, and (2) information about trading in stock tickers the United States will not put at issue at trial is not relevant, let alone the material exculpatory information that is *Brady*. The United States, as the Court is well aware, specifically excised from its trial case the Defendants' other criminal trading conduct beyond the Trial Episodes in response to the Court's

---

[1] As defined in the United States October 13, 2023 Notice to the Court, the SEC's Investigative File includes "materials obtained by the SEC through process to third parties as part of the SEC's parallel, civil case against the Defendants." (ECF No. 446 at 2.)

[2] As the United States has previously explained and repeated, the Trial Episodes are the 54 alleged executions of Defendants' scheme the United States plans to present at trial. The defense has been on notice of this defined set of stock tickers and trading periods since the United States' September 15, 2023 filing providing the list of Trial Episodes. (*See* ECF No. 424, Ex. 1.)

concerns about trial logistics, as was repeatedly discussed in open court and noticed in filings.

I. **The Court should deny Defendant's Motion because it seeks information Defendant already has.**

The SEC's Investigative File the United States collected and produced included all the material the SEC Investigative Team has regarding H.B. To be clear: the United States has produced all there is to produce about H.B. at this point.

It is also helpful context for the Court to understand the information H.B. provided is overwhelmingly inculpatory, not the stuff of *Brady* material. For example, H.B. is the individual who captured the recording of the conversation including Defendants Cooperman and Knight in which Knight describes Defendants' scheme as "robbing f*cking idiots of their money." (*See* Superseding Indictment, ECF No. 134, ¶ 49.)

Defendant complains he doesn't have notes of SEC interviews with H.B. (Mot. at 12.) But the United States produced six different PDF documents containing 14 pages of handwritten notes from interviews the SEC had with H.B. The United States produced these documents to the defense on December 14, 2023, shortly after receiving them from the SEC.[3] There is no mystery here. The Court can quickly dispense with this claim because the defense already has all there is to get. Conclusory speculations otherwise are baseless and should not delay these proceedings.

II. **The Court should deny Defendant's motion because it is a fishing expedition for irrelevant material about stock trading that will not be at issue at trial.**

1. **The United States has worked transparently, in good faith, to satisfy the requirements of the Court's Orders.**

The United States first produced proposed trial exhibits in August 2023, in accord with the then-operative scheduling order. (*See* ECF No. 254.) Those exhibits included 397 different

---

[3] To the extent the defense has been unable to locate these materials with the organized discovery index the United States has provided and their own diligence, the notes are located at the Bates range: DOJ-PROD-0000370004–DOJ-PROD-0000370017.

executions of the fraudulent scheme alleged. Most Defendants balked at the scope of their own conduct. (*See, e.g.*, ECF No. 361, 373, 408.) For example, Defendant Rybarczyk attempted to limit the United States' trial presentation to only the 19 episodes charged as substantive securities fraud in the Superseding Indictment. (*See* ECF No. 408.) Others sought continuances after the United States disclosed its exhibits, now a repeated refrain. (ECF Nos. 361, 365, 379, 383.)

As this Court is familiar, on September 7, 2023, the Court held a discovery hearing. Following the hearing, the Court ordered the United States to obtain from the SEC and FINRA "documents [that] are limited to exculpatory records concerning the stocks that are the basis of the charges and the stocks included in all of the extraneous trades that the Government is seeking to admit into evidence." (ECF No. 414 at 1.) At the hearing, the Court also raised concerns about the scope of the trial presentation in this matter, to include the number of at-issue episodes beyond those referenced in the Superseding Indictment. *See* Sept. 7, 2023 Hr'g Tr. at 80:4–23.

Addressing the scope of both discovery and trial presentation, the Court provided guidance at the hearing indicating the United States was in the best position to define that scope to the discrete set of stock tickers and time periods the United States would introduce at trial:

| | | |
|---|---|---|
| Mr. Armstrong: | | [T]o be on the same page, what are you ordering us to go try to find out? |
| The Court: | | Well, if it . . . has to do with any of the stocks in the indictment or it has to do with any of these extraneous stocks that you think you're going to offer into evidence. |
| | | . . . |
| Mr. Armstrong: | | . . . So if Your Honor is inclined to limit our proof at trial to a more discrete set of episodes, I think that would go a long way in, fingers crossed, helping speed along our request to . . . either of these agencies. |

| | |
|---|---|
| The Court: | I'm not sure that I'm in a position to do that. You're actually in the better position. If you want to – if you want to limit it to the 45 that you've already figured out that these are the most relevant . . . . |

Sept. 7, 2023 Hr'g Tr. at 58:3–8, 85:10–19.

As the Court is now familiar, that is precisely what the United States did. And the United States told the Court what it was doing as the United States was doing it. On September 15, 2023, the United States made clear that the discrete set of stock tickers and trading periods comprising the 54 Trial Episodes would be the full universe of trading relevant for trial. (ECF No. 424, Ex. 1.) As the United States previously explained, "[b]y narrowing the trial episodes from 397 to 54, the United States is therefore seeking to align itself with the Court's practical concerns about the length of trial, while still seeking to hold Defendants to account at sentencing for a reasonable scope of their conduct." (ECF No. 450 at 3.)

