## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Case No. 4:22-cr-612** |
| | § | |
| **CONSTANTINESCU**, *et al.* | § | **The Honorable Andrew S. Hanen** |
| | § | |
| **Defendants.** | § | |

## United States' Motions *in Limine*

## Table of Contents

I.  Motions the Court should grant. ...................................................................... 3

  1. The Court should preadmit exhibits of Defendants' own statements under Rule 801(d)(2)(A). .......................................................................................... 3

  2. The Court should admit the United States' summaries of voluminous evidence under Rule 1006. ............................................................................................ 4

  3. The Court should admit evidence intrinsic to the charged crimes and, alternatively, under Rule 404(b). ........................................................................................ 6

II. Evidence and/or argument the Court should preclude. ..................................... 11

  A. Legal Standard ............................................................................................ 11

  B. The court should grant the following motions *in limine* and preclude the subject evidence and argument. .............................................................................. 13

  1. The Court should preclude evidence and argument aimed at jury nullification. ........... 13

  2. The Court should preclude evidence and argument of Defendants' other "good" conduct, including stock trades outside of the Trial Episodes. ..................................... 15

  3. The Court should preclude irrelevant character evidence and evidence of specific instances of good conduct. ........................................................................... 18

  4. The Court should preclude Defendants' attempts to blame victims for Defendants' fraud. ........................................................................................................ 19

  5. The Court should preclude evidence and argument about FINRA reports. ................... 21

  6. The Court should preclude Defendants' attempts to introduce inadmissible hearsay. .. 25

  7. The Court should preclude hearsay attempting to disclaim liability for fraud. .............. 29

  8. The Court should preclude evidence and argument about the success (or lack thereof) of the fraudulent scheme because success of the scheme is not required for conviction... 30

  9. The Court should preclude irrelevant evidence and argument about causation of market movement and damages. .............................................................................. 33

  10. The Court should preclude evidence and argument about the SEC's Report. ............... 36

  11. The Court should preclude evidence and argument that Defendants hoped their followers would make money on the stocks in the Trial Episodes. .............................. 38

  12. The Court should preclude evidence and argument about prosecutorial decisions because those issues are irrelevant to the crimes charged. ............................................ 40

  13. The Court should preclude all evidence and argument about the conduct/misconduct of other uncharged individuals. ......................................................................... 43

  14. The Court should preclude evidence and argument about the novelty of the charges... 44

  15. The jury should hear no evidence or argument about pretrial discovery. ..................... 45

16. The Court should preclude evidence and argument about the United States' decision not to call a particular witness...................................................................................... 46

17. The Court should preclude Defendants from cross-examining cooperating witnesses as to the specifics of potential sentences under the advisory U.S. Sentencing Guidelines. 46

18. The Court should preclude evidence and argument regarding a witness's irrelevant drug use. ............................................................................................................................... 48

19. The Court should preclude Defendants from an advice of counsel defense or introducing evidence or argument about the "presence" of counsel unless Defendants satisfy the requirements to admit such a defense......................................................... 50

20. The Court should preclude Defendants from raising alibi defenses because they did not respond to the United States' request for notice of such defenses under Rule 12.1...... 52

21. The Court should preclude arguments without basis in law the Court has already rejected. ............................................................................................................................ 54

**Table of Authorities**

Cases:

*Bedingfield ex rel. Bedingfield v. Deen*, 489 Fed. App'x 219 (5th Cir. 2012) ............................ 28

*Cheek v. United States*, 498 U.S. 192 (1991)................................................................... 56

*Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015) ........................................ 56

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) ............................................................. 48

*Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257 (7th Cir. 1993)................................. 27

*In re U.S.*, 397 F.3d 274 (5th Cir. 2005)...................................................................... 41

*Linn v. United States*, 234 F. 543 (7th Cir.1916).......................................................... 40

*Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003) ................................... 58

*Moody v. Farrell*, 868 F.3d 348 (5th Cir. 2017) ............................................................ 28

*Moore v. United States*, 2 F.2d 839 (7th Cir.1924)....................................................... 40

*Neder v. United States*, 527 U.S. 1 (1999)............................................................... passim

*Pandolfo v. United States*, 286 F. 8 (7th Cir.1923)....................................................... 40

*Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60 (2d Cir. 1999) ........................... 24, 39

*Ranke v. United States*, 873 F.2d 1033 (7th Cir. 1989) ........................................... 32, 33

*SEC v. Constantin, et al.*, No. 4:22-cv-04306 (S.D. Tex.)........................................ 25, 38

*SEC v. Lek Sec. Corp.*, No. 17-cv-1789, 2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019) ......... 52, 53

*SEC v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013)............................................ 52, 53

*Shannon v. United States*, 512 U.S. 573 (1994)............................................................ 49

*Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260 (5th Cir. 1991)................................... 30

*United States v. Allen*, 201 F.3d 163 (2d Cir. 2000)...................................................... 20

*United States v. Anderson*, 558 Fed. App'x 454 (5th Cir. 2014).................................... 7

*United States v. Armstrong*, 517 U.S. 456 (1996) ........................................................ 41

*United States v. Armstrong*, 619 F.3d 380 (5th Cir. 2010) ............................................. 5

*United States v. Aslan*, 644 F.3d 526 (7th Cir. 2011) ................................................... 32

*United States v. Auzenne*, 2:19-cr-53, 2020 WL 6438665 (S.D. Miss. Nov. 2, 2020) ................ 47

*United States v. Ayelotan*, 917 F.3d 394 (5th Cir. 2019)................................................ 5

*United States v. Bailey*, 444 U.S. 394 (1980) ....................................................... 12, 56

*United States v. Baker*, 923 F.3d 390 (5th Cir. 2019)..................................................... 5

*United States v. Battles*, No. CR-11-354-D, 2012 WL 2087397 (W.D. Okla. June 8, 2012) ...... 20

*United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978)................................................................. 9

*United States v. Bentley–Smith*, 2 F.3d 1368 (5th Cir. 1993) ........................................................ 50

*United States v. Borrero*, No. 13-cr-58, 2013 WL 6020773 (S.D.N.Y. Nov. 1, 2013) ............... 46

*United States v. Bradley*, 644 F.3d 1213 (11th Cir. 2011) ............................................................ 27

*United States v. Branch*, 91 F.3d 699 (5th Cir. 1996) ................................................................... 27

*United States v. Brenner*, 229 F.3d 1147, 2000 WL 1239118 (5th Cir. 2000)............................. 50

*United States v. Cardascia*, 951 F.2d 474 (2d Cir. 1991)............................................................. 27

*United States v. Carr*, 740 F.2d 339 (5th Cir. 1984) .............................................................. 52, 53

*United States v. Champers*, 922 F.2d 228 (5th Cir. 1991)............................................................ 55

*United States v. Chapman*, 435 F.2d 1245 (5th Cir. 1970)........................................................... 47

*United States v. Clemons*, 676 F.2d 122 (5th Cir. 1982) ................................................................ 3

*United States v. Coffman*, 94 F.3d 330 (7th Cir. 1996) ................................................................ 20

*United States v. Cohen*, 631 F.2d 1223 (5th Cir. 1980) ................................................................ 28

*United States v. Colton*, 231 F.3d 890 (4th Cir. 2000) ................................................................. 20

*United States v. Comstock*, 974 F.3d 551 (5th Cir. 2020) ....................................................... 12, 13

*United States v. Coscia*, 866 F.3d 782 (7th Cir. 2017) ................................................................. 13

*United States v. Coyle*, 63 F.3d 1239 (3d Cir. 1995) .................................................................... 20

*United States v. Crosby*, 713 F.2d 1066 (5th Cir. 1983) .............................................................. 27

*United States v. Davenport*, 449 F.2d 696 (5th Cir. 1971) .......................................................... 19

*United States v. Davis*, 393 F.3d 540 (5th Cir. 2004).................................................................. 49

*United States v. Dillard*, 354 Fed. App'x 852 (5th Cir. 2009) .................................................... 19

*United States v. Drake*, 932 F.2d 861 (10th Cir. 1991) ............................................................... 20

*United States v. Dunn*, 961 F.2d 648 (7th Cir.1992) ................................................................... 40

*United States v. Ellisor*, 522 F.3d 1255 (11th Cir. 2008) ............................................................ 16

*United States v. Ferguson*, 676 F.3d 260 (2d Cir. 2011) ............................................................. 40

*United States v. Fleming*, 3:19-cr-254, 2022 WL 895920 (S.D. Miss. Mar. 25, 2022)............... 47

*United States v. Freeman*, 434 F.3d 369 (5th Cir. 2005)......................................................... 7, 8

*United States v. Funches*, 135 F.3d 1405 (11th Cir. 1998).......................................................... 14

*United States v. Ghilarducci*, 480 F.3d 542 (7th Cir. 2007) ....................................................... 31

*United States v. Gole*, 21 F. Supp. 3d 161 (E.D.N.Y. 1997) ....................................................... 41

*United States v. Goulding*, 26 F.3d 656 (7th Cir. 1994) ...................................................... 42

*United States v. Greenlaw*, 84 F.4th 325 (5th Cir. 2023) ..................................................... passim

*United States v. Grimm*, 568 F.2d 1136 (5th Cir. 1978) ......................................................... 16

*United States v. Harris*, 881 F.3d 945 (6th Cir. 2018) ......................................................... 5, 6

*United States v. Hagen*, 542 F. Supp. 3d 515 (N.D. Tex. 2021)........................................... 52, 53

*United States v. Herman*, 997 F.3d 251 (5th Cir. 2021) ........................................................ 27

*United States v. Hewitt*, 634 F.2d 277 (5th Cir. 1981)........................................................... 19

*United States v. Hudson*, No. 9-cr-171, 2011 WL 5357902 (E.D. La. Nov. 7, 2011)........... 50, 51

*United States v. Jackson*, 780 F.2d 1305 (7th Cir. 1986) ..................................................... 28

*United States v. Johnson*, 605 F.2d 1025 (7th Cir. 1979) ..................................................... 42

*United States v. Johnson*, No. 08 CR 466, 2011 WL 809194 (N.D. Ill. Mar. 2, 2011)............... 42

*United States v. Kilgore*, 591 F.3d 890 (7th Cir. 2010)......................................................... 56

*United States v. Klein*, No. 16-cr-442 (JMA), 2017 WL 1316999 (E.D.N.Y. Feb. 10, 2017) 24, 39

*United States v. Kreimer*, 609 F.2d 126 (5th Cir. 1980)....................................................... 20, 21

*United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006) .......................................................... 32

*United States v. Leonard*, 529 F.3d 83 (2d Cir. 2008)........................................................... 40

*United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017)....................................................... 20

*United States v. Liu*, 960 F.2d 449 (5th Cir. 1992)................................................................ 28

*United States v. Lokey*, 945 F.2d 825 (5th Cir. 1991) ............................................................ 8

*United States v. Lucas*, 516 F.3d 316 (5th Cir. 2008)............................................................ 30

*United States v. Maceo*, 947 F.2d 1191 (5th Cir. 1991) ........................................................ 7

*United States v. Maes*, 961 F.3d 366 (5th Cir. 2020)............................................................ 29

*United States v. Marin*, 669 F.2d 73 (2d Cir. 1982) ............................................................. 26

*United States v. Marrero*, 904 F.2d 251 (5th Cir. 1990)........................................................ 15, 16, 17

*United States v. McCauley*, 253 F.3d 815 (5th Cir. 2001)...................................................... 32

*United States v. McCulloguh*, 631 F.3d 783 (5th Cir. 2011) .................................................. 48

*United States v. McDaniel*, 398 F.3d 540 (6th Cir. 2005)...................................................... 26

*United States v. McDonald*, 905 F.2d 871 (5th Cir. 1991) ..................................................... 50

*United States v. McRae*, 593 F.2d 700 (5th Cir. 1979).......................................................... 10

*United States v. Meyer*, 733 F.2d 362 (5th Cir. 1984).......................................................... 3

*United States v. Mojica*, 185 F.3d 780 (7th Cir. 1999) .......................................................... 51

*United States v. Moore*, 923 F.2d 910 (1st. Cir. 1991) ................................................ 20

*United States v. Mussare*, 405 F.3d 161 (3d Cir. 2005) ............................................. 49

*United States v. Nichols*, 750 F.2d 1260 (5th Cir. 1985) ............................................. 8

*United States v. Oldbear*, 568 F.3d 814 (10th Cir. 2009) .......................................... 45

*United States v. Penn*, 969 F.3d 450 (5th Cir. 2020) ........................................... 13, 47

*United States v. Rainone*, No. 09 CR 206, 2013 WL 389004 (N.D. Ill. Jan. 31, 2013) .............. 42

*United States v. Re*, 401 F.3d 828 (7th Cir. 2005) ................................................... 44

*United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997) ......................................... 42, 44

*United States v. Rice*, 607 F.3d 133 (5th Cir. 2010) ............................................. 8, 9

*United States v. Rom*, 528 F. App'x 24 (2d Cir. 2013) ............................................... 4

*United States v. Rosado*, 728 F.2d 89 (2d Cir. 1984) ....................................... 42, 44, 46

United States v. *Roussel, 705 F.3d 184 (5th Cir. 2013)* ........................................ 48, 49

*United States v. Samples*, 897 F.2d 193 (5th Cir. 1990) ...................................... 50, 51

*United States v. Santos*, 589 F.3d 759 (5th Cir. 2009) ............................................ 47

*United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990) .............................................. 16

*United States v. Serfling*, 504 F.3d 672 (7th Cir. 2007) ........................................... 20

*United States v. Shaw*, 580 U.S. 63 (2016) ........................................................ 32

*United States v. Skelton*, 514 F.3d 433 (5th Cir. 2008) ...................................... 48, 50

*United States v. Spirk*, 503 F.3d 619 (7th Cir. 2007) .............................................. 40

*United States v. Stewart*, No. 03-cr-717, 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004) .............. 46

*United States v. Stitsky*, 532 Fed. App'x 98 (2d Cir. 2013) ....................................... 40

