IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD CONSTANTINESCU,<br>PERRY "PJ" MATLOCK,<br>JOHN RYBARCZYK,<br>GARY DEEL,<br>STEFAN HRVATIN,<br>TOM COOPERMAN,<br>MITCHELL HENNESSEY,<br>DANIEL KNIGHT. | No. 4:22-CR-00612-S |

**DEFENDANTS' JOINT MOTION *IN LIMINE*
TO EXCLUDE MISLEADING, IRRELEVANT INFORMATION,
TESTIMONY AND EXHIBITS RELATED TO CAUSATION**

Defendants Edward Constantinescu, Perry "PJ" Matlock, John Rybarczyk, Gary Deel, Stefan Hrvatin, Tom Cooperman, and Mitchell Hennessey (collectively, the "Defendants"), jointly move *in limine* to exclude from trial certain misleading, confusing, irrelevant and unduly prejudicial information from the government's case. The government has taken the position that causation is irrelevant to its charges and has admitted that it cannot prove that any of the defendants' messages or trading activity caused any of the stocks' prices to change or was the cause of increased trading volume. Accordingly, several things must be excluded from the government's case so as not to mislead the jury. In support of this motion, Constantinescu submits the following:

*The Government's Concessions About Its Case*

1.  The government's case approaching trial is very different from what was originally charged and promoted in the press. As the parties have highlighted problems in the

1

government's theories and proofs, the government has made the following concessions and taken the following positions:

      a.    *First*, the government has conceded that it does not intend and cannot prove that the defendants' conduct caused any stock price movement and has taken the position that whether the defendants' actions affected stock price is irrelevant.  The government has clarified that "[t]he United States does not allege ***and will not contend that Defendants were the sole cause of market movement*** in the at-issue stocks in the at-issue time periods" and "[t]hat the price of a security may have increased or decreased in part ***because of unrelated market activity (it almost certainly did in most or every instance)*** does nothing" to prove the scheme.  Gov. Filing at ECF No. 424 at 8 (emphasis added).  The government has stated further that "whether [or not] the Defendant's statement was . . .. . . the cause of any loss suffered by the reader, is not relevant."  Gov. Filing at ECF No. 502 at 8.  Because, according to the government, "the charged conduct does not require any proof of actual manipulation of a stock's price[.]"  Gov. Filing at ECF No. 424 at 7.

      b.    *Second*, the government has conceded that the profits the defendants made from trading stocks that the government is challenging are not relevant to its case.  More specifically, the government contends that the $114 million figure, which it included in its indictment but cannot support through trial evidence, "is not an element of the charges" and has even acknowledged that the figure should be stricken from the Indictment altogether as surplusage.  *See* Gov. Filing at ECF 502 at 8 (referring to the $114 million profit figure and arguing that "such surplusage may be narrowed by the Court or the United States before being presented to a jury").  This concession is critical.  The Fifth Circuit has defined "surplusage" as language that alleges facts beyond those which comprise the elements of the crime.  *United*

*States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010). And striking surplusage is appropriate if it is "irrelevant, inflammatory, and prejudicial." *United States v. De Bruhl-Daniels*, 491 F. Supp. 3d 237, 252 (S.D. Tex. 2020) (quoting *United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993)).

2. The government's concessions that (1) "unrelated market activity" was responsible for the stock price movement "in most or every instance"; (2) it is irrelevant whether the defendants' messages caused a loss to anyone; and (3) the defendants' profits derived from trading the stocks highlighted by the government are irrelevant (and possibly prejudicial) make several aspects of the government's case irrelevant and, if permitted to be heard and seen by a jury, confusing, misleading and unduly prejudicial.

