# Exhibit 3

**HILDER & ASSOCIATES, P.C.**
ATTORNEYS AT LAW
819 Lovett Boulevard
Houston, Texas 77006-3905

Telephone (713) 655-9111
Facsimile (713) 655-9112

August 18, 2023

*Via Email:* Scott.Armstrong@usdoj.gov

Mr. Scott Armstrong
Assistant U.S. Attorney
United States Attorney's Office
Southern District of Texas
1000 Louisiana, Ste 2300
Houston, TX 77002

        RE:   *United States of America vs. John Rybarczyk;* **Criminal Case No. 4:22-CR-00612-3; In the United States District Court, Southern District of Texas, Houston Division**

Dear Sir:

      Under the Court's Scheduling Order (ECF No. 254) regarding the exchange of expert disclosures, John Rybarczyk provides notice that he anticipates calling expert witness Andrew G. Auslander. Although many of the topics and testimony described below do not constitute expert testimony, Mr. Rybarczyk includes them in this disclosure in an abundance of caution. Further, Mr. Rybarczyk reserves the right to update or modify his disclosures as we approach trial.

**Andrew G. Auslander**

      Mr. Auslander is currently the Managing Principal of Agile Financial LLC. As set forth in his curriculum vitae, attached as **Exhibit A**. Mr. Auslander has worked for over thirty years in different capacities as a trader of securities, equities, and commodities, and he has significant experience as a retail trader/investor. He has traded/invested in equities, bonds and options for twenty years. He has invested in small to large cap equities and has had holding periods from as small as a few days to multiple years. His qualifications, prior testimony, publications, and related work is thoroughly documented therein. He has been compensated by Mr. Rybarczyk for working in this case.

      Mr. Auslander will provide summary testimony regarding the rules, practices, and industry standards relevant to institutional and retail trading. We expect that Mr. Auslander will testify, in sum and substance, about the following:

Expert Disclosure
Page 2

- General market and trading knowledge, terms, and topics;
  - Based on his experience (*see* Exhibit A), Mr. Auslander is expected to testify that day-traders can take long or short positions, effectively betting whether a stock price will increase or decrease; day-traders should utilize market and stock-specific information when choosing how and when to trade; and day-traders frequently make fast real-time decisions within seconds based on changing conditions.
  - Day-trading is a uniquely risky trading style that starkly differs from long-term investing.
- Roles of the SEC and FINRA as to regulating traders and trading and registrations and licensures relevant to securities, equities, and/or commodities trading and relevant to providing financial advice to others. Based on his experience (see Exhibit A), Mr. Auslander is expected to testify that:
  - the SEC and FINRA have obligations to regulate brokers, traders, and trading and that a broker or financial advisor must meet specific criteria before conducting those activities legally.
- Trading practices that may be perceived as unfair but that are permissible under the applicable laws, regulations, and industry standards. Based on his experience (see Exhibit A), Mr. Auslander is expected to testify that:
  - institutional and retail traders can—and do—legally engage in scalping, high-frequency trading with algorithms, trading on insider information that was legally obtained by someone with no special duty, communicating with investor relations departments of companies, researching other traders' strategies, and researching a company's performance;
  - those activities provide institutional traders with potential advantages over retail investors;
  - Traders can coordinate securities purchases and ideas with others and there is no rule or regulation requiring disclosure of such coordination absent specific enumerated rules and regulations; and,
  - The SEC has promulgated specific rules on who has to disclose their securities transactions, and those who do include, but are not limited to, those who control more than 5% of a particular stock and those who are officers and directors of companies.
- Warnings and/or disclaimers that Mr. Rybarczyk publicized to traders and the responsibility of traders—whether on Discord, Twitter, or otherwise—to conduct their own research before trading. Based on his experience (see Exhibit A) and review of various disclaimers provided in government discovery, Mr. Auslander is expected to testify that:
  - traders should not have relied on Mr. Rybarczyk's social media messages, particularly given that he provided plain language warnings to his followers that he was not giving financial advice, the readers/traders needs to make their own trading decisions, and traders have responsibility for their own buying and selling; and

