**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:22-CR-00612-S |
| EDWARD CONSTANTINESCU, PERRY "PJ" MATLOCK, JOHN RYBARCZYK, GARY DEEL, STEFAN HRVATIN, TOM COOPERMAN, MITCHELL HENNESSEY, DANIEL KNIGHT. | |

**DEFENDANTS CONSTANTINESCU'S, MATLOCK'S, AND HRVATIN'S NOTICE OF
ADDITIONAL MATERIAL REFLECTING GOVERNMENT MISCONDUCT
IN ANTICIPATION OF FEBRUARY 20 HEARING**

Defendants Edward Constantinescu, PJ Matlock, and Stefan Hrvatin, by and through their undersigned counsel, respectfully submit this joint filing in anticipation of the February 20, 2024 hearing on Constantinescu's motion (joined by Matlock and Hrvatin) for contempt based on the government's failure to search for and produce *Brady* material as required under the Court's September 12, 2023 order. Defendants submit these materials to call to the Court's attention additional egregious and ongoing misconduct by the government. As Defendants continue to review materials that the government first disclosed in mid-January, they have identified several significant issues that reflect a pattern of intentional misconduct designed to hide *Brady* material and to materially alter trial evidence, including by removing exculpatory evidence and altering data. In light of these problems, and in light of the problems set forth in Defendants' Joint Motion for Discovery Sanctions [ECF No. 531] and Defendant Matlock's Motion to Exclude Government's Exhibit 70 [ECF No. 549], Defendants Constantinescu, Matlock, and Hrvatin hereby request that the case be dismissed.

1

***The Government Has Refused to Search for* Brady *Material in Meme Stock Materials But Continues to Rely on Meme Stock Evidence in Its Case in Chief***

1.     The government argues "generalized explanations of the broader 'meme stock' phenomenon simply have nothing to do with the elements of the offenses charged."[1] United States' Opp. to Def. Constantinescu's Mot. to Continue at 7 [ECF 502]. Yet, at the time of this representation, the government had already publicly filed an exhibit that includes several exhibits related to Constantinescu's trading of Meme Stocks and the profits he made trading them.

2.     A review of the government's January 2024 exhibits reflects that the government intends to introduce at trial as "exhibits" video and audio excerpts related to GameStop (GME) and NAKD, and Constantinescu's profits derived from trading Meme Stocks, including AMC, NAKD, SNDL, and GNUS.  *See, e.g.*, GX7D, GX7L, GX74, GX75, GX76, and GX 87.

3.     For example, Government Exhibit 76 is a text-message chain from February 17, 2021, in which Constantinescu texts a screenshot of his trading account to show that he made $6,719,219.41 in one day trading Meme Stock SNDL.



---

[1] The government accuses Constantinescu of "painting the stocks at issue in this case as some amorphous set of undefined "Meme Stocks." *Id.*  But as the government is aware, Constantinescu adopted the definition of Meme Stock set forth in the Congressional Meme Stock Report and parroted by the SEC.  The stocks in the Congressional Meme Stock Report appear in the government's exhibits during the exact time frame covered by the Congressional Meme Stock Report.

4.      The trading of SNDL during this precise time period was expressly considered by Congress and the stock was mentioned multiple times in the Congressional Meme Stock Report, which found that—like GameStop (GME)—Robinhood had placed restrictions on transfer of SNDL stock during this time period.

5.      Likewise, Government Exhibits 7D and 7L purport to show a screen of a trader (presumably SEC "whistleblower" H.B.) trading and discussing GME and NAKD on February 24, 2021. Dan Knight can be heard commenting on Constantinescu making over $2 million on NAKD in a single day after GME prices had "stabilized."

6.      NAKD was mentioned nearly a dozen times in the Congressional Meme Stock Report due to restrictions placed on transfers of that stock around this time period by TD Ameritrade and other broker dealers. *See generally* Congressional Meme Stock Report, Ex. L to Constantinescu's Second Motion for *Brady* Materials [ECF No. 322-16].

7.      The report provides the following definition of a meme stock:

> **Meme stocks:** Meme stocks are stocks that experience increased trading volume activity by retail investors because of heightened social media discourse (*i.e.,* on Reddit, Twitter, and TikTok) surrounding the stock. Examples of meme stocks from the Meme Stock Market Event include GameStop (GME), AMC Entertainment Holdings Inc. (AMC), and Naked Brand Group Ltd. (NAKD).

*Id.* at 119.

