UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Case No. 4:22-cr-612 |
| CONSTANTINESCU, *et al.* | § § | The Honorable Andrew S. Hanen |
| Defendants. | § § | |

### United States' Response in Opposition to Defendants' Motion as to Ms. Garibotti

The United States, by and through its undersigned counsel, respectfully submits its response to Defendant Rybarczyk's and Constantinescu's Motions seeking to exclude aspects of Maria Garibotti's anticipated testimony. ECF No. 532 ("Rybarczyk Motion"); ECF No. 540 ("Constantinescu Motion").[1] The motions highlight purported concerns that will not be realized in the testimony of Ms. Garibotti, and any lingering prejudice from Ms. Garibotti's summary charts does not substantially outweigh their significant probative value and can be addressed by the appropriate limiting and jury instructions. Nothing in the motions warrants exclusion of Ms. Garibotti's testimony. The Court should therefore deny the motions.

First, Defendant Rybarczyk misconstrues the nature of Ms. Garibotti's testimony. Ms. Garibotti is a summary witness who will provide the jury with facts, not opinions. Her testimony will center on a factual presentation of Defendants' trading in and around the time of their own statements, both to each other in private messages and to the public via social-media posts. In this way, Ms. Garibotti will not be opining about the falsity of any of the Defendants' statements. *Cf.* Rybarczyk Mot. at 9 (discussing how Ms. Garibotti will offer an opinion about

---

[1] The Constantinescu Motion lists bullet points for why Ms. Garibotti's testimony should be excluded but does not engage on either the merits or the law.

1

falsity, which she will not do). Through the summary charts, Ms. Garibotti will instead present the at-issue statements to the jury in the context of the Defendants' trading activity.

Presenting the underlying facts to the jury in this way will assist the jury in making its own determination about the falsity of Defendants' statements. Defendants' concern about Ms. Garibotti telling the jury what result to reach about the veracity of Defendants' statements will not be realized. Further, even though the parties and the Court have consistently referred to Ms. Garibotti as an "expert," the United States does not intend to present her to the jury as such for purposes of this case (given that she will not be giving an opinion), which further negates any prejudice of wrapping her testimony with the imprimatur of an "expert."

Second, given that Ms. Garibotti will not opine about the falsity of Defendants' social-media posts, there cannot be a credible claim that highlighting in yellow the statements that the *United States* will ultimately argue to be false is unfairly prejudicial. *Cf.* Rybarczyk Mot. at 9 (arguing without support that color coding usurps the jury's function of deciding the falsity of statements). The summary charts of Ms. Garibotti are voluminous and involve numerous entries for Defendants' trading activity, social-media posts, and private messages. Indeed, there are often many social-media posts within a particular Trial Episode that the United States will not be arguing are false. The coding of certain posts in yellow is therefore not argumentative but merely an aid to assist the jury in deciding the case on the relevant issues (the falsity of the at-issue statements). Coding the at-issue posts in yellow focuses the jury's attention so that the jury will decide this case based on the at-issue statements, not some other issues or some other statements. Thus, the coloring serves to *reduce* potential confusion and aid the jury precisely on the issues before it: determining whether the flagged statements are false.

Ironically, the Defendants argued for months about receiving early disclosure of the at-issue false statements, which the United States provided, to ensure the trial will be focused on the merits of the specific false statements at issue. With trial on the horizon, Defendants now want to rip up the guideposts they asked for, hoping to confuse the jury as to which statements are at issue. There is no reason to have the jury guess as to the nature of the charged conduct. Defendants had notice and so should the jury.

By coding the at-issue statements in yellow, the summary charts will therefore assist the jury in deciding the factual issues in a non-argumentative way. To the extent there is any lingering concern about prejudice (of which the United States believes is nil), the Court can cure it with the appropriate limiting instruction. Such an instruction would explain that Ms. Garibotti's summary charts have put in yellow the at-issue statements that the United States *has alleged* to be false; that Ms. Garibotti will not be opining about the falsity of the statements; and that it is the jury's role to decide the facts and determine for itself whether the at-issue statements are in fact false in accordance with the legal instructions that will be provided by the Court. Any prejudice thereafter is not unfair prejudice but the result of natural inferences from the trial evidence. *See, e.g.*, *United States v. Spalding*, 894 F.3d 173, 186 (5th Cir. 2018) (upholding the admission of a summary exhibit that contained prejudicial inferences because the exhibit's conclusions are supported by the evidence, accompanied by a limiting instruction and appropriate jury instruction, and the sponsoring witness was subject to cross examination).

In the same vein, it is neither unusual nor prohibited for the United States to seek to focus the jury's attention on specific statements it will later argue are false. *Cf.* Rybarczyk Mot. at 10 (highlighting that Ms. Garibotti will show the jury which at-issue statements the *United States* alleges to be false, which is true). Such is the natural adversarial process with both sides seeking

3

to focus the jury's attention on specific pieces of evidence to the exclusion of others. *See, e.g.*, *United States v. Jennings*, 724 F.2d 436, 442 (5th Cir. 1984) (finding no error as to the admission of summary exhibits that reflected, among other things, the assumptions of the United States). And because Ms. Garibotti is not providing her own opinion about the falsity of the statements, focusing on the underlying methodology in selecting the statements for the jury to decide this case misses the point. If, for example, Ms. Garibotti were to opine about the falsity of the statements, her methodology and bases for doing so would be fair game to attack. But since she is not and will instead just be providing the underlying materials to the jury so that they can reach their own opinion as to the charged conduct, the methodology is not legitimately at issue and cannot be a basis to exclude.

