UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:22-cr-612 |
| | § | |
| CONSTANTINESCU, *et al.* | § | The Honorable Andrew S. Hanen |
| | § | |
| Defendants. | § | |

**United States' Response in Opposition to Motion *in Limine* ECF No. 533**

The United States provided notice on June 15, 2023, that it anticipates calling Peter Melley, Esq., as a witness who may provide expert testimony at trial in this matter.[1] Mr. Melley is Director of the Criminal Prosecution Assistance Group ("CPAG") at the Financial Industry Regulatory Authority ("FINRA"), where he has worked for approximately 25 years assisting criminal investigations and prosecutions involving violations of securities laws. (Ex. 1.) Mr. Melley has testified on over 40 occasions and worked on hundreds of investigations involving securities, the majority of which have focused on market manipulation or pump-and-dump schemes. (*See* Ex. 1.) The United States anticipates Mr. Melley will testify on a variety of topics concerning stock trading that are relevant to this case, including defining terms like "security," "issuer," and "pump and dump" that will assist the jury's determinations.

Defendants challenge *in limine* only Mr. Melley's proffered testimony defining certain of these terms, such as "pump and dump," "front-loading," "coordinated trading," "price targets," "swing trading," "scalping," and being "long" in a stock. (*See* ECF No. 533.) Defendants challenge this testimony on essentially three bases: (1) the proffered definition testimony is expert, not lay

---

[1] The United States supplemented that disclosure on January 19, 2024.

testimony; (2) that Mr. Melley is not qualified as an expert to testify about "pump-and-dump" schemes or issues involving social media; and (3) challenges to the "accuracy" of the proffered definitions. None of these bases render Mr. Melley unfit to provide the proffered testimony, which he is more than qualified to offer based on his substantial relevant experience. (*See* Exs. 1 and 2.) The Court should deny the Motion.

**I.      Legal Standard**

As this Court knows, Rule 702 provides that "a witness who is 'qualified as an expert by knowledge, skill, experience, training, or education' may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case."

*Ideus v. Deere & Co.*, 2:22-cv-001332, 2023 WL 4154936, at *5 (S.D. Tex. Apr. 18, 2023) (Hanen, J.) (quoting Fed. R. Evid. 702).

As another court in this District has further explained:

> The proponent of the proffered expert testimony must prove by a preponderance of the evidence that the testimony is reliable and cannot rest on generic assurances. However, the proponent need not prove the testimony is factually correct, but rather need only prove by a preponderance of the evidence the testimony is reliable and the Court should approach its inquiry with the proper deference to the jury's role as the arbiter of disputes between conflicting opinions. **As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion, rather than its admissibility and should be left for the jury's consideration.** Cross-examination and presentation of

competing evidence are traditionally sufficient to challenge an expert opinion, rather than exclusion for inadmissibility.

*United States v. 2.6433 Acres of Land*, No. 7:08-cv-00302, 2021 WL 4729306, at *4–5 (S.D. Tex. July 29, 2021) (citations to multiple Fifth Circuit opinions and quotations omitted) (emphasis added).

## II. Argument

Mr. Melley is properly qualified to define terms regarding the securities industry and stock trading that will be helpful to the jury in this matter. His proffered opinions are based on his nearly three-decades experience investigating and testifying about securities manipulation and fraud, among other misconduct. The Court should permit Mr. Melley's testimony.

**1. Mr. Melley is qualified as an expert to present proffered market definitions.**

Defendant first challenges Mr. Melley's testimony arguing that his definition of terms is expert rather than lay testimony. The United States agrees that, for certain of the terms Mr. Melley will define, his testimony is based on his multiple decades of experience investigating hundreds of alleged breaches of securities laws—the majority of which involved market manipulation and/or "pump-and-dump" schemes. (*See* Ex. 1.) That basis is more than sufficient to qualify Mr. Melley as an expert on the proffered topics and the Court should permit the testimony. *See SIS, LLC v. Orion Grp. Holdings, Inc.*, No. 4:22-cv-891, 2023 WL 9284098, at *1–2 (S.D. Tex. Dec. 21, 2023) (Hanen, J.) (qualifying expert with "more than thirty years' experience in the industry" involving hundreds of relevant experiences including the issues subject to the lawsuit).[2]

---

[2] Certain of the terms Mr. Melley will define, such as "price," may properly fall under Rule 701 as lay testimony, given that his understanding may derive from simple experience and the term is within the ambit of a common juror. The Court need not reach that question, however, because Mr. Melley is properly qualified as an expert for all the definition testimony he will provide.

Other aspects of Mr. Melley's testimony qualify as simply fact testimony under Rule 602 or lay testimony under Rule 701, such as presentation of summary charts of stock price and volume data. Defendant does not here challenge that testimony, so the United States does not address it. The focus of Defendant's Motion is entirely on Mr. Melley's defining of terms.

**2. Mr. Melley is qualified to testify about "pump-and-dump" and "scalping" schemes and related definitions based on his nearly three decades of experience.**

Defendants' next challenge is that Mr. Melley's multiple decades investigating and testifying about market manipulation and securities fraud schemes, including pump-and-dumps, do not qualify him to define certain terms like "pump-and-dump." (*See* Mot. at 9.) Of course, Mr. Melley's experience is more than sufficient. *See, e.g.*, *SIS*, 2023 WL 92840498, at *1–2. Indeed, he has previously testified as an expert on these very topics. (*See* Exs. 1 and 2.)

