# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Case No. 4:22-cr-612** |
| | § | |
| **CONSTANTINESCU**, *et al.* | § | **The Honorable Andrew S. Hanen** |
| | § | |
| **Defendants.** | § | |
| | § | |

## United States' Response in Opposition to Defendant's Motion *in Limine* ECF No. 535

The United States, by and through undersigned counsel, responds to Defendant Rybarczyk's Motion *in limine* to exclude Government Exhibit ("GX") 1. (ECF No. 535.) GX 1 is a summary exhibit of over forty images Defendants themselves posted on the internet that were contained in the case file produced in discovery in this matter. (*See* Ex. 1 (GX 1).) Evidence of how Defendants promoted themselves on social media is highly probative of multiple issues in this case and must be submitted to the jury. Defendants held themselves out to the public as successful stock traders to build their social media followings in furtherance of the charged crimes. Defendants' social media activity is also probative of other relevant issues, including the fact that Defendants promoted themselves *together* on social media in furtherance of their securities fraud scheme and conspiracy.

Such images are so pervasive among Defendants' social media accounts that, as individual posts and exhibits, they are voluminous. To assist the jury, the United States has compiled into GX 1 a representative sample of such images that are probative of themes at issue. The exhibit will be helpful and convenient for the jury. The Court should admit GX 1 as a proper Rule 1006 summary of voluminous evidence highly probative of issues of consequence in determining the

action. *See* Fed. R. Evid. 401, 402, 1006.

Defendant takes issue with GX 1 on essentially three grounds: (1) arguing GX 1 should not be admitted as a Rule 1006 summary of voluminous evidence; (2) disputing the relevance of the underlying content; and, (3) arguing that unfair prejudice substantially outweighs the probative value. (*See generally* Mot.) The Court should reject Defendant's arguments and admit the exhibit.

## I.    The exhibit is a proper Rule 1006 summary of voluminous evidence.

Under Rule 1006, a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, records, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. The Fifth Circuit has affirmed the admission of Rule 1006 summary charts where the documents summarized in the charts were voluminous and the Rule 1006 exhibit facilitated convenient review in court. *United States v. Tannehill*, 49 F.3d 1049, 1056 (5th Cir. 1995).

Each of the over forty internet posts compiled into GX 1 is admissible on its own because it is probative of facts of consequence for the jury's determination. Every post is attributable to a Defendant and was part of the case file produced to Defendants in discovery.

In order to facilitate the jury's review of this voluminous material, the United States compiled these over forty images into GX 1. The only true difference between admitting each post as a separate exhibit or admitting the single exhibit of GX 1 is the ease with which the jury can review the content of these voluminous materials. *See* Fed. R. Evid. 1006. The United States can offer each image as a separate exhibit, but that would be voluminous and unduly inconvenient for the jury. Thus, the Court should admit GX 1 as a proper Rule 1006 summary.

## II.   The evidence is highly relevant to proving the charged crimes and any prejudice is neither unfair nor does it substantially outweigh the significant probative value.

GX 1 compiles evidence highly probative of numerous facts at issue in this case. For example, the images within the exhibit show how Defendants held themselves out to their followers and prospective followers on social media during and in furtherance of the charged scheme and conspiracy. Specifically, Defendants held themselves out as successful stock traders, to project images of success and wealth in order to grow their social media followings in furtherance of the charged crimes. Defendants also contest that they were in a conspiracy. Their social media activity together in furtherance of the charged crimes directly undercuts those contentions. (*See generally* GX 1.)

The Fifth Circuit often permits the use of summary charts "in conspiracy cases to aid the jury in putting the myriad of complex and intricate pieces of testimony and documentary evidence comprising the puzzle together." *United States v.* Taylor, 210 F.3d 311, 315 (5th Cir. 2000); *see also United States v. Winn*, 948 F.2d 145, 157 (5th Cir. 1991) ("We cannot rationally expect an average jury to compile summaries and to create sophisticated flow charts to reveal patterns that provide important inferences about the defendants' guilt."). Thus, the fact that GX 1 presents evidence of Defendants associating in furtherance of the conspiracy, as well as social media themes they used together and individually to further that conspiracy, actually supports the admission of the exhibit, given that it will be helpful to the jury in its fact-finding task. *See id.*

Even if the exhibit includes assumptions beyond those Defendants themselves intended to promote with their posts, which the United States does not concede, the Fifth Circuit routinely affirms the use of summary exhibits that include assumptions by the United States, as long as the assumptions are supported by other evidence, *United States v. Diez*, 515 F.2d 892, 905 (5th Cir. 1975), and the Court explains to the jurors that they are the ultimate finders of fact, *United States*

