### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Case No. 4:22-cr-612 |
| CONSTANTINESCU, *et al.* | § § | The Honorable Andrew S. Hanen |
| Defendants. | § § | |

**United States' Response in Opposition to Motion *in Limine* ECF No. 536**

The United States, by and through undersigned counsel, responds to Defendant Rybarczyk's Motion *in limine* (ECF No. 536) to exclude two types of exhibits: audio-video recordings and documents. The challenged exhibits are admissible non-hearsay because they satisfy the co-conspirator exception in Fed. R. Evid. 801(d)(2)(E). The Court should admit the exhibits.

### I. Background

Defendant first seeks to exclude a series of exhibits that are excerpts from two recorded conversations, both of which included Defendants Cooperman, Knight, and others. (Mot. at 5–11.) The recordings at issue are from two different days in which Defendants executed the fraudulent scheme in GTT, charged in Count 7 of the Superseding Indictment. The first set of recordings (GX 7H, 7I, 7J) come from a conversation on or about February 24, 2021. The second set of recordings (GX 7M, 7O, 7R) come from the "robbing idiots of their money conversation," which occurred on or about March 1, 2021, as described in the Superseding Indictment and elsewhere. Both conversations are corroborated by other evidence in the case, including the United States' summary exhibits chronologizing the relevant trading and communications records. The United States expects Defendant Knight to testify about the exhibits.

Defendant next seeks to exclude ten document exhibits that are private messages among other Defendants that mention Defendant Rybarczyk. These are all conversations in furtherance of the conspiracy in which Defendant Rybarczyk played a significant role, as the substantial trial evidence will demonstrate.

**II.    Legal standard.**

A statement is non-hearsay admissible against an opposing party if the statement "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To satisfy this rule, the proponent must show "by a preponderance of the evidence" "(1) the existence of the conspiracy; (2) the statement was made by a co-conspirator of the party; (3) the statement was made during the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *United States v. Fairley*, 880 F.3d 198, 213 (5th Cir. 2018). The Court may admit co-conspirator statements "provisionally . . . subject to the government's 'connecting them up' with sufficient evidence." *United States v. Hasner*, 340 F.3d 1261, 1274 (11th Cir. 2003); *see United States v. Ruiz*, 987 F.2d 243, 246 (5th Cir. 1993) ("[T]he court may admit the statement subject to being connected up.").

As to the fourth requirement, the Fifth Circuit has repeatedly "shunned an overly literal interpretation of [the] phrase." *United States v. Broussard*, 80 F.3d 1025, 1039 (5th Cir. 1996) (quotation omitted). The requirement that the statement be in furtherance of the conspiracy "is not to be construed too strictly lest the purpose of the exception be defeated." *Id.* Although "mere idle chatter" is not in furtherance of the conspiracy, statements that are intended "to advance, facilitate or promote the ultimate conspiratorial objective" satisfy the requirement. *United States v. Cornett*, 195 F.3d 776, 783 (5th Cir. 1999). Similarly, a statement is in furtherance of a conspiracy if it reflects "puffing, boasts" or contains information that "facilitates the conspiracy's operations . . .

or [is] intended to affect the future dealings between the parties." *United States v. Adkism*, 180 F.3d 264, 1999 WL 301315, at *10 (5th Cir. 1999) (citations omitted).

### III. Argument

**A. The recordings are in furtherance of the conspiracy because they depict Defendants discussing and coordinating the execution of the scheme in real time, as they are committing the fraud charged in Count 7.**

Defendant presumably wants to exclude the recordings because they are highly probative of his execution of the fraudulent scheme charged in Count 7. Indeed, the conversations in the recordings match up and corroborate other evidence relevant to Count 7, including the chronology of the execution depicted in GX 7B (Ex. 1), the summary exhibit of the relevant trading and communications records. The Court should admit both sets of recordings.

