UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:22-cr-612 |
| | § | |
| CONSTANTINESCU, *et al.* | § | The Honorable Andrew S. Hanen |
| | § | |
| Defendants. | § | |

### United States' Response in Opposition to Motion *in Limine* ECF No. 537

As the United States has briefed at length, the Court should admit the Trial Episodes beyond the substantive counts because they are inextricably intertwined with the charged conduct and, in the alternative, admissible for proper Rule 404(b) purposes, including demonstrating a common scheme or plan, motive, intent, preparation, knowledge, identity, absence of mistake, lack of accident, the history and development of the conspiracy, and consciousness of guilt. (*See* US MILs section I.3, ECF No. 538.) Defendants' Motion *in limine* aimed at excluding GX 21 through 55 spends many pages to challenge three things: *first*, that the non-substantive count Trial Episodes are inextricably intertwined with the charged conduct; *second*, that those Trial Episodes are admissible under Rule 404(b); and, *third*, Rule 403 does not apply. (*See* ECF No. 537.)

These arguments do not preclude the Trial Episodes. The Court should permit the United States to introduce this evidence inextricably intertwined with the charged conduct and, in the alternative, admissible under Rule 404(b), in order to meet its burden, the highest in the law.

**I.     The Trial Episodes are inextricably intertwined with the charged conduct.**

"Evidence of an uncharged offense arising out of the same transactions as the offenses charged in the indictment is not extrinsic evidence within the meaning of Rule 404(b)," but is intrinsic evidence. *United States v. Maceo*, 947 F.2d 1191, 1199 (5th Cir. 1991). Evidence may be intrinsic "when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005). "Intrinsic evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place, and to evaluate all the circumstances under which the defendant acted." *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (quotations and citations omitted). Evidence is intrinsic to a conspiracy if it is "relevant to establish how the conspiracy came about, how it was structured, and how each appellant became a member." *United States v. Lokey*, 945 F.2d 825, 834 (5th Cir. 1991).

Evidence is also intrinsic if it documents "execution of the scheme." *See United States v. Nichols*, 750 F.2d 1260, 1265 (5th Cir. 1985). Put another way, evidence of uncharged fraud offenses that are part of the scheme charged in the indictment is admissible to prove the "scheme" element of fraud—it is not "other" crimes evidence but evidence of the very charged scheme. *See, e.g., United States v. Loftis*, 843 F.3d 1173, 1176 (9th Cir. 2016) ("We hold the evidence of *uncharged transactions* is not evidence of 'other' crimes or acts under Rule 404(b), because it is evidence of part of the *crime charged* in the indictment—the overall scheme to defraud.").

Here, the Trial Episodes are intrinsic and inextricably intertwined with the charged fraud and conspiracy because they prove that very conspiracy and fraudulent scheme. *See id.* The Trial Episodes all occurred during the charged conspiracy period and arise out of the same transaction or series of transactions as those charged in the Superseding Indictment. *See, e.g., Freeman*, 434

F.3d at 374; (US MILs, section I.3). The Trial Episodes also demonstrate how the conspiracy came about and was structured. *Lokey*, 945 F.2d at 834. They provide critical context with which to understand and evaluate the charged counts, as well as establish the preliminaries, schemes, and methods employed by Defendants in the charged scheme and conspiracy. *See, e.g.*, *Freeman*, 434 F.3d at 374.

Defendants assert the fact that the United States excised *other* executions of the scheme from its trial case somehow shows the remaining Trial Episodes are not intrinsically intertwined. (Mot. at 3.) That is illogical. If anything, it suggests the non-excised Trial Episodes are *more* intrinsically intertwined than the excised executions because they were *not* excised. And simply because the evidence proving the scheme was so abundant that it was cumulative does nothing to undermine that the remaining Trial Episodes are inextricably intertwined proof of the charged scheme and conspiracy. *See, e.g.*, *id.* Accordingly, the Court should admit the Trial Episodes as intrinsically intertwined conduct highly probative of the charged scheme and conspiracy.

## II.     The Trial Episodes are admissible under Rule 404(b).

In the alternative, the Court should admit the Trial Episodes because they are highly probative of multiple Rule 404(b) purposes, including common scheme or plan, motive, opportunity, intent, preparation, knowledge, identity, absence of mistake, lack of accident, the history and development of the conspiracy, and consciousness of guilt, among other proper purposes. *See, e.g.*, Fed. R. Evid. 404(b); *United States v. Landry*, 631 F.3d 597, 602–03 (1st Cir. 2011) ("Rule 404(b) evidence [is admissible], not always under any specific category, to counter an innocent involvement defense[.]"); *United States v. Bell*, 624 F.3d 803, 808–11 (7th Cir. 2010) (explaining Rule 404(b)'s list is non-exclusive; proper purposes include rebutting a defense and showing consciousness of guilt); *United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (finding proof of the history and development of a conspiracy a proper Rule 404(b) purpose).

