UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:22-cr-612 |
| | § | |
| CONSTANTINESCU, *et al.* | § | The Honorable Andrew S. Hanen |
| | § | |
| Defendants. | § | |

**United States' Response in Opposition to Motion *in Limine* ECF No. 539**

The United States has repeatedly made clear that it "does not allege and will not contend that Defendants were the ***sole*** cause of market movement in the at-issue stocks in the at-issue time periods." (ECF No. 424 at 8 (emphasis added).) The United States will not so contend at trial because establishing that Defendants' fraud was the sole cause of observable market activity in the at-issue stocks is not a question the jury has to determine under the charged crimes. (*See* US MILs section I.9; ECF No. 424 at 7–12.) The United States has made its position clear repeatedly. (*See id.*) That *other* unrelated market participants unrelated to Defendants may have purchased a stock because of some other news article or for another reason wholly unrelated to Defendants' conduct is not probative of whether *Defendants* in fact had fraudulent intent and executed a scheme to defraud. Nor is it probative of whether Defendants' conduct was material, *i.e.*, capable of influencing the trading decisions of Defendants' social-media followers. (*Id.*)

Defendants continue to misstate the law and the United States' position on "causation." To be clear, the United States has never "taken the position that causation is irrelevant to its charges and has [never] admitted that it cannot prove that any of the defendants' messages or trading activity caused any of the stocks' prices to change or was the cause of increased trading volume." (ECF No. 539 at 1.) The United States has repeatedly briefed its position and refers the Court to

the clear briefing on this topic. (*See* ECF No. 424 at 7–11; US MILs section II.9.) Defendants even (selectively) quote that briefing. (Mot. at 2.) Their misreading is, at best, careless.

From their false premises, Defendants assert numerous conclusions asking the Court to exclude: (1) profit calculations; (2) statements that Defendants engaged in a "pump-and-dump"; and (3) testimony about and summary charts of stock price and volume. The Court should reject these arguments and admit the offered evidence.

Defendants want this to be a trial about issues that are not elements of the charged crimes, the movements of lines on charts, press releases untethered to any witness in the case, and speculation about what other unknown and unnamed market participants may have relied on in purchasing shares of an at-issue security. But this trial is about people: Defendants and the victims who were fraudulently induced to purchase shares based on Defendants' calculated lies. Highly tangential squabbles about all the various causes untethered to *those people* that may or may not have contributed to observable changes in stock price or volume are the irrelevant and confusing mini-trials the United States has endeavored to, and the Court should, avoid. Such information does nothing to negate whether the Defendants had fraudulent intent or the victims who will testify at trial were in fact influenced to trade by Defendants' fraudulent scheme. And Defendants' own words show they believed their scheme worked. The Court should deny the Motion.

**I.     The Court should admit evidence of profit calculations in the Trial Episodes.**

As described in the United States' motions *in limine*, evidence of Defendants' profits in the Trial Episodes is probative of motive, among other issues of consequence. (ECF No. 538, US MILs section II.8.) The Court should admit evidence of Defendants' profit in the Trial Episodes. *See, e.g.*, *United States v. Moss*, 34 F.4th 1176, 1189 (11th Cir. 2022) ("[P]rofit is relevant to motive, which is always relevant in a criminal case."); *United States v. Jones*, 587 F.2d 802, 806 (5th Cir. 1979) (evidence of siphoning off profits relevant to show motive in conducting the fraud).

It is beyond dispute that Defendants, in fact, made those profits from the trading in the Trial Episodes. It is a matter of pure arithmetic. The question for the jury is whether that trading was fraudulent. The United States alleges that it was. Defendants contend it was not. The jury will decide. But the math is the math. And the math is probative of issues in dispute such that it must go to the jury. Indeed, the United States will introduce a litany of messages in which Defendants discussed among themselves a plan to reap substantial profits from their scheme and then did just that. The United States' anticipated profit evidence corroborates Defendants' own words and proves the obvious: they engaged in this scheme because they knew it was profitable and it was.

