UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:22-cr-612 |
| | § | |
| CONSTANTINESCU, *et al.* | § | The Honorable Andrew S. Hanen |
| | § | |
| Defendants. | § | |

**United States' Response in Opposition to Defendant's Motion *in Limine* ECF No. 542**

The United States intends to introduce social-media posts by Defendants that are highly probative of issues of consequence, including images and conversations showing the scheme and conspiracy in action, and ostensible admissions to the charged crimes. Unsurprisingly, Defendant Constantinescu hopes to exclude this significant evidence. (ECF No. 542.) Defendant seeks to do so on two bases arguing either that: the exhibits have no probative value, or the Court should exclude the exhibits under Rule 403. (*See id.*)

Defendant's arguments lack merit and the Court should reject them. The evidence the United States will introduce is highly probative of issues of consequence and that probative value is not substantially outweighed by any Rule 403 considerations.

**I.      Legal Standard**

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible. Fed. R. Evid. 402.

A "fact of consequence" under Rule 401 is not limited to the ultimate issue. Rather, a fact of consequence can be any step along a path of inference that leads to an "ultimate fact." *Old Chief*

*v. United States*, 519 U.S. 172, 179 (1997). "To be relevant, evidence need not conclusively decide the issue in the case, nor make the proposition appear more probable, but it must in some degree advance the inquiry." *United States v. Causey*, 748 F.3d 310, 316 (7th Cir. 2014).

"Facts of consequence" also include reasonably anticipated defenses. "Federal courts repeatedly have held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense." *United States v. Curtin*, 489 F.3d 935, 940 (9th Cir. 2007).

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice," among other issues. Fed. R. Evid. 403. Excluding evidence under Rule 403 is "an extraordinary remedy [that] should be used sparingly." *United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014).

"Relevant evidence is inherently prejudicial; but it is only Unfair prejudice, Substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). "[U]nfair prejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed [unfairly] prejudicial." *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009). Indeed:

> Rule 403 does not provide a shield for defendants who engaged in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witness' testimony, or to tell its story in monotone.

*United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998). Courts routinely admit very prejudicial evidence when that evidence has significant probative value. *See, e.g.*, *United States v. Moore*, 641 F.3d 812, 827 (7th Cir. 2011) (admitting dogfighting evidence to show control of premises); *United States v. Greene*, 617 F.3d 233, 251–52 (3d Cir. 2010) (attempted murder properly admitted in drug trial to prove motive and bias).

## II. Argument

Defendant seeks to preclude four categories of evidence: (1) a single exhibit; (2) various pictures and comments Defendants themselves posted on social media; (3) evidence of Defendant's wealth he posted online in furtherance of the charged crimes; and (4) exhibits mentioning, but not depicting, trading in other stocks. The Court should deny the Motion and admit these highly probative exhibits.

### 1. The Court should admit GX 176, the "scooter video."

Exhibit 176 is a video Defendant Constantinescu himself created and posted on his social media in furtherance of the charged scheme and conspiracy. In the video, he tells his followers how successful he is at stock trading, how they can be successful, too, and he directs them to his Twitter account so that he can grow his followers in furtherance of the scheme. The video depicts Defendant Constantinescu riding on a scooter where he says:

> Hey, guys. So, **I'm just** cruising the streets over here of downtown Houston. Um, **making money. I'm up, like, $108,000.00, so if you're not cruising on a fat bike, not making $100,000.00. I don't know what the f[*]ck you're doing with your life. Evaluate it. Change some things around.** Maybe get rid of your wife, your kids or whatever is holding you back. But, I'm just over here getting a lot of street credit. A lot of people are looking at me and they're, like, damn that's, that dude is so cool and -- do I blame them? No, because I am pretty f[*]cking cool. So, yeah, guys, just -- **you can do it, too.** Just get a bike. **Just start making $100,000.00 a day.** All right, guys. Have a great day. I'll uh, **I'll see you guys on Twitter, <u>pumping</u>.** All right, love you. Bye.

(Ex. 1 (GX 176.D) (emphasis added).)

This evidence, on its face, is highly probative of issues of consequence for the jury. As this exhibit (and significant additional trial evidence) shows, Defendants repeatedly held themselves out on social media as wealthy, successful stock traders. They did so hoping to further the scheme and conspiracy by growing their social media accounts with followers who sought to achieve the

3

same lifestyle following Defendants' false and fraudulent stock tips. The fact that Defendant Constantinescu does not reference a specific stock or specifically request that viewers follow him on social media does not undermine the exhibit's probative value, as Defendant suggests. (Mot. at 2.) He is obviously talking about how he makes money "pumping" stocks on "Twitter." (*See* Ex. 1.) Defendant even admits this probative value of the exhibit, acknowledging that the exhibit projects the concept that "making $100,000 a day likely leads to a better life." (Mot. at 2.) That is precisely why Defendant posted the video in furtherance of the charged scheme and conspiracy, to lure more followers to his social media and further the charged crimes.

