UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:22-cr-612 |
| | § | |
| CONSTANTINESCU, *et al.* | § | The Honorable Andrew S. Hanen |
| | § | |
| Defendants. | § | |

**UNITED STATES' MOTION TO STAY ORDER
DISMISSING CHARGES AGAINST DEFENDANTS**

The United States, by and through the undersigned counsel, respectfully requests that the

Court stay execution of its order dismissing the Superseding Indictment, ECF No. 134, so that

the United States may consider its options in this case, including an appeal to the United States

Court of Appeals for the Fifth Circuit.  ECF No. 628 ("Order").  Alternatively, the United States

respectfully requests that this Court stay execution of the dismissal order for 30 days in order to

allow the United States adequate time to request a stay from the Fifth Circuit.

I.    **LEGAL STANDARD**

In evaluating an application for a stay of proceedings, the Court should weight:  (1) whether

the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the

applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

substantially injure other parties interested in the proceeding; and (4) where the public interest lies.

*See Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019) (citing *Nken v. Holder*, 556 U.S. 418

(2009)).  The first two factors are generally the most important, and the decision to grant a stay lies

within the sound discretion of the Court.  *Id.*

1

Courts have granted a stay to allow the United States to evaluate its options, including appellate review, following the dismissal of an indictment. *See, e.g.*, *United States v. Schlor*, No. CR-01-360-RHW, 2008 WL 4949037, at *6 (C.D. Cal. Nov. 14, 2008) (staying briefly the Order of Dismissal "in order to give the Government an opportunity to consider its options[,]" including whether to seek appellate review as to whether the Court erred in dismissing the indictment); *see also United States v. Titterington*, No. CR. 2-20165, 2003 WL 23924932, at *2 (W.D. Tenn. May 22, 2003); *United States v. Olvis*, 913 F. Supp. 451, 457 (E.D. Va. 1995). A stay pending appeal "simply suspends judicial alteration of the status quo." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (citing *Nken*, 556 U.S. 418).

II.   **ARGUMENT**

The United States respectfully requests that the Court stay the entry of the Order. With deference to the Court, the United States submits that the Order was plainly contrary to the law, such that the United States would be likely to succeed on an appeal the United States Court of Appeals for the Fifth Circuit (should the United States pursue that path).[1] Staying these proceedings will also maintain the status quo by, among other things, not allowing the return of the Defendants' respective passports for international travel, where the United States would have to initiate extradition procedures should Defendants be back before the Court and refuse to return. A stay therefore ensures that further delay is not unnecessarily injected into this case and so that it may proceed as expeditiously as possible on the merits.

---

[1] As with all appeals by the United States in criminal matters, the United States Solicitor General has the authority to "[d]etermin[e] whether, and to what extent, appeal[ ] will be taken by the Government." 28 C.F.R. § 0.20(b). Consistent with that authority, the Fraud Section and the United States Attorney's Office for the Southern District of Texas will begin working as expeditiously as possible to obtain authorization for appellate review of the Order.

The Court made several critical legal errors in dismissing the Superseding Indictment, such that the Fifth Circuit would likely reinstate the Superseding Indictment upon any appeal.

*First*, the Court erred in concluding that the Superseding Indictment does not allege Defendants intended to deprive their followers of money or property. It does. *See, e.g.*, Superseding Indictment, ECF No. 134, ¶1 ("to induce other investors to buy the security"); ¶ 12 ("at the expense of their Twitter followers"); ¶ 13 ("so that other investors were induced to purchase the security"); ¶ 14 ("to induce other investors to purchase and hold the same securities that the defendants were selling or dumping so that the defendants could maximize their own profits"); ¶ 16 ("Certain of the defendants also criticized on Twitter and Atlas Trading Discord other people who lost money from purchasing securities that the defendants pumped and dumped and who questioned whether the defendants were in fact trading in the way that they represented on social media."); ¶ 24 ("RYBARCZYK advised DEEL to include the number of shares DEEL was purportedly purchasing '[j]ust to make it more appealing [to DEEL's Twitter followers] and if they see you're adding 100,000-200,000 shares they'll likely be enticed to add with size.'"); ¶ 49 ("We're robbing f*cking idiots of their money."); ¶ 94 ("During this period, certain of the defendants made false tweets and posts in Atlas Trading Discord relating to CEI to induce individual investors to purchase the security . . . ."); ¶ 105 ("Certain of the defendants made false and misleading tweets and posts in Atlas Trading Discord about DATS to induce other investors to purchase the security . . . .").

*Second*, the Court erred in not taking the allegations in the Superseding Indictment as true when it impermissibly weighed those allegations and looked beyond the four corners of the Superseding Indictment to do so. This was a clear error. *Compare United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) ("In reviewing a challenge to an indictment alleging that it fails to

state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." (quotations omitted)) *with* Order at 10 ("Many of the alleged victims may have actually made money. This was confirmed at the oral arguments."); Order at 12 ("Just because a conspirator believed he was 'robbing…idiots,' does not make it so . . . .").