As also previously explained, the United States then proceeded to make the requests of the SEC and FINRA about relevant material pertaining to the Defendants or the Trial Episodes, in accord with the Court's Order and guidance. (ECF Nos. 446, 450.) The United States collected and produced the SEC Investigative Team's Investigative File as a result of that effort.

Beyond that, the SEC Investigative Team engaged in a diligent internal process seeking relevant material information about the Defendants or Trial Episodes beyond the Investigative File.[4] That effort extended well beyond the SEC Investigative Team involved in the parallel

---

[4] With understanding and respect for the Court's prior rulings on this issue, and only for the sake of preservation of the record, the United States notes there remains a distinction in the law between who and what is and is not part of the "prosecution team." There are distinctions between the prosecutors and the SEC Investigative Team, and further distinctions between the SEC Investigative Team and the entire nationwide SEC agency, comprised of multiple departments. There is some limit to what is in the constructive knowledge or possession of the prosecutor. *See, e.g.*, *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("[K]nowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an

5

investigation of Defendants. As previously explained, that inquiry about the Defendants and Trial Episodes extended to other staff in the SEC's Division of Enforcement, and included SEC personnel involved in the drafting of the SEC "Staff Report on Equity and Options Market Structure Conditions in Early 2021" ("SEC Report"). (ECF Nos. 446, 450.) The SEC Investigative Team identified no *Brady* material as a result of that request. The fact that no material was produced does not mean there has not been an appropriate inquiry or that *Brady* material has been withheld—in this case, it means that none was discovered. To the extent Defendant asserts otherwise, claiming *Brady* material surely exists, Defendant has put forward no reasonable basis to support those conclusory speculations.

The United States proceeded openly, transparently, and in good faith, following the Court's rulings and discharging its obligations under those rulings. Anything beyond what the United States has already requested of the SEC represents a legally deficient fishing expedition to which the Court should put an end. *See United States v. Scott*, 555 F.2d 522, 528 (5th Cir. 1977) ("Brady does not permit a defense fishing expedition whenever it is conceivable that evidence beneficial to defendants may be discovered."); *see also United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) ("*Brady* requests cannot be used as discovery devices.").

---

unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." (quotations omitted)). The United States respectfully maintains that fact-intensive analysis applies to these inquiries each time they are raised. (*See*, *e.g.*, ECF No. 327.)

To be sure, the United States has proceeded in this inquiry as if the SEC Investigative Team was part of the DOJ prosecution team to accord with the Court's rulings. Notwithstanding further distinctions, and to accord further with the Court's orders, the SEC Investigative Team made broader inquiries of other teams within the SEC, as described.

**2. The Court should deny the Motion because the defense theory on which it is premised is unrelated to the charges or issues for trial.**

The defense avoids analytical rigor hoping to confuse the Court and conflate its way into a continuance by painting the stocks at issue in this case as some amorphous set of undefined "Meme Stocks." But there are clear lines drawn here the defense ignores. The United States has repeated those lines *ad nauseum*: the stock tickers and time periods in the Trial Episodes represents the only stock trading relevant for trial. (*See* ECF Nos. 424, 446, 450.) The United States, whose case it is to prove, is not putting at issue any trading outside the stocks or time periods in the Trial Episodes. So, any analysis of stock trading in different tickers or time periods *is not relevant*, let alone the *material exculpatory* information that is *Brady*. Such extraneous trading is inadmissible on numerous grounds, including general relevance (Rules 401, 402), irrelevant other conduct (Rule 608(b)), and numerous Rule 403 grounds including jury confusion, confusion of the issues, and waste of time. Nor would this material lead to admissible evidence or in any way affect the proceeding because it is not related to the Trial Episodes. *Cf. United States v. Sipe*, 388 F.3d 471, 485 (5th Cir. 2004). Notably, the SEC Report at issue "primarily examines the January 2021 trading activity in GME," or GameStop, which is not a Trial Episode.[5]

The defense ignores those clear lines, hoping somehow to say that some analysis of trading in, for example, GME—a stock *not* at issue and completely irrelevant to this trial—has something to say about trading in entirely different stocks or trading at different times. Obviously, one has nothing to do with the other. The defense tries to compare oranges in July with apples in September. And generalized explanations of the broader "meme stock" phenomenon simply have nothing to do with the elements of the offenses charged. Not only should the Court deny Defendant's Motion that is premised on the basis that there's some relevance or relation between

---

[5] *Compare* SEC Report at 2 *with* (ECF No. 424, Ex. 1).

trading in different stocks or at different times than the Trial Episodes, the Court should preclude *in limine* Defendant's attempts to elongate trial and create jury confusion by introducing evidence or questioning about such extraneous, irrelevant trading. The United States will so move to ensure trial is streamlined to relevant evidence probative of questions at issue.