*United States v. Svete*, 556 F.3d 1157 (11th Cir. 2009) ........................................... 20

*United States v. Taglione*, 546 F.2d 194 (5th Cir. 1977) ..................................... 52, 53

*United States v. Tannehill, 49 F.3d 1049 (5th Cir. 1995)* .......................................... 5

*United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997) ............................................ 14

*United States v. Thomas*, 377 F.3d 232 (2d Cir. 2004) ........................................ 20, 22

*United States v. Thompson*, 253 F.3d 700 (5th Cir. 2001) ..................................... 14, 43

*United States v. Vela*, 673 F.2d 86 (5th Cir. 1982) ........................................... 54, 55

*United States v. Walker*, 191 F.3d 326 (2d Cir. 1999) ............................................. 16

*United States v. Watts*, 934 F. Supp. 2d 451 (E.D.N.Y. 2013) .................................... 40

*United States v. Weaver*, 860 F.3d 90 (2d Cir. 2017) ...................................... 22, 30, 31

*United States v. Wells*, 525 F.2d 974 (5th Cir. 1976) ...................................................... 19

*United States v. Wiggins*, No. EP-11-CR-2420-FM, 2013 WL 12093020 (W.D. Tex. July 16, 2013) ............................................................................................................................... 49

*United States v. Williams*, 822 F.2d 512 (5th Cir. 1987) ............................................... 51

*United States v. Willis*, 40 F.4th 330 (5th Cir. 2022) ..................................................... 12

*United States v. Wilson*, 5:19-cr-11-KHJ-FKB, 2022 WL 357074 (S.D. Miss. Aug. 18, 2022) .. 46

*United States v. Winkle*, 477 F.3d 407 (6th Cir. 2007) ................................................... 20

<u>Statutes and Rules</u>:

18 U.S.C. § 1348 ......................................................................................................... passim

18 U.S.C. § 1348(2) .......................................................................................................... 33

18 U.S.C. § 1349 ......................................................................................... 13, 34, 56, 57

18 U.S.C. § 2 ............................................................................................................. 12, 34

Fed. R. Crim. P. Rule 12.1 ........................................................................................ 54, 55

Fed. R. Crim. P. Rule 12.1(a) ............................................................................................ 54

Fed. R. Crim. P. Rule 12.1(e) ............................................................................................ 54

Fed. R. Evid. 1006 ...................................................................................................... passim

Fed. R. Evid. 106 .......................................................................................................... 26, 27

Fed. R. Evid. 401 ........................................................................................................ passim

Fed. R. Evid. 402 ........................................................................................................ passim

Fed. R. Evid. 403 ........................................................................................................ passim

Fed. R. Evid. 404 .......................................................................................................... 17, 19

Fed. R. Evid. 404(a)(2)(A) ............................................................................................... 19

Fed. R. Evid. 404(b) ................................................................................................... passim

Fed. R. Evid. 405 .......................................................................................................... 17, 19

Fed. R. Evid. 405(a) ........................................................................................................... 19

Fed. R. Evid. 405(b) ........................................................................................................... 16

Fed. R. Evid. 608 ............................................................................................................... 50

Fed. R. Evid. 801 ............................................................................................................... 29

Fed. R. Evid. 801(d)(2)(A) ......................................................................................... 1, 3, 4

Fed. R. Evid. 802 ............................................................................................ 25, 29, 35, 36

Fed. R. Evid. 803(3) ........................................................................... 27, 28, 29

Fed. R. Evid. 803(6) ................................................................................ passim

Fed. R. Evid. 805 ................................................................................................ 29

Fed. R. Evid. 902(11) ...................................................................................... 3, 4

U.S.S.G. § 2B1.1 ................................................................................................. 34

Weinstein's Federal Evidence § 607.5 ............................................................. 51

Pattern Jury Instructions:

Fifth Cir. Pattern Jury Instrs. § 1.21 (2019 ed.) .......................................... 43

Constitutional Provisions:

U.S. Const. Amend. I ............................................................................... 2, 55, 57

U.S. Const. Amend. VI ............................................................................... 47, 48

Prior to the April 1, 2024, trial in this matter, the United States respectfully seeks the following *in limine* and/or preliminary rulings from the Court:

**I.      Motions the Court should grant to admit:**

1. Exhibits of Defendants' own statements offered by the United States under Rule 801(d)(2)(A).

2. Summaries of voluminous evidence under Rule 1006.

3. Evidence intrinsic to the charged crimes and, alternatively, under Rule 404(b).

**II.     Motions the Court should grant to preclude evidence and argument regarding:**

1. Jury nullification.

2. Defendants' other "good" conduct, including stock trading or results outside of the stock tickers and time periods in the Trial Episodes.

3. Irrelevant character evidence and specific instances of good conduct.

4. Victim blaming.

5. FINRA reports.

6. Defendants' and others' inadmissible hearsay.

7. Defendants' hearsay attempting to disclaim liability for fraud.

8. The success (or lack thereof) of the scheme.

9. Causation of market movement untethered to Defendants' fraudulent intent or victims.

10. The SEC's Report.

11. Defendants' "hopes" that their followers would profit even though they themselves sold.

12. Prosecutorial decisions.

13. The conduct/misconduct of other uncharged individuals.

14. The novelty of the charges.

15. Pretrial discovery.

16. The United States' decision not to call a particular witness.

17. Cross-examination of cooperators regarding specific sentences under the advisory U.S. Sentencing Guidelines.

18. A witness's irrelevant drug use.

19. Presence of counsel defense.

1

20. Alibi defense.

21. Arguments without basis in law the Court has rejected including:

    a.  Vagueness or ignorance of the law.

    b.  That Defendants are not securities professionals or covered by other securities laws.

    c.  That Defendants had no independent duty to disclose stock transactions.

    d.  Any mention of the First Amendment, which is not defense.

## Argument

I.   **Motions the Court should grant.**

   1.   **The Court should preadmit exhibits of Defendants' own statements under Rule 801(d)(2)(A).**

   Defendants have twice given notice in this case that they plan to challenge preadmission, which is routine in this District, for *every single exhibit* the United States seeks to introduce. (*See* ECF No. 356.) They maintain this posture even though vast majority of the exhibits are the Defendants' own statements, which the United States may introduce against them under Rule 801(d)(2)(A), and accompanied by a business-record affidavit under Rule 902(11). The Court should admit the United States' exhibits under these rules, rather than requiring numerous records custodians to testify as to foundational issues that are not in legitimate dispute.

   First, the United States may introduce Defendants' own statements under Rule 801(d)(2)(A), which states that "[a] statement is not hearsay if the statement is offered against an opposing party and [the statement] was made in an individual or representative capacity . . . ." Fed. R. Evid. 801(d)(2)(A); *United States v. Clemons*, 676 F.2d 122, 123 (5th Cir. 1982) ("[A] statement is not inadmissible hearsay if it is the statement of a party against whom it is being offered . . . ."); *accord United States v. Meyer*, 733 F.2d 362, 363 (5th Cir. 1984).

   The bulk of challenged exhibits are the Defendants' own social-media posts and were obtained via search warrants to either Discord or Twitter.[1] Both Twitter and Discord provided to the United States affidavits under Rule 902(11) that aver that the produced materials, to include the noticed exhibits, are authentic records. There is therefore no legitimate basis to challenge these statements on authenticity grounds. Nor is there a legitimate hearsay objection, because the

---

[1] The balance of the statements are also the Defendants' own statements but obtained either by the SEC or the FBI. If required, the United States intends to call a witness to introduce these additional statements not obtained directly from either Discord or Twitter.

statements are admissible under Rule 801(d)(2)(A).

The Court has been clear that it expects the parties to achieve agreement on preadmission for as many exhibits as possible. Given the Defendants' twice-stated objection, the Court should pre-admit the challenged exhibits over Defendants' objections.

### 2. The Court should admit the United States' summaries of voluminous evidence under Rule 1006.

The United States respectfully asks the Court to permit the United States to offer into evidence at trial exhibits that summarize the contents of voluminous documents, specifically, Defendants' trading records, social-media records, private direct messages, and text messages.

The United States prepared summary exhibits that combine the Defendants' voluminous trading records with their respective social-media posts, text messages or direct-messages, or both. The exhibits relate to the at-issue stock tickers and time periods, *i.e.*, the 54 Trial Episodes, with which the Court is familiar. (*See* Ex. 1). Each component of the summary charts are otherwise admissible. First, as noted above, the Defendants' own statements each summary are authentic statements and otherwise admissible under 801(d)(2)(A). Second, the trading data in each summary exhibit reflects business records under 803(6) and is accompanied by an affidavit under Rule 902(11) that avers as much.[2] Such trading data are therefore business records under Rule 803(6) and constitutes voluminous material that is properly summarized in the summary exhibits. *United States v. Rom*, 528 Fed. App'x 24, 27 (2d Cir. 2013) ("Rule 902(11) extends Rule 803(6) by allowing a written foundation in lieu of an oral one"); *see also United States v. Ayelotan*, 917

---

[2] Rule 902(11) provides, in relevant part, that "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person" is self-authenticating and requires no extrinsic evidence of authenticity to be admitted. Prior to trial, "the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them." Id.

F.3d 394, 402 (5th Cir. 2019) ("Records are self-authenticating if they include a custodian certification that the records 'meet[] the requirements of Rule 803(6)(A)–(C).'"); *see also United States v. Harris*, 881 F.3d 945, 951 (6th Cir. 2018) (affirming the trial court's admission under Rule 1006 summary exhibits of trade records, where the underlying records were otherwise admissible under Rule 803(6), in a securities-fraud trial).

Under Rule 1006, a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, records, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. Additionally, "[t]he proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time or place. And the court may order the proponent to produce them in court." Fed. R. Evid. 1006. The Fifth Circuit "expressly allows summary witnesses to summarize voluminous records in complex cases." *United States v. Baker*, 923 F.3d 390, 397 (5th Cir. 2019) (citing *United States v. Armstrong*, 619 F.3d 380, 383 (5th Cir. 2010)); *United States v. Tannehill*, 49 F.3d 1049, 1056 (5th Cir. 1995) (affirming admission of Rule 1006 summary charts where, *inter alia*, "[t]he documents summarized in the charts were voluminous, and in-court examination would have been more than inconvenient").

The United States sent Defendants courtesy copies of its original summary exhibits on August 12, 2023, and a revised set on January 19, 2024. The exhibits that summarize the relevant portions of the underlying trading and social-media records are PDF files of charts. (*See* Exs. 2, 3.) Each line of the chart contains substantive information from the underlying records, as well as indicates the source of the information (*e.g.*, trading, Twitter, Discord, text message). (*See id.*) Having the relevant portions of this information summarized in Rule 1006 exhibits—rather than requiring the Court and jury to sift through and piece together multiple different sources of

information for each example—will be a significant convenience and substantially economize the work of the Court and jury. *See* Fed. R. Evid. 1006.

Defendants have had most of the underlying materials for more than a year, and the initial exhibits themselves for many months. This disclosure more than satisfies the Rule's requirement to make the originals or duplicates available at a reasonable time or place. *See* Fed. R. Evid. 1006. Furthermore, the United States plans to introduce the exhibits at trial through the testimony of Maria Garibotti. Thus, the Court should permit the United States to introduce the summary exhibits at trial under Rule 1006. *Harris*, 881 F.3d at 951.

### 3. The Court should admit evidence intrinsic to the charged crimes and, alternatively, under Rule 404(b).

The Court should allow the United States to present evidence of the Trial Episodes that are intrinsic to the offenses charged in the Superseding Indictment. In the alternative, these episodes are admissible as extrinsic evidence under Rule 404(b).

As laid out in the United States' prior briefing and notice on this subject, (ECF Nos. 234, 319, 424, 433), the other Trial Episodes (1) occur during the charged conspiracy; (2) involve at least one Defendant's trading activity that reflects similar conduct charged in the Indictment (*i.e.*, selling shares of a security after a false social-media post about the same security); and (3) where two or more defendants are involved, provide critical context about Defendants' plan to coordinate trading and social-media activity in fraudulent ways, such that they complete the story as to the charged offenses. Such evidence is intrinsic to the charged offenses and is properly admitted as such. *See, e.g.*, *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005).

In the alternative, these Trial Episodes are also admissible under Rule 404(b) for numerous permissible purposes, including to prove fraudulent intent, motive, common scheme or plan, absence of mistake, lack of accident. *See* Fed. R. Evid. 404(b). Defendants have squarely put their

intent at issue. And they have argued a host of reasons why the substantive counts are insufficient to sustain convictions. Putting aside the dubious merits of those arguments, the other Trial Episodes show the jury clearly that the charged conduct was not anomalous, unintended, or otherwise an innocent mistake. Quite the opposite, it was a fraudulent scheme, repeatedly premeditated and executed with a fraudulent intent.

The United States must be afforded the opportunity to meet its burden, the highest in the law, with competent evidence, including the Trial Episodes. As this Court knows, the United States took great care to trim its initial case of 397 episodes to 54 Trial Episodes, which is sufficient, but not substantially greater than necessary, to prove the charges. (ECF No. 424.)

### a. The other Trial Episodes are intrinsic and inextricably intertwined with the charged scheme and conspiracy.

"Before getting to the Rule 404(b) inquiry, it is important to examine whether th[e] evidence is even extrinsic, because intrinsic evidence is generally admissible, and its admission is not subject to Rule 404(b)." *United States v. Anderson*, 558 Fed. App'x 454, 463 (5th Cir. 2014) (quotations omitted). "Evidence of an uncharged offense arising out of the same transactions as the offenses charged in the indictment is not extrinsic evidence within the meaning of Rule 404(b)," but is intrinsic evidence. *United States v. Maceo*, 947 F.2d 1191, 1199 (5th Cir. 1991).