*The Government's Profit Figures Must Be Precluded as Irrelevant, Misleading and Unduly Prejudicial*

3. The government should not be able to mention at trial the total "profit" that the defendants made from trading the stocks challenged by the government, nor should they be able to state that these profits are attributable to any illegal scheme. As highlighted above, the government has already conceded that the stock price moved not because of the defendants' actions, but instead because of "unrelated market activity." It is without question that the defendants profited from their stock trading only because the stock price moved in between the times the defendants bought and sold each of their separate stock positions. All trades were free market trades placed through a broker-dealer and executed at prevailing market rates. Because the government cannot and does not intend to show at trial that this stock price movement was the result of defendants' messaging or stock trading, the government must be prohibited from telling the jury that the defendants profited from a "scheme" or by posting messages on Twitter or Discord. To suggest to the jury that the defendants collectively made $114, $121, or $30

million by an illegal scheme is misleading, unduly prejudicial, confusing, and runs squarely counter to the government's concessions in prior court filings. The government has conceded as much by labeling this figure in its Indictment as "surplusage." Tying the large dollar figure to an illegal or collective scheme is also inappropriate because the government has made clear that it does not intend to put on evidence at trial that any of the defendants' allegedly illegal misconduct caused a single penny of profit. Accordingly, reference to profits should be precluded under Rules 402 and 403.

<u>*The Government Must Be Precluded at Trial From Stating the Defendants Engaged in a "Pump and Dump"*</u>

4. The government should be precluded from using the highly prejudicial term "pump and dump" at trial because its concessions above make clear that it does not actually intend to prove that the defendants engaged in a "pump and dump." The SEC's own website describes a "classic" pump and dump scheme as, in relevant part:

> Unwitting investors then purchase the stock in droves, **creating high demand and pumping up the price**. But **when the fraudsters behind the scheme sell their shares** at the peak and stop hyping the stock, **the price plummets**, and investors lose their money.

*See* SEC Investor Alert, available at: https://www.sec.gov/reportspubs/investor-publications/investorpubspump (emphasis added).

5. The government has conceded that it cannot and will not prove that the defendants actually caused any price increase that pumped up the price, not will they show that any of the defendants' stock sales caused the stock price to "plummet," the very hallmarks of a "pump and dump" scheme.

6. The use of the phrase "pump and dump" has a specific meaning that is associated with fraud schemes, similarly to calling conduct a "Ponzi scheme" or equating something as

4

similar to the "Enron" scandal. Here, because the government does not and cannot put forward evidence of causation, it cannot show that any of these "episodes" was a "pump and dump." Accordingly, permitting the government to throw this term around in lieu of proof (particularly where the government has said repeatedly it will not introduce such proof) is misleading, confusing, and unduly prejudicial. *See, e.g., Shady Hills Energy Ctr., LLC v. Seminole Elec. Coop., Inc.*, No. 8:20-CV-81-WFJ-JSS, 2023 WL 1768348, at *1 (M.D. Fla. Feb. 3, 2023) (prohibiting the phrase "shell company"); *City of Farmington Hills Employees Ret. Sys. v. Wells Fargo Bank, N.A.*, Civil No. 10–4372 (DWF/JJG), 2014 WL 12610207, at *5 (D. Minn. Apr. 3, 2014) (same as to "Ponzi Scheme," "Enron," or "Petters").

*Peter Melley's Misleading, Undisclosed Testimony About Price Volume Must Be Excluded*

7. The government's expert witness Peter Melley's testimony that he observed increased prices and trading volume of stocks on certain days when the defendants posted messages about the stocks must be excluded. Such testimony is misleading, confusing, and unduly prejudicial because it suggests that the defendants' messages *caused* a price increase and increased trading volume but the government cannot prove such a thing. The testimony conflates correlation with causation and lacks any scientific foundation or empirical basis. Further, such testimony is improper because the government has failed to disclose the basis for this testimony as required by Rule 16.

8. The government' Rule 16 expert disclosure on this point states that:

> Mr. Melley also reviewed certain of Defendants' social media and trading records and compared those records with the volume and price information obtained for certain of the at-issue stocks. On certain trading days where Defendants posted publicly about the at-issue stocks, those stocks have increased trading volume compared to other days the stocks traded when Defendants were not posting about the stocks.

9. This conclusion—that on certain days that the defendants posted messages there was price and volume increases for certain stocks—is dangerous and misleading testimony that should have no place at trial. The Fifth Circuit has recognized that "[e]vidence of mere correlation, even a strong correlation, is often spurious and misleading when masqueraded as causal evidence, because it does not adequately account for other contributory variables." *United States v. Valencia*, 600 F.3d 389, 425 (5th Cir. 2010). Here, the observation that Mr. Melley was able to compare certain dates when a stock price increased and when a stock price did not, and he observed that on certain of those dates, he could find dates where one or more of the defendants posted a message and others when they did not, is not helpful to the jury or relevant to any issue at trial whatsoever. Instead, it is plainly the type of misleading testimony that suggests improperly that the defendants' messages caused stock movement. There is nothing to support that conclusion, and the government has admitted in other court filings that it cannot and does not intend to prove causation. This testimony should be excluded under Rules 402 and 403.