- - Mr. Rybarczyk was not registered, was not licensed, and was not holding out his opinion as financial advice.
  - Mr. Rybarczyk had no duties to followers on Twitter, Discord, or social media too accurately disclose on social media all of his trading activity, and no other traders could reasonable rely on Mr. Rybarczyk's social media messages.
- Rules, practices, strategies, and industry standards for institutional traders, retail traders, and/or day traders. Based on his experience (see Exhibit A), Mr. Auslander is expected to testify that:
  - institutional traders and investment banks normally and regularly convey the opposite position that they are interested in (i.e., say they are interested in buying, when they actually want to sell or vice-versa) to their salesforce and inter-dealer brokers in order to mask their true intentions. None of them have duties to their counterparties to provide full information about trading intentions or past, present, or future trades; and
  - these activities are normal, accepted, and expected within the day-trading marketplace.
- Trading of "Meme Stocks. Based on his experience (see Exhibit A), Mr. Auslander is expected to testify that:
  - "meme stocks" involved phenomenon in the 2020s where individuals decided to transact, for generally short periods of time, stocks that have large short interest in them and went on social media to express their opinion;
  - it is not improper or illegal for retail traders to use social media to publicize or tout stock ideas, and to coordinate trading with others; and,
- The profitability, costs, or other market effects of statements that one is buying, selling, or holding a particular security at a particular time. Based on his experience (*see* Exhibit A), Mr. Auslander is expected to testify that:
  - Public statements that a person just sold, is about to sell, or will sell his shares of a stock would either: (a) not affect the market at all; or (b) cause the stock price to decrease;
  - Short sellers are betting that a company's stock price will fall, while traders with long positions are betting that a company's stock price will increase, and the two groups are effectively playing the market against each other;
  - If Mr. Rybarczyk had publicly tweeted when he sold, the only effect, if any, would be to drive the price down, make short sellers money, and cause harm to those hoping the price will increase. Therefore, any investor holding the stock long would likely have wanted Mr. Rybarczyk to refrain from tweeting out his sale of his position.
- Based on his experience (*see* Exhibit A) and review of relevant discovery, Mr. Auslander is expected to testify that:

- o  Mr. Rybarczyk's social media messages did not violate the rules or laws of the day-trading marketplace.
- o  Even if Mr. Rybarczyk's messages about whether he was buying, selling his long position, holding, or shorting were unclear, he had no duty to give others accurate information about his personal trading position, and investment banks often bluff or engage in puffery about their positions.

As noted, Mr. Rybarczyk reserves the right to supplement and/or amend Mr. Auslander's anticipated testimony and to call additional experts in its case-in-chief or rebuttal case, based on information made known to Mr. Rybarczyk and/or Mr. Auslander before or during trial, including in response to the Prosecution's experts or case or those of other Defendants.

**Expert Witness Experience**

1. **Nori Holding Limited (In Liquidation), Centimila Services Limited (In Liquidation), Coniston Management Limited vs Public Joint-Stock Company Bank Otkritie Financial Corporation Public Joint-Stock Company National Bank Trust.** **Testified** for two full days for Claimants in case involving Russian ruble denominated bond valuation, repo trades and company valuation at The London Court of International Arbitration (LCIA) Arbitration on August 18 and 19, 2020 for judges in London, England. Produced three expert reports for Claimants. The London Court of International Arbitration (LCIA) Arbitration from October 1, 2019 – October 4, 2020

2. **Matter involving exotic options (digitals, knock-in barrier) and duty of care in Illinois Circuit Court. Provided valuation of exotic options, expert report and was deposed for a day.** October 2022 – April 2023

3. **Matter involving communications provider for unlicensed and unregulated trader of spot FX in Superior Court of California. Will provide deposition in September 2023.** December 2022 – Present.

If you have any questions or concerns, please do not hesitate to contact me at your convenience.

With regards,

**HILDER & ASSOCIATES, P.C.**

*Andrew Auslander*
Andrew Auslander (Aug 18, 2023 13:10 EDT)

Andrew Auslander
Agile Financial

JRYBARCZYK-004529

# ANDREW G. AUSLANDER, CFA, FRM, NACD.DC

Basking Ridge, NJ 07920 USA
(908) 304-2586
andrew.auslander@agilef.com        www.linkedin.com/in/andrewauslandercfa

## SUMMARY

Expert consultant and expert witness provider with more than three decades of valuation and risk management experience. Deep hands-on experience with equities, bonds, options, futures and derivatives. Experienced at establishing ERM frameworks including risk appetite and then adding processes for risk identification and controls for risk mitigation.