8.      In other words, NAKD is baked directly into the Congressional definition of Meme Stock that gave rise to the SEC's October 2021 Meme Stock Report, the underlying materials of which the government continues to refuse to inspect for *Brady* material.  These *Brady* materials likely include internal SEC communications related to CEI (Count 14) and DATS (Count 15) classifying them as Meme Stocks.

9.      It is worth noting that the government did not change its case in any way that would alter its obligation to inspect SEC records and internal communications for *Brady* material.  And the government has already admitted that these Meme Stocks are "inextricably intertwined" with the 20 charged counts.  *See* United States' Notice of Intent to File 404(b) Evidence at 2 ("Thus, evidence of the [397] Episodes is intrinsic to, and inextricably intertwined with, the charged scheme and conspiracy.") [ECF No. 319]; Motion *in Limine* by Untied States at 8 (describing "episodes . . . before, during, and after . . . the substantive counts" as "intrinsic to, and inextricably intertwined with, the charged counts") [ECF No. 538].  Indeed, they indisputably form the foundation of Count 1's $114-million-profit figure, which appears to include at least $70 million Constantinescu made trading Meme Stocks.  The government did not dismiss charges or change the charged time period in any way that would make these Meme Stocks less intertwined with the charged conduct.  Instead, the government has included multiple trial "exhibits" referencing Constantinescu's profits from trading these Meme Stocks while at the same time misrepresenting to the Court that they need not search for *Brady* material because the evidence is irrelevant.

### *The Government Has Fabricated Evidence, Redacted Exculpatory Information From Its Exhibits, and Failed to Seek* **Brady** *Material From the SEC Related to an Individual Whose Conversation It Wishes to Rely Upon at Trial*

10.      The governments' trial exhibits, including the hundreds that were dumped on defense counsel for the first time on January 19, 2024, cannot be trusted: they do not fairly or accurately depict what the government claims they depict.

### *Example 1- Purported Twitter Messages*

11.      In August 2023, the government produced a trial exhibit that it marked as Government Exhibit 113.  The exhibit bears a bates number that the government used to

designate data the government obtained via search warrant from Twitter and states that it is a "Twitter Direct Message." Last year, the exhibit looked like this:



12.     The purported screenshot of the Twitter message is formatted as if it was sent from Matlock's phone in a blue bubble. Moreover, Defendant Matlock's name (with his nickname in quotation marks like in the case caption) has been inserted above the blue bubble, and the date and time appears below the bubble. The Twitter search warrant data the government produced to the Defendants in this case does not look anything like the above, and the government does not have access to the original message from Matlock's phone, meaning this August 2023 "text message" was fabricated.

13.     On January 19, 2024, the government produced for the first time a new exhibit, now marked as Government Exhibit 70, which is described the same way as former Government Exhibit 113 on the government's new exhibit list. The government did not disclose to defense counsel that it had changed significantly the information depicted in new Government Exhibit 70. This exhibit is also fabricated. The new version of this exhibit is marked with the exact same bates label that purports to be data the government received from Twitter via a search warrant, but the exhibit looks nothing like the previous Government Exhibit 113. The new

Government Exhibit 113 contains more of the message exchange, has three columns, displays the username of one user (Defendant Matlock) but not the other display name of the other Twitter user ("Individual-1"), and redacts several messages in the exchange:



14.     It is clear from a review of the material produced in discovery that neither former Government Exhibit 113 nor current Government Exhibit 70 fairly or accurately depicts the data the government obtained from Twitter in response to a search warrant.  An accurate excerpt from which this evidence was fabricated appears as follows (*see* Ex. E):