Third, Defendants lodge several attacks about the methodology of Ms. Garibotti's summary charts, all of which go the weight of her testimony not its admissibility. *See, e.g.,* Rybarczyk Mot. at 14, 19-20. At the threshold, Ms. Garibotti's methodology is explained in her export report and boils down to summarizing the Defendants' at-issue trading and social-media posts for a specific ticker for a specific period of time, *i.e.*, the Trial Episodes. Much as she will not be opining about the "falsity" of any of Defendants' statements, Ms. Garibotti will not offer any opinion about whether the profits in these windows are fraudulent proceeds. Indeed, it would be more problematic – and impermissible – if Ms. Garibotti made that conclusion and attempted to specifically identify which proceeds as to which Defendant are the result of fraud and which are not. *Cf.* Rybarczyk Mot. at 2 (arguing that Ms. Garibotti should have isolated the profits associated with the fraud). The jury will be well equipped to make its own conclusions on that point.

To the extent Defendants seek to attack her inclusion of profits as to Defendants who did not post about a ticker in a specific window, that argument goes to the weight of her charts, not the

admissibility. Rybarczyk Mot. at 14-15. On the merits, Defendants are wrong to suggest that just because a Defendant did not post about a ticker during a specific window it necessarily follows that he was not part of the scheme for a specific Trial Episode. The United States will offer trial evidence that shows how it was common practice for one or more Defendant to seek to pump the price of a certain stock while others stayed silent and traded for a profit in the background. *See, e.g.*, Ex. A (GX 67 at 2) (Defendants Constantinescu, Matlock, Deel, Cooperman and Hennessey discussing how "we don't all have to mention the same play . . . [and] [w]e can just buy dips in the background"). Further, the United States anticipates proving that Defendants routinely bought and sold the security within a Trial Episode once the security was selected by one or more Defendants, even before posting about that security, because the price of the security would increase around the time the Defendants purchased the stock themselves and sent it to others to do the same. *See, e.g.*, Ex. B (GX 68) (Defendants Deel and Cooperman discussing how they "build the chart our selfs [sic]" which is the "old ultra method"). For these reasons, Ms. Garibotti included all of the Defendants' respective trading in each Trial Episode. The jury can then decide, based on all the trial evidence (which will support the summary charts), what weight to assign to the trading activity of a Defendant who traded around another Defendant's social-media posts but did not post himself. Indeed, the Court will likely instruct the jury the jury on this exact point. *See* Fifth Cir. Pattern Jury Instrs. (Criminal Cases), § 1.52 (5th Cir. 2019 ed.).

Finally, Defendants' citation to the *Vorley* decision is inapposite to this case. *See* Rybarczyk Mot. at 18-19. The *Vorley* case involved trading charts with an isolated chat (that the United States did not argue to be false) superimposed on a visualization of the charged trading activity over a narrow period of time. That ruling has little bearing where, as here, the at-issue conduct in this case involves both trading and communication activity that are substantially more voluminous in

5

terms of time period, level of activity, variety of sources, and are anchored to the specific statements the United States has alleged to be false. In this way, it is both natural and necessary to summarize both the voluminous statements and the trading in a chart. *Jennings*, 724 F.2d at 442. The charts and summary testimony will greatly assist the jury in analyzing voluminous and varied evidence so that it may perform its central role as the finder of fact at trial.

For the foregoing reasons, the Court should deny the motions.

Dated: February 27, 2024　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　GLENN S. LEON
　　　　　　　　　　　　　　　　　　　　Chief, Fraud Section
　　　　　　　　　　　　　　　　　　　　Criminal Division, Department of Justice

　　　　　　　　　　　　　By:　　*/s/ Scott Armstrong*
　　　　　　　　　　　　　　　　　　　　Scott Armstrong, Assistant Chief
　　　　　　　　　　　　　　　　　　　　John J. Liolos, Trial Attorney
　　　　　　　　　　　　　　　　　　　　Fraud Section, Criminal Division
　　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　　1400 New York Ave. NW
　　　　　　　　　　　　　　　　　　　　Washington, DC 20005
　　　　　　　　　　　　　　　　　　　　Tel.: (202) 768-2246


　　　　　　　　　　　　　　　　　　　　ALAMDAR S. HAMDANI
　　　　　　　　　　　　　　　　　　　　United States Attorney
　　　　　　　　　　　　　　　　　　　　Southern District of Texas

　　　　　　　　　　　　　By:　　*/s/ Thomas Carter*
　　　　　　　　　　　　　　　　　　　　Thomas H. Carter
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　　　State Bar No.: TX24048387
　　　　　　　　　　　　　　　　　　　　1000 Louisiana Street, 25th Floor
　　　　　　　　　　　　　　　　　　　　Houston, Texas 77002
　　　　　　　　　　　　　　　　　　　　Tel.: (713) 567-9470

**Certificate of Service**

I hereby certify that on February 27, 2024, I will cause the foregoing motions to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

/s/ John J. Liolos
John J. Liolos
U.S. Department of Justice
Criminal Division, Fraud Section