Defendant points to the fact that several of the more recent cases in which Mr. Melley testified concerned insider trading as a basis to say he is unqualified to testify about pump-and-dump schemes. But that ignores the fact that the *majority* of the more than forty cases in which Mr. Melley has testified, as well as the likely hundreds more he has investigated, concerned securities fraud and manipulation schemes like and including pump-and-dump schemes. Relevant industry experience alone is a sound basis for expert testimony. *See, e.g.*, Fed. R. Evid. 702, advisory committee note to 2000 amendments ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."). There are few people *more* qualified to testify to the meaning of terms commonly used in discussions of stock trading than an individual who has spent the better part of three decades investigating wrongdoing in the stock market, including numerous pump-and-dump schemes. (*See* Exs. 1, 2.)

Furthermore, the relevant case law routinely holds that investigative agents can testify to the meaning of terms in the industries in which they investigate on the basis of that experience.

4

*See, e.g.*, *United States v. Haines*, 803 F.3d 713, 727–28 (5th Cir. 2015) (qualifying expert to define "code words" as used in drug conspiracies on basis of years of relevant investigative experience); *United States v. Jett*, 908 F.3d 252, 265 (7th Cir. 2018) ("Courts may properly admit a case agent's expert testimony to help juries interpret 'key words' or 'code words' used by individuals or groups that the agent investigates." (citation omitted)).[3] That is precisely what Mr. Melley is qualified to do—testify to the meaning of terms used in the industry he has investigated and testified about for decades. He should be permitted to do so here.

Defendants also quibble that Mr. Melley is not qualified to testify as an expert in the context of social media. But he is not proffered to testify about social media. His challenged testimony concerns definitions of how terms are used, and have been used, by stock market participants. Pump-and-dumps by boiler room phone calls, mailings, or social-media postings are all still pump-and-dumps. If Defendants contend the medium in which the terms are communicated materially changes their meaning, Defendants are free to cross-examine Mr. Melley on the point. As this Court knows, this type of evidence can "be attacked by cross-examination, contrary evidence, and attention to the burden of proof, not exclusion." *Horton v. Allstate Vehicle & Prop. Ins. Co.*, No.

---

[3] Other courts are in accord. As the Ninth Circuit has explained:

> The method used by the agent is the application of extensive experience to analyze the meaning of the conversations. So long as the principles and methods are reliable and applied reliably to the facts of the case, this type of testimony should be admitted. *Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony.* To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.

*United States v. Holguin*, 51 F.4th 841, 858 (9th Cir. 2022) (quoting Fed. R. Evid. 702, advisory committee's note to 2000 amend).

4:20-cv-3109, 2022 WL 7265953, at *4 (S.D. Tex. Sept. 9, 2022) (Hanen, J.) (quotations omitted).

Furthermore, as addressed at length in multiple other briefs, the United States absolutely alleges the Defendants "sought to pump and dump" stocks with their fraudulent scheme. (*See, e.g.*, Superseding Indictment, ¶ 21, ECF No. 134; US MILs, ECF No. 538, section II.9.) Thus, this testimony is highly relevant and helpful to the jury.

### 3. Defendants' disagreements with Mr. Melley's definitions should be addressed by cross-examination, not exclusion.

Defendants also challenge the substance of Mr. Melley's proffered definitions, arguing in various ways that they are inaccurate or unreliable. (*See* Mot. at 6–10.) But, as this Court knows, "an expert may use his experience, knowledge, and expertise, coupled with this own inspections and observations, to form an opinion. Any purported deficiency in [that opinion] is more properly the subject of a rigorous cross-examination than exclusion." *Warren v. Lloyds*, No. 4:19-cv-2777, 2020 WL 9457066, at *2 (S.D. Tex. Nov. 19, 2020) (Hanen, J.) (citations omitted).

To the extent Defendants disagree with Mr. Melley's opinion on a definition he derived from his multiple decades of industry experience, Defendants are free to cross-examine Mr. Melley on the question. But their disagreements over the merits of his definitions go to the weight a jury might assign to Mr. Melley's testimony, not to its admissibility. *See, e.g.*, *Warrant*, 2020 WL 9457066, at *2.

### Conclusion

The Court should permit Mr. Melley's proffered testimony because it is based on his nearly three decades of industry experience investigating breaches of securities laws, including schemes like the one charged here, and would be helpful to the jury in determining matters of consequence at trial.

Dated: February 27, 2024	Respectfully submitted,

                          GLENN S. LEON
                          Chief, Fraud Section
                          Criminal Division, Department of Justice

By:   */s/ John J. Liolos*
        Scott Armstrong, Assistant Chief
        John J. Liolos, Trial Attorney
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Ave. NW
        Washington, DC 20005
        Tel.: (202) 768-2246


        ALAMDAR S. HAMDANI
        United States Attorney
        Southern District of Texas

By:   */s/ Thomas Carter*
        Thomas H. Carter
        Assistant United States Attorney
        State Bar No.: TX24048387
        1000 Louisiana Street, 25th Floor
        Houston, Texas 77002
        Tel.: (713) 567-9470

## Certificate of Service

I hereby certify that on February 27, 2024, I will cause the foregoing motions to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

<i>/s/ John J. Liolos</i><br>
John J. Liolos, Trial Attorney<br>
U.S. Department of Justice<br>
Criminal Division, Fraud Section