3

*v. Andrew*, 606 F.2d 549, 550 (5th Cir. 1979). *See, e.g.*, *United States v.* Spalding, 894 F.3d 173, 186 (5th Cir. 2018) ("The presence of an inference in a summary chart is not per se prejudicial. No harm lies when the exhibit does not suggest any conclusions unsupported by the evidence, the district court properly instructs the jury, and the defendant conducts a full cross-examination of the charts' author." (quotations and citation omitted)); *United States v. Buck*, 324 F.3d 786, 791 (5th Cir. 2003) ("[T]he essential requirement is not that the charts be free from reliance on any assumptions, but rather that these assumptions be supported by evidence in the record." (quotations and citation omitted)); United *States v. Means*, 695 F.2d 811, 817 (5th Cir. 1983) (same).

Defendant does not address these highly relevant aspects of GX 1 and instead suggests the only purpose for the exhibit is an appeal to class prejudice. That is incorrect. The law Defendant cites for the proposition concerns appeals to class prejudice *irrelevant* from the issues at trial. Indeed, Defendant cites a case that makes clear, "evidence of an individual's lavish spending habits, *without a connection to an individual's participation in criminal activity*, is irrelevant." *United States v. Holmes*, No. 5:18-cr-00258-EJD-1, 2021 WL 2044470, at *4 (N.D. Cal. May 22, 2021) (emphasis added); (Mot. at 3). The United States agrees. But Defendant glosses over the central distinction this case presents. Here, there is a *direct connection* between Defendants' personal promotion of material success and "an individual's participation in criminal activity." *Id.*

The images in GX 1 are highly probative of and directly connected to the scheme and conspiracy, as shown by significant other evidence in this case. Defendant Rybarczyk's own social media posts show that he sought to grow his following by promising wealth and financial success to his followers who purchased the at-issue securities. For example, on December 29, 2021, Defendant Rybarczyk tweeted:

> I'm trying to hit 777 millionaire traders 2022. I'm gonna make it
> happen. It's not my goal to only make me prosper. I want all of you

to prosper. I'm gonna make each and every one of you make it. The market is so universal. You just adapt to current conditions. Let's go crazy.

(Ex. 2 (GX 194).) The theme repeats throughout Defendant Rybarczyk's posts. (*See, e.g.*, Ex. 3 (GX 196 ("My followers are gonna bank huge 2022. #GAMETIME")); Ex. 4 (GX 197 ("Trust me. I lost a 80%+ in the beginning. Went from $2500 to 750k first year of success")); Ex. 5 (GX 189 ("I just want the team successful. We are one big family")).) The theme from these posts is clear: follow me and purchase the securities that I reference; if you do, you, too, can enjoy the wealth and freedom my stock picks provide. Defendant sold a lie.

Defendant Rybarczyk is not alone in this effort to promote the scheme and conspiracy in this way. Rather, it is a *modus operandi* shared with his co-Defendants. (*See, e.g.*, Ex. 6 (GX 176.D (Def. Constantinescu: "So, I'm just cruising the streets . . . um, making money. I'm up, like, $108,000, so if you're not cruising on a fat bike, not making $100,000. I don't know what the f*ck you're doing with your life. Evaluate it. Change some things around. . . . you can do it, too. Just get a bike. Just start making $100,000 a day. All right, guys. Have a great day. . . . I'll see you guys on Twitter, pumping.")).)

Defendant Rybarczyk's posts also show his efforts focused specifically on growing his and his co-Defendants' follower counts in furtherance of the scheme and conspiracy. (*See, e.g.*, Ex. 7 (GX 184 ("CONGRATS ON 150,000 FOLLOWERS @MrZackMorris WELL DESERVED BRO")); Ex. 8 (GX 185 ("9k followers away from the 100k breakout. Go ahead and give @Hugh_Henne a follow.")); Ex. 9 (GX 186 ("Congrats #ATLAS on reaching 100,000 members!!! @PJ_Matlock @MrZackMorris . . . love you all"); Ex. 10 (GX 187 ("Congrats my man @MrZackMorris on 350k followers. Well deserved, one big family")); Ex. 11 (GX 190 ("Once I'm at 300,000 followers. I'm doing a mega giveaway. Thank you all for the support and trust.")).)

Next, this highly probative evidence is not *substantially* outweighed by any *unfair*

prejudice. *See* Fed. R. Evid. 403. The probative value of these social media posts is not that Defendants generated wealth, as Defendant suggests. (Mot. at 5). Rather, the evidence shows how Defendants held that ill-gotten wealth out as seemingly legitimate fruits of their stock trading to make others follow them and propagate the fraudulent scheme in the belief that they, too, could "legitimately" achieve such wealth under Defendants' guidance. The Court should have confidence that the United States will not make inappropriate arguments from Defendants' displays of wealth. Any tangential prejudice is not substantially greater than the probative value and even its unfairness is a matter of dispute.