1. February 24, 2021, execution of the scheme in GTT (GX 7H, 7I, 7J)

The first three challenged exhibits (GX 7H, 7I, 7J) are excerpts of a conversation recorded on or about February 24, 2021, during which Defendants Rybarczyk, Cooperman, Knight, and others are executing the fraudulent scheme in GTT. For example, in the first challenged exhibit, GX 7H, the following exchange occurred:

| | | |
|---|---|---|
| [00:00:01] | Cooperman: | Ultra just texted me. GTT bottom chart. |
| [00:00:04] | Other Individual 1: | I'm running. |
| [00:00:04] | Other Individual 2: | Got it. |
| [00:00:05] | Knight: | What? What? What? Read it again? |
| [00:00:08] | Cooperman: | GTT, bottom chart. |

(Ex. 2 (GX 7H.D).)

This is a conversation *coordinating the execution of fraudulent scheme* in real-time in furtherance of the conspiracy. Defendant Rybarczyk allegedly texted Defendant Cooperman the

3

next stock in which he planned to execute the scheme, GTT, and Defendant Cooperman told the group so they could buy it up in secret before Defendant Rybarczyk publicly posted about it. That is corroborated by other evidence the United States will introduce at trial. (*See, e.g.*, Ex. 1 (GX 7B).)

For example, that exchange occurred at approximately 1:57 p.m., according to the clock in the video in GX 7H. Approximately two minutes later, GX 7B shows Defendants Rybarczyk, Cooperman, and Knight executing the scheme by primarily selling their GTT shares in and around Defendant Rybarczyk's false and misleading social media posts. (*See* Ex. 1 (GX 7B) at 2–3.) Indeed, it was only after Defendant Rybarczyk allegedly texted Defendant Cooperman that GTT was "bottomed," giving his co-conspirator a chance to get in, that Defendant Rybarczyk then shared that information with his social media followers as he, himself, was selling his shares. (*See id.* at 2.) Thus, GX 7H is the conspiracy in action, in real time, being furthered.

GX 7I is a continuation of that conversation in which the following exchange occurs:

| [00:00:01] Cooperman: | Okay, he tweeted. An extremely bottom setup. There are just so many humungous green candles. This isn't at the bottom, fool. |
| [00:00:14] Knight: | Ten percent off the bottom, oh, my God, that sell is massive. Probably him. |

(Ex. 3 (GX 7I.D).)

This exchange occurred almost immediately after the prior exhibit and reflects Defendants Cooperman and Knight describing the execution of the scheme in real time, to each other, as they are executing it. "Okay, he tweeted," is a reference to Defendant Rybarczyk publicly tweeting GTT, which is corroborated in time by GX 7B. Next, Cooperman and Knight are describing how the stock chart is not, in fact, at "bottom," because there are significant sells occurring.

That is not "mere idle" chatter, but Defendants discussing and coordinating the execution of the scheme as it is actually occurring. It "facilitates the conspiracy's operations" in that they are discussing their execution of the scheme precisely as they are deciding how to trade it. *Adkism*, 180 F.3d 264, 1999 WL 301315, at *10.

The exchange also shows Defendants' fraudulent intent in furthering the conspiracy. For example, Defendant Knight's stating his belief that the sales "probably" are those of Defendant Rybarczyk shows how they expect their co-conspirator to behave as they are executing the scheme, *i.e.*, contrary to his publicly-stated trading intentions. *E.g.*, *Adkism*, 180 F.3d 264, 1999 WL 301315, at *10 ("We have found a statement to be in furtherance of a conspiracy when it identifies the role of a co-conspirator to someone who may need to know that role, or to allay suspicions and concerns. Similarly, an identification furthers the conspiracy if it is puffing, boasts, or is other conversation designed to obtain the confidence of someone who is a member of, or dealing with, the conspiracy." (citations omitted) (collecting cases)).

Similarly, Defendant Cooperman states plainly that GTT's chart is not at the bottom, *i.e.*, that Defendant Rybarczyk's tweet that it is bottomed is false. The fact that Defendant Cooperman may be "making fun" of Defendant Rybarczyk does not in any way render this exhibit not in furtherance of the conspiracy. The law does not require co-conspirators to like each other. *See, e.g.*, *United States v. Fields*, 138 F. App'x 622, 626 (5th Cir. 2005) (explaining that co-conspirators' "competition with one another" did "not preclude a finding of a single conspiracy"). Indeed, the United States anticipates offering evidence in this case that the Defendants, among other things, bickered with each other and talked behind each others' backs. Despite this school-like feuding, the United States intends to prove that the Defendants still chose to align their trades with each other at the expense of others.