Most tellingly, these Episodes demonstrate Defendants executing their fraudulent scheme repeatedly, through the same pattern, demonstrating the common scheme and plan and their fraudulent intent. Each of these Trial Episodes shows the same general pattern described in the Superseding Indictment:

> [Defendants] engaged in a scheme to "pump and dump" securities based on false and misleading information and material omissions about those securities that the defendants published on social media platforms, including Twitter, Inc. and Discord, Inc. To carry out the scheme the defendants (1) purchased shares of a security in their trading accounts; (2) posted messages on social media platforms with false positive information about the security—including as to, among other things, the defendants' position in the security, how long the defendants intended to hold the security, the defendants' view that the security would increase in price, and the price the security could reach—to induct other investors to buy the security and artificially drive up its price, and (3) secretly sold their own shares of the security at a higher price to secure a profit for themselves, at or around the time they posted messages to induce other investors to purchase the same security and concealed their intent to sell.
>
> . . .
>
> To [execute their scheme], one or more of the defendants sought to "pump" the price of that security by posting false and misleading information about the security on Twitter and Atlas Trading Discord so that other investors were induced to purchase the security and artificially increase its price. The defendants "pumped" the price of securities by posting on Twitter and Atlas Trading Discord . . .
>
> . . .
>
> These messages were false and misleading, and omitted material information, because the defendants concealed their intent to use these messages to induce other investors to purchase the securities so that defendants could sell their shares at a higher price at and around the time of the messages. Indeed, because the defendants recognized that their followers on Twitter and members of Atlas Trading Discord frequently purchased securities based on the defendants' social media posts, the defendants sought to conceal from, and further mislead, their Twitter followers and members of Atlas Trading Discord about the defendants' true trading positions

> and intentions. In this way, the defendants used social media to induce other investors to purchase and hold the same securities that the defendants were selling or dumping so that the defendants could maximize their own profits.

(Superseding Indictment, ECF No. 134, ¶¶ 1, 13–14.) The Trial Episodes show this common scheme repeated, demonstrating numerous proper Rule 404(b) purposes including that plan, absence of mistake, lack of accident, knowledge, and identity from the signature repeated *modus operandi*.

To the extent the Trial Episodes show preliminaries, either in discussion or pre-purchasing of stock, they also tend to show preparation, knowledge, absence of mistake, and lack of accident. Different Defendants participating in different executions, as well as different methods of execution, show the history and development of the conspiracy. *See Guang*, 511 F.3d at 121. And the repeated executions, coupled with other evidence in this case, including admissions, tends to show consciousness of guilt. *See, e.g.*, *Bell*, 624 F.3d at 808–11. Further, the Trial Episodes will be useful to rebut numerous defenses Defendants have articulated, should they attempt them at trial. *See, e.g., id.* And all the Trial Episodes go to fraudulent intent, which Defendants dispute.

Defendants argue that the Court should exclude the Trial Episodes because they do not establish "bad acts." (Mot. at 4–7.) This argument is wrong legally and factually.

First, Rule 404(b) does not require the "other act" to be wrong or criminal—the Rule allows evidence of extrinsic *acts*. *See* Fed. R. 404(b) (providing for admission of "[e]vidence of any other crime, wrong, or act"); *United States v.* Scott, 677 F.3d 72, 78 (2d Cir. 2012) (". . . Rule 404(b) is not limited to evidence of crimes or wrongs. By its very terms, Rule 404(b) addresses 'other crimes, wrongs, *or acts*.' Nothing about these words implies that the 'other . . . acts' to which Rule 404(b) refers must be 'bad.'" (citations omitted) (collecting cases)); *United States v. Senak*, 527 F.2d 129, 143 (10th Cir. 1975) ("We do not agree that similar acts introduced to establish motive,

5

intent, the absence of mistake or accident, or a common scheme of plan must necessarily be acts constituting a crime.").[1] Defendants' arguments to the contrary only add to the defense's growing list of legal and factual misstatements designed to confuse and mislead. The Court can reject this argument because it has no foundation in the law. *See, e.g.*, *id.*

Second, on the merits, of course the Trial Episodes demonstrate bad acts that in fact occurred. They show the same fraudulent scheme laid out in the Superseding Indictment and the charged substantive counts repeated over and over again. The exhibits show that scheme playing out by the same manner and means—clearly identified false and misleading statements whose falsity is laid bare by the surrounding trading in contrast to the relevant Defendants' publicly stated intent. That is not a propensity to commit bad acts—it is serial executions of the scheme that show innumerable Rule 404(b) purposes, not the least of which is a common plan, lack of accident, absence of mistake, and consciousness of guilt.