**II.   The Court should deny Defendants' efforts to preclude the phrase "pump-and-dump" from trial when the Superseding Indictment expressly alleges Defendants sought to pump-and-dump as part of the charged scheme and Defendants' own words use the terms repeatedly.**

The United States absolutely continues to allege Defendants sought to pump-and-dump stocks as part of their fraudulent scheme. (*See generally* Superseding Indictment, ECF No. 134.) Whether or not Defendants succeeded in doing so is not something the United States must prove to obtain a conviction, because the law punishes the scheme to defraud, not its success. *United States v. Greenlaw*, 48 F.4th 325, 346 (5th Cir. 2023). But Defendants, in their own words littered throughout the United States' trial exhibits too numerous to fully mention, use the terms in ways highly probative of their fraudulent scheme and their own fraudulent intent. (*See* US MILs section II.9.) The following exhibits provide a non-exhaustive sample of how pervasive the theme is among Defendants' own words:

- Def. Constantinescu: "Ultra [going to] **pump** xrtx" (Ex. 1 (GX 36C))[1];
- Def. Constantinescu: "Ultra can't make money without **pumping**" (Ex. 2 (GX 59));
- Def. Constantinescu: "I'm a **PUMPER** not a **DUMPER**" (Ex. 3 (GX 151));

---

[1] Emphasis added throughout this list of exhibit quotations.

- Def. Constantinescu: "I never **dump** on my followers . . . ." (Ex. 4 (GX 174));

- Def. Cooperman: "I loves EZFL . . . but now being **pumped** to[o] hard" (Ex. 5 (GX 17D));

- Def. Cooperman: "I BUY A STOCK .. then I LET YALL KNOW what I bought. That doesn't mean I'm **dumping** shares or contracts on ANYONE I'm not here to scalp 2cents on people . I want us all to win together!" (Ex. 6 (GX 239));

- Def. Deel: "[T]hat guy accusing me of some stuff again?? Funny how I take a 40k loss if I'm allegedly '**dumping** on my followers' I must be doing it wrong then. I'll lose money before I screw my followers over." (Ex. 7 (GX 204));

- Def. Constantinescu: "F it **pump** for us"; Def. Hennessey: "We need an ultra **dump**" (Ex. 8 (GX 24E));

- Def. Hrvatin: "I **pump** stocks for a living" (Ex. 9 (GX 278.D));

- Def. Matlock: "if [Ultra] didn't have **pumps** I don't think he'd make it" (Ex. 10 (GX 117));

- Def. Matlock: "If you talk about a ticker, it's a **pump**. You want it to go your way. Why wouldn't you, you bought it for a reason." (Ex. 11 (GX 146));

- Def. Matlock: "I'll never get sick of **pumping**…. Money into my followers bank accounts. LETS ALL GET RICH!" (Ex. 12 (GX 181)); and

- Def. Rybarczyk: "They say **pUmP** And **DUmP** . . . The ones saying this are insecure and…. a" (Ex. 13 (GX 188)).

The evidence speaks for itself. Defendants, in their own words, injected these terms into their scheme, and their own words are highly probative of their fraudulent intent. Thus, the Court should deny Defendants' efforts to preclude the term "pump-and-dump" from this trial. To do otherwise would sanitize the United States' proof without a basis under the law and deprive the jury of critical evidence: the Defendants' own words.

### III. The Court should admit evidence of stock price and volume in the Trial Episodes because it is probative of matters of consequence at trial.

Stock price and volume in the Trial Episodes is relevant to numerous matters of consequence in this trial and should be admitted. To assist the jury with these important issues,

4

Peter Melley, Esq., of FINRA's CPAG Unit created charts of the price and volume of the at-issue stocks for certain Trial Episodes. (*See* ECF No. 571.) These charts, and Mr. Melley's accompanying testimony, will greatly assist the jury in determining issues of consequence in this matter and provide context for the stock trading—and Defendants' false statements—at issue.

First, the charts are Rule 1006 summaries of the underlying stock price and volume data that Mr. Melley derived from Bloomberg. Mr. Melley can authenticate the charts as necessary, but authentication, frankly, should not be necessary. Defendants' repeated contention that the charts are "not real evidence," lacks basis in fact and law. (Mot. at 7.) Defendants can use the same data, which they have had for the better part of a year, to replicate the charts or confirm their accuracy. Of course, a stock chart is far more helpful to allow the jury to conveniently examine the information than is a voluminous and cumbersome spreadsheet of price and volume data. *See* Fed. R. Evid. 1006. Thus, the Court should admit the charts as proper Rule 1006 summaries.