Thus, the thrust of any prejudice complained of is not of the "unfair" variety, but results from the inculpatory nature of the exhibit. Any lingering other prejudice does not *substantially* outweigh the significant probative value of the exhibit. *See, e.g.*, *Moore*, 641 F.3d at 827 (admitting dogfighting evidence to show control of premises). The Court should admit the exhibit.

### 2. The Court should admit pictures Defendants themselves posted that are probative of issues of consequence.

The United States seeks to introduce numerous images and statements Defendants themselves posted on the internet that are probative of issues of consequence in this matter. (*See* ECF No. 573.) For example, some of the posts portray the theme described above, where Defendants held themselves out on social media as successful, wealthy stock traders, which their followers could be, too, if they followed Defendants' stock picks. (Ex. 2 (GX 1) at 2 (Def. Constantinescu pictured with Def. Knight buying a luxury car, captioned: "Treat yo self").) Many of these posts also show Defendants together demonstrating and furthering the scheme and conspiracy. (*See id.*) Other posts are ostensible admissions to the charged crimes. (*See id.* at 2, 12 (Def. Constantinescu: "The sec finally got me"); (Def. Constantinescu: "Sec's most wanted"); (Def. Constantinescu: "2 of America's most wanted @Hugh_Henne"); Ex. 3 (GX 75)

4

(Def. Hrvatin: "Why rob the same bank twice").)

These exhibits are highly relevant to issues of consequence. Obviously, to the extent they evince the same effort to drive followers to Defendants' social media accounts in furtherance of the scheme and conspiracy, they are relevant for the reasons described above and elsewhere. To the extent the images depict Defendants together, furthering the conspiracy, the relevance is obvious. And to the extent the posts are ostensible admissions to the charged conduct, their probative value is very high as to fraudulent intent and consciousness of guilt, among other issues.

As to the admission posts, Defendant argues that they are jokes. He is free to make that argument, but that is no reason to exclude the exhibits given their high probative value. It is an issue for the jury whether, for example, Defendant Hrvatin's statement "why rob the same bank twice" is simply use of a "known colloquialism" (Mot. at 7) or shows consciousness of guilt because that is how Defendant Hrvatin thinks about stock trading with the Defendants.

Similarly, Defendant's remaining arguments about any confusion that may result from the exhibits may be cleared up through cross-examination and/or argument. The Court should admit the exhibits and permit the jury to exercise its role as finder of fact.

3. **The Court should admit exhibits of Defendants' internet postings holding themselves out as successful stock traders to grow their followings in furtherance of the scheme.**

As described, Defendants held themselves out to their social media followers as wealthy, successful stock traders whose success followers could replicate if only they traded Defendants' securities with them. Put another way, Defendants sought to cultivate an image that if their followers only followed Defendants' stock pics, they, too, could enjoy the resulting wealth and success. The theme is encapsulated in GX 176. It is also present and corroborated in numerous additional exhibits the United States will introduce. It is highly probative of a method by which

5

Defendants promoted and executed the scheme and should be admitted on that basis. Any prejudice resulting from the exhibits is (arguably) not unfair and (inarguably) not *substantially* more prejudicial than the high probative value of the exhibits. (*See generally* ECF No. 573.)

> **4. The Court should admit exhibits probative of issues of consequence that contain passing references to other stocks that are not the subject of the exhibits.**

Several of the United States' exhibits contain passing references to other stocks beyond the Trial Episodes. That is no reason to preclude the exhibits. The United States offers the exhibits not for the references to the other stocks or any trading in those stocks, but for other purposes unrelated to those mentions or that stock trading.

The "why rob the same bank twice" exhibit provides the perfect example. At the start of the exhibit, Defendant Constantinescu says, "I sold expr around 4 but I regret it . . . it has more juice . . . But I don't buy back." (*See* Ex. 3 (GX 75).) After some back and forth, Defendant Hrvatin responds, "why rob the same bank twice[?]" (*Id.*) The fact that Defendant Constantinescu makes specific reference to EXPR or to his underlying trading in the stock has no relevance to the purpose for the exhibit's admission. Rather, the exhibit is probative of how Defendant Hrvatin thinks about stock trading with Defendants, *i.e.*, as "robbing a bank." The exhibit's mention of EXPR or Defendant Constantinescu's underlying trading have nothing to do with the purpose for which the exhibit is offered. Indeed, the United States would even be amenable to redacting the reference to EXPR. The ticker itself is meaningless to the proffered use of the exhibit; it is Defendant Hrvatin's immediate response that is telling of his intent. The Court should admit it and similar exhibits.

Defendant also seeks to exclude three exhibits that show Defendant coordinating and organizing the scheme. These exhibits make tangential reference to other stocks, but that is neither the basis for their admission nor a reason to exclude them. (*E.g.*, Ex. 4 (GX 89 (Def.