*Third*, the Court erred in requiring the United States to allege (or prove at trial) that any of the Defendants' obtained money from the Defendants' followers, who they intended to deceive through false statements and deprive of money.  Order at 10–12. Such is not the law. *See United States v. Baker*, 923 F.3d 390, 403 (5th Cir. 2019) ("Section 1343 does not require an intent to obtain property directly from a victim." (collecting cases)); *see also United States v. Swenson*, 25 F.4th 309, 319 n.5 (5th Cir. 2022) ("If a person suffers a loss due to deception, it is fraud, even if the fraudster does not actually see a profit."); *United States v. Gatto*, 986 F.3d 104, (2d Cir. 2021) ("[A] defendant does not need to literally obtain money or property to violate the [wire or mail fraud] statute[s]. . . . [A] victim's loss need not flow directly *to* the defendant for the defendant to be guilty of wire fraud." (quotations and citations omitted)); *United States v. Jonas*, 824 F. App'x 224, 231 (5th Cir. 2020) ("The deception does not need to be targeted at the victim, so a scheme to defraud may involve deceiving one person to deprive someone else of money or property.").

*Fourth*, the Court erred in evaluating the success of the scheme and whether the Defendants' followers "made money," and further erred by looking beyond the four corners of the Superseding Indictment in doing so. Order at 10–12.  Whether the Defendants' followers' made money is legally irrelevant because it goes to the success (or failure) of the scheme.  The Fifth Circuit's opinion in *United States v. Greenlaw*, 84 F.4th 325 (5th Cir. 2023), upon which the Court relied, makes clear this black-letter principle:

> [T]he fraud convictions are not undermined by the fact that the Government did not present evidence showing that investors incurred monetary loss. This is because success of the scheme is immaterial. . . . Nor does it matter that they did not intend to cause investors financial loss. Appellants exposed investors to risks and losses that, if publicly disclosed, would have decreased its value and investment power. That is enough to support a fraud conviction.

*Greenlaw*, 84 F.4th at 346 (citations omitted); *see also Shaw v. United States*, 580 U.S. 63, 66 (2016) ("[T]he [fraud] statute, while insisting upon 'a scheme to defraud,' demands neither a showing of ultimate financial loss nor a showing of intent to cause financial loss."); *United States v. McCauley*, 253 F.3d 815, 820 (5th Cir. 2001) ("It is not necessary . . . for the government to prove that banks actually suffered . . . financial loss in order to obtain bank fraud convictions. . . . The government need only prove a risk of loss to support [defendants'] convictions for bank fraud and conspiracy to commit bank fraud. We also note that the government need not prove a substantial likelihood of risk of loss to support the convictions." (collecting cases) (citation omitted)).

Given the significant errors in the Court's analysis, the United States has a high likelihood of success on the merits should it appeal the Order.

Weighed against the substantial likelihood of success on the merits on a potential appeal lie the competing factors. *Bryant*, 919 F.3d at 303.  If any Defendant leaves the Court's jurisdiction and the United States re-initiates the prosecution of this case, the public's interest in timely resolving this case on the merits may be significantly frustrated if a Defendant flees the jurisdiction in the interim.  Several Defendants have already requested the return of their passports.  *See, e.g.*, ECF No. 629 (Cooperman); ECF No. 631 (Constantinescu); ECF No. 635 (Rybarczyk).  Defendant Cooperman also is an Israeli citizen and traveled to Israel before indictment in this case.  Prior to indictment, Defendant Constantinescu also traveled abroad.

While the United States cannot offer at this stage evidence of imminent harm because the Defendants' passports are still in the possession of the Probation Office, the harm from risk of flight is considerable.  Should any Defendant choose to flee, the United States would have to initiate extradition proceedings.  Such proceedings would unnecessarily prolong the resolution of charges against the Defendants and operate to the detriment of the public's interest.

The United States will also consent to the Defendants' removal of GPS monitoring during the pendency of this stay, and any potential appeal.  To the extent Defendants seek other relief beyond the return of their passports and initial bonds, the United States would also be agreeable to the modification of pre-trail conditions.  The relaxation of the existing pre-trial conditions, beyond those enumerated, would therefore alleviate the prejudice to Defendants during the pendency of the stay and protect against the most pressing concern:  risk of flight.

//

//

//

For the foregoing reasons, the Court should therefore stay execution of its dismissal order

pending the resolution of any appeal by the United States to the Fifth Circuit or, alternatively, stay

execution of the order for 30 days to allow adequate time for the United States to seek a longer stay

from the Court of Appeals.  A proposed Order is attached.


Date:  March 22, 2024

Respectfully submitted,


GLENN S. LEON                          ALAMDAR S. HAMDANI
CHIEF                                  U. S. ATTORNEY
Fraud Section                          Southern District of Texas
Criminal Division
United States Department of Justice

/s/ Scott Armstrong                     /s/ Thomas Carter

Scott Armstrong, Assistant Chief       Thomas H. Carter
John J. Liolos, Trial Attorney         Assistant United States Attorney
Fraud Section, Criminal Division       State Bar No.: TX24048387
United States Department of Justice    1000 Louisiana Street, 25th Floor
1400 New York Ave. NW                  Houston, Texas 77002
Washington, DC 20005                   Tel.: (713) 567-9470
Tel.: (202) 353-0801

## Certificate of Service

I hereby certify that on March 22, 2024, I will cause the foregoing motions to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

/s/ Scott Armstrong

Scott Armstrong
U.S. Department of Justice
Criminal Division, Fraud Section