The defense's confusion on many points of law may explain their muddled positions. For example, they insist that, because the United States trimmed its trial proof down to the 54 Trial Episodes at issue, which do not add up to the $114 million gain figure in the Superseding Indictment, that the United States must supersede and strategically chose not to. (Mot. at 2.) That is wrong on the facts and the law. The law is clear that such surplusage may be narrowed by the Court or the United States before being presented to a jury. *See, e.g.*, *United States v. Trice*, 823 F.2d 80, 90 n.8 (5th Cir. 1987) ("Surplusage in an indictment may generally be disregarded where the charge is not materially broadened and the accused is not misled."); *United States v. Ramirez*, 670 F.2d 27, 28–30 (5th Cir. 1982) (affirming district court's striking of surplusage from the indictment even though defendant's theory of defense was thereby altered).

The gain figure in the Indictment is not an element of the charges. Even Defendant Rybarcyzk conceded this. (ECF No. 408 at 5 ("The jury will not even be charged on the total loss amount.").) In fact, the success of a fraud scheme is legally irrelevant. *E.g.*, *United States v. Greenlaw*, 84 F.4th 325, 346 (5th Cir. 2023) ("[The] success of the [securities fraud] scheme is immaterial."). Evidence of profit goes only to motive. *See, e.g.*, *United States v. Jones*, 587 F.2d 802, 806 (5th Cir. 1979) ("[Defendants] benefitted personally from the over-billings and therefore had a motive [for the fraud].").

Similarly, whether "the Defendant's statement was not the cause of any loss suffered by the reader," is not relevant. (Mot. at 14.) Defendants continue to misapprehend the materiality

standard, which the Supreme Court has clearly explained: "[A] false statement is material if it has a natural tendency to influence, or is capable of influencing, the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999) (quotations omitted). Loss causation is not an element of criminal fraud. *See, e.g.*, 18 U.S.C. § 1348; *Neder*, 527 U.S. at 24–25 ("[C]ommon-law requirements of 'justifiable reliance' and 'damages' . . . plainly have no place in the federal fraud statutes. By prohibiting the 'scheme to defraud,' rather than the completed fraud, the elements of reliance and damage would clearly be inconsistent with the statutes Congress enacted.") (quotations and citations omitted). As the Court recognized, this case is about "[w]hen you say one thing and do another . . . ." Apr. 12, 2023 Hr'g Tr. at 23:22.

The defense's insistence that the 397 episodes of fraud previously alleged are set in stone as "the basis" for the conspiracy charge in Count One is similar nonsense. The conspiracy may be proved up with far less evidence than that. A single communication could do it.[6] And the scope of Defendants' alleged fraudulent activity extends even beyond those 397 episodes. But the United States will prove the charges only with the trading in the Trial Episodes. This is simply another manifestation of Defendants hoping to defend against a case that isn't being prosecuted. The line must be drawn somewhere. And, as this Court recognized, it is the United States who draws the line around the proof with which it chooses to meet its burden at trial, not the Defendants.

Thus, the Court should deny Defendant's Motion because it seeks delay for delay's sake, and to engage in a burdensome and legally bereft fishing expedition that cannot produce material

---

[6] A securities fraud conspiracy conviction under the charged statute requires proof only that:
   (1) Two or more persons made an agreement to commit securities fraud;
   (2) The defendant knew the unlawful purpose of the agreement; and
   (3) The defendant joined the agreement willfully, that is, with the intent to further the unlawful purpose.

18 U.S.C. § 1349; *United States v. Plato*, 593 Fed. App'x 364, 371 (5th Cir. 2015).

exculpatory information because it is not directed at issues for trial.

Finally, as a key procedural matter, the SEC is not a party to this action. The SEC Investigative Team is aware of the Court's Order, which it takes seriously, and has asked the undersigned to convey that, to the extent the Court desires further information before it can rule on the Motion, the SEC would request the opportunity to intervene and provide that information to the Court directly.

## Conclusion

The Court should deny Defendant's Motion because it seeks documents Defendants already have or are irrelevant to the issues for trial.

Dated: January 26, 2024                     Respectfully submitted,

                                              GLENN S. LEON
                                              Chief, Fraud Section
                                              Criminal Division, Department of Justice

By:     */s/ John J. Liolos*
        Scott Armstrong, Assistant Chief
        John J. Liolos, Trial Attorney
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Ave. NW
        Washington, DC 20005
        Tel.: (202) 768-2246

                ALAMDAR S. HAMDANI
                United States Attorney
                Southern District of Texas

By:    */s/ Thomas Carter*
        Thomas H. Carter
        Assistant United States Attorney
        State Bar No.: TX24048387
        1000 Louisiana Street, 25th Floor
        Houston, Texas 77002
        Tel.: (713) 567-9470

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2024, I will cause the foregoing brief to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section