Evidence may be intrinsic "when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *Freeman*, 434 F.3d at 374 ("The uncharged offense arose out of the same series of transactions, because the funds were co-mingled and used to make lulling payments to investors from both schemes.") (internal quotations and citation omitted). "Intrinsic evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place, and to evaluate all the circumstances under

which the defendant acted." *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (quotations and citations omitted). Evidence is intrinsic to a conspiracy if it is "relevant to establish how the conspiracy came about, how it was structured, and how each appellant became a member." *United States v. Lokey*, 945 F.2d 825, 834 (5th Cir. 1991). Evidence is also intrinsic to a conspiracy if it documents "execution of the scheme." *See United States v. Nichols*, 750 F.2d 1260, 1265 (5th Cir. 1985).

The Trial Episodes occurred during the charged conspiracy period and arise out of the same transactions or series of transactions as those charged in the Superseding Indictment. *See, e.g.*, *Freeman*, 434 F.3d at 374. The also demonstrate how the conspiracy was structured and document the execution of the scheme. *Lokey*, 945 F.2d at 834; *Nichols*, 750 F.2d at 1265. The episodes occurred before, during, after, and in some cases simultaneously with the Episodes charges as substantive counts. They provide critical context with which to understand and evaluate the charged counts, as well as establish preliminaries, schemes, and methods employed by Defendants on those counts. Thus, the evidence is intrinsic to, and inextricably intertwined with, the charged counts. *See, e.g.*, *Freeman*, 434 F.3d at 374.

**b. The Court should also admit the Trial Episodes under Rule 404(b).**

Even where evidence is extrinsic, Rule 404(b) permits its introduction for purposes of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Fifth Circuit has laid out a two-step test for admission under Rule 404(b):

> First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403.

*United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc); *see also United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010).

Here, the Trial Episodes meet both prongs. They are relevant to many issues other than Defendants' characters, including the permissible Rule 404(b) purposes of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. The Trial Episodes demonstrate that Defendants' fraud operated with a common scheme over and over again and with each other. They also illustrate different ways in which that scheme was executed and/or show the scheme through different types of evidence. Sometimes Defendants coordinated by text message; other times they coordinated by private message over social media; and certain executions of the scheme involved different combinations of Defendants from other executions of the scheme. The Trial Episodes are important to show through these and other sources of evidence that Defendants repeatedly executed the scheme knowingly, willfully, with fraudulent intent, and with each other. *See, e.g.*, *Beechum*, 582 F.2d at 911 ("[T]he relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.").

Second, the evidence of the Trial Episodes is highly probative of facts at issue. Defendants have made it no secret that they intend to challenge both the falsity of the at-issue statements and the attendant fraudulent intent. The Trial Episodes are highly probative as to both issues. Moreover, the probative value of the Trial Episodes is not substantially outweighed by unfair prejudice. Indeed, by far the most prejudicial aspect of the Trial Episodes is that it points to Defendants' guilt. Such prejudice is not of the "unfair" variety relevant to the Rule 403 inquiry. *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("Relevant evidence is inherently

prejudicial; but it is only Unfair prejudice, Substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.").

The United States belabor the point with the Trial Episodes; not all may be needed. But the United States must be afforded the opportunity to meet its burden with competent evidence. Thus, the Court should admit the Trial Episodes both as intrinsic to the charged crimes and, in the alternative, under Rule 404(b).

II.     **Evidence and/or argument the Court should preclude.**

It is difficult to overstate the quantity of facially irrelevant and inadmissible material Defendants included in their hundreds of exhibits, dozens of witnesses, and numerous expert reports. Most Defendants only provided courtesy copies of exhibits within the past several days (and several still have not), so it is impossible to evaluate them all with certainty as of the date of this filing. But, judging from the many reviewed and, further, from the exhibit lists themselves, Defendants include reems of inadmissible hearsay, irrelevant press releases, and other inadmissible information.

Defendants seek to transform the United States' case—which focuses on *Defendants' own words and trading*—into a morass of irrelevant sideshow after sideshow. The United States respectfully submits now is the time for the Court to put down firm markers on the admissibility and relevancy of the trial evidence. To do otherwise will allow Defendants to impermissibly hijack this case with irrelevant issues and waste the Court's and jury's time with frolics that have no basis in the law.

A.  **Legal Standard**

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant if it is probative of a fact of consequence in determining the action. Fed. R. Evid. 401. Even where evidence may be relevant, a court may still exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Defendants may only present a defense if it has a basis in law and a foundation in the evidence. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 416–17 (1980) (requiring a threshold showing for presentation of a defense as "a testament to the importance of trial by jury and the

11

need to husband the resources necessary for that process by limiting evidence in a trial to that directed at the elements of the crime"); *United States v. Willis*, 40 F.4th 330, 335 (5th Cir. 2022) (explaining that any defense must "comply with established rules of . . . evidence"). If a defense is insufficient as a matter of law, the Court should not allow Defendants to present related evidence or argument. *See, e.g.*, *Bailey*, 444 U.S. at 416–17.

The only charges at issue for trial are Title 18 securities fraud, aiding and abetting the same,[3] and conspiracy. (*See* Superseding Indictment, ECF No. 134.) Defendants violated the charged securities fraud statute if they:

> Knowingly executed, or attempted to execute, a scheme or artifice—
>
> (1) to defraud any person in connection with any [applicable] security; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of . . . any [applicable] security.

18 U.S.C. § 1348. Notably, causation of stock price movement is not an element of the offense. *See id.* The focus of the statute is on Defendants' fraudulent intent and whether their at-issue statements are in fact "false or fraudulent." *See id.*

The Supreme Court has clearly stated the materiality standard applicable to Title 18 fraud statutes: "A false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 24–25 (1999); *United States v. Greenlaw*, 48 F.4th 325, 340 (5th Cir. 2023) (applying *Neder* materiality standard to Section 1348 charges); *United States v. Coscia*, 866 F.3d

---

[3] "Aiding and abetting occurs when the defendant 'aids, abets, counsels, commands, induces, or procures" the commission of a federal offense," here, securities fraud. *United States v. Comstock*, 974 F.3d 551, 557 (5th Cir. 2020) (quoting 18 U.S.C. § 2).

782, 798–99 (7th Cir. 2017) (affirming district court instructing on *Neder* materiality standard for Section 1348 charge and declining defense's requested instructions that the alleged scheme had to be "reasonably calculated to deceive persons of ordinary prudence" and that "a reasonable investor would consider the deceptive conduct important in making a decision"). In other words, materiality here asks whether Defendants' statements were capable of influencing their intended victims. *See id.*

Defendants violated the charged conspiracy statute if: (1) two or more persons agreed to commit securities fraud; (2) Defendants knew the unlawful purpose of the agreement; and (3) Defendants joined the agreement with the intent to further the unlawful purpose. 18 U.S.C. § 1349; *United States v. Comstock*, 974 F.3d 551, 557 (5th Cir. 2020).

### B.   The court should grant the following motions *in limine* and preclude the subject evidence and argument.

To the extent Defendants attempt to introduce evidence or argument not probative of issues raised by those statutes, or otherwise prohibited by the law or Rules of Evidence, the Court should exclude that evidence and argument. The Court's touchstone in each inquiry should be that which is the focus of this case: Defendants' fraudulent intent and the falsity of their social-media messages. Evidence or argument untethered to those issues should not come before the jury.

### 1.   The Court should preclude evidence and argument aimed at jury nullification.

"Evidence admitted solely to encourage nullification is by definition irrelevant, and thus inadmissible, regardless of what other evidence might be introduced at trial." *United States v. Penn*, 969 F.3d 450, 458 (5th Cir. 2020) (quotation omitted). "Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court—in the words of the standard oath to jurors in the federal courts, to 'render a true verdict according to the law and the evidence.' We categorically reject the idea that, in a society committed to the rule of law, jury nullification is

desirable or that courts may permit it to occur when it is within their authority to prevent." *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) (cited by *United States v. Thompson*, 253 F.3d 700, 2001 WL 498430, at *16 (5th Cir. 2001) (unpublished)).

"A trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification . . . ." *Thompson*, 2001 WL 498430, at *16 (quotation omitted) (finding district court did not abuse its discretion in forbidding defense from presenting "facts that were intended to tempt jurors to violate their oaths"). Although a jury itself can acquit for whatever reason, "[j]ury nullification is not a 'right' belonging to the defendant." *See id.* As the Fifth Circuit has explained, for example, "the right to make closing argument does not include the right to have counsel make an improper argument encouraging the jury to use its 'de facto power to refuse to apply the law as instructed by the court [and] exercise . . . such power in dereliction of the jury's sworn duty.'" *Id.* (quoting *United States v. Funches*, 135 F.3d 1405, 1408 (11th Cir. 1998)). Thus, Defendants may not present evidence and argument irrelevant to the issues for trial because, by definition, such evidence and argument would have one purpose: impermissibly encouraging jury nullification. *Id.*

Throughout the pendency of this case, Defendants have advanced numerous arguments that are irrelevant to the charges, elements, or issues for trial in this case. Given that these types of arguments are not probative of points at issue, the only purpose they would serve at trial is to encourage jury nullification. Thus, the Court should preclude them.

The United States makes this general motion because Defendants have shown imagination untethered to relevant facts or law in formulating many of the below arguments, as well as other the United States has yet to anticipate:

- Evidence of Defendants' trading conduct (or profits and losses) in trading not at issue in the Trial Episodes (*infra* section II.2);
- Defendants' efforts to blame victims for Defendants' fraud (*infra* section II.4);

- The success (or lack thereof) of the scheme (*infra* section II.8);
- The conduct/misconduct of other uncharged individuals (*infra* *s*ection II.13);
- Consequences of conviction (*infra* section II.17);
- Pretrial discovery (*infra* section II.15).

Similarly, the Court should not allow Defendants to present to the jury arguments Defendants made in other motions, such as motions to dismiss, that the Court has already rejected. *See infra* section II.21.

### 2. The Court should preclude evidence and argument of Defendants' other "good" conduct, including stock trades outside of the Trial Episodes.

Evidence that a defendant did not commit fraud in *all* trading instances is irrelevant to negate criminal intent. Such evidence is at best impermissible "good conduct" evidence.

The only relevant trading in this case is the trading in the Trial Episodes. (*See* Ex. 1.) What Defendants did on other occasions says nothing about what they did in the specific Trial Episodes. Defendants' trading outside of the Trial Episodes is irrelevant, impermissible and the Court should preclude it *in limine*. *See, e.g.*, Fed. R. Evid. 401, 402, 403.

The Fifth Circuit has held that evidence that defendant engaged in legal, honest conduct some of the time is irrelevant to whether defendant engaged in the charged fraud, had knowledge of it, or both. *See United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990) (holding that the fact that defendant "did not overcharge in every instance . . . is not relevant to whether she, in fact, overcharged as alleged in the indictment"); *see also United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.").[4]

---

[4] Other courts are in accord.  *See, e.g.*, *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) ("Evidence of good conduct is not admissible to negate criminal intent.") (alterations and quotations omitted); *see also United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (noting that whether

Rule 405(b) similarly bars Defendants from introducing specific instances of good conduct. Only "a person's character or character trait [that] is an essential element of a charge, claim, or defense" may be admitted.  Fed. R. Evid. 405(b).  As *Marrero* instructed, seeking to introduce evidence of good acts to negate criminal intent "is not only disfavored, it is not permitted under Rule 405(b)."  *Marrero*, 904 F.2d at 960; *accord Ellisor*, 522 F.3d at 1270–71.  Because the character of a Defendant is not an element of any charge in the Superseding Indictment, evidence of good conduct is similarly barred under Rule 405(b).[5]

Defendants seek to admit reems of irrelevant trade data from outside the Trial Episodes. Such efforts should be barred. *See* Fed. R. Evid. 401, 402; *Marrero*, 904 F.2d at 960. Even more, such evidence and argument would also be substantially more confusing and misleading than probative of any fact at issue. *See* Fed. R. Evid. 403.

One manner in which Defendants are attempting to launder in this irrelevant trading is through the 1099-B documents, which summarize Defendants' trading for whole months or years, which is obviously outside the conduct in the Trial Episodes. The Court should preclude this attempt to introduce irrelevant material excluded by multiple Rules of Evidence that will serve only to confuse the jurors from the issues actually before them. *See* Fed. R. Evid. 401, 402, 403, 404, 405; *Marrero*, 904 F.2d at 960. To calculate Defendants' trading during the Trial Episodes, Defendants need only to add up the trading records in the United States' Rule 1006 summaries, which those summaries already do. (*See* Ex. 2.) It's arithmetic. Any trading outside those

---

the defendant "had prepared other, non-fraudulent [immigration] applications was simply irrelevant to whether the applications charged as false statements were fraudulent"); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions.").

[5] Similarly, the Court should bar any evidence or argument of Defendants' other general good acts, such as charitable contributions or educational activities irrelevant to the case at issue. These would be specific instances of good conduct plainly impermissible under Rule 405(b) and otherwise irrelevant.

documents isn't relevant to the issues in this trial, and the Court should preclude it, including by precluding the 1099-Bs.[6]

For similar reasons, the Court should preclude Defendants from presenting evidence or argument that their conduct in the Trial Episodes was *de minimis* either in profit or portion of Defendants' overall trading for at least three reasons. First, it is legally irrelevant whether a fraud scheme or conspiracy is successful, much less how profitable it was. *Greenlaw*, 84 F.4th at 346. Criminal liability attaches to schemes to defraud that are unsuccessful or cause no loss whatsoever. *Id.* Thus, there is no basis for evidence or argument attempting to demonstrate that the at-issue episodes represent only a portion of Defendants' overall trading profit or activity. *See* Fed. R. Evid. 401, 402, 403; *Marrero*, 904 F.2d at 960.

Second, it is irrelevant whether Defendants engaged in fraudulent practices infrequently or routinely, so there is no basis for evidence or argument that the Trial Episodes "represent a very small portion" of any Defendant's overall trading activity. Whether Defendants committed fraud often or seldom has no relevance at all to whether Defendants committed fraud in the Trial Episodes. *See Marrero*, 904 F.2d at 960.