10. The testimony should further be excluded because the government has not provided defense counsel with the requisite level of disclosure that Rule 16 requires. Rule 16 was recently amended to require the government to disclose significantly more detail about anticipated expert testimony than what the rule previously required. Under the new rule, the government must disclose "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief" and "the bases and reasons for them." Fed. R. Crim. P. 16(a)(G)(iii).

11. Here, Melley's disclosure does not identify what specifically he compared, what methodology he used, much less the bases and reasons for his conclusions. The disclosure does

6

not describe what other market factors were going on during these unidentified "certain days;" whether other people (or the company itself) were posting information about the stock that would explain the price activity; or whether Melley bothered to review whether the price and volume of the stock were already increasing when the defendants began posting messages. There is absolutely nothing to suggest that Melley's misleading conclusion confusing causation with correlation was the result of any appropriate methodology, or whether he just cherry-picked certain examples to mislead and confuse the jury. Accordingly, under Rule 16 this testimony must be excluded from trial.

*The Government's Charts Must Be Excluded as Not Real Evidence That is Misleading and Unduly Prejudicial*

12. The government has marked as evidence it intends to admit at trial numerous charts that appear to have been created by DOJ government personnel. Obviously, materials created by a prosecutor's office are not appropriate, admissible evidence. These charts do not purport to summarize anything, much less voluminous records—instead, they are charts that have no probative value and are misleading because they suggest—notwithstanding that the government has repeatedly made clear it has no basis to prove this—that the defendants' messages were the cause of the stock volume increasing and the defendants' trading was the cause of the stock price decreasing.

13. These charts serve no purpose but to impermissibly suggest to the jury a causation piece that the government has repeatedly disavowed in this case. For example, some of the charts purport to show a snapshot (in chart form) of a defendant's stock position, with certain, selected messages superimposed onto the stock position. Gov. Ex. 15C is one example (larger version is also attached to this motion):



14.     This document is not original evidence *of anything* and is confusing, misleading, and unduly prejudicial in several respects. The chart purports to reflect Constantinescu's stock holdings and is graphically displayed in a manner that is confusing and looks like stock prices. Additionally, the document purports to display the "posts and positions by trader" for Count 15, however, the chart only displays a tiny sliver of the time period that makes up Count 15. Count 15 relates to an "episode" that runs from August 13, 2021 through October 26, 2021, but the exhibit only reflects a six-hour period on October 13, 2021.[1] Additionally, this chart displays only three messages, while Constantinescu posted approximately 177 messages about this stock during the episode. It is unclear what purpose this chart could possibly serve other than to mislead the jury, particularly in light of the fact that the government has not included the defendants' actual tweets or actual trade records as evidence they intend to introduce at trial. This created chart must be excluded under Rules 1002, 402, and 403.

---

[1] The chart also claims this is "Event 111," impermissibly suggesting to the jury that there are at least 111 events involving illegal activity, which is obviously not true.

15. Other of the government's created charts purport to show a stock's price and volume during various time periods, like Gov. Ex. 15A (also attached hereto):



16. This created chart is misleading, confusing, unduly prejudicial, and has no relevance to this case. First, there appears to be no reasoned basis to depict the time period reflected in the chart other than to give the impression that the stock rose and then fell after sometime in October—the chart reflects a much longer time period than the "episode" that is the center of Count 15. It fails to identify that DATS shares were *first offered and first became publicly traded on August 13* and that Constantinescu's first tweet about DATS occurred on September 13, 2021, weeks after the stock had already experienced an exponential increase in price. Further, as discussed above, the government has conceded that it cannot prove that the defendants' actions affected the stock price or the stock volume. With those concessions, a chart that highlights both of those things: stock price, and stock volume, is not relevant. Additionally, there is a high likelihood that this chart will confuse and mislead the jury. The chart above

depicts very high trading volume and a high stock price on October 13, 2021. The corresponding chart marked as Ex. 15C, addressed above, focuses on a small time period of Constantinescu's trading and three messages he posted on October 13, 2021. In other words, the government's creation of these two exhibits also creates the completely false impression that Constantinescu's three messages on October 13, 2021 were responsible for and caused the stock price and heavy trading volume of the stock. The government has already made clear that it cannot actually prove that, and that other market factors were the actual cause of the stock price and volume, including the IPO. Accordingly, these types of charts should be excluded under Rules 1002, 402, and 403.