## EXPERIENCE

**Agile Financial LLC,** New Jersey                               1/2019 – Present
**Managing Principal**

### Long-Term Engagements

**Consultant to CITIBANK N.A.,** New York, New York              5/2023 – Present
- Providing expert consulting and Agile management to enhance securities-based lending.

**Independent Contractor to Barrington Financial,** Bloomington, MN    1/2023 – Present
- Provide expert consulting and expert witness services to support litigators and dispute resolution providers.

**Consultant to UBS Wealth Management USA,** New York, New York   1/2021 – 8/2022
- Established new front office department which underwrote new loans and reviewed existing loans to ensure they met all regulations including Regs U and W.
- Assessed and organized a new data architecture for the Credit area.
- Updated and streamlined credit policies and procedures which covered high net worth lending.

**Consultant to Several Entities of MUFG,** New York, New York    1/2019 – 12/2020
MUFG Union Bank, MUFG Fund Services (USA) LLC and MUFG Securities Americas Inc.
- Integrated newly acquired asset management entity by ensuring documentation met all applicable laws.
- Conducted Risk Control Self Assessment ("RCSA") and third-party risk reporting for global asset manager.
- Streamlined credit, operational, model, market, and liquidity risk management policies and procedures.

### Short-Term Engagements

**Testifying Expert Witness for exotic FX options case in Illinois Circuit Court**    10/2022 – Present
- Valued digital and knock-in options. Provided expert testimony on duty of care of broker-dealer and bank.

**Subject Matter Expert for FINRA Arbitration Margin / Forced Sellout of Options**    3/2022 – Present
- Provide expert knowledge on margin rules and calculations of clearinghouse and client margin.

**Consultant to CITY NATIONAL BANK** Los Angeles                  10/2022 – 12/2022
- Designed and updated the infrastructure of the IT Risk Management area.

**Consultant to UDON LABS backed by ATOMIC MANAGEMENT LLC**       12/2021 – 9/2022
- Collaborated with founders to create a fintech registered investment advisor by providing performance analytics, the creation of a risk management framework and investment monitoring infrastructure.

**Consultant to state securities regulator**                      11/2021 – 1/2022
- Performed market and credit risk analysis on hundreds of thinly traded CMBS tranches.

**Consultant to large regional bank in US**                       7/2021 – 10/2021
- Conducted gap analysis on Market Risk Rule, assessed firm's risk management framework and made recommendations for improvements to risk management framework.

JRYBARCZYK-004530

**Testifying Expert Witness for International Arbitration Case held in London**  11/2019 – 10/2020
- Provided testimony on valuation of entities, repo trades, loans and illiquid bonds.
- Analyzed financial statements, loan agreements, pledges of collateral and bond prospectus.

**AIG**, New York, New York  3/2017 – 6/2018
**Director, Head of Risk Governance**
- Ensured material risks identified through risk assessments were captured in enterprise-wide stress testing scenarios, calibrated into risk appetite of firm, and reviewed the risk events entered into the Governance, Risk Management and Compliance ("GRC") Archer system for CCAR stress testing.
- Aggregated all risks of the firm for monthly presentation to the Board of Directors. Created risk reports for 10-K, rating agencies and regulators. Led the annual presentation to four rating agencies which determined the firm's rating and cost of capital.

**ITAÚ PRIVATE BANK**, Miami, Florida  7/2013 – 12/2016
**Head of Risk Management**
- Implemented Liquidity Stress Test (SR 10-6), Funds Transfer Pricing (SR 16-3), capital adequacy, stress testing and model validation (SR 11-7).
- Co-Chair of Credit Risk Committee at $11 billion private bank that approved $1 billion of secured lending.
- Implemented Basel framework (Liquidity Coverage Ratio ("LCR"), Net Stable Funding Ratio ("NSFR")) and U.S. liquidity stress test (SR 10-6) for setting up liquidity risk management program.
- Led Asset Liability Committee (ALCO) setting limits, Key Risk Indicators (KRI) and controls.
- Created the governance framework to monitor liquidity risk of the Treasury area (funds transfer pricing (FTP), stress tested assumptions and ensured limits and controls managed risks to risk appetite of firm.
- Collaborated with teams that produced the ICAAP report.