| Record | Sender ID | Recipient ID | Message Sent Date/Time - UTC+00:00 (yyyy/MM/dd) | Text |
|---|---|---|---|---|
| 2 | 4329 | 88225282334871553 | 15971805 | 2021/10/05 19:28:05 | if you think zack is responsible for CEI going from 40c to 4.85 just based off his followers and tweets. that's just crazy |
| 3 | 4330 | 88225282334871553 | 15971805 | 2021/10/05 19:29:17 | it's only called a pump and dump because some short company posted a short report on it and it tanked. |
| 4 | 4331 | 88225282334871553 | 15971805 | 2021/10/05 19:29:28 | if it worked then it just would be awesome, right? |
| 5 | 4332 | 88225282334871553 | 15971805 | 2021/10/05 19:29:49 | a pump and dump is when a bunch of people load a stock.. push it up and then sell their shares |
| 6 | 4333 | 88225282334871553 | 15971805 | 2021/10/05 19:30:00 | zack didn't sell.... so just dumb to call it that |
| 7 | 4334 | 15971805 | 88225282334871553 | 2021/10/05 19:35:53 | bro I'm not here to debate the law this was huge manipulation, pump and dump and disaster in the making. |
| 8 | 4335 | 15971805 | 88225282334871553 | 2021/10/05 19:36:30 | You forget my past when I was 20? I'm not dumb. |
| 9 | 4336 | 15971805 | 88225282334871553 | 2021/10/05 19:36:40 | i've been around the block and spent lots of lawyers |
| 10 | 4337 | 88225282334871553 | 15971805 | 2021/10/05 19:39:02 | Def manipulated both directions but not because of one person's tweets. |
| 11 | 4338 | 88225282334871553 | 15971805 | 2021/10/05 19:40:31 | Just like most stocks |
| 12 | 4339 | 15971805 | 88225282334871553 | 2021/10/05 19:41:01 | I mean that's a likely defense to SEC for stock fraud. Sure. |
| 13 | 4340 | 88225282334871553 | 15971805 | 2021/10/05 19:41:51 | I don't believe this was fraud. This wasn't some planned pump or some scheme. |
| 14 | 4341 | 15971805 | 88225282334871553 | 2021/10/05 19:43:47 | P&amp;D is securities fraud. |
| 15 | 4342 | 88225282334871553 | 15971805 | 2021/10/05 19:44:12 | correct |
| 16 | 4343 | 88225282334871553 | 15971805 | 2021/10/05 19:45:10 | I get you're upset and have a narrative with this, I just don't agree with it and am looking from an outside perspective. |
|  |  |  |  | I never played CEI other than quick scalps and the dip today so I don't have an opinion of the stock |
| 17 | 4344 | 15971805 | 88225282334871553 | 2021/10/05 19:45:44 | I'm not upset and I don't have any narrative |
| 18 | 4345 | 15971805 | 15971805 | 2021/10/05 19:45:57 | Atlas isn't going anywhere, it's not filled with pump and dumpers, I get the goal by a lot of other rooms but it will never work. |

15.     The government has now materially altered its original evidence in several ways, notwithstanding its decision to include the bates label on the exhibit to suggest that this exhibit came from Twitter when it instead was created by the government:

- The government changed the columns from the original data and rearranged the order of the columns, presumably to appear more visually pleasing and helpful to the government;

- The government changed the sender and recipient IDs, altering what the data reflects, to "@PJ_Matlock" but kept anonymous the ID of the other user with whom defendant Matlock purportedly exchanged messages and for whom the SEC likely has related *Brady* material; and

- The government altered the time displayed for each message sent.

16.     The government's redactions are equally troubling.  *See* Tex. R. Disc. Prof'l Cond. 3.04.  The conversation concerns CEI specifically, not pump and dumps generally. Matlock says: "if you think [Constantinescu] is responsible for CEI going from 40c to 4.85 just based off his followers and tweets, that's just crazy" and that "its only called a pump and dump because some short company posted a short report on it and it tanked."  In other words, the government redacted Matlock observing that the reason CEI's stock price moved was *not because Constantinescu was engaging in a pump and dump*, but *instead* because a hedge fund shorting the stock published a report into the market which, in turn, caused the stock price to plummet to the benefit of the hedge fund shorting the stock.  The government also redacted the exculpatory message where Matlock explained that the stock was being "manipulated both directions" but not by "one person's [Constantinescu's] tweets." The government also redacted Matlock's highly relevant, exculpatory message in response reflecting both a lack of intent and a lack of conspiracy: "***I don't believe this was fraud.  This wasn't some planned pump and dump scheme . . . I never played CEI other than quick scalps . . . so I don't have an opinion of the stock.***" (emphasis added).

7

17.     The government's redactions materially change the tenor and meaning of Defendant Matlock's words in a misleading way.  Government Exhibit 70 reads as if Matlock is providing the definition of a pump and dump, and then agreeing that such conduct is securities fraud.  As highlighted above, that is *completely different* from the actual conversation.  In other words, the government has fabricated evidence by ***creating a document*** and then ***removing exculpatory communications*** to render the appearance that the statement is inculpatory.

18.     As critical, it is highly likely that the government has not properly searched for *Brady* communications related to Individual-1 given its opposition brief asserts that the information sought by Constantinescu is irrelevant.  Its opposition fails to specifically address Individual-1 at all.  Yet, the undersigned counsel is aware of the identity of Individual-1 and knows that Individual-1 has a relationship to SEC, which may be discussed further *in camera*.  Based on a review of messages that Individual-1 exchanged with several Defendants in this case, the undersigned believes it is likely that the SEC and/or DOJ has communications with Individual-1 that would constitute *Brady* material.