Defendant Rybarczyk contends that the pictures of himself are also prejudicial because they are included with other unrelated pictures of his co-Defendants and co-conspirators. (Mot. at 5.) The Court should reject this contention for at least three reasons.

First, there is no true danger of confusion among Defendants given that the page with Defendant Rybarczyk's pictures is captioned "John Rybarczyk" and includes his Twitter and Discord handles. (*See* Ex. 1 at 4.) Defendant will also be able to cross-examine the exhibit's sponsor to clear up any lingering confusion. *See, e.g.*, *United States v. Armstrong*, 619 F.3d 380, 384 (5th Cir. 2010) ("The witness who prepared the exhibit clarified in her testimony, on direct and cross-examination, that [defendant] had a connection only to the properties that had a line drawn to her picture. Thus, there was no reason for the jury to believe that she was connected to the other properties as well.").

Second, the pictures of Defendant Rybarczyk are relevant to themes displayed in other photos compiled in the voluminous exhibit. Defendant Rybarczyk argues without basis in fact that the pictures included with him in them are not probative of the charged conspiracy. That is wrong. From left to right, picture one is a social media post showing Defendant Rybarczyk and Defendant

Knight, who the United States expects will testify that he was, in fact, in a criminal securities fraud conspiracy with Defendant Rybarczyk. (*See* Ex. 1 at 4.) The picture provides further evidence of their association, is probative of the conspiracy, and the United States expects will corroborate Defendant Knight's testimony.

Picture two is a post from social media depicting Defendant Rybarczyk wearing a "Pennies: Going In Raw" hat. (*See id.*) That is the podcast run by Defendants Knight and Hennessey that the evidence and testimony will show was used in furtherance of the conspiracy. Defendant Rybarczyk is actively promoting the podcast and, thus, the conspiracy in that image. (*See id.*) There are slides later in the exhibit that provide more information and posts about "Pennies: Going In Raw," further indicating the relevance of Defendant Rybarczyk's promotion, which will be connected up with other evidence and testimony. (*See id.* at 14–19.)

Picture three is a post by Defendant Rybarczyk with a Lamborghini, a luxury sports car. (*See id.* at 4.) It was a picture he used as his main "profile picture" on social media for a period during the conspiracy and is probative of the theme described and demonstrated in the other evidence: follow me and my (fraudulent) stock tips and you, too, will be successful.

And the summary exhibit shows that Defendant Rybarczyk did not do this promotion on his own. Rather, it was part of the *modus operandi* of the conspiracy for Defendants to hold themselves out as wealthy, successful stock traders in order to build their social media followings and further the scheme and conspiracy. Other Defendants have similar pictures boasting their cars and other luxury items. (*See id.* at 2–6, 10–11.) The evidence shows in their own words both that their followers were important to them and that they tried to build each others' follower counts. Thus, this evidence together is highly probative of the conspiracy, particularly considering the additional evidence and testimony expected at trial.

Defendant's arguments to the contrary go to the weight, not the admissibility of the evidence. *See, e.g.*, *United States v. Jennings*, 724 F.2d 436, 442 (5th Cir. 1984) (finding permissible summary charts premised on government's assumptions where supporting evidence presented and jury instructed that they determine what weight the evidence should be given).

Third, any lingering prejudice is not substantially more prejudicial than the high probative value of the exhibit. There will be substantial corroborating evidence of the conspiracy in different forms than mere social media photographs, including trade data, audio recordings, and testimony from pleaded co-conspirators. At the very least, the Court should conditionally admit GX 1, subject to being connected later with other evidence and testimony establishing relevant foundational points.

## Conclusion

The Court should deny the Motion and admit the exhibit because it compiles voluminous evidence probative of numerous issues of consequence so the jury may conveniently review that evidence at trial.

Dated: February 27, 2024                    Respectfully submitted,

                                            GLENN S. LEON
                                            Chief, Fraud Section
                                            Criminal Division, Department of Justice

                              By:    */s/ John J. Liolos*
                                            Scott Armstrong, Assistant Chief
                                            John J. Liolos, Trial Attorney
                                            Fraud Section, Criminal Division
                                            United States Department of Justice
                                            1400 New York Ave. NW
                                            Washington, DC 20005
                                            Tel.: (202) 768-2246

ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

By:    */s/ Thomas Carter*
Thomas H. Carter
Assistant United States Attorney
State Bar No.: TX24048387
1000 Louisiana Street, 25th Floor
Houston, Texas 77002
Tel.: (713) 567-9470

**<u>Certificate of Service</u>**

I hereby certify that on February 27, 2024, I will cause the foregoing motions to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.


*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section