5

Finally, GX 7J is a continuation of that same conversation in which they continue to discuss the ongoing operations of the scheme and conspiracy. The following exchange occurs during the recording:

| | | |
|---|---|---|
| [00:00:01] | Cooperman: | Yeah, I think Willy Meatsauce is just getting a lot of plays from Ultra, too, which is how him and Mizelle are getting a lot of gains during the days, too. |
| [00:00:11] | Other Individual 1: | All they want, all that group wants is more people to spread the -- |
| [00:00:18] | Cooperman: | Exactly, yeah. |
| [00:00:19] | Other Individual 1: | Like, everybody has their own, like, we were doing it the other day. Like, oh, now this guy is going to say this, and they said it. |
| [00:00:28] | Other Individual 2: | Yeah, it's Mac and uh, Mystic Mac and SD. Those two are together. |
| [00:00:37] | Other Individual 1: | I'm cool with it. As long as I get mine. |
| [00:00:43] | Cooperman: | The second I'm not in it, though, I'm gonna expose this shit to CNN like you would never believe. |

(Ex. 4 (GX 7J.D).)

Again, this is a continuation of the conversation in which co-conspirators are describing the workings of the scheme to each other, confirming their knowledge of its operation, the roles co-conspirators play, and planning for the next execution. Indeed, Defendant Cooperman starts the exhibit by describing his understanding of how the scheme works, with "Ultra" (Defendant

Rybarczyk) sharing his stock "plays" with an inner circle. Defendant Cooperman affirms that they share the tickers because they want "more people to spread the pump." The reference to "Mystic Mac" is to Defendant Deel. And Defendant Cooperman's statement at the end of the clip that he will expose the scheme "the second [he's] not in it," demonstrates precisely that he is currently "in" the conspiracy and hopes to further it until he is not.

Thus, these three clips are in furtherance of the fraudulent scheme and conspiracy. They facilitate its execution *as it is actually happening* and confirm its operations among co-conspirators as they look forward to it continuing. Defendant's speculative contentions to the contrary are arguments about the weight the jury might afford this evidence, but they do not preclude these exhibits. At the very least, the Court should admit the exhibits subject to being connected up with additional evidence and testimony at trial. *See, e.g.*, *Ruiz*, 987 F.2d at 246.

   2. <u>March 1, 2021: "robbing idiots of their money" with GTT (GX 7M, 7O, 7R).</u>

The final three challenged exhibits (GX 7M, 7O, 7R) are excerpts of a conversation recorded on or about Mach 1, 2021, during which Defendants Rybarczyk, Cooperman, Knight, and others are executing the fraudulent scheme in GTT charged in Count 7. These exhibits are excerpts from the "robbing idiots of their money" conversation. (*See* ECF No. 529; GX 7P).

In the first challenged exhibit, GX 7M, the following exchange occurred:

| | | |
|---|---|---|
| [00:00:00] Other Individual 1: | | We're in $25.00. |
| [00:00:02] Knight: | | Yeah, I know, it's, I mean, there it is, **tweet, tweet, tweet. There it is.   There's the tweet.** |
| [00:00:06] Other Individual 2: | | Yep. |
| [00:00:07] Other Individual 1: | | **GTT**? |
| [00:00:07] Knight: | | Mm-hmm. |