Defendants choose the example KAVL to suggest the related exhibit "create[s] an illusion of conspiracy where none existed." (Mot. at 5.) But the exhibit itself shows that one does. For example, the exhibit shows Defendants Deel, Rybarczyk, and Cooperman all had the following text exchange on October 19, 2021:

> Deel: Boys I have an after lunch play if you all are down
>
> Rybarczyk: Yesssas
> Please
> Which one
> JZXN?
>
> Deel: Nah I am scaling into Kavl

---

[1] Other courts are in accord. *See, e.g.*, United *States v. Allen*, 630 F.3d 762, 765 (8th Cir. 2011) ("[T]here is no requirement that the prior acts be crimes in order to be admissible."); *United States v. Kendall*, 766 F.2d 1426, 1436 n.5 (10th Cir. 1985) ("To fall within the scope of 404(b), an act need not be criminal . . . ."); *United States v. Cooper*, 577 F.2d 1079, 1087 (6th Cir. 1978) ("[W]e cannot agree that [Rule 404(b)] is limited only to evidence of other crimes, for its own language also speaks of 'wrongs or acts.'").

6

> [Defendants Deel and Rybarczyk both buy shares of KAVL]
>
> Deel: I am gonna go to twitter with it
> I want nhod [new high of day]
>
> [Defendants Rybarczyk and Deel buy more shares of KAVL]
>
> Rybarczyk: I'll play again
>
> Deel: Let me know when u got a fill
>
> Rybarczyk: I'm in
>
> Deel: I'll take lead and then u boys can follow strategically

(Ex. 1 (GX 47B) at 5–7.) Approximately less than three minutes after this exchange, Defendant Deel made the same post on Twitter and Discord:

> $KAVL I added shares here for an end of day squeeze. Most volume all day and nice trend. Want nhod first and then looking for 3+ before close. Price action in market looking like yesterday for a run into the bell.

(*Id.* at 7.) Approximately nine seconds after his Discord post, Defendant Deel continued predominately selling his KAVL shares at prices in the $2.43 to $2.56 range until he closed his KAVL position within 15 minutes of his post. (*See id.*)

Less than a minute after Defendant Deel's post, Defendant Rybarczyk posted on Twitter in furtherance of the conspiracy and as the prior text message exchange shows they planned: "$KAVL Nearly 100M volume -- $2.57 break and we will definitely be seeing $3 next [hyperlink.]" (*Id.*) Within about 15 minutes of this post, Defendant Rybarczyk sold a majority chunk of his KAVL shares at $2.58, a penny over the "$2.57 break" he told his followers would "definitely" result in a $3 price. (*Id.* at 7–8.) Defendants Deel and Rybarczyk then privately texted to discuss their profits. (*See id.* at 8–9.)

The exhibit also shows numerous other "bad acts" relevant to the charges including: Defendant Cooperman posting falsely about KAVL while selling his shares (*id.* at 7), other Defendants liquidating their KAVL holdings for profits shortly after their and their co-conspirators' false posts (*id.* at 7–9), and repeated executions of the scheme by the same manner and means including prior coordination by private text message (*id.* at 8). In the face of this damning evidence, Defendants suggest without basis that "bad act" "facts are absent from the government's exhibits." (Mot. at 5.) The evidence, frankly, speaks for itself. (*See generally* GX 47A.)

Defendant Constantinescu also liquidated his KAVL holdings after Defendants' tweets on October 19, 2021, to the tune of approximately $697,222 in profit. (*Id.* at 1, 9–10.) Defendant Constantinescu suggests that because he did not post about KAVL, but only traded in it around his charged co-conspirators posts, this cannot be evidence of conspiracy. (Mot. at 5.) But other trial evidence shows Defendant Constantinescu at times simply traded because, in his own words to Defendant Matlock, "others will pump it . . . Let others lol." (Ex. 2 (GX 86).) And Defendant Matlock's post about KAVL without trading is probative of whether he, in this instance, is "pumping" KAVL for his co-conspirators. (*See* GX 47A at 5.) Thus, the exhibit is absolutely probative of the charged conspiracy, particularly in conjunction with the substantial additional evidence that will be adduced at trial. Defendants' arguments go to weight, not admissibility.