The charts are also probative of multiple issues of consequence in this case. A highly relevant issue the charts will assist the jury with is the unreasonableness of Defendants' price predictions. These charts show that, at times before, after, and during Defendants' execution of the scheme, the stocks they were touting with outlandish predictions most often were nowhere near those "predicted" prices at any time relevant to the execution of the fraudulent scheme.

For example, Defendants call out GX 15A, the price and volume chart for DATS (Count 15). (*See* Mot. at 9.) That chart depicts price and volume data for DATS from August 13, 2021, through December 3, 2021. (Ex. 14 (GX 15A).) Count 15 charges the execution of the fraudulent scheme in DATS from in or around August through October 2021. During that execution of the scheme, Defendant Constantinescu repeatedly touted outlandish "price targets" for DATS of "$30++". (Ex. 15 (GX 15B) at 22, 43.) The chart shows, however, that before, during, and after

the at-issue time, DATS came *nowhere close* to those "predictions," barely touching $15 before sinking down below $4. (GX 15A.) This evidence is highly probative of the reasonableness of Defendants' price predictions, which goes squarely to their fraudulent intent. Although it seems this "reasoned basis to depict the time period reflected in the chart" escapes Defendants, (Mot. 9), that basis is sound, and the Court should admit the exhibits.[2]

As to Mr. Melley's accompanying testimony, Defendants confuse matters of descriptive fact with expert (or lay) opinions on causation. Testifying to basic, indisputable facts, such as a stock's price or trading volume on a given day, is exactly that: fact, not opinion, testimony. It is testimony based on first-hand observation of facts and Defendants cite no basis to exclude it. *See, e.g.*, Fed. R. Evid. 602 (fact testimony within the witness's personal knowledge is admissible). In the alternative, it is admissible as lay testimony under 701. *United States v. Cuti*, 720 F.3d 453, 459–60 (2d Cir. 2013) (holding testimony properly admitted as fact testimony under Rule 602 and, in the alternative, as lay opinion testimony under Rule 701 where, even though it appeared "technical and unfamiliar to everyday life," it "was not rooted exclusively in the witness's expertise").

Defendants cite to *United States v. Valencia* to suggest that correlation evidence should be excluded. (Mot. at 6.) But Defendants *omit* the next sentence, which states: "However where evidence of correlation itself is potentially relevant and unlikely to mislead the jury, an expert who reliably discerns this relationship can present such conclusions to the jury." *United States v. Valencia*, 600 F.3d 389, 425 (5th Cir. 2010) (citations omitted). There, the Fifth Circuit found the district court did *not* abuse its discretion in admitting the challenged correlation testimony. *Id.*

---

[2] Defendants also contest the admissibility of another category of summary charts that show only Defendants' own trading volume and false statements in relevant Trial Episodes. (*See* Mot. at 8.) Obviously, Defendants' own conduct that proves the charged scheme—*i.e.*, Defendants were not, in fact, trading as they falsely stated in public—is highly relevant and should be admitted.

6

Here, the testimony at issue—descriptive facts of what stock prices and volumes were on certain days—is not even an opinion. It is factual testimony that, frankly, should not be disputed. Defendant articulates no reasonable basis to keep this probative testimony from the jury.

Furthermore, the United States has stated *ad naseum* it will not contend Defendants' actions were the *sole* cause of observable price and volume movement. It has never disclaimed that Defendants were a cause. The price and volume charts provide evidence probative of that question. The charts, in combination of all the other evidence—including testimony from victims that Defendants were a cause in fact of trading in the stock on those days—provide that inference. Defendants' arguments to the contrary go to the weight a jury can afford this evidence, not to its admissibility.

## **Conclusion**

The Court should deny Defendants' Motion *in limine* (ECF No. 539) and its requested relief because it is based on faulty legal and factual premises that cannot support its stated conclusions, which are themselves incorrect.

Dated: February 27, 2024

Respectfully submitted,

GLENN S. LEON
Chief, Fraud Section
Criminal Division, Department of Justice

By: */s/ John J. Liolos*
Scott Armstrong, Assistant Chief
John J. Liolos, Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Ave. NW
Washington, DC 20005
Tel.: (202) 768-2246


ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

By: */s/ Thomas Carter*
Thomas H. Carter
Assistant United States Attorney
State Bar No.: TX24048387
1000 Louisiana Street, 25th Floor
Houston, Texas 77002
Tel.: (713) 567-9470

## Certificate of Service

I hereby certify that on February 27, 2024, I will cause the foregoing motions to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section