6

Constantinescu: "dont over pump sgbx . . . i wanna load under 3"). Rather, the exhibits are highly probative of the inner workings of the charged crimes and relationship among co-conspirators. (*See, e.g.*, Ex. 5 (GX 91) (Def. Constantinescu: "stop posting on acam . . . no one should be fducking posting," Def. Rybarczyk: "im sorry . i wont post an[y]more," Def. Constantinescu: "ok cool thanks").)

For example, GX 90 shows Defendants Constantinescu and Rybarczyk planning and coordinating the scheme in a manner independent of the reference to the specific stock ticker:

| | |
|---|---|
| Constantinescu: | Leaving me out???<br>okj dude |
| Rybarczyk: | No bro<br>RT sent me CTIB<br>I bought at 2<br>And alpha started posting<br>I think reformed is sending it around |
| Constantinescu: | i know i heard when u bought the scanner<br>Ok cool<br>Its cools |
| Rybarczyk: | I'm sorry bro |
| Constantinescu: | i thought it was the re[g] play<br>. . .<br>no its fine don't worry |
| Rybarczyk: | I just don't want to upset anyone man |
| Constantinescu: | we need heavier plays than this anyway |
| Rybarczyk: | I won't be posting it |
| Constantinescu: | dont worry ill never really be upset with u<br>You['re] my boy |
| Rybarczyk: | I hope so man<br>The feeling is mutual<br>I don't wanna hurt anyone's feelings on purpose man |

7

| | |
|---|---|
| Constantinescu: | who cares about feelings we are about banking<br>. . .<br>we'll find a good one tomorrow |
| Rybarczyk: | Okay brother. I'll start messaging you personally . I had figured he sent to you as well. My fault bro. |
| Constantinescu: | thanks man and ill make sure to do the samed |
| Rybarczyk: | Thanks dude |

(Ex. 6 (GX 90).) Defendant seeks to exclude that exhibit due to the sole reference to "CTIB." (Mot. at 9.) Obviously, CTIB and any underlying trading is not why the exhibit is offered and does not provide a basis for exclusion. The exhibit is highly probative of Defendants' fraudulent scheme, intent, and coordination, independent of any reference to any specific stock or trading. The Court should admit this and similar exhibits.

Defendant argues the Court should exclude these exhibits because the stock tickers mentioned in passing are not among those identified in the Trial Episodes, which consists of all the stock *trading* the United States will put at issue at trial. This argument is a classic sleight of hand the Court should reject.

With the Trial Episodes, the United States narrowed its case to the presentation of Defendants' *trading* in those stocks and time periods, as demonstrated in the summary charts of Ms. Garibotti. (*See* ECF No. 424 at 10 ("The *trading* at issue is only that alleged to be fraudulent, *i.e.*, the *trading* in the stocks in the time periods of the 54 at-issue trial episodes." (emphasis added)); ECF No. 502 at 2 ("information about *trading* in stock tickers and/or time periods that is irrelevant to the Trial Episodes—the only stock *trading* at issue for trial." (emphasis added).) The United States never represented that it would exclude other exhibits that do not present stock *trading* but, nonetheless, contain content probative of other issues in the case, such as fraudulent

intent and consciousness of guilt. Any underlying stocks or trading referenced in passing are not at issue, and the United States will not put them at issue.

As noted, to the extent the Court would like, the United States can redact references to stock tickers outside those mentioned in the Trial Episodes and stipulate to a generic "stock ticker" reference in place of the specific ticker references. The specific references have no relevance to the probative points the exhibits are offered for and do not provide a basis to preclude the exhibits, given their independent probative value and the ability to cure any potential confusion. The exhibits should go to the jury.

## Conclusion

The Court should deny the Motion and admit the United States' exhibits because they are highly probative of matters of consequence and should be submitted to the jury.

Dated: February 27, 2024                                Respectfully submitted,

                                                        GLENN S. LEON
                                                        Chief, Fraud Section
                                                        Criminal Division, Department of Justice

                                            By:         /s/ John J. Liolos
                                                        Scott Armstrong, Assistant Chief
                                                        John J. Liolos, Trial Attorney
                                                        Fraud Section, Criminal Division
                                                        United States Department of Justice
                                                        1400 New York Ave. NW
                                                        Washington, DC 20005
                                                        Tel.: (202) 768-2246

                ALAMDAR S. HAMDANI
                United States Attorney
                Southern District of Texas

By:    */s/ Thomas Carter*
       Thomas H. Carter
       Assistant United States Attorney
       State Bar No.: TX24048387
       1000 Louisiana Street, 25th Floor
       Houston, Texas 77002
       Tel.: (713) 567-9470

## Certificate of Service

I hereby certify that on February 27, 2024, I will cause the foregoing motions to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section