Third, it would be fundamentally unfair for Defendants, who fought for months to limit the number of trading episodes the United States may introduce in its case-in-chief, to assert now that the number of such episodes, or the losses or gains associated with those episodes, is *de minimis*. (*See, e.g.*, Defs. Mot. Exclude Episodes, ECF No. 408; 427.) The Trial Episodes are not the full measure of Defendants' illegal conduct and should not be argued as such.

It would be entirely misleading and disingenuous for Defendants to argue that they did not have a substantial profit motive for their illegal activity—which spanned far beyond the Trial

---

[6] As to the irrelevance and inadmissibility of profits or losses, see *infra* section II.8.

Episodes—because the profit from those Episodes was only a portion of their overall trading profit. It would be similarly misleading to suggest the Trial Episodes were only a small portion of their overall trading activity. The Court must not permit Defendants, who worked to limit the number of at-issue trial episodes as a shield, to then use that limited number of Episodes as a sword to attack either the cumulative profit numbers or the pervasiveness of Defendants' fraudulent activity.

Similarly, regardless of the irrelevance and inadmissibility of Defendants' other trading, it would be fundamentally unfair for the Court to allow Defendants to introduce other trading when Defendants fought for months to limit the episodes the United States may introduce. Should the Defendants be allowed to introduce extraneous trading, the United States must be allowed to respond with additional trading or social-media activity to provide relevant context or respond, which may necessitate a continuance to prepare. This invites an unraveling of this case into irrelevant mini-trials about trading or social-media activity the United States is not putting at issue. The Court should nip this in the bud because it is irrelevant, would waste the Court's and jury's time, and be fundamentally unfair. *See, e.g.*, Rules 401, 402, 403.

### 3. The Court should preclude irrelevant character evidence and evidence of specific instances of good conduct.

Similarly, the Court should preclude Defendants' efforts to introduce other evidence of their "good" conduct, such as purportedly teaching others how to trade stocks, doing good deeds or general evidence of "good character." Defendants have included reems of witnesses whose purposes are unclear. But testimony on such topics is disallowed by the Rules of Evidence and the law. *See* Fed. R. Evid. 404; 405.

Only *pertinent* character traits are admissible only by opinion or reputation evidence. *See id.*; *United State v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981). To the extent Defendants seek to introduce testimony about their veracity or law-abidingness, they should only be allowed to do

so, but only in the form of opinion or reputation evidence. Fed. R. Evid. 405; *United States v. Davenport*, 449 F.2d 696, 700 (5th Cir. 1971) ("The only type of evidence admissible to show defendant's character is proof of his reputation in the community."). Put another way, the Court should preclude Defendants' efforts to introduce character by specific acts, such as stories about successful stock trading or other deeds. *See id.*

### 4. The Court should preclude Defendants' attempts to blame victims for Defendants' fraud.

The Court should preclude all evidence, argument, and cross-examination attempting to blame the victims of the alleged fraud because doing so is impermissible.

The Fifth Circuit is clear that "[t]he victim's negligence is not a defense to criminal conduct." *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980). That is because "the focus of the language defining a scheme to defraud is on the violator, not the victim." *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) (quoting *United States v. Drake*, 932 F.2d 861, 864 (10th Cir. 1991)). Other courts are overwhelmingly in accord and routinely preclude such "blame the victim" attempts. *See, e.g.*, *United States v. Lindsey*, 850 F.3d 1009, 1014–15 (9th Cir. 2017) (agreeing with "[s]everal of our sister circuits" that "a fraud victim's negligence is not a defense to criminal charges under the federal fraud statutes") (collecting cases); *United States v. Serfling*, 504 F.3d 672, 679 (7th Cir. 2007) (noting that "we have held that the perpetrator of a fraud may not defend himself by blaming the victim of being duped").[7]

---

[7] *See also United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) (en banc) ("[W]hatever role, if any, a victim's negligence plays as a bar to civil recovery, it makes little sense as a defense under a criminal statute that embraces 'any scheme or artifice to defraud.' A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence."); *United States v. Allen*, 201 F.3d 163, 167 (2d Cir. 2000) (per curiam) ("The victim's negligence in permitting a crime to take place does not excuse the defendant from culpability for [the] substantive offense . . . ."); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct."); *United States v. Moore*, 923 F.2d 910, 917 (1st Cir. 1991) ("[I]t is not a defense that the bank might have prevented its losses had it better internal controls or procedures."); *United States v.*

Further, attacking a victims' lack of sophistication is irrelevant and should be precluded. *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) ("The susceptibility of the victim of the fraud, . . . is irrelevant to the analysis: If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright." (internal quotation marks omitted)). Indeed, the Fifth Circuit made clear that "the laws protecting against fraud are most needed to protect the careless and the naive from lupine predators, and they are designed for that purpose." *Kreimer*, 609 F.2d at 132.

Defendants have already articulated different varieties of this attempted victim-blaming in various of their filings and statements, including suggesting that victim-witnesses:

- Should have done their own due diligence when making trading decisions, and not relied on Defendants' false representations;

- Are the ones who press the buy and sell button so they should "take responsibility" for their trading decisions; and

- Should have traded better or "traded their own plan," including sold their stock and taken profits and/or better controlled their risk.[8]

Such attempts, and others like them, are not relevant to whether the Defendants committed fraud. These areas are plainly impermissible under the law and the Court should preclude them at the outset. *See* Fed. R. Evid. 401, 402, 403. Such attempts serve no purpose other than to put the victim's conduct on trial, not the Defendants. *See, e.g., Svete*, 556 F.3d at 1165.

---

*Winkle*, 477 F.3d 407, 418 (6th Cir. 2007) (approving the exclusion of an FDIC report that criticized the bank fraud victim's failure to detect a fraud scheme); *United States v. Thomas*, 377 F.3d 232, 243–44 (2d Cir. 2004) (affirming restrictions on cross of victim; rejecting defendant's argument that victim's foolishness vitiated defendant's fraudulent intent); *United States v. Coffman*, 94 F.3d 330, 333–34 (7th Cir. 1996) (holding that the perpetrator of a fraud may not defend himself by blaming the victim); *United States v. Battles*, No. CR-11-354-D, 2012 WL 2087397, at *1 (W.D. Okla. June 8, 2012) (precluding defendant's cross examination to show that lending institution had negligent and deficient practices that failed to detect defendant's fraudulent loan applications because any argument related to the victim's lending practices is irrelevant and would lead to jury confusion).

[8] *See, e.g.*, "Cooperman statements advising Atlas Discord users and Twitter followers to follow their own trading plans (2020 to 2022)" (Def. Cooperman's Ex. List, ECF No. 517, Ex. 67); (ECF No. 160).

Defendants have also misstated the materiality standard in filings in this case, emphasizing they intend to explore whether victim witnesses "reasonably relied" on Defendants' social=media postings. (*See, e.g.*, ECF No. 469 at 15–16.) But the Supreme Court is clear that "common-law requirements of 'justifiable reliance' and 'damages' . . . plainly have no place in the federal fraud statutes." *Neder*, 527 U.S. at 24–25. That is so because, "[b]y prohibiting the 'scheme to defraud,' rather than the completed fraud, the elements of reliance and damage would clearly be inconsistent with the statutes Congress enacted." *Id.* at 25. Thus, the Court should not permit Defendants to explore the "reasonableness" of a victim-witness' "reliance" on Defendants' postings, because it is irrelevant and inconsistent with the law. *See id.*

Materiality, not "reasonable reliance," is the relevant standard. *See Neder*, 527 U.S. at 24; *supra* pp. 12–13. Said another way, the only relevant question on this point is: could Defendants' statements have influenced victims' decisions to trade. *See id.* Neither reasonableness nor reliance have any place in that standard. *Neder*, 527 U.S. at 24–25.

Indeed, the materiality standard "is to assure that the defendant's conduct was calculated to deceive, not to grant permission to take advantage of the stupid or careless." *United States v. Thomas*, 377 F.3d 232, 242 (2d Cir. 2004). Thus, "[t]he unreasonableness of a fraud victim in relying (or not) on a misrepresentation does not bear on a defendant's criminal intent in designing the fraudulent scheme, whereas the materiality of the false statement does." *United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017). The Court should preclude such attempts to distract from Defendants' conduct by blaming victims and confusing the jury. *See* Fed. R. Evid. 403.

**5. The Court should preclude evidence and argument about FINRA reports.**

The Court should preclude evidence and argument about whether others should have discovered Defendants' fraud. Specifically, Defendants' noticed exhibits include several FINRA

reports regarding FINRA's review of aggregated trading volume during the Trial Episodes. (*See, e.g.*, Def. Matlock's Ex. List, ECF No. 519, Exs. 31C, 32C 1–3, 33C 1–2, 37C, 38C, 41B 1–2, 42B, 43B-1, 45C 1–3.)

Defendants should be precluded from arguing, or otherwise introducing, the fact that FINRA investigators did not previously identify the Defendants' conduct in certain instances. Such arguments have limited probative value and are substantially outweighed by dangers of confusion of the issues, unfair prejudice, and misleading the jury.[9] *See* Fed. R. Evid. 401, 402, 403.

There is no indication on any of the reports at issue that FINRA actually reviewed or investigated Defendants or their trading conduct. More specifically, there is no indication FINRA investigated Defendants' social-media activity, private messages, or any aspect of the scheme alleged in the Superseding Indictment. In short, there's no indication from the records Defendants seek to introduce that FINRA investigated Defendants in those Trial Episodes at all.

Defendants likely seek to introduce these exhibits to suggest that FINRA didn't see any fraud in the related Trial Episodes or, even more removed, that FINRA gave Defendants' conduct a implicit stamp of approval. But these documents bear no indications at all that the investigators saw or reviewed Defendants' at-issue conduct. Defendants' arguments are akin to saying there was no bank robbery because the cop driving by after-hours only noticed the lobby lights on, but didn't look for the robbers taking the safe out the back door. Use of the FINRA documents to attempt to establish Defendants did not commit fraud—when the documents themselves have no connection to Defendants or their actions—is irrelevant, a waste of time, and unduly risks jury confusion. *See* Rules 401, 402, 403.

---

[9] The reports and conclusions within them are also hearsay and the United States maintains objections on that basis.

In addition, permitting this evidence and argument would confuse the jury and result in unduly prejudicial mini-trials about the differences between, and the reliability of, FINRA's several reviews of activity and the charges and conduct at issue in this case. The jury will already be required to analyze Defendants' at-issue conduct presented in the United States' case-in-chief and consider whether that conduct meets the elements of the charged crime. That is all they need to do their job here.

The jury should not also be asked to compare that conduct and those laws with FINRA's reports and whatever independent inquiry FINRA did. That is blatantly confusing and misleading, and the Court should not allow Defendants to thrust that irrelevant task upon the jury. *See, e.g.*, *United States v. Klein*, No. 16-cr-442 (JMA), 2017 WL 1316999, at *10 (E.D.N.Y. Feb. 10, 2017) (holding the introduction of an SEC complaint that contradicted the indictment was inadmissible under Rule 403 "[b]ecause the probative value of the SEC complaint is so slight, and because the proposed introduction of evidence concerning the SEC complaint and charging decision will result in 'mini-trials' about whether the SEC or DOJ's decision was the right one and the differences between the two investigations, the danger of prejudice and confusion substantially outweighs the probative value of [the defendant's] proposed evidence"); *see also Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 64 (2d Cir. 1999) (affirming district court in excluding findings of state administrative body because danger of unfair prejudice substantially outweighed the probative value of such findings, and holding that "the district court is in the best position to consider the quality of the report, its potential impact on the jury, and the likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compare to the evidence considered by the agency").

Even more removed, Defendant Rybarczyk's counsel has indicated he seeks to call a FINRA witness to establish that FINRA queried their system for such reports as to all the Trial Episodes and did not find reports for most. It seems Defendant seeks to suggest from this information that FINRA did not believe there was anything to investigate in most of the Trial Episodes and, thus, there could not be a fraud. Even more, none of the FINRA reviews were ever communicated to the Defendants because the documents were privately held. Thus, it cannot even be argued that any of the FINRA documents disprove the Defendants' fraudulent intent because Defendants were entirely unaware of FINRA's review.

At best, the FINRA documents seek to ask the jury to decide not whether Defendants had fraudulent intent but whether FINRA could have done more to detect Defendants' conduct at an earlier juncture. The probative value of such evidence (which is nil) is substantially outweighed by its prejudicial effect. *See* Fed. R. Evid. 403. Introducing such evidence would only waste the jury's time and require the United States to offer counter evidence. Such counter evidence would include the fact that FINRA *did* in fact refer several Defendants' conduct to the SEC for suspected fraudulent and manipulative behavior on multiple occasions, and specifically as to DATS and CEI, two substantive counts in the Superseding Indictment. So too would it involve evidence that the SEC in this case also charged Defendants in the parallel civil case. *See SEC v. Constantin, et al.*, No. 4:22-cv-04306 (S.D. Tex.). If Defendants are permitted to open the door to this irrelevant side show, the United States must be permitted to respond to correct the record.

The analysis and decisions of regulatory bodies has no place in this trial. The jury will make its own decision about whether Defendants acted with the intent to defraud in the Trial Episodes. That decision should be based on the evidence of what the Defendants did and said, not what another agency did (or didn't do) based on facts or issues not before the jury.

24

**6. The Court should preclude Defendants' attempts to introduce inadmissible hearsay.**

Defendants may not introduce their own out-of-court hearsay statements without a valid exception under the Rules of Evidence. Fed. R. Evid. 802 ("Hearsay is not admissible . . . ."); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statements for the truth of the matter asserted, it is hearsay, and it is not admissible.").

If criminal defendants were permitted to introduce their own out-of-court statements for the truth, "parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005). Thus, the Court should preclude Defendants' attempts to introduce their inadmissible, hearsay statements.