Dated: February 9, 2024

Respectfully submitted,

| FORD O'BRIEN LANDY, LLP | ASHCROFT SUTTON REYES, LLC | HILDER & ASSOCIATES, P.C. |
|---|---|---|
| */s/ Jamie Hoxie Solano* <br> Matthew A. Ford <br> Texas Bar No. 24119390 <br> mford@fordobrien.com <br> Jamie Hoxie Solano <br> Admitted Pro Hac Vice <br> jsolano@fordobrien.com <br> Stephen R. Halpin III <br> S.D. Tex. Bar No. NY5944749 <br> 3700 Ranch Road 620 South, Suite B <br> Austin, Texas 78738 <br> Telephone: (512) 503-6388 <br> Facsimile: (212) 256-1047 <br><br> *Attorneys for Defendant Edward Constantinescu* | */s/ Luis A. Reyes* <br> Luis A. Reyes <br> lreyes@ashcroftlawfirm.com <br> Texas Bar No. 90001831 <br> Johnny Sutton <br> jsutton@ashcroftlawfirm.com <br> Texas Bar No. 19534250 <br> Ashcroft Sutton Reyes, LLC <br> 919 Congress Ave., Ste. 1325 <br> Austin, TX 78701 <br> Phone: (512) 370-1800 <br> Facsimile: (512) 397-3290 <br><br> *Attorneys for Defendant PJ Matlock* | */s/ Q. Tate Williams* <br> Q. Tate Williams <br> Texas Bar No.: 24013760 <br> Philip H. Hilder <br> Texas Bar No. 09620050 <br> Stephanie K. McGuire <br> Texas Bar No. 11100520 <br> 819 Lovett Blvd. <br> Houston, Texas 77006 <br> (713) 655-9111–telephone <br> (713) 655-9112–facsimile <br> philip@hilderlaw.com <br> tate@hilderlaw.com <br> stephanie@hilderlaw.com <br><br> *Attorneys for Defendant John Rybarczyk* |

| NEAL DAVIS LAW FIRM | CARLOS M. FLEITES, P.A. | |
|---|---|---|
| */s/ Neal A. Davis*<br>Neal Andrew Davis<br>1545 Heights Blvd<br>Houston, Texas 77008<br>Telephone: (832)-723-9900<br>SBN#24038896<br>Neal@nealdavislaw.com<br><br>*Attorney for Defendant*<br>*Gary Deel* | */s/ Carlos M. Fleites*<br>Carlos M. Fleites<br>407 Lincoln Road, Suite 12-E<br>Miami Beach, Florida 33139<br>Tel: (305) 672-8434<br>Fax: (305)534-7087<br>FL. Bar No.: 0370850<br>Cmfleites@mylawyr.com<br><br>*Attorney for Defendant*<br>*Stefan Hrvatin* | */s/ Chip Lewis*<br>Chip Lewis<br>1207 S. Shepherd Dr.<br>Houston, Texas 77019<br>Tel: (713) 523-7878<br>Federal ID#24313<br>Chip@chiplewislaw.com<br><br>*Attorney for Defendant*<br>*Tom Cooperman* |

JACKSON WALKER LLP

*/s/ Laura Cordova*
Laura Marie Kidd Cordova
State Bar No. 24128031
lcordova@jw.com
Michael J. Murtha
State Bar No. 24116801
mmurtha@jw.com
1401 McKinney St, Suite 1900
Houston, Texas 77010
(713) 752-4449
(713) 752-4221 (Facsimile)

*Attorneys for Defendant*
*Mitchell Hennessey*

11

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, a true and correct copy of the foregoing document has been electronically served on all counsel of record via the Court's CM/ECF system.

*/s/ Jamie H. Solano*
Jamie H. Solano