**ITAÚ USA ASSET MANAGEMENT**, New York, New York  4/2012 – 9/2016
**Chief Risk Officer**
- Monitored in-house funds and separately managed accounts to ensure compliance with investment limits.
- Calculated monthly performance of in-house funds and separately managed accounts to GIPS standards.
- Led risk management response to SEC during regulatory examination.

**CREDIT SUISSE**, New York, New York  4/2005 – 2/2012
**Director, Market and Liquidity Risk Management**
- Managed the market and liquidity risk management area for fixed income trading desks.
- Served as member of Emerging Markets Fixed Income New Product and Structured Loan committees.
- Performed due diligence on trades which resulted in over $200 million of revenue.
- Provided independent risk identification, assessment (RWA, DV01, Greek sensitivities, PD, LGD, VaR, and stress tests) and calibrating market risk limits for Latin American bonds, options and OTC derivatives. Interacted daily with traders and structurers regarding illiquid product hedging, concentrations of risk, and risk capital calculations.

**GALTERE INTERNATIONAL FUND**, New York, New York  1/2004 – 3/2005
**Portfolio Manager - Global Macro Hedge Fund**
- Traded commodity futures and options.
- Calculated investment performance and provided performance attribution for investors.

**SALOMON BROTHERS, ANZ INVESTMENT BANK, BNP PARIBAS & PRUDENTIAL SECURITIES** 11/1991–12/2004
**Repo / Securities Lending Credit Fixed Income Trader**, New York and London
- Highly successful in developing repo trading desks that were both profitable and met all risk limits. Traded option contracts with counterparties. Negotiated and reviewed hundreds of agreements. Managed customer credit risk by issuing margin calls.

## EDUCATION

NEW YORK UNIVERSITY, STERN SCHOOL OF BUSINESS, New York, New York
**Advanced Professional Certificate (APC), Finance (Finance MBA Core Curriculum)**

RENSSELAER POLYTECHNIC INSTITUTE, Troy, New York
**M.S., Computer Science and Information Systems**

UNITED STATES MERCHANT MARINE ACADEMY, Kings Point, New York
**B.S., Marine Engineering Systems**

## AFFILIATIONS

Treasurer of Board of Directors of CFA Society of New York
Co-Regional Director of New York Chapter of Professional Risk Managers International Association
Co-Chair of Value Investing Group at CFA Society of New York
CFA Charterholder
Financial Risk Manager certified by GARP
NACD Directorship Certified
Member of Securities Experts Roundtable

## LICENSES

Held the following FINRA licenses: Series 24, General Securities Principal, Series 7, General Securities Representative, Series 55, Limited Representative – Equity Trader, Series 3, National Commodity Futures, and Series 63, Uniform Securities Agent State Law Examination.

JRYBARCZYK-004532

# 2023.08.18 -- Supplemental Auslander Expert Disclosure v4

Final Audit Report  2023-08-18

| | |
|---|---|
| Created: | 2023-08-18 |
| By: | Eric Rosen (erosen@dynamisllp.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAa9kfgU2iQJor24ISSnVYFYN-KxTy1hfM |

## "2023.08.18 -- Supplemental Auslander Expert Disclosure v4" History

- Document created by Eric Rosen (erosen@dynamisllp.com)
  2023-08-18 - 4:43:16 PM GMT

- Document emailed to Andrew Auslander (andrew.auslander@agilef.com) for signature
  2023-08-18 - 4:43:50 PM GMT

- Email viewed by Andrew Auslander (andrew.auslander@agilef.com)
  2023-08-18 - 5:08:20 PM GMT

- Document e-signed by Andrew Auslander (andrew.auslander@agilef.com)
  Signature Date: 2023-08-18 - 5:10:47 PM GMT - Time Source: server

- Agreement completed.
  2023-08-18 - 5:10:47 PM GMT