19.     On September 20, 2023, Constantinescu sent a letter to the government following the Court's September 12, 2023 Order directing the government to produce *Brady* material in the possession of the SEC and FINRA.  Constantinescu specifically requested that the government search all "communications with [Individual-1] and/or their lawyers or agents concerning any of the stocks at issue" in the possession, custody, or control of the SEC or FINRA for *Brady* material.  The government failed to do so and now attempts to introduce as an exhibit a fabricated document containing communications with Individual-1.

***Example 2- Purported Twitter Profiles***

20.      As highlighted in Defendants' Joint Motion for Discovery Sanctions, the government has also altered the Defendants' Twitter profiles to scrub them of exculpatory information.  *See* Joint Mot. for Disc. Sanctions at 4–7 (walking through the government's fabricated exhibits purporting to be Defendant Hennessey's Twitter profile) [ECF No. 531].  As set forth more fully in that motion, the government created a Twitter profile that does not exist in its discovery production (or on Twitter) and omits the following exculpatory disclaimer that appeared on Defendant Hennessey's Twitter profile:

> **20ish~ All tweets are MY ideas and opinions not advice. I actively trade positions & could be buying or selling any stock mentioned at any time.**

*See id.* at 7.

21.      This was not a mistake.  *See* Super. Ind. ¶ 1 (alleging Defendants committed securities fraud because they "concealed their intent to sell" from their Twitter followers) [ECF No. 134]; United States' Opp. to Motion to Dismiss Ind. at 16 ("Defendant's [sic] privately harbored a fraudulent intent that was contrary to their public display—they intended to sell the stock . . . .") [ECF No. 295].  Like the example set forth in the Defendants' Joint Motion for Discovery Sanctions, the government affixed the same bates label onto several exhibits purporting to be data from Twitter reflecting the Defendants' Twitter profiles, but its January 19, 2024 exhibits removed the disclaimers that all followers would have seen if they looked at any of the Defendants' posts, including "pinned" posts by Constantinescu indicating he did "not post sells."[2]  For example, Government Exhibit 280 purports to be a fair and accurate copy of Defendant Matlock's Twitter "handle identifier":

---

[2] A "pinned" Tweet or post stays at the top of a user's profile so that it is one of the first things any visitor to the profile sees.



22.     But, like Defendant Hennessey, during all relevant times, Defendant Matlock's

profile contained disclaimers like the one depicted below, indicating that his "posts are not

recommendation to buy or sell any security":



10

***The Government is Aware of a Significant Problem with the Timestamps of Its Evidence and Continues to Fail to Disclose the Problem and What Has Been Affected***

23.     In August 2023 (on the eve of the last trial setting), the government produced to defense counsel an email dated September 27, 2022, from Special Agent Joseph Varani (a testifying government witness) to prosecutor Scott Armstrong.  In the email, Special Agent Varani warned Armstrong that the forensic tool the agent had used to process data produced by Twitter resulted in "some discrepancies in the timestamps of some tweets."  (*See* Ex. A).  Notwithstanding the July 7, 2023 deadline to produce *Giglio* and *Brady* material, this email was the first time the government disclosed to the defense that there was a problem with the integrity of some of the data the government had produced to defense counsel in this case—a full year after receiving this *Brady* material, on the eve of trial, buried in a substantial document production.

24.     At the hearing in this case on September 7, 2023, defense counsel raised to the Court that the government had only recently disclosed this email to defense counsel and the defense needed additional time to understand the significance of the timestamp issue compared against the government's trial exhibits.  *See* Sept. 7, 2023 Hr'g Tr. at 21–22.

25.     A problem with the integrity of the electronic data the government produced in discovery that affects the displayed timestamps of social media messages is *Brady* material and the government had an independent obligation to disclose this information as soon as it became aware of a problem.  But the government did not.  On September 13, 2023, Constantinescu's counsel requested that the government disclose the following information about the timestamp issue:

> 1.  Disclose the precise issue that the Axiom tool created with the Twitter data and the timestamps.