7

| | | |
|---|---|---|
| [00:00:07] Other Individual 2: | | Yep. |
| [00:00:09] Other Individual 1: | | Okay. |
| [00:00:12] Knight: | | We should have had a market buy ready right as we saw the fucking tweet. Is he gonna go, like, crazy with this shit. There, come on. Go higher. Dammit, what the fuck? Wrong way. |
| [00:00:26] Other Individual 2: | | Oh, God. |
| [00:00:30] Knight: | | **Higher, and higher. Come on. I need more. I think he, I don't think he, I don't think he'll accept it not going this much. I refuse to believe it. He's got more <u>pumpers</u> in him, he's got more in him.** |
| [00:00:52] Other Individual 1: | | Yep. But I'm also half out in case he doesn't have more in him. |
| [00:00:57] Knight: | | Oh, you know how hard, do you know how low the price would be if I went half out right now? |
| [00:01:01] Other Individual 1: | | Yeah, don't do that. |

(Ex. 5 (GX 7M.D) (emphasis added).)

      This exchange shows Defendant Knight communicating in furtherance of the conspiracy and fraudulent scheme as they are literally executing that scheme. The exhibit, in conjunction with GX 7B, indicates that Defendant Knight's first reference to "there it is, there's the tweet" occurs at the exact minute, 1:37 p.m. ET, that Defendant Rybarczyk first posted falsely about GTT on March 1, 2021. (*Compare* GX 7B at 4 *with* GX 7M.)

8

Later in the conversation, Defendant Knight discusses his active trading in furtherance of the conspiracy, strategizing about when and how to sell his shares in GTT. Defendant Knight is explaining how he is waiting on Defendant Rybarczyk to post again because he does not believe he will settle for GTT "not going this much," *i.e.*, the price not going higher. Defendant Knight expects Defendant Rybarczyk to post again to try to get the price higher because he believes Defendant Rybarczyk "has more pumpers [posts to fraudulently induce others to purchase shares and artificially drive up the price] in him." Defendant Knight also explains how, if he were to sell his sizeable shares all at once and without "pumpers," the price of the stock would fall and hurt both himself and his co-conspirators' profits. The fact there is not direct evidence of coordination between Defendants Knight and Rybarczyk in this short clip of course does not negate all the significant other evidence of their membership in the conspiracy that will be adduced at trial, including Defendant Knight's own testimony. Far from "idle chatter," these statements are actively attempting to facilitate the conspiracy, announcing trading intentions and expectations of social media activity in furtherance of it, and should be admitted as such. *See Adkism*, 180 F.3d 264, 1999 WL 301315, at *10.

For the next clip, GX 7O, Defendant only challenges the video portion of the exhibit, not the audio. This clip is a continuation of the prior conversation in which Defendants Knight and others are discussing their trading in the scheme. Defendant Knight explains how he is executing the scheme by "dumping [his GTT shares] into the bid." (GX 7O.)

Defendant Rybarczyk takes issue with the fact that the computer screen displayed shows the Twitter page for @UltraCalls at the time. But the United States can introduce Defendant's own statements against him as statements of a party opponent under Rule 801(d)(2)(A), so his argument

under Rule 801(d)(2)(E) does not apply. And Defendant Rybarczyk admits that other references to "Ultra" are references to him. (*See* Mot. at 7.)

The two clips following the prior exhibit are those in which the "robbing idiots of their money" exchange occurs. (*See* ECF No. 529; GX 7P, 7Q.) After those is the third exhibit from this conversation Defendant Rybarczyk seeks to exclude, GX 7R, which is a continuation of the same conversation in which Defendants Cooperman and Knight have the following exchange:

| | | |
|---|---|---|
| [00:00:01] Cooperman: | | We gotta remember with these ultra ones, they all do the same thing. It, like, spikes, comes down for a second -- |
| [00:00:05] Knight: | | Then the scalpers get out, like, Gary gets out and then -- |
| [00:00:08] Cooperman: | | And then it goes fucking booka -- but no, that's not only it. Like, what he does is he alerts it and then, like, five minutes later, all his little minions start, like, re-tweeting it and saying "added with him" so, it, like, builds the hype back up. It, it happens every single time. They have this shit down to a fucking science. It's crazy. |

(Ex. 6 (GX 7R.D).)