Defendants also take issue with certain of the Trial Episodes that only depict a single Defendant executing the fraudulent scheme. But the fact that they may not directly prove the conspiracy does not negate the fact that they prove the scheme. S*ee Nichols*, 750 F.2d at 1265. Nor does it negate numerous other permissible Rule 404(b) purposes, such as lack of accident or mistake, consciousness of guilt, rebutting defenses, and all the other points of that nature.

To address Defendants' other concerns, should the Court admit the other Trial Episodes only under Rule 404(b), the Court can, of course provide a proper limiting instruction that the jury is not to consider those exhibits for Defendants' propensity to do bad acts, but for the legitimate Rule 404(b) purposes they demonstrate. The pattern jury instruction on this exact issue ensures that the jury will evaluate the other Trial Episodes for the legitimate and proffered purpose. Fifth Cir. Pattern Jury Instrs., §1.32 "Similar Acts" (2019 ed.).

Further, Defendants' claimed lack of notice of the Rule 404(b) purposes for this evidence (Mot. at 4–5) is absurd given that this issue has been disclosed, briefed, and argued repeatedly for the better part of a year. (*See, e.g.*, US MILs section I.3.) The Court should admit the Trial Episodes as intrinsically intertwined and, in the alternative, under Rule 404(b).

### III. The Court should not preclude the Trial Episodes under Rule 403.

Recognizing that they cannot preclude the Trial Episodes' admission either as intrinsically intertwined or under Rule 404(b), Defendants attempt to preclude the exhibits under Rule 403. The Court should reject this effort.

The Fifth Circuit "has noted that a trial court should be 'cautious and sparing' in its exclusion of evidence under Rule 403 because 'relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits the exclusion of relevant evidence under Rule 403.'" *United States v. Burton*, 252 F.3d 436, 2001 WL 361114, at *1 (5th Cir. 2001) (unpublished) (quoting *United States v. Pace*, 10 F.3d 1106, 1115–16 (5th Cir. 1993)).

Prejudice from the Trial Episodes results from the fact that they are so highly inculpatory, as demonstrated by GX 47A. That is exactly the type of prejudice to which Rule 403 does not apply, because it is not "unfair." *See, e.g.*, *United States v. Pace*, 10 F.3d 1106, 1115–16 (5th Cir.

9

1993). Even if there is some (unidentified) marginal other prejudice, it does not "substantially outweigh" the significant probative value of the other Trial Episodes as demonstrating the charged scheme and conspiracy. Defendants haven't even bothered to specify that prejudice, let alone make an argument. (*See* Mot. at 6–7.)

Nor should the Court exclude this highly probative evidence on the other Rule 403 grounds Defendants advance: cumulative, waste of time, and delay. (Mot. at 7.) The United States will not present unduly cumulative evidence and may not need to introduce all Trial Episodes. But the United States must be afforded the opportunity to meet its high burden. *See, e.g.*, *United States v. Gallo*, 543 F.2d 361, 365 (D.C. Cir. 1976) (finding, even where evidence "was more than sufficient," it was not "improperly cumulative" because "[t]he Government has a heavy burden of proof beyond a reasonable doubt as to all elements of the offense, and it is not to be restricted to a modest quantum of evidence that will support the indictment."). Thus, Rule 403 is inapplicable and the Court should admit this evidence.

## Conclusion

The Court should admit the Trial Episodes as inextricably intertwined with the charged conduct and, in the alternative, under Rule 404(b).

Dated: February 27, 2024	Respectfully submitted,

        GLENN S. LEON
        Chief, Fraud Section
        Criminal Division, Department of Justice

By:   */s/ John J. Liolos*
        Scott Armstrong, Assistant Chief
        John J. Liolos, Trial Attorney
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Ave. NW
        Washington, DC 20005
        Tel.: (202) 768-2246


        ALAMDAR S. HAMDANI
        United States Attorney
        Southern District of Texas

By:   */s/ Thomas Carter*
        Thomas H. Carter
        Assistant United States Attorney
        State Bar No.: TX24048387
        1000 Louisiana Street, 25th Floor
        Houston, Texas 77002
        Tel.: (713) 567-9470

## Certificate of Service

I hereby certify that on February 27, 2024, I will cause the foregoing motions to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

/s/ John J. Liolos
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section