Based on Defendants' exhibit lists, it appears Defendants will attempt end-runs around the Rules under various theories that the Court should reject. To be clear: the *majority* of the hundreds of exhibits Defendants seek to introduce appear to be their own inadmissible, hearsay statements. For example, Defendant Cooperman's exhibit list includes numerous inadmissible hearsay statements like "video and photo content of Cooperman (statements) posted on Twitter, Instagram, Atlas Discord and YouTube" and "Cooperman's text message conversations with all defendants from 2020 to 2022." (Def. Cooperman Ex. List, ECF No. 517, Exs. 60, 62.) Similarly, Defendant Rybarczyk seeks to introduce "All Sapphire Trading Discord DMs: 1/2/20-9/29/22." (Def. Rybarczyk Ex. List, ECF No. 521, Ex. 5.) Most exhibit lists are *mostly* populated by similar inadmissible material. Needless to say, the Court should preclude all such inadmissible hearsay.

In an effort to end-run the hearsay Rules, Defendants may cite Rule 106 and try to argue their statements in proximity to those the United States seeks to admit should also be admitted. *See* Fed. R. Evid. 106. First, this would only apply to the specific conversations the United States is seeking

to admit, which necessarily cannot be the majority of the vast quantities of materials on Defendants' exhibit lists. Importantly, Rule 106 "does not permit a party to introduce writings or recorded statements to affirmatively advance their own, alternative theory of the case." *United States v. Herman*, 997 F.3d 251, 264 (5th Cir. 2021).

Second, as to the United States' specific exhibits to which Defendants may try to add, "neither the Constitution nor Rule 106 . . . requires the admission of the entire statement once any portion is admitted in a criminal prosecution." *United States v. Branch*, 91 F.3d 699, 729 (5th Cir. 1996). Instead, Rule 106 allows defendants to admit their own self-serving hearsay only where those statements are "*necessary* to clarify or explain the portion received." *Herman*, 997 F.3d at 264 (emphasis added). Further, "the portion sought to be admitted must be relevant to the issues, and only the parts which qualify or explain the subject matter of the portion offered by the opponent need be admitted." *United States v. Crosby*, 713 F.2d 1066, 1074 (5th Cir. 1983).

Nor can Defendants smuggle self-serving statements into the record through Rule 803(3)'s state-of-mind exception.  Rule 803(3) creates an exception for hearsay statements that describe "the declarant's then-existing state of mind (such as motive, intent, or plan)," but explicitly does not cover "a statement of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3).[10] Thus, backward-looking statements are precisely the kind of evidence that Rule 803(3) does not cover.  *See, e.g.*, *United States v. Bradley*, 644 F.3d 1213, 1275 (11th Cir. 2011) (finding that defendant's "self-serving declarations that he did not believe" that his company's conduct was fraudulent were not covered by Rule 803(3)); *United*

---

[10] Statements of others as to Defendants' states of mind are obviously inadmissible under this Rule, which is expressly limited to "*the declarant*'s then-existing state of mind." *See* Fed. R. Evid. 803(3) (emphasis added); *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1265 (7th Cir. 1993) ("[T]he states of mind exception does not authorize receipt of a statement by one person as proof of another's state of mind.").

*States v. Cardascia*, 951 F.2d 474, 488 (2d Cir. 1991) ("To admit statements of one's state of mind with regard to conduct that occurred . . . earlier . . . would significantly erode the intended breadth of this hearsay exception."); *United States v. Jackson*, 780 F.2d 1305, 1315 (7th Cir. 1986) (explaining that to be admissible under Rule 803(3), the statement must be (1) relevant to an issue in the case, (2) contemporaneous with the event sought to be proven, and (3) the declarant had no chance to reflect or no time to fabricate or misrepresent his thoughts).

Nor do statements that may *impact* state of mind but are not themselves *about* a Defendant's state of mind fall under the Rule. *See, e.g.*, *Moody v. Farrell*, 868 F.3d 348, 353 (5th Cir. 2017) (finding officer's statements about what he heard said inadmissible under Rule 803(3) because such statements did not reflect the officer's state of mind.); *United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980) ("[T]he state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind."). The Rules note this exclusion "is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind." Fed. R. Evid. 803(3) advisory committee's n. to para. 3.

The Fifth Circuit has "explained that Rule 803(3) 'does not permit the witness to relate any of the declarant's statements as to *why* he held the particular state of mind, or what he might have believed that would have induced the state of mind.'" *Bedingfield ex rel. Bedingfield v. Deen*, 489 Fed. App'x 219, 227 (5th Cir. 2012) (quoting *Cohen*, 631 F.2d at 1225). "Rule 803(3) 'limits those admissible statements to declarations of condition—'I'm scared'—and not belief— 'I'm scared because [a person] threatened me.'" *Id.* (quoting *Cohen*, 631 F.2d at 1225); *see also*

27

*United States v. Liu*, 960 F.2d 449, 452 (5th Cir. 1992) ("Evidence of [defendant's] fear was admitted. Properly excluded were the alleged reasons for that fear.") Accordingly, Defendants cannot admit such statements under Rule 803(3). *See, e.g.*, *United States v. Maes*, 961 F.3d 366, 371 (5th Cir. 2020) (allowing testimony about motive, intent, and plan under Rule 803(3), but excluding testimony describing "*why* they wanted to form the plan, because such statements did not fall within the exception"). This similarly precludes Defendants from offering press releases or similar material to attempt to establish that the content of the press release impacted their state of mind. *See id.*

Similarly, Defendants should not be permitted to sidestep the hearsay rule by purporting to introduce their own statements simply to prove that the statements were made. Although a statement which is not offered for the truth of the matter asserted is not hearsay, the non-truth purpose for which it is offered must nevertheless be relevant. *Compare* Fed. R. Evid. 801 *with* Fed. R. Evid. 401. The only likely relevance of Defendants' self-serving statements would be to prove the purported truth of the matter asserted in those statements. Accordingly, the Court should be prepared to preclude Defendants efforts to introduce inadmissible hearsay. Fed. R. Evid. 802.[11]

---

[11] Defendants' social-media statements also do not qualify for the hearsay exception for business records, as they are not statements made during the regular course of business and present double hearsay, and must therefore qualify for a hearsay exception independent of Rule 803(6). *See* Fed. R. Evid. 803(6), 805. The Fifth Circuit has aptly explained why Defendants' social-media statements do not qualify as business records:

> Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person. If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6). However, if the source of the information is an outsider . . . Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that

Furthermore, Defendants attempt to dump reems of inadmissible hearsay in through press releases, web page postings, reports, and similar documents. These types of exhibits should also be excluded insofar as they constitute inadmissible hearsay.

### 7.   The Court should preclude hearsay attempting to disclaim liability for fraud.

A subspecies of inadmissible hearsay the Court should preclude are Defendants' own statements attempting to disclaim liability for fraud.

Defendants' exhibit lists include "disclaimers" that allegedly appeared on both the Atlas Trading Discord, certain Defendants' Twitter profiles, and elsewhere. For example, Defendants attempt to admit statements on their Twitter pages like "I'm not a financial advisor" and "Trade at your own risk!" The Atlas Trading Discord page allegedly had, essentially, "terms of use" posted on the page attempting to disclaim liability for trading outcomes, etc. (*See, e.g.*, "Atlas Disclaimer and Rules," Def. Matlock's Ex. List, ECF No. 519, Ex. 1.) Such "disclaimers" are objectionable, as they are not legally relevant because reliance is not an element of securities fraud and fraudsters cannot disclaim away fraud.

Such statements are legally irrelevant because disclaimers of reliance do not render misrepresentations immaterial under the federal fraud statutes. "Fraudsters may not escape criminal liability for lies told to induce gullible victims to make worthless investments by inducing them to sign a contract containing disclaimers of reliance." *United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017). If that were so, any Ponzi scheme worth the name would paper away all liability with disclaimers. That is not the law. *See, e.g.*, *id.*; *United States v. Lucas*, 516 F.3d 316, 339, n.89

---

statements made during the regular course of business have. Further, [Rule] 805 requires that all levels of hearsay satisfy exception hearsay requirements before the statements is admissible.

*Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991). Thus, the other hearsay analyses apply to each and every statement Defendants hope to offer.

(5th Cir. 2008) ("We are not persuaded that the disclaimer provision of these individual sales contracts insulates Defendants from the federal [fraud] charges . . . . Defendants do not cite to any case law for this proposition."); *United States v. Ghilarducci*, 480 F.3d 542, 546 (7th Cir. 2007) (holding contractual disclaimers do not render prior false statements immaterial for purposes of criminal fraud statutes). The Court should preclude Defendants' efforts to make it so.

"A disclaimer of reliance on certain representations" does not "mean that the oral representations were immaterial or without tendency to influence." *Weaver*, 860 F.3d at 95 (quotations omitted). Such arguments "confuse materiality—a genuine element of criminal fraud—for reliance, a concept without bearing in criminal fraud prosecutions," as Defendants consistently have done. *Ghilarducci*, 480 F.3d at 543–46 ("[T]he reliance concept . . . [has] no application in the criminal fraud context. Whether or not a victim in fact relied upon a defendant's false representations is irrelevant in criminal fraud cases.").

Given that such disclaimers have no relevant legal purpose in this trial, they are also properly excluded under Rule 403. Such evidence is far more likely to confuse the jury about the issues actually before it than it is probative of those issues. Permitting evidence or argument about disclaimers of liability could incorrectly lead the jury to believe that such disclaimers could relieve Defendants of liability for criminal fraud (they cannot) or that disclaimers are somehow probative of materiality (they are not). Thus, the Court should preclude this evidence and argument.

8. **The Court should preclude evidence and argument about the success (or lack thereof) of the fraudulent scheme because success of the scheme is not required for conviction.**

Defendants should not be permitted to argue that, because they may have lost money on some of their stock trading, the Trial Episodes could not be fraud. For example, Defendant Deel's

exhibit list includes an exhibit titled "Video of Gary Losing 650k."[12] (Def. Deel Ex. List, ECF No. 389, Ex. 15.) Not only is that irrelevant other conduct (and hearsay), it also is irrelevant to whether Defendants committed securities fraud. Similar arguments apply to the 1099-B's which contain mostly irrelevant other trading conduct. *See supra* section II.2.

The Fifth Circuit is clear that "the success of the [securities fraud] scheme is immaterial." *Greenlaw*, 84 F.4th at 346. Thus, it is legally irrelevant whether a fraud scheme or conspiracy is successful, much less that it is unprofitable. *See, e.g.*, *United States v. Aslan*, 644 F.3d 526, 545 (7th Cir. 2011) ("The wire fraud statute punishes the scheme, not its success."). In fact, criminal liability attaches to schemes to defraud that are unsuccessful or cause no loss whatsoever. *See, e.g.*, *United States v. Shaw*, 580 U.S. 63, 67 (2016) (rejecting bank-fraud defendant's argument that "he did not intend to cause the bank financial harm"); *United States v. Leahy*, 464 F.3d 773, 786–87 (7th Cir. 2006) (the fraud statutes "do not require the government to prove either contemplated harm to the victim or any loss"). Because Defendants losing money is irrelevant to the elements of the charged offenses, the defendants' anticipated arguments risk jury nullification.

Similarly, whether potential victim-witnesses, or other individuals who followed Defendants, may have made money on certain stocks Defendants touted is not relevant to the scheme, the Defendants' fraudulent intent, or the materiality of their misrepresentations. *See, e.g.*, *Greenlaw*, 84 F.4th at 346; *United States v. McCauley*, 253 F.3d 815, 820 (5th Cir. 2001); *Ranke v. United States*, 873 F.2d 1033, 1038–40 (7th Cir. 1989) (the claim that the victim "was not hurt in its pocketbook" is not a defense to fraud). This sort of "no harm, no foul" defense is faulty because the charged fraud statute does not contain a *de minimis* exception and, in fact, proscribes

---

[12] This video is also inadmissible hearsay and the Court should preclude it on that basis as well as described *supra* section II.6. It is also appears this video does not relate to a Trial Episode. Assuming it does not, the Court should preclude it as irrelevant and confusing as well, as described *supra* section II.2.

fraud schemes that are unsuccessful or cause no loss whatsoever. For this reason, evidence of victim profitability can amount only to an improper invitation to nullify on the ground of a lack of perceived harm. Thus, the Court should preclude such evidence and argument. *See id.*

In contrast, the fact that Defendants *made* money in the Trial Episodes is relevant to actual issues at trial, specifically, motive.[13] Such motive evidence is also relevant to the second prong of the securities fraud statute, 18 U.S.C. § 1348, which criminalizes the execution or attempted execution of a scheme or artifice "to obtain . . . any money or property in connection with the purchase or sale of" a covered security. 18 U.S.C. § 1348(2). Whether the Defendants executed (or attempted) a scheme to obtain fraudulently any such money or property is an issue in dispute and relevant to the jury's determination under Section 1348(2). Similarly, the fact that a victim may have lost money following Defendants is also probative of that issue. *See id.*

In sum, Defendants should not be allowed to introduce independent evidence of themselves losing money on stock trades or victim-witnesses or others gaining money, because it is legally irrelevant to the issues at trial and otherwise impermissible. Nor should Defendants be allowed to argue that, because they may have lost money on some of the attempted executions of the scheme, those executions were not securities fraud. Defendants' profits and victim-witness losses, however, are facts probative of issues in dispute with legal basis for admission. The Court should preclude the former and admit the latter. Admitting it all and letting the jury sort it out is the wrong approach because it admits irrelevant evidence, wastes time, and risks jury confusion, among other issues. *See* Fed. R. Evid. 401, 402, 403.

---

[13] To the extent certain Defendants may have lost money in certain Trial Episodes, the United States recognizes that may also be probative of motive. But Defendants cannot be allowed to argue that, in those instances where they may have lost money, it could not be securities fraud. That is unsupported by the law. *Greenlaw*, 84 F.4th at 346.

**9.  The Court should preclude irrelevant evidence and argument about causation of market movement and damages.**

Because the success of the scheme is irrelevant, so is the question whether or not Defendants were the sole cause of market price and volume movement in stocks they sought to pump and dump, or whether other factors unrelated to Defendants contributed to any observed market activity. To be clear: this is not a civil case nor is it a market-manipulation case. It is a case about securities *fraud* and conspiracy. Neither causation nor damages are elements of the charges.[14] *See* 18 U.S.C. §§ 1348, 1349 & 2.