2. Identify each piece of discovery (if any) that you produced that was generated by the Axiom tool.

3. Identify each item that any of your testifying witnesses relied upon that was generated by the Axiom tool.

4. Disclose whether Axiom was used to export or analyze data you received from Discord.

5. Identify any other records in the government's productions that was generated using the Axiom tool.

(*see* Ex. B):

26. The government ignored the September 13, 2023 letter for several weeks. On October 3, 2023, Assistant Chief Armstrong responded with the following:

> I have no reason to believe any files are "affected." But I'm not going to spend my time going through discovery to run down an issue that will not be relevant at trial. If you would like to spend your time doing that, you may and have all the information at your disposal to do so.

(*See* Ex. C).

27. On January 19, 2024, the government produced to defense counsel 54 new Excel tables prepared by its expert witness Garibotti and a "supplemental" disclosure. The supplemental disclosure stated: "Previously, due to a difference in how the data was processed, the timestamps of certain communication callouts in the trading volume charts were reported one second later than the corresponding trading activity and communication tables[.]" (*See* Ex. D). Garibotti relayed that the new charts represented a "standardized" timestamp-processing methodology, but did not disclose what this methodology was, which "communication callouts" were affected, when it was performed, who performed it, or what data was relied upon for this "methodology." *See id.*

28. In other words, notwithstanding Constantinescu's prior request and the government's unequivocal representations that it had no reason to believe that any files were affected and that the issue would not be relevant at trial, it is now clear that the government's failure to properly disclose and identify the specifics and scope of timestamp issues affects

significant key portions of the government's anticipated evidence at trial.  It is unclear what records are affected by this problem and how (or even if) that problem was fixed, or if the government merely changed its trial documents even though the produced, processed data reflects different times.

29.     The government still has not disclosed the full nature of the timestamp problem, nor has the government identified the files affected by its production so defense counsel knows not to rely on those materials at trial.  The government also has not disclosed the nature of the issue so it can be properly used at trial.  This is obvious impeachment material—it goes to the integrity of the government's key evidence and the complete failure of its investigators to make sure that its forensic tools did not compromise the electronic data collected in this case.  The full nature of the problem, the witnesses involved, and the data affected should have been disclosed leaving sufficient time for defendants to prepare for trial.  Instead, the problem continues to be concealed.

### The Government's Misleading Trading Reports Are Recklessly, If Not Intentionally, Incorrect and Cannot Be Used to Try to Obtain a Conviction

30.     The government is seeking admission of very dangerous and misleading evidence that is just *completely wrong* and should be thrown out wholesale, but at this late date counsels in favor of dismissal.  The government seeks preadmission of this evidence, which if permitted would allow these demonstrably false "exhibits" to be presented to the jury without the government having to call the people who created them.  These errors are monumental and staggering.

31.     Last April, the government promised this Court that it would provide "A+ disclosures" in this case regarding its $114 million calculation, but after two attempts, their key expert reports purportedly compiled by Garibotti that go to the heart of their proofs remain an

"F."  The problems are so significant they rise above negligence—if the government were to be permitted to present this false evidence to a jury, any testimony that it is, in any way, "true and accurate" would be perjury warranting reversal of convictions.

32.     For example, the government has provided a revised Exhibit 1 to Garibotti's report with demonstrably false profit and loss figures.  Compare her June 2023 report adding up profits for 397 "episodes" to her January 2024 report adding up profits for 54 "episodes":





33.     As highlighted, despite the reduction of "episodes" from 397 to 54 and a reduction in profits by $90 million, the government has *increased* Hrvatin's profits from $661,421 to $4,998,778 and reduced Rybarczyk's profits from $21,976,374 to $436,890.  Yet, a review of Hrvatin's 1099-b (the subject of Constantinescu's first *Brady* motion [ECF No. 286]), reveals that this inflated $4.9 million number has no basis in reality.

34.     But the sloppiness of the government's A+ report extends further:  profit calculations have been swapped between Defendants.  For example, in the government's KIQ

"episode" between October 20, 2021, and November 18, 2021, three of nine Co-Defendants are alleged to have traded this stock and two of the nine are alleged to have tweeted about it (Hrvatin's sole tweet is an objectively true tweet where he posts that he had bought the stock hoping it would increase from 73 cents to a dollar).[3]  Yet between June 5, 2023, and January 19, 2024, the government has changed significantly how much profit each of the three Defendants made:

### June 2023 Profit Calculations



*Privileged and Confidential*
*Subject to Protective Order*

**Exhibit 1**
**Profit by Trader and At-Issue Trading Episode**

| At-Issue Episode ID | Episode Symbol | Episode Start Date | Episode End Date | Constantin, Edward | Rybarczyk, John | Matlock, Perry | Deel, Gary | Hennessey, Mitchell | Sabo, Francis | Cooperman, Tom | Hrvatin, Stefan | Knight, Daniel | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Panel A: Total Profit (Loss)** | | | | | | | | | |
| - | - | - | - | $ 80,957,987 | $ 21,976,374 | $ 6,641,266 | $ 6,092,985 | $ 1,938,072 | $ 1,654,018 | $ 1,340,207 | $ 661,421 | $ 212,170 | $ 121,474,499 |
| | | | | **Panel B: Profit (Loss) by At-Issue Trading Episode** | | | | | | | | | |
| 169 | JAGX | 12/22/2020 | 12/24/2020 | $ - | $ 21,646 | $ 11,157 | $ 14,655 | $ - | $ - | $ - | $ - | $ - | $ 47,458 |
| 170 | JAGX | 1/4/2021 | 1/4/2021 | $ - | $ - | $ - | $ 10,574 | $ - | $ - | $ - | $ - | $ - | $ 10,574 |
| 171 | JAGX | 1/13/2021 | 1/13/2021 | $ - | $ - | $ 257 | $ - | $ - | $ - | $ - | $ - | $ - | $ 257 |
| 172 | JAGX | 5/24/2021 | 6/10/2021 | $ 957,430 | $ - | $ (7,998) | $ 885 | $ 25,414 | $ 1,025 | $ (287) | $ 1,932 | $ 6,054 | $ 984,456 |
| 173 | JAGX | 12/21/2021 | 12/21/2021 | $ - | $ 53,472 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 53,472 |
| 174 | JAN | 1/16/2020 | 1/23/2020 | $ 3,333 | $ - | $ - | $ - | $ - | $ - | $ 4 | $ - | $ - | $ 3,336 |
| 175 | JAN | 2/5/2021 | 2/5/2021 | $ - | $ - | $ 8,182 | $ 6,711 | $ - | $ - | $ - | $ - | $ - | $ 14,894 |
| 176 | JAN | 5/13/2021 | 5/26/2021 | $ - | $ 27,482 | $ 1,113 | $ 4,023 | $ - | $ (4,828) | $ - | $ - | $ (462) | $ 27,329 |
| 177 | KALV | 2/9/2021 | 2/9/2021 | $ 444,993 | $ - | $ - | $ 137,863 | $ - | $ 37,367 | $ - | $ - | $ - | $ 620,222 |
| 178 | KAVL | 10/13/2021 | 10/20/2021 | $ 697,222 | $ 63,831 | $ - | $ 20,143 | $ - | $ 1,465 | $ 5,263 | $ - | $ 40 | $ 787,964 |
| 179 | KAVL | 2/15/2022 | 2/15/2022 | $ - | $ - | $ 1,800 | $ 4,762 | $ - | $ 502 | $ - | $ - | $ - | $ 7,064 |
| 180 | KAVL | 3/15/2022 | 3/15/2022 | $ - | $ - | $ - | $ 16,416 | $ - | $ 423 | $ - | $ - | $ - | $ 16,838 |
| 181 | KERN | 11/5/2020 | 12/4/2020 | $ 69,344 | $ 4,780 | $ 23,419 | $ (927) | $ - | $ - | $ (526) | $ 180 | $ 361 | $ 96,632 |
| 182 | KERN | 1/6/2021 | 2/12/2021 | $ 1,875,249 | $ 614 | $ 69,298 | $ (4,333) | $ 3,186 | $ 45,577 | $ 5 | $ - | $ 406 | $ 1,990,003 |
| 183 | KERN | 3/1/2021 | 3/11/2021 | $ 33,872 | $ - | $ 20,042 | $ 2,276 | $ - | $ - | $ - | $ - | $ 65 | $ 56,255 |
| 184 | KERN | 5/18/2021 | 5/18/2021 | $ - | $ - | $ 2,230 | $ - | $ - | $ - | $ - | $ - | $ - | $ 2,230 |
| 185 | KERN | 9/13/2021 | 9/14/2021 | $ - | $ 28,604 | $ 81 | $ 8,018 | $ - | $ 6,525 | $ 6,959 | $ - | $ - | $ 50,186 |
| 186 | KERN | 3/24/2022 | 3/24/2022 | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,027 | $ - | $ - | $ 1,027 |
| 187 | KIQ | 10/20/2021 | 11/18/2021 | $ - | $ 145,562 | $ - | $ - | $ - | $ (577) | $ - | $ 9,465 | $ - | $ 154,750 |