This is precisely a conversation among co-conspirators in furtherance of the conspiracy. Defendant Cooperman says to Knight that they have "gotta remember" how Defendant Rybarczyk's execution of the scheme operates. Defendant Cooperman then goes on to describe it. It is not a simply narrative of past conduct. Obviously, they have "gotta remember" how Defendant Rybarczyk's executions of the scheme work to facilitate the execution in GTT they are *currently in*, and executions by Defendant Rybarczyk in the future. *Adkism*, 180 F.3d 264, 1999

10

WL 301315, at *10. Thus, the Court should admit the statement in furtherance of the conspiracy. At the very least, the Court should admit the exhibits subject to being connected up with additional evidence and testimony at trial. *See, e.g.*, *Ruiz*, 987 F.2d at 246.

### B. The document exhibits are all conversations involving other Defendants in furtherance of the conspiracy.

Defendant next seeks to exclude ten document exhibits in which other Defendants (his co-conspirators) have private discussions in furtherance of the conspiracy that mention Defendant Rybarczyk. The Court should admit these exhibits because they are all relevant and in furtherance of the conspiracy of which Defendant Rybarczyk plays a significant role.

1. GX 24E

Defendant challenges an exhibit depicting a conversation among Defendants Constantinescu, Matlock, Deel, Cooperman, Hennessey, Knight, and another individual on October 20, 2021, during the execution of the fraudulent scheme in CNTX. In the conversation, there are references to "Ultra," *i.e.*, Defendant Rybarczyk within the conversation. Those references include Defendant Hennessey stating "[w]e need an ultra dump," *i.e.*, Defendant Rybarczyk to sell shares, presumably so the price drops and the other co-conspirators can then buy back in for the next round. (Ex. 7 (GX 24E) at 4.) Thus, the conversation facilitates the conspiracy. *See Adkism*, 180 F.3d 264, 1999 WL 301315, at *10.

Defendant's contention that this conversation is not in furtherance of the conspiracy to which Defendant Rybarczyk is a party simply because references to Defendant Rybarczyk in the conversation itself are minimal is devoid of all context. When placed in that proper context, Defendant's contentions are absurd.

For example, GX 24B (Ex. 8) is the summary exhibit depicting the relevant trading, private messaging, and social media activity occurring during the execution of the scheme in CNTX. That

11

exhibit includes the conversation depicted in GX 24E (Ex. 8 at 16), as well as significant other context placing Defendant Rybarczyk at the very center of this execution of the scheme and conspiracy. For example, earlier in the day on October 20, 2021, Defendant Rybarczyk texted "yall in CNTX[?]" to Defendants Deel and Cooperman. (*Id.* at 5.) The exhibit then shows significant coordination among multiple Defendants before Defendant Deel warns Defendants Rybarczyk and Cooperman, "I am going in for CNTX." (*Id.* at 8.) Defendant Deel then posts falsely on Twitter and Discord about CNTX before he, and other Defendants, including Rybarczyk, Cooperman, Matlock, Hennessey, and Sabo start dumping their shares. (*Id.* at 9–11.)

The exhibit continues showing how Defendant Rybarczyk complains about someone shorting the stock, how he "[n]eed[s] Zack to mention too," and how he wants them to "collaborate and squeeze" the short. (*Id.* at 10–11.) All that and more happened prior to the conversation in GX 24E, which itself is in furtherance of the conspiracy. (*See generally id.*) The remainder of GX 24B shows the scheme continuing in the ensuing days and Defendant Rybarczyk's participation in it. Thus, there is no plausible claim that Defendant is not part of the conspiracy and scheme being executed in CNTX and that GX 24E is a conversation in furtherance of that conspiracy.