What is charged is Defendants' securities fraud scheme. Part of that scheme is that the Defendants *sought*, *i.e.*, had fraudulent intent, to pump and dump stocks to deprive others of money or property. (Superseding Indictment, ECF No. 134, ¶¶ 13 "defendants *sought* to 'pump' the price of that security by posting false and misleading information . . . ." (emphasis added)) As the evidence will show, Defendants sought to do so, and they themselves *believed that they could*. (*See id.* ¶ 65 (Def. Deel: "we are loading these shares back down here on ALZN to send to nhod [new high of day] after lunch if you want anymore . . . ."); ECF No. 377-1 (GX 10B) at 5 (Def. Cooperman: "WE SENDIN SURF TO THE MFING MOON B*TCHES!!!").)

Thus, the focus is on Defendants' fraudulent intent—not whether they were, in fact, the sole cause of any observable market movement. To be clear: the relevant question is whether Defendants' *believed* they could cause market movement, because that question goes to their fraudulent intent. The United States will introduce substantial evidence that they did so believe. But whether or not they successfully did move the market or were the sole cause of any observed

---

[14] At best, arguments and evidence about whether the Defendants' action actually caused the profit (or the loss) is a sentencing issue, should the jury convict. *See, e.g.*, U.S.S.G. § 2B1.1. But it is not a question for the jury on these charges. *See* 18 U.S.C. §§ 1348, 1349 & 2.

market movement speaks to the *success* of the scheme, which is legally irrelevant. *See, e.g.*, *Greenlaw*, 84 F.4th at 346.

Given that the success of the scheme is legally irrelevant, the Court should preclude Defendants from introducing a parade of irrelevant evidence and argument aimed at demonstrating what other factors may have caused movement in the price or volume of the stocks at issue. If that evidence is untethered to Defendants' intent or untethered to a victim-witness on the materiality question, it is irrelevant, utterly speculative, and must be precluded. *See* Fed. R. Evid. 401, 402, 403.

An example of such evidence would be a press release untethered to Defendants or victim-witnesses.[15] If there's no foundation that any Defendant or victim-witness saw the press release at issue, such that it could have influenced Defendants' intent or a decision to trade, there is simply no relevance to this case.[16] *See, e.g.*, *Neder*, 527 U.S. at 24–25. The questions at issue are the Defendants' fraudulent intent and the materiality of their false statements, *i.e.*, whether those statements could influence their intended victims. *See id.*; *see also* 18 U.S.C. § 1348. The questions at issue are not whether the price and volume of the stock moved those days for unrelated reasons, or whether there were ten press releases about the company floating around on the internet of which there is no evidence any Defendant or legitimate witness was aware. Nor can Defendants argue that some untethered press release was a reason for their fraudulent price "predictions" without some evidence Defendants saw the press release at the time and it in fact informed those "predictions."

---

[15] The United States also objects to the admission of all such documents as inadmissible hearsay.

[16] The underlying press releases themselves also constitute inadmissible hearsay. *See* Fed. R. Evid. 802.

To be clear, there are instances where Defendants themselves re-posted links to press releases about the at-issue stocks. The United States includes instances in its exhibits. Those examples are relevant because they are tethered to the Defendants and are probative of their fraudulent intent. But free-floating information out in the world, untethered to Defendants' state of mind, is irrelevant and must be excluded at the outset. And the underlying press releases themselves constitute inadmissible hearsay. *See* Fed. R. Evid. 802.

As another example, whether others besides Defendants were touting the same stocks at the same time is irrelevant (and hearsay) and should be precluded. For example, Defendant Constantinescu's exhibit list contains reems of articles from "Seeking Alpha" and other similar financial news websites. (*See generally* Def. Constantinescu's Ex. List, ECF No. 524.) Such evidence is excludable on multiple grounds. Most directly, to the extent there is no evidence a Defendant saw the article or it had an impact on their intent, it is irrelevant and should be precluded.

Similarly, numerous Defendants have included as exhibits SEC information or filings regarding the at-issue stocks. If there's no evidence a Defendant saw this information at the time, it cannot be evidence relevant to the charges at issue and should be excluded. Besides legal irrelevance, the Court should also preclude these types of evidence on Rule 403 grounds because it is substantially more prejudicial, confusing, and time wasting, than it is probative of any fact at issue. *See* Fed. R. Evid. 401, 402, 403.

Defendants seek to point everywhere else except at their own conduct and intent in the Trial Episodes, which is all this case is about. The Court should focus these proceedings on the issues legitimately before the jury. *See* Fed. R. Evid. 401, 402, 403.

**10. The Court should preclude evidence and argument about the SEC's Report.**

As the Court is familiar, Defendants have been fixated throughout the pendency of this case by the SEC Staff Report on Equity and Options Market Structure Conditions in Early 2021 ("Report").[17] As the Court is also familiar, the SEC Report has nothing to do with this case for numerous reasons, including that the United States' will not put at issue at trial any stock trading discussed in that report.[18]

To be clear: the SEC's determination of the cause of market activity in stock trading *not at issue in this case* is completely irrelevant on numerous grounds and should be precluded. At least three grounds of irrelevancy include that the Report: (1) does not concern the stock trading at issue in this case, *i.e.*, the Trial Episodes; (2) inquired about issues not elements of the charges or otherwise relevant to this case (*e.g.*, general market structures and factual causes of stock price and volatility not in the Trial Episodes)—notably *not the Defendants' conduct*; and (3) it is untethered to Defendants' fraudulent intent and makes no conclusions as to Defendants' scheme. There is nothing in the Report suggesting Defendants were the subject of the inquiry or that it in any way relates to the trading at issue in the Trial Episodes. The Report simply has nothing to do with the case that will be presented to the jury. Given the utter lack of probative value, as well as the substantial Rule 403 grounds for preclusion, the Court should put an end to this charade and exclude this Report from "evidence" and questioning in this case.

---

[17] Several Defendants have included the report as a proposed exhibit. (*E.g.*, Def. Constantinescu's Ex. List, ECF No. 524, Ex. 1611; Def. Matlock's Ex. List, ECF No. 519, Ex. 26.)

[18] The United States also objects to the admission of the Report such documents as inadmissible hearsay.

Defendant Constantinescu's duplicity on this issue is laid bare in his own filings. In seeking to exclude the United States' Trial Episodes not forming the basis of the substantive counts, Defendant argued:

> The additional episodes . . . are *literally* separate episodes. . . . The 35 (or 378) uncharged episodes do not involve the same stocks, they are not done at the same time as Constantinescu's other charged stock trades, they are for different durations of times, purportedly involve different sets of people who also traded and said different things during different times as well as different companies and different market conditions, and **any explanation of what actually happened for each of these episodes will, necessarily, be different**.

(ECF No. 427, at 12–13 (first emphasis in original, second emphasis added).) All of that and more is true of the trading at issue in the SEC's Report, as Defendant must surely recognize. Thus, by Defendant's own logic, "any explanation of what actually happened for each of these [Trial E]pisodes will, necessarily, be different," from what's in the SEC Report.[19] (*See id.*) Accordingly, the Report is irrelevant to the Trial Episodes and must be excluded. *See* Fed. R. Evid. 401, 402, 403.

In the alternative event the Court allows the defense to make arguments, cross-examine witnesses, or offer evidence regarding the SEC's Report, the United States must be permitted to introduce evidence regarding the civil charges brought by the SEC against Defendants in *SEC v. Constantin, et al.*, 4:22-cv-04306 (S.D. Tex.), because the jury will otherwise be left with the prejudicial misimpression that the SEC Report is the full and final word of the SEC on these issues. Of course, that couldn't be further from the truth. The Report says nothing about the Defendants or the trading at issue in this case. And the jury must not be left with a prejudicial misimpression

---

[19] Of course, the Trial Episodes are admissible for other proper purposes than explanation of what happened in the substantive count Episodes, as discussed. *See supra* section I.3.

contrary to the actual facts. *See* Fed. R. Evid. 401, 402, 403; *Paolitto*, 151 F.3d at 64; *Klein*, 2017 WL 1316999, at *10.

Even if the defense does not explicitly introduce evidence or argument that the SEC Report raises doubt regarding the criminal charges in this case (which it should not be allowed to do), defense references to the Report during cross-examination or otherwise could mislead the jury into believing that the SEC did not uncover Defendants' securities fraud, and perhaps even that there was no fraud to uncover. Again, that couldn't be further from the truth, and the jury must not be left with a prejudicial misimpression.

Accordingly, if Defendants are allowed to open the door to the SEC Report (which they should not be), the United States must be allowed to establish that the SEC did in fact uncover Defendants' alleged fraud and charge them for this very conduct. If Defendants want to put the SEC's (irrelevant) determinations at issue, the jury must be presented with the full scope of those determinations as they pertain to Defendants. But the Court should nip in the bud these mini-trials within a trial by precluding Defendants' attempts to unravel this case with irrelevancies. *See* Fed. R. Evid. 401, 402, 403.

### 11. The Court should preclude evidence and argument that Defendants hoped their followers would make money on the stocks in the Trial Episodes.

The Court should preclude evidence and argument that Defendants' "hoped" their followers would make money in the stocks they called, or that those stocks would rise or reach their price targets, even after Defendants' themselves had sold out of their positions. Even assuming for the sake of argument Defendants had such hopes after they had exited the stocks, any such beliefs or hopes cannot retroactively immunize Defendants' fraudulent conduct, including their false representations and omissions of the material facts of their trading intentions, or

establish that Defendants acted in good faith at the time they participated in the charged fraudulent scheme.

It is well settled that "[n]o amount of honest belief on the part of a defendant that the scheme will ultimately make a profit for the investors will excuse fraudulent actions or false representations by" Defendants. *United States v. Leonard*, 529 F.3d 83, 91 (2d Cir. 2008). For example:

> [W]here some immediate loss to the victim is contemplated by a defendant, the fact that the defendant believes (rightly or wrongly) that he will "ultimately" be able to work things out so that the victim suffers no loss is no excuse for the real and immediate loss contemplated to result from defendant's fraudulent conduct.

*United States v. Ferguson*, 676 F.3d 260, 280 (2d Cir. 2011) (quotation omitted); *see also United States v. Stitsky*, 532 Fed. App'x 98, 108–09 (2d Cir. 2013) (holding that evidence was "sufficient to prove that [defendant] intended fraudulent to induce investors to entrust him with their money," and defendant's "intent to cause that immediate loss to his victims" was sufficient to sustain his fraud convictions, "regardless of whether he intended ultimately to generate a return on their investments").[20]

---

[20] Other courts are in accord. *See United States v. Spirk*, 503 F.3d 619, 621–22 (7th Cir. 2007); *United States v. Dunn*, 961 F.2d 648, 650 (7th Cir.1992) (where defendant fraudulently obtained funds from investors, approving use of jury trial stating: "[i]f you find that the Defendant acted with an intent to defraud, then it is no defense that the Defendant believed that [the investment] would eventually succeed"); *Moore v. United States*, 2 F.2d 839, 842 (7th Cir.1924) (defendants' hope and belief that the enterprise "would meet with a high degree of success, which would abundantly repay every investor to the full, and that it was not the intent and purpose that any one should ultimately sustain a loss through investing in the company's stock" does not "absolve [defendants] from criminal responsibility for the making of false representations for procuring capital"); *Linn v. United States*, 234 F. 543, 552 (7th Cir. 1916) (defendant possessed intent to defraud, despite his honest belief that he would generate profits for investors, where he induced them to invest by knowingly making false representations of material facts); *Pandolfo v. United States*, 286 F. 8, 13 (7th Cir.1923) ("if we concede [defendant's] absolute belief that the company would eventually [be profitable], if it could secure the necessary capital, this would not justify him in securing the capital from others by means of false and fraudulent representations and promises"); *United States v. Watts*, 934 F. Supp. 2d 451, 471 (E.D.N.Y. 2013) (stating defendant "has every right to present evidence that he . . . had a good-faith belief that the [statements alleged as fraudulent] were in fact truthful and accurate, and thereby attempt to refute the element of fraudulent/criminal intent; however, he has no right to present

Thus, the Court should preclude evidence and argument suggesting that, even though Defendants themselves had sold out of a stock, they still "hoped" or "believed" their followers to whom they touted the stock would profit. Such evidence is irrelevant because it does not negate Defendant's prior fraud. Further, any possible probative value is substantially outweighed by danger of confusing the issues and misleading the jury. *See* Fed. R. Evid. 403.

### 12. The Court should preclude evidence and argument about prosecutorial decisions because those issues are irrelevant to the crimes charged.

Defendants have repeatedly sought to litigate the United States' prosecutorial decisions throughout this case. (*See, e.g.*, ECF Nos. 160, 328, 343, 344, 423.) Accordingly, the United States is concerned Defendants may attempt to raise these types of disputes before the jury, which would be inappropriate and the Court should preclude *in limine*.

Any statements or arguments from the defense regarding selective prosecution are not relevant to Defendants' guilt, have no probative value for issues on trial, and should be precluded. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."); *see also In re U.S.*, 397 F.3d 274, 286 (5th Cir. 2005) ("selective prosecution is a challenge to the prosecution, not a defense to the crime charged").

Similarly, general evidence and argument relating to the exercise of a prosecutor's discretion are not proper at trial, because the United States' motivations and charging decisions are not relevant to the guilt or innocence of a defendant. *See United States v. Johnson*, 605 F.2d

---

evidence regarding the irrelevant issue of his good-faith belief that the fraudulently obtained loans would ultimately be paid back"); *United States v. Gole*, 21 F. Supp. 3d 161, 166 (E.D.N.Y. 1997) ("The definition of good faith addresses the defendant's belief in the truth of the representations, and not the defendant's belief as to the ultimate success of the plan . . . .") (quotation omitted).

1025, 1030 (7th Cir. 1979) (evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus excluded from trial); *United States v. Johnson*, No. 08 CR 466, 2011 WL 809194, at *3 (N.D. Ill. Mar. 2, 2011) ("Argument or evidence relating to the Government's motivation are not relevant to the jury's determination of a defendant's guilt or innocence."); *see also United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant").