### January 2024 Profit Calculations



*Privileged and Confidential*
*Subject to Protective Order*

**Exhibit 1**
**Profit by Trader and At-Issue Trading Episode**

| At-Issue Episode ID | Episode Symbol | Episode Start Date | Episode End Date | Constantin, Edward | Rybarczyk, John | Matlock, Perry | Deel, Gary | Hennessey, Mitchell | Sabo, Francis | Cooperman, Tom | Hrvatin, Stefan | Knight, Daniel | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Panel A: Total Profit (Loss)** | | | | | | | | | |
| - | - | - | - | $ 19,029,560 | $ 436,890 | $ 1,747,332 | $ 1,121,144 | $ 542,349 | $ 107,709 | $ 1,975,981 | $ 4,998,778 | $ 272,414 | $ 30,232,158 |
| | | | | **Panel B: Profit (Loss) by At-Issue Trading Episode** | | | | | | | | | |
| [24] | 178 | KAVL | 10/13/2021 | 10/20/2021 | $ 697,222 | $ 5,263 | $ 20,143 | $ - | $ - | $ 40 | $ - | $ 63,831 | $ 1,465 | $ 787,964 |
| [25] | 187 | KIQ | 10/20/2021 | 11/18/2021 | $ - | $ - | $ - | $ - | $ 9,465 | $ - | $ - | $ 145,562 | $ (577) | $ 154,750 |
| [26] | 191 | KXIN | 2/10/2022 | 2/11/2021 | $ 69,838 | $ 1,043 | $ - | $ 9,086 | $ - | $ 2,724 | $ 48,582 | $ 94,303 | $ 3,168 | $ 228,745 |

---

[3] Sabo was charged separately from this case.

35.     Even a cursory glance reveals that in its revised calculations the government has attributed Rybarczyk's $145,862 profit to Hrvatin, Sabo's $577 loss to Knight (who was not alleged to have traded the stock in the January calculations), Hrvatin's $9,465 to Hennessey (who also did not trade it according to the January report), while Rybarczyk is no longer alleged to have traded the stock.

36.     These errors, among others, in the government's profit calculation and spreadsheets, suggest, at best, gross negligence and, at worst, a concerted attempt to elicit plea agreements on the eve of trial by altering sentencing exposure at the same time they actively opposed Constantinescu's attempt to obtain 1099-b's that provide authentic and reliable profit and loss calculations for each Defendant.

37.     Constantinescu, Matlock, and Hrvatin are not aware of any constitutional, evidentiary, or procedural rule that permits the government to place knowingly false (purported) summary evidence before a jury, requiring defense counsel to waste significant time and resources of the Court and the jury through tedious cross examination.

38.     In evaluating its significance, the Court should also consider that the profits calculation was ordered to be produced in **<u>March of 2023</u>**, nearly a year ago, with a hard deadline of June 5, 2023 for the report.  Nor has the government provided any *Brady* material accounting for and justifying the discrepancies in the calculations.

### ***The Government Has Changed Discord Timestamps on Its Trial Evidence, Did Not Disclose This Material Change of Trial Evidence to Defense Counsel, and Marked the Trial Evidence with Bates Labels to Make it Appear as If It Was Produced in Discovery***

39.     In addition to altering Twitter data, the government has changed the timestamps on Discord messages from the times reflected in what the government produced to Defendants in discovery.  The government did not disclose that it changed the times reflected in the electronic evidence produced in this case, and instead, again, affixed a bates label to its trial exhibits to

make it appear (both to defense counsel and, presumably, to the jury) that the government's trial exhibits were screenshots of actual evidence that was produced in this case when, in fact, they are not.

40.     By way of example, Government Exhibit 17D, purports to display Discord messages between Defendants Deel, Cooperman, and another individual.  These timestamps have changed between the previously produced trial exhibits and the new January 19, 2024 trial exhibits by one hour, and two additional lines have been added to the message:

| Timestamps of Government Exhibit 17D Produced August 2023 | Timestamps of Government Exhibit 17D Produced January 19, 2024 |
|---|---|
| **Timestamp** | **Timestamp** |
| | 09/15/2021 10:17:31 AM |
| | 09/15/2021 10:18:30 AM |
| 09/15/2021 10:43:28 AM | 09/15/2021 11:43:28 AM |
| 09/15/2021 10:43:33 AM | 09/15/2021 11:43:33 AM |
| 09/15/2021 10:43:40 AM | 09/15/2021 11:43:40 AM |
| 09/15/2021 10:43:43 AM | 09/15/2021 11:43:43 AM |
| 09/15/2021 10:45:17 AM | 09/15/2021 11:45:17 AM |
| 09/15/2021 10:54:58 AM | 09/15/2021 11:54:58 AM |
| 09/15/2021 10:55:00 AM | 09/15/2021 11:55:00 AM |

41.     Like the other examples above, both versions of Government Exhibit 17D bear a bates stamp as if this data came directly from the government's production of materials it received and processed from Discord.  Moreover, the file contains metadata revealing that a government paralegal changed the times on the document from 10:00 am to 11:00 am on November 17, 2023.