2. GX 59

GX 59 is a group text message among Defendants Constantinescu, Matlock, Deel, Cooperman, Hennessey, Knight and another individual on or about July 28, 2021. Defendants are discussing the ongoing conspiracy, including Defendant Rybarczyk's role in it. Defendant Constantinescu says "Ultra can't make money without pumping." (Ex. 9 (GX 59).) Far from idle chatter, that is Defendant Constantinescu confirming with other co-conspirators that, in Defendant Rybarczyk's stock plays, you can expect him to pump the stock in furtherance of the conspiracy, because it is the only way he can make money. At the end of the conversation, Matlock

says he has "him muted unless I'm in a play with him lol," describing his communication plans with Defendant Rybarczyk in furtherance of the conspiracy. (*Id.* at 2.) The fact that Defendant Rybarczyk and another individual discussed, "Nate," may be "going at it," *i.e.*, competing, does not negate the conspiracy. *See, e.g.*, *Fields*, 138 F. App'x at 626. Thus, this is a conversation among co-conspirators discussing the execution of the conspiracy they hope to further by the methods described, and the Court should admit it.

### 3. GX 68

GX 68 is a text message between Defendants Deel and Cooperman on March 22, 2022, as they are discussing executing a "play" in furtherance of the scheme. (Ex. 10 (GX 68).) Defendant Cooperman says, "we just build the chart our selfs [sic]." (*Id.*) Defendant Deel responds, "[t]hat's the old ultra method," to which Defendant Cooperman responds, "[f]or these types of plays it works." (*Id.*).

The United States anticipates proving that Defendants routinely bought and sold the security within a Trial Episode once the security was selected by one or more Defendants, even before posting about that security, because the price of the security would increase around the time the Defendants purchased the stock themselves and sent it to others to do the same. The United States submits that is exactly what Defendants Cooperman and Deel are describing in GX 68. Thus, far from being a narrative of past conduct, they are facilitating the conspiracy by describing a method they plan to put in practice in furtherance of it. The Court should admit the exhibit.

### 4. GX 82

The challenged exhibit is a private Discord message exchange between Defendants Constantinescu and Matlock on or about October 20, 2020, in which Defendant Constantinescu says:

> let ultra post the trash shit
> u just post quality stuff
> you know charts and you know how to trade
> yea youll get it
> ur good man
> I just don't want the inflated thin plays making you look bad
> I can understand when they talk shit on ultra but you are an actual trader
> ur getting better.

(Ex. 11 (GX 82).)[1]

These are statements in furtherance of the conspiracy because they show Defendant Constantinescu plotting with Defendant Matlock about which types of plays to post to make it work better. He doesn't want Defendant Matlock to "look bad" by posting bad plays, in order to keep followers around to take plays for the next round. Simply because Defendant Constantinescu believes Defendant Matlock is better at executing the scheme and conspiracy does not mean Defendant Rybarczyk is not himself part of the conspiracy. Indeed, Defendant Constantinescu is essentially assigning roles in the conspiracy, with "ultra post[ing] the trash shit," and Defendant Matlock posting things that make him look better. *Adkism*, 180 F.3d 264, 1999 WL 301315, at *10. Competition between co-conspirators does not negate the conspiracy. *See, e.g.*, *Fields*, 138 F. App'x at 626. Thus, this is directly in furtherance of the continued conspiracy and the Court should admit it as such.

   5. GX 106

GX 106 is private Discord message exchange between Defendants Matlock and Sabo on or about February 3, 2021. The conversation starts with Defendant Matlock sharing a message from "Ultra" that said, "im prob just gonna get rid of sapphire and watch you guys on Atlas." (Ex. 12 (GX 106) at 1.) "Sapphire" was Defendant Rybarczyk's own Discord server. Thus, he is saying

---

[1] The United States understands that Defendant Matlock's side of the conversation is absent because it was deleted prior to the United States obtaining this evidence.

14

he is going to spend more of his time in the Atlas Trading Discord—in furtherance of the conspiracy.

Indeed, Defendant Sabo explains his belief that Defendant Rybarczyk "can only trade his alerts," and that Defendant Sabo "only take[s] Ultra BSS u and eddie . . . I ignore the rest." (*Id.* at 3.) Presumably, Defendant Sabo is saying that he only takes alerts from Defendants Rybarczyk, Matlock, and Constantinescu—describing his plans and roles in the ongoing conspiracy. The United States expects Defendant Sabo to testify to the exhibit at trial. Thus, the Court should admit the exhibit.