Hence, any evidence or argument on these points improperly invites jury nullification. *See United States v. Rainone*, No. 09 CR 206, 2013 WL 389004, at *1 (N.D. Ill. Jan. 31, 2013) (excluding, due to risk of nullification, evidence or argument about government's motivations or allegations of selective prosecution); *see also United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997) (affirming decision precluding "evidence at trial that the grand jury investigation was illegitimate"); *United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (finding that defendant's trial arguments involving, *inter alia*, "invit[ation of] jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt" functioned as a defense "ploy for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial"). Such statements by defense counsel have zero probative value, would only be intended to prejudice the jury, and must be precluded. *See* Fed. R. Evid. 403.

Improper arguments would also include, for example, suggestions that the prosecution is unfair because the United States has prosecuted Defendants but not others. Those individuals could

include people who appear in exhibits to be partaking in the scheme alongside Defendants. Whether or not those individuals were involved in a crime simply is not relevant to whether Defendants are guilty of the crimes charged. Even more removed, Defendants' proposed jury questionnaire mentions CNBC financial analyst Jim Cramer, in a question the Court should obviously strike. It goes without saying there should be no suggestion to the jury that "my client is just like Jim Cramer [or any other financial commentator]" or "Jim Cramer does this all the time and he's not on trial!" As this Court stated in response to Defendant making "everybody's doing it" arguments at a hearing: "everybody doing it is not a good defense." Dec. 18, 2023 Hr'g Tr. at 23:10–11. The only potential purpose is attempted jury nullification, and the Court should not allow it. *See* Fed. R. Evid. 401, 402, 403; Fifth Cir. Pattern Jury Instrs. § 1.21 (2019 ed.) ("You are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crime charged. The defendant is not on trial for any act, conduct, or offense not alleged in the indictment. ***Neither are you called upon to return a verdict as to the guilt of any other person or persons not on trial as a defendant in this case, except as you are otherwise instructed***." (emphasis added)).

The identity and quantity of individuals charged in connection with the scheme at issue, the reasons behind the United States' charging decisions, and the culpability of Defendants as compared to other individuals are all examples of irrelevant and unfairly prejudicial evidence aimed at jury nullification. *See, e.g.*, *United States v. Thompson*, 253 F.3d 700 (5th Cir. 2001) (upholding grant of the Government's motion *in limine* to prevent counsel from comparing defendant's conduct to that of other uncharged or immunized witnesses); *see also United States v. Re*, 401 F.3d 828, 833 (7th Cir. 2005) (finding that the Government's exercise of prosecutorial discretion is not proper subject for cross-examination).

Similarly, Defendant Constantinescu has included on his witness list the FBI Special Agent who is completely unrelated to this case that Defendant attempted to inject into these proceedings with irrelevancies last summer. (*See* ECF Nos. 328, 343, 344, 423.) Needless to say, his testimony will not be probative of any issues before the jury, would be far more unfairly prejudicial and confusing, and should be precluded. *See* Fed. R. Evid. 403.

Thus, the Court should preclude Defendants from making arguments or comments to the jury—and from eliciting statements on cross-examination—which are irrelevant and instead designed only to encourage a verdict without regard to the law. *See Regan*, 103 F.3d at 1081; *Rosado*, 728 F.2d at 93.

### 13. The Court should preclude all evidence and argument about the conduct/misconduct of other uncharged individuals.

Relatedly, the conduct (or potential misconduct) of others either on social media, in the stock market, or otherwise, is not relevant to the issues at trial.

Such evidence or argument could take many forms. For example, Defendants' exhibit lists and statements throughout this case suggest they will attempt to demonstrate that other uncharged individuals were talking about these stocks on social media. (*See, e.g.*, ECF No. 160 at 7 (Def. Rybarczyk: "Some were grateful for his tweets. There were also so [sic] tweets from trolls accusing Rybarczyk and his followers of being involved in a 'pump and dump' scheme. This begs the question whether many of the so-called victims are, instead, unindicted co-conspirators.") Not only is that hearsay, it is legally irrelevant (other than, perhaps, as an admission there was a conspiracy). Whether others were also contributing to (or conducting their own) schemes is not relevant to Defendants' intent or any other issue legitimately before the jury in this case.

Hence, that other traders *also* may be engaged in wrongdoing does not excuse or justify Defendants' conduct. *See United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (affirming

exclusion of testimony that was "an attempt to establish an 'everybody-is-doing-it defense'" and noting "the fact that others may have been the beneficiaries of improper conduct does nothing to excuse [the defendant]").

Defendants also might offer evidence of others' misconduct to mount an "empty chair" defense—*i.e.*, to suggest to the jury that more culpable actors (retail traders, institutional investors, or otherwise) have not been charged, implicitly calling for jury nullification. To the extent that the defendants seek to argue that others have escaped prosecution, the Court obviously should preclude them from doing so. Any such evidence or argument is irrelevant, prejudicial, and invites nullification.

### 14. The Court should preclude evidence and argument about the novelty of the charges.

The Court should preclude Defendants from arguing or adducing evidence that the charges in this case are somehow novel because that is legally irrelevant. Indeed, the defense has already made such arguments to the Court. (*See, e.g.*, ECF No. 323 (arguing about the "novel theory of prosecution").) Such arguments should not be presented to the jury.

Arguments about the alleged novelty of the charges, have no relevance to any fact of consequence. *See* Fed. R. Evid. 401, 402; *United States v. Stewart*, No. 03-cr-717, 2004 WL 113506, at *2 (S.D.N.Y. Jan. 26, 2004) (concluding that "[a]ny characterization of the securities fraud charge . . . as 'novel' is irrelevant to the jury's consideration of the indictment in this case," and ordering that "[t]he defense may not argue or present evidence to the jury that tends to show that this count is an unusual or unprecedented application of the securities laws").

The sole question before the jury is whether the facts prove beyond a reasonable doubt that Defendants are guilty of the crimes charged. *See Rosado*, 728 F.2d at 93; *United States v. Borrero*, No. 13-cr-58, 2013 WL 6020773, at *2 (S.D.N.Y. Nov. 1, 2013) (precluding cross examination

regarding a government charging decision in part because "the limited amount of probative value that the . . . charging decisions add is substantially outweighed by the risk of undue confusion and an unnecessary sideshow . . ."). This will require the jury to determine, for instance, whether Defendants' statements were in fact false representations and whether those statements were made with the intent to defraud, not whether the charges are common or uncommon. *See* 18 U.S.C. § 1348.

Attempts to argue the "novelty" of this case is just a way to indirectly do what the defendants cannot do directly: introduce evidence as to charging decisions in this case. *See supra* section II.13. It is also a variant of a fair-notice argument, which the Court has already denied and should preclude at trial. *See* (Order, ECF No. 385, at 4–6 ); *infra* section II.21.

### 15. The jury should hear no evidence or argument about pretrial discovery.

The United States respectfully requests that the Court require the parties to raise any pre-trial discovery disputes outside the jury's presence.

Discovery disputes, whether they arise before or during trial, have no relation to the conduct or charges at issue and, thus, have no place in front of the jury. *See, e.g.*, *United States v. Wilson*, 5:19-cr-11-KHJ-FKB, 2022 WL 357074, at *1–2 (S.D. Miss. Aug. 18, 2022) (granting United States' motion to "handle discovery disputes outside the presence of the jury"); *United States v. Fleming*, 3:19-cr-254, 2022 WL 895920, at *3 (S.D. Miss. Mar. 25, 2022) ("Discovery disputes and legal issues do not speak to [defendant's] guilt or innocence," and should "be addressed with the Court."); *United States v. Auzenne*, 2:19-cr-53, 2020 WL 6438665, at *2 (S.D. Miss. Nov. 2, 2020) (granting United States' motion to "bar all evidence or argument related to discovery disputes" because "[s]uch disputes are irrelevant to the issues before the jury").

Requests and comments relating to discovery made in the jury's presence can create a false impression that one side has withheld information as a means to seek an advantage. The only potential reason to make such statements is to create unfair prejudice and/or call for impermissible jury nullification, which the Court should preclude. *See, e.g.*, Fed. R. Evid. 403; *Penn*, 969 F.3d at 458. This preclusion is especially important in this case given Defendants' repeated penchant for raising concerns and filing motions about discovery and pre-trial conduct of the United States.

Therefore, the United States requests that any demands for discovery or comments regarding pre-trial discovery be made to the Court or opposing counsel outside the presence of the jury. *See id.* Any other approach is unfairly prejudicial and improper. *See id.*

### 16. The Court should preclude evidence and argument about the United States' decision not to call a particular witness.

Defendant should not be permitted to comment on (in argument or examination), or ask the jury to draw any negative inference from, the United States' decision not to call a particular witness. "The long-standing rule in this circuit is that any inference from a party's failure to call a certain witness equally available to both parties is impermissible." *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970); *see also United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009). Defendant can (and has) subpoena(ed) any witness available to the United States, so any suggestion otherwise is impermissible, prejudicial, and should be precluded. *See id.*

### 17. The Court should preclude Defendants from cross-examining cooperating witnesses as to the specifics of potential sentences under the advisory U.S. Sentencing Guidelines.

The Sixth Amendment guarantees defendants the right to cross-examine cooperating witnesses. *See* U.S. Const. amend. VI; *United States v. McCulloguh*, 631 F.3d 783, 790 (5th Cir. 2011). That includes cross-examination as to potential biases, including benefits of cooperation. *See id*. Nevertheless, trial judges retain "wide latitude . . . to impose reasonable limits on . . . cross

examination based on concerns about, among other things, harassment, prejudice, [or] confusion of the issues . . . ." *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679–80 (1986)). A district court exercises sound discretion in limiting cross-examination when "the jury ha[s] sufficient other information before it, without the excluded evidence, to make a discriminating appraisal of the possible biases and motivation of the witness," or a reasonable jury would not have a "significantly different impression of the witnesses' credibility" without the limitation. *See Van Arsdall*, 475 U.S. at 678–80.

For example, in *United States v. Roussel*, the Fifth Circuit affirmed the district court's decision declining to allow defendant to cross-examine a cooperator about the specifics of his sentencing exposure under the U.S. Sentencing Guidelines. 705 F.3d 184, 194 (5th Cir. 2013). There, defendant was allowed to question the witness about his potential bias, the jury had a full copy of the witness's plea agreement and so knew the statutory maximum penalties he could face under the charges, and the "jury knew that the government could ask for an even lesser sentence depending on the value of [the witness'] cooperation." *Id.* Thus, "the jury had more than enough information to infer [the witness'] potential bias," and the district court did not abuse its discretion in limiting more specific questioning. *Id.* at 194–95. Furthermore, "[g]iven that [the witness] had not been sentenced at the time of his testimony, [the witness'] own estimate of his sentence under the sentencing guidelines would have been speculative and confusing to the jury." *Id.* at 195.; *see also United States v. Davis*, 393 F.3d 540, 547–48 (5th Cir. 2004) (holding district court did not abuse discretion in limiting cross-examination where defense counsel was able to elicit information on the effect of a plea agreement).

Accordingly, here, the district court should preclude Defendants from cross-examining cooperating witnesses about the specifics of their potential sentences under the advisory U.S.

Sentencing Guidelines. The jury will have sufficient information concerning the witnesses' potential biases, including hopes for leniency, and the Court should preclude further questioning on the specifics of the sentences at issue. *See Roussel*, 705 F.3d at 194; *United States v. Mussare*, 405 F.3d 161, 170 (3d Cir. 2005) (concluding that "the actual number of years in jail that [the witness] would otherwise have faced was not likely to have altered the jury's impression of his motive for testifying"). Such questioning is, in actuality, a back-door method of putting the consequences of Defendants' convictions before the jury, which is a plainly impermissible attempt at jury nullification the Court should not allow. *See, e.g.*, *Shannon v. United States*, 512 U.S. 573, 579 (1994) ("The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between the judge and jury."); *United States v. Wiggins*, No. EP-11-CR-2420-FM, 2013 WL 12093020, at *4–5 (W.D. Tex. July 16, 2013) (granting the United States' unopposed "motion to exclude evidence or argument regarding conviction's impact upon defendant's family needs").

### 18. The Court should preclude evidence and argument regarding a witness's irrelevant drug use.

Materials produced in discovery reflect that a witness the United States may call to testify has engaged in past recreational drug use. The Court should preclude the defense from offering evidence of that drug use, cross-examining the witness about the drug use, and otherwise mentioning this issue before the jury without a detailed proffer establishing that the drug use impacted the witness's recollection on each specific instance about which the witness may be questioned. In other words, the Court should preclude general questioning about the witnesses' drug use because it is not relevant and would serve only to harass the witness and unfairly prejudice the jury against the witness.

Federal Rule of Evidence 608 bars the use of extrinsic evidence to prove specific instances of a witness' conduct, except for a criminal conviction or on cross-examination if probative of truthfulness. To be admissible under Rule 608, "the alleged bad act must have a basis in fact and . . . the incidents inquired about must be relevant to the character traits at issue in the trial." *United States v. Skelton*, 514 F.3d 433, 443–44 (5th Cir. 2008).

The Fifth Circuit has held that "drug use is not probative of truthfulness." *United States v. McDonald*, 905 F.2d 871, 875 (5th Cir. 1991) (holding trial court erred in allowing cross-examination about witness' past drug use); *United States v. Samples*, 897 F.2d 193, 197 (5th Cir. 1990) ("[G]eneral questions relating to drug use would be irrelevant."). Courts generally allow inquiry about past drug use only where the use affects the witness's ability to testify at trial or ability perceive the underlying events on the dates in question. *See, e.g.*, *United States v. Hudson*, No. 9-cr-171, 2011 WL 5357902, at *2 (E.D. La. Nov. 7, 2011) (collecting cases); *see also United States v. Bentley–Smith*, 2 F.3d 1368, 1379 (5th Cir. 1993) (finding government's failure to disclose a witness' admission that he had used cocaine about nine days before the trial was not a material *Brady* violation because evidence of the drug use would not have been admissible).