42.     A review of the Discord data that the government produced in discovery reflects that Exhibit 17D is *not* from the Discord production and, in fact, *the government changed completely the timestamp that appears on the data, which displays the date and time in a completely different manner and reflects the time as 14:17:31 (2:17:31 pm)*:

| Times Reflected in Discord Data Produced in Discovery | | | Timestamps of Government Exhibit 17D Produced January 19, 2024 |
|---|---|---|---|
| 0 | 2021-09-15 14:17:31 | 71 32 | **Timestamp** |
| 1 | 2021-09-15 14:18:30 | 39 71 | 09/15/2021 10:17:31 AM |
| | | | 09/15/2021 10:18:30 AM |
| 0 | 2021-09-15 15:43:28 | 71 32 | 09/15/2021 11:43:28 AM |
| 0 | 2021-09-15 15:43:33 | 71 32 | 09/15/2021 11:43:33 AM |
| 4 | 2021-09-15 15:43:40 | 71 32 | 09/15/2021 11:43:40 AM |
| 0 | 2021-09-15 15:43:43 | 71 32 | 09/15/2021 11:43:43 AM |
| 2 | 2021-09-15 15:45:17 | 39 71 | 09/15/2021 11:45:17 AM |
| 7 | 2021-09-15 15:54:58 | 71 32 | 09/15/2021 11:54:58 AM |
| 0 | 2021-09-15 15:55:00 | 71 32 | 09/15/2021 11:55:00 AM |

43.     The government cannot change the times displayed in the original evidence produced in this case merely because it wants its evidence to look better than the way the data appears, and certainly cannot do so while concealing its actions from defense counsel.  The government's pervasive case-wide alteration of its trial evidence to look more appealing for the prosecution warrants severe sanctions, including dismissal of this case.

## CONCLUSION

For all the foregoing reasons, as well as those outlined in: Constantinescu's Motion to Continue Trial Date and for Order to Show Cause Why the Government and Securities and Exchange Commission Should Not Be Held in Contempt for Failing to Disclose *Brady* Material, as well as his Reply in further support thereof; Defendants' Joint Motion for Discovery Sanctions; and Defendant Matlock's Motion to Exclude Government's Exhibit 70, Defendants Constantinescu, Matlock, and Hrvatin respectfully request that the Court dismiss this case.

Dated: February 12, 2024

Respectfully submitted,

FORD O'BRIEN LANDY LLP

  /s/ Matthew A. Ford
Matthew A. Ford
mford@fordobrien.com
Texas Bar No. 24119390
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Tel.: (512) 503-6388
Fax: (212) 256-1047

Jamie Hoxie Solano
Admitted *pro hac vice*
jsolano@fordobrien.com
Stephen R. Halpin III
shalpin@fordobrien.com
S.D. Tex. Bar No. NY5944749
275 Madison Avenue, 24th Floor
New York, NY 10016
Tel.: (212) 858-0040
Fax: (212) 256-1047

*Attorneys for Defendant*
*Edward Constantinescu*

ASHCROFT SUTTON REYES, LLC

  /s/ Luis A. Reyes
Luis A. Reyes
lreyes@ashcroftlawfirm.com
Texas Bar No. 90001831
Johnny Sutton
jsutton@ashcroftlawfirm.com
Texas Bar No. 19534250
Alexander E. Brown
abrown@ashcroftlawfirm.com
Texas Bar No. 24099270
919 Congress Ave., Ste. 1325
Austin, TX 78701
Phone: (512) 370-1800
Facsimile: (512) 397-3290

*Attorneys for Defendant PJ Matlock*

CARLOS M. FLEITES, P.A.

  /s/ Carlos M. Fleites
Carlos M. Fleites
cmfleites@mylawyr.com
Fla. Bar No.: 0370850
407 Lincoln Road, Suite 12-E
Miami Beach, Florida 33139
Tel: (305) 672-8434
Fax: (305) 534-7087

*Attorney for Defendant Stefan Hrvatin*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

Dated: February 12, 2024

_/s/ Matthew A. Ford_____
Matthew A. Ford