6. GX 111

GX 111 is another private Discord conversation between Defendants Matlock and Sabo on or about May 10, 2021. They are describing the methods in which they execute the scheme. Defendant Sabo expresses concerns about the sock calls looking "way too coordinated and pumpy." (Ex. 13 (GX 111) at 1.) He explains that is one reason "why we didn't want Mitch/Ultra in atlas . . . ." Thus, Defendant Sabor is explaining how he believes they can improve the performance of the execution of the scheme and conspiracy, by doing things differently in the future than they, including Defendant Rybarczyk, has done them in the past. This is precisely in furtherance of the ongoing conspiracy and should be admitted as such.

7. GX 117, 118, 119

These three exhibits are also private Discord conversations between Defendants Matlock and Sabo. In GX 117, Defendants Matlock and Sabo are discussing a "new goons/goblins room" in the Atlas Trading Discord. (Ex. 14 (GX 117).) Defendant Rybarczyk argues that, because they vent frustrations about Defendant Rybarczyk in the conversation, he cannot be considered part of the conspiracy anymore. But in the exhibit itself, Defendant Sabo says plainly that the "only person

15

in on it is ult[r]a." (*Id.*) And the United States will introduce significant other evidence at trial about Defendant Rybarczyk's membership in the conspiracy before and after this conversation on July 30, 2021. Simple competition among co-conspirators does not negate the conspiracy. *See, e.g.*, *Fields*, 138 F. App'x at 626.

GX 118 is similarly a conversation in which Defendant Sabo is explaining his frustrations with the way Defendants are executing the scheme and conspiracy, in that he believe it was "getting TOO obvious in atlas with the coordination." (Ex. 15 (GX 118).) Defendant Sabo is complaining about the method by which Defendant Rybarczyk is executing the scheme and conspiracy, as he thinks it can be improved to make it more effective. Thus, it is plainly in furtherance of the conspiracy, given that Defendant Sabo is trying to improve its operation.

GX 119 is similarly a conversation in which Defendant Matlock and Sabo are concerned about the way Defendant Rybarczyk is executing the scheme and conspiracy. They are discussing ways in which his execution harms the conspiracy and ways in which they hope they can improve it in the future. (Ex. 16 (GX 119).) Thus, it is plainly in furtherance of the conspiracy and the Court should admit it. *See Adkism*, 180 F.3d 264, 1999 WL 301315, at *10.

8. <u>GX 127</u>

This exhibit is similarly a private Discord message between Defendants Matlock and Sabo. (Ex. 17 (GX 127).) In the exchange, Defendant Matlock says, "why burn bridges. Yea ultra sucks but who cares. When he's hot, take the money." (*Id.*) Defendant Sabo responds, "exactly." (*Id.*) The exchange is obviously in furtherance of the continued conspiracy in which they will continue to "take the money" by coordinating their respective trades with those of Defendant Rybarczyk. (*Id.*) Simply because Defendants do not seem to like Defendant Rybarczyk personally does not

16

negate his participation in the ongoing conspiracy, which is plain on the face of the conversation. The Court should admit the exhibit.

## Conclusion

The Court should admit the exhibits because they are non-hearsay co-conspirator statements in furtherance of the conspiracy that are highly probative of issues of consequence for trial.

Dated: February 27, 2024                    Respectfully submitted,

                                       GLENN S. LEON
                                       Chief, Fraud Section
                                       Criminal Division, Department of Justice

By:    */s/ John J. Liolos*
           Scott Armstrong, Assistant Chief
           John J. Liolos, Trial Attorney
           Fraud Section, Criminal Division
           United States Department of Justice
           1400 New York Ave. NW
           Washington, DC 20005
           Tel.: (202) 768-2246

           ALAMDAR S. HAMDANI
           United States Attorney
           Southern District of Texas

By:    */s/ Thomas Carter*
           Thomas H. Carter
           Assistant United States Attorney
           State Bar No.: TX24048387
           1000 Louisiana Street, 25th Floor
           Houston, Texas 77002
           Tel.: (713) 567-9470

## Certificate of Service

I hereby certify that on February 27, 2024, I will cause the foregoing motions to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section