Thus, assuming the witness is not impaired by drugs on the day(s) of testimony, the only potential relevance of the drug use is on the specific dates about which that witness would testify. *See United States v. Brenner*, 229 F.3d 1147, 2000 WL 1239118 at *2 (5th Cir. 2000) (noting that drug use "on the day in question" was "relevant in assessing [the witness'] ability to recall the events of that day"). Should the defense seek to question the witness about drug use on particular days, *i.e.*, dates in the Trial Episodes, the Court should require the defense to make a showing outside the presence of the jury that there is the proper foundation for such questioning. *See, e.g.*, *Hudson*, 2011 WL 5357902, at *3; *see also United States v. Mojica*, 185 F.3d 780, 789 (7th Cir.

1999). A court in this circuit described an appropriate procedure for determining whether such questioning should occur before the jury:

> [B]efore the defendant may attempt cross-examination of a Government witness related to the witness's drug use, he shall proffer, outside the presence of the jury, evidence that the witness's drug use affected the witness's perception of the underlying events or memory of those events. Specifically, defendant shall proffer information about the type and amount of drugs used by the witness, the probably effect and when the witness used the drugs in relation to the events about which he testifies and in relation to the time he gives his testimony. Following the proffer, the Court will determine whether to permit cross-examination related to drug use.

*Hudson*, 2011 WL 5357902, at *3; *see also* 4-607 Weinstein's Federal Evidence § 607.5. This Court should employ such a procedure here, as necessary. Specifically, if the defense is unable to demonstrate that the witness was impaired by drugs, and the details of that impairment, on each specific date about which the defense seeks to question the witness, the Court should not permit the questioning. *See, e.g.*, *Samples*, 897 F.2d at 197. General roving questioning about drug use is not permitted by the law, is not relevant, and the Court should not permit it here. *See id.* Even if the defense clears these hurdles and establishes that limited questioning on the topic is probative, the Court may still exclude that questioning under Rule 403. *See, e.g.*, *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987). The Court should not permit an attempt to smear a witness with generalized questioning irrelevant to the issues before the jury and unsupported by law.

**19. The Court should preclude Defendants from an advice of counsel defense or introducing evidence or argument about the "presence" of counsel unless Defendants satisfy the requirements to admit such a defense.**

"Advice of counsel, when given on full disclosure of all the facts and followed in good faith, may be a matter to be considered by the jury in determining the [defendants'] guilt." *United States v. Carr*, 740 F.2d 339, 347 (5th Cir. 1984) (quotation omitted). "For such a defense to be

permitted, however, there must be at least some evidence that the attorney advised the defendant as his counsel." *Id.*

"[W]hen the defendant is asserting reliance on advice of counsel as a defense . . . he must make a full and good faith disclosure before the evidence is admissible." *United States v. Taglione*, 546 F.2d 194, 201 (5th Cir. 1977). Specifically, Defendants must show that:

1. The advice was sought and received before taking the allegedly criminal action;

2. Defendant sought the advice of a professional in good faith;

3. With the purposes of determining whether the conduct was lawful;

4. The professional was apprised of all material facts which the defendant knew; and

5. Defendant acted strictly in accordance with the advice of the professionals.

*See, e.g.*, *United States v. Hagen*, 542 F. Supp. 3d 515, 518 (N.D. Tex. 2021).

Where such a showing has not been made, a defendant may not introduce evidence "solely to show that lawyers attended meetings or set up meetings," place "undue focus on the fact of a lawyer's presence at a meeting or that counsel reviewed disclosures," or "suggest that counsel blessed the relevant [materials]." *SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013); *see also SEC v. Lek Sec. Corp.*, No. 17-cv-1789, 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019) ("the intimation that counsel has blessed a transaction or practice without waiver of the attorney-client privilege" is improper). The advice of counsel defense is also not permissible when defendants retain . . . counsel to insure the success of their mendacious scheme . . . or when the facilitation of a scheme was the essence of the attorney-client relationship in controversy." *Carr*, 740 F.2d at 347.

Here, Defendants have made no showing entitling them to present such a defense. That's despite the United States asking, on November 14, 2023, for Defendants to provide notice of any anticipated advice of counsel defense by December 8, 2023, and notifying Defendants that the defense requires certain related pre-trial discovery. No Defendants responded to the request. Yet at least one Defendant has included an attorney on his witness list. The Court should order Defendants to provide immediate notice should they intend to admit such a defense, and produce the related discovery, or otherwise preclude them from presenting the defense. *See, e.g.*, *Hagen*, 542 F. Supp. 3d at 518 ("Courts have discretion to order pretrial notice of an advice-of-counsel defense because such defense waives attorney-client privilege and warrants disclosing previously privileged documents to the Government. Lack of pretrial disclosure of such defense thus could cause delay at trial." (citation omitted)).

Even with such pre-trial notice, it is not clear that Defendants will be able to make the required showing to present such a defense. To the extent Defendants do not meet these strict factors for admission, the Court should preclude such a defense. *See, e.g.*, *Taglione*, 546 F.2d at 201; *Tourre*, 950 F. Supp. 2d at 684. Further, prior to any mention of a lawyer before the jury, the Court should require Defendants to proffer the evidence they would admit to satisfy this inquiry. *See, e.g.*, *Taglione*, 546 F.2d at 201; *Lek*, 2019 WL 5703944, at *4.

### 20. The Court should preclude Defendants from raising alibi defenses because they did not respond to the United States' request for notice of such defenses under Rule 12.1.

"Rule 12.1 permits the prosecution to ascertain in advance of trial whether a defendant will offer an alibi and if so the details and the witnesses he proposes to call to establish it." *United States v. Vela*, 673 F.2d 86, 88 (5th Cir. 1982).[21] "The short explanation of the rule's purpose is

---

[21] Rule 12.1 provides, in pertinent part:

that it is intended to prevent unfair surprise to the prosecution." *Id.* (quotations omitted). "If a party fails to comply with this rule, the court may exclude the testimony of any undisclosed witness regarding the defendant's alibi." Fed. R. Crim. P. Rule 12.1(e).

Here, the Court should exclude any alibi defense Defendants attempt to present, because Defendants failed to respond to the United States' written notice or otherwise comply with Rule 12.1. *See id.* On November 14, 2023, the United States sent an email to Defendants' counsel requesting Rule 12.1 notice by December 8, 2023, of any alibi defense any Defendant intended to raise with respect to the Trial Episodes, which adequately informed Defendants of the temporal specifics of the request. *See, e.g.*, Rule 12.1(a); *Vela*, 673 F.2d at 89. Defendants did not respond to the request. Thus, the Court should preclude Defendants from raising alibi defenses. The United States would be entitled to pretrial discovery of these defenses. Were the Court to permit Defendants to raise such defenses despite their disregard of Rule 12.1 and the United States' request, it would be fundamentally unfair and induce the precise unfair surprise Rule 12.1 was intended to prevent. *See, e.g.*, *Vela*, 673 F.2d at 88.

---

(1) Government's Request. An attorney for the government may request in writing that the defendant notify an attorney for the government of any intended alibi defense. The request must state the time, date and place of the alleged offense.

(2) Defendant's Response. Within 14 days after the request, or at some other time the court sets, the defendant must serve written notice on an attorney for the government of any intended alibi defense. The defendant's notice must state:

    (A) Each specific place where the defendant claims to have been at the time of the alleged offense; and,

    (B) The name, address, and telephone number of each alibi witness on whom the defendant intends to rely.

Fed. R. Crim. P. Rule 12.1(a).

To be clear, such defenses would include evidence or argument suggesting that it was not a particular Defendant who was either posting on social media and/or trading stocks during one or more of the Trial Episodes. Such suggestion that Defendant was elsewhere—*i.e.*, not on the computer or phone posting and/or trading—is an alibi defense falling under Rule 12.1. *See, e.g.*, *Vela*, 673 F.2d at 89 (recognizing alibi defense notice concerns the "discrete temporal aspect of the crime charged"); *see also United States v. Champers*, 922 F.2d 228, 240 (5th Cir. 1991) ("An alibi defense precludes the defendant's guilt by placing him, when the offense occurred, at a location different from that at which he allegedly committed the crime."). The United States would be entitled to investigation and discovery related to any such defense, which could require a continuance, substantially inconveniencing the Court and jury. The very purpose of Rule 12.1 is to avoid such surprises and disruptions. *See, e.g.*, *Vela*, 673 F.2d at 88. By failing to respond to the United States' timely demand, Defendants have forfeited their right to raise such defenses and the Court should preclude them.

### 21. The Court should preclude arguments without basis in law the Court has already rejected.

As the Court is aware, Defendants have attempted arguments without basis in the law throughout these proceedings. The Court recognized the invalidity of many of these arguments in denying Defendants' many motions to dismiss. (Order, ECF No. 385.) Given that these arguments have no basis in the law, they certainly have no basis to be presented to the jury. *See, e.g.*, *Bailey*, 444 U.S. at 416–17 (allowing defendant to present a defense insufficient as a matter of law "present[s] a good example of the potential for wasting valuable trial resources"). As such, the Court should preclude Defendants' attempts to put such arguments before the jury, including: (a) the vagueness, or Defendants' ignorance of, the law; (b) the fact that Defendants are not securities professionals or are not covered by other securities laws or regulations; (c) the fact that

Defendants are not covered by some independent duty to disclose their securities transactions; and (d) any mention of the First Amendment.

> ### a. The Court should preclude all evidence or argument about vagueness or ignorance of the law.

This Court has already found that "[t]he statutes in question, 18 U.S.C. § 1348 and § 1349, are not ambiguous or vague. In fact, compared to most statutes, they are relatively straightforward." (Order, at 4–5.) The Court similarly denied Defendants' fair-notice challenges. (Order, at 4–6.) Thus, there is no basis for Defendants to attempt to suggest to the jury that the law is vague or they lacked fair notice. The Court should preclude any such attempt. *See* Fed. R. Evid. 401, 402, 403.

Similarly, the Court should preclude Defendants from attempting to argue that they were ignorant of the law. "The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 646 (2015) (quoting *Cheek v. United States*, 498 U.S. 192, 199 (1991)); *United States v. Kilgore*, 591 F.3d 890, 894 (7th Cir. 2010) ("[I]t is hornbook law that ignorance of the law is generally no defense."). Given that the Court has already concluded Defendants had fair notice, any evidence or argument about the Defendant's potential ignorance of the law is irrelevant, inadmissible, and should be precluded. *See id.*

> ### b. The Court should preclude evidence and argument suggesting Defendants are not securities professionals with corresponding duties or otherwise covered by other irrelevant securities laws or regulations.

The Court should preclude Defendants from introducing evidence or argument that they are not covered by other securities laws or regulations other than the charged statutes. As this Court found, such argument is "the least meritorious" advanced by Defendants. (Order, at 4.) "The fact that certain activities do not violate one set of laws has never been a defense that the alleged actions

do not violate a different set of statutes. That would be the equivalent of a driver saying that he or she could not be prosecuted for driving the wrong way on a one-way street because he or she was complying with the speed limit." (*Id.*) These issues simply are not probative of any fact at issue and must be precluded. *See* Fed. R. Evid. 401, 402, 403. The only statutes or regulations that should be put before this jury are the charges in the Superseding Indictment. Thus, the Court should preclude Defendants from arguing that they're not covered by other securities laws or regulations, that they are not regulated, sophisticated securities professionals, or some other variant of these irrelevant arguments.

### c. The Court should preclude evidence and argument suggesting Defendants have no independent duty to disclose their stock transactions.

More specifically, the Court should not allow Defendants to present evidence or argument suggesting Defendants did not have some independent duty to disclose their stock sales. The Court has already recognized this argument in this case has no basis in the law: "Once the Defendants opted to publicly speak, they had a duty to be honest and not to defraud. . . . The duty not to defraud is imposed by 18 U.S.C. §§ 1348–1349 and the duty to be honest was self-imposed on the Defendants by the Defendants when they chose to engage in discourse pertaining to various stock transactions." (Order, at 3.) Thus, the Court should preclude evidence and argument that Defendants had no duty to disclose their stock sales because it is irrelevant to any issue before this jury, has no basis in law, and is inadmissible. *See* Fed. R. Evid. 401, 402, 403.

### d. The First Amendment is not a defense in this case and should not be mentioned to the jury.

As this Court has also recognized, "[t]he First Amendment has never been a shield to fraud." (Order, at 4); *see also Ill., ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003). Thus, "the First Amendment does not provide [Defendants] any relief," and is not a defense in this case. (Order, at 4.) Because the First Amendment is irrelevant to these proceedings,

56

it should not be mentioned before the jury. Such mention or suggestion that the prosecution infringes on Defendants' First Amendment rights would be highly improper, unfairly prejudicial, and the Court should ensure it does not occur. *See* Fed. R. Evid. 401, 402, 403.

<u>**Conclusion**</u>

The Court should grant the United States' motions *in limine* to ensure the jury is presented with an efficient trial focused on the issues legitimately before it.

Dated: February 9, 2024                     Respectfully submitted,

                                            GLENN S. LEON
                                            Chief, Fraud Section
                                            Criminal Division, Department of Justice

                                    By:     */s/ John J. Liolos*
                                            Scott Armstrong, Assistant Chief
                                            John J. Liolos, Trial Attorney
                                            Fraud Section, Criminal Division
                                            United States Department of Justice
                                            1400 New York Ave. NW
                                            Washington, DC 20005
                                            Tel.: (202) 768-2246

                                            ALAMDAR S. HAMDANI
                                            United States Attorney
                                            Southern District of Texas

                                    By:     */s/ Thomas Carter*
                                            Thomas H. Carter
                                            Assistant United States Attorney
                                            State Bar No.: TX24048387
                                            1000 Louisiana Street, 25th Floor
                                            Houston, Texas 77002
                                            Tel.: (713) 567-9470

## **Certificate of Service**

I hereby certify that on February 9, 2024, I will cause the foregoing motions to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section