United States Courts
Southern District of Texas
FILED
October 28, 2025
Nathan Ochsner, Clerk of Court

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 2, 2025
Lyle W. Cayce
Clerk

No. 24-20143

---

UNITED STATES OF AMERICA,

*Plaintiff—Appellant,*

versus

EDWARD CONSTANTINESCU; PERRY "PJ" MATLOCK; JOHN RYBARCZYK; GARY DEEL; STEFAN HRVATIN; TOM COOPERMAN; MITCHELL HENNESSEY; DANIEL KNIGHT,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 4:22-CR-612-1,
4:22-CR-612-2, 4:22-CR-612-3,
4:22-CR-612-4, 4:22-CR-612-5,
4:22-CR-612-6, 4:22-CR-612-7,
4:22-CR-612-8

---

Before HIGGINSON, WILLETT, and ENGELHARDT, *Circuit Judges.*
KURT D. ENGELHARDT, *Circuit Judge*:

Defendants were indicted for securities fraud for their involvement in a "pump and dump" scheme. The superseding indictment alleges that defendants induced their social-media followers to purchase securities through posts misrepresenting their trading positions and the potential price of

securities, artificially inflating the securities' prices and allowing defendants to profit. The district court dismissed the indictment, concluding that it failed to state an offense by merely alleging that defendants sought to deprive their followers of potentially valuable economic information instead of a traditional property interest. Because we conclude that the indictment sufficiently alleges a scheme and intent to defraud, we REVERSE the district court's dismissal of the indictment.

I

The government alleges that Edward Constantinescu, Perry "PJ" Matlock, John Rybarczyk, Gary Deel, Stefan Hrvatin, Tom Cooperman, Mitchell Hennessey, and Daniel Knight engaged in a scheme to "pump and dump" securities. Defendants each had large social media followings across various platforms. They held themselves out to be skilled stock traders and frequently posted their trading activities on social media. To carry out their "pump and dump" scheme, the government alleges that defendants would purchase a security, "'pump' the price of that security by posting false and misleading information about the security on [social media] so that other investors were induced to purchase the security and artificially increase its price," and "dump" by secretly selling the security for a profit. Indictment ¶¶ 13–14. The indictment alleges that defendants profited $114 million from their scheme.

Defendants were indicted for conspiracy to commit securities fraud, in violation of 18 U.S.C. § 1349, and multiple counts of securities fraud, in violation of 18 U.S.C. §§ 1348 & 2. Knight pleaded guilty, and the remaining defendants moved to dismiss the indictment. The district court dismissed

the indictment, concluding that it failed to allege that defendants schemed to deprive victims of any traditional property interest.[1]

The government timely appealed.

## II

We review the sufficiency of an indictment *de novo*. *United States v. Rafoi*, 60 F.4th 982, 993 (5th Cir. 2023). "[T]he court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999)). An indictment must "(1) enumerate each *prima facie* element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions." *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996). "In sum, to be sufficient, an indictment must allege each material element of the offense." *United States v. Guzman-Ocampo*, 236 F.3d 233, 236 (5th Cir. 2000) (quotation cleaned up).

## III

The securities fraud statute prohibits schemes to "defraud any person in connection with . . . any security" and schemes "to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of . . . any security." 18 U.S.C. § 1348. While "[t]here is scant caselaw construing the securities fraud statute in this circuit," § 1348 "borrows key concepts from the mail

---

[1] The district court dismissed the indictment by applying *Ciminelli v. United States*, 598 U.S. 306 (2023). After the district court dismissed the indictment, the Supreme Court clarified in *Kousisis v. United States*, 145 S. Ct. 1382, 1398 (2025), that an indictment alleging a fraudulent-inducement theory, as here, does not run afoul of *Ciminelli*.

and wire fraud statutes," so "courts have given the terms similar treatment," often relying on mail and wire fraud cases in analyzing securities fraud charges. *United States v. Greenlaw*, 84 F.4th 325, 339 n.6 (5th Cir. 2023). With those concepts in mind, securities fraud requires (1) a "scheme to defraud" (2) enacted with an "intent to defraud." *Id.* at 339. The "scheme to defraud" element requires a material misrepresentation "intended to deceive others in order to obtain something of value, such as money, from the [entity] to be deceived." *Id.* (alteration in original) (quoting *United States v. Evans*, 892 F.3d 692, 711–12 (5th Cir. 2018)). The "intent to defraud" element requires "an intent to (1) deceive, and (2) cause some harm to result from the deceit." *Id.* (quoting *Evans*, 892 F.3d at 712).

In sum, a defendant commits securities fraud when he "'engaged in deception'" and "[o]btaining the victim's money or property" was "'an object' of his fraud." *Kousisis v. United States*, 145 S. Ct. 1382, 1390–91 (2025) (quoting *Ciminelli v. United States*, 598 U.S. 306, 312 (2023)). Defendants concede that the indictment adequately alleges deception. But they contend that the indictment does not allege a scheme to defraud nor an intent to defraud. In their view, the indictment merely alleges that they intended to deprive their followers of valuable economic information (not money or property) to enrich themselves (not injure their followers). In light of the Supreme Court's decisions in *Ciminelli* and *Kousisis*, we disagree.

A

Defendants argue that the district court properly dismissed the indictment because it does not allege a scheme to deprive their followers of a protected property interest. While it is true that a defendant cannot be convicted of fraud for depriving an individual of potentially valuable economic information alone, the indictment here went further, properly alleging defendants' scheme to defraud their followers of money.

In *Ciminelli*, the Supreme Court held that a fraud conviction cannot be based solely on the deprivation of valuable economic information. 598 U.S. at 316. There, Ciminelli's construction company paid a lobbyist to help it obtain state-funded jobs. *Id.* at 309–10. The government, in prosecuting Ciminelli for wire fraud, relied solely on a right-to-control theory. *Id.* at 310 & n.1. Under the right-to-control theory, the government attempted to "establish wire fraud by showing that the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions." *Id.* at 310. In other words, under the right-to-control theory, the victim's property is the "the right to control [his] assets." *Id.* at 311. The Court held that because the federal fraud statutes protect only traditional property interests, and "[t]he right to valuable economic information ... is not a traditional property interest," "the right-to-control theory cannot form the basis for a [fraud] conviction." *Id.* at 316.

The situation here is unlike that in *Ciminelli*. The indictment does not mention the right-to-control theory. Rather, it alleges that defendants induced their followers, through misrepresentations, to purchase securities—that is, to part with their money or property. The indictment alleges a "fraudulent-inducement theory," under which a defendant "uses a material misstatement to trick a victim into a contract that requires handing over her money or property." *Kousisis*, 145 S. Ct. at 1388. The Supreme Court, when analyzing the fraudulent-inducement theory, confirmed that it "is not a repackaging of the right-to-control theory." *Id.* at 1398 (quotation cleaned up). Unlike the right-to-control theory rejected in *Ciminelli*, the fraudulent-inducement theory advanced here "protects money and property." *Id.* The indictment does not run afoul of *Ciminelli* because it alleges defendants deprived their followers of a protected property interest by fraudulently inducing them to buy securities.

No. 24-20143

## B

Defendants next argue that the indictment fails to allege an intent to defraud because it alleges defendants intended to profit from their scheme, not harm any victim. But the Supreme Court recently rejected a similar argument, holding that the fraud statutes do not require a victim to suffer an economic loss from a defendant's scheme. *Kousisis*, 145 S. Ct. at 1392.

In *Kousisis*, the defendant lied to obtain contracts with a state department of transportation. The state required contractors to subcontract with a disadvantaged business, and Kousisis falsely represented that his company would fulfill that requirement. Once his company was awarded the contracts, Kousisis used the disadvantaged-business subcontractor as "a mere 'pass-through' entity." *Id.* at 1389. When his lie came to light, the government charged Kousisis under the "fraudulent-inducement theory" whereby a defendant "uses a material misstatement to trick a victim into a contract that requires handing over her money or property—regardless of whether the fraudster, who often provides something in return, seeks to cause the victim *net* pecuniary loss." *Id.* at 1388 (emphasis in original). Kousisis argued that the fraudulent-inducement theory could not stand because it permitted a conviction in the absence of evidence that "the defendant sought to hurt the victim's bottom line." *Id.* at 1391. The Court rejected that assertion, holding that a defendant violates the fraud statutes when he "schem[es] to 'obtain' the victim's 'money or property,' regardless of whether he seeks to leave the victim economically worse off." *Id.* at 1392.

The indictment here sufficiently alleges defendants' intent to defraud their followers. For example, it alleges that defendants "post[ed] false and misleading information about the security . . . so that other investors were induced to purchase the security." Indictment ¶ 13. Because the fraud statutes do not require actual economic harm, defendants' followers' receipt

of market-value securities does not obviate the fraud charges. *See Kousisis*, 145 S. Ct. at 1391 (concluding defendant may be liable in fraud even when he "provides something—be it money, property, or services—of equal value in return"). Defendants argue they intended to profit—not harm any victim. But here, that is a distinction without a difference. As the indictment alleges, defendants' object was to obtain money, and they did so by fraudulently inducing their followers to purchase securities. The indictment's allegation that defendants pumped and dumped to gain a profit shows that they "had money in mind." *Id.* at 1397. "[A] fraud is complete when the defendant has induced the deprivation of money or property under materially false pretenses"—regardless of whether the victim suffered a net pecuniary loss. *Id.* at 1394 n.5. The indictment's allegation of defendants' fraudulently inducing their followers to purchase securities is sufficient to allege an injury. *See United States v. Baker*, 923 F.3d 390, 403–05 (5th Cir. 2019) (explaining that the fraud statutes do not impose a "mirror image" requirement where the victim's loss of money or property supplied the defendant's gain); *see also United States v. Smith*, Nos. 23-2840, 23-2846, & 23-2849, 2025 WL 2406104, at *6 (7th Cir. Aug. 20, 2025) (applying *Kousisis* in a similar context).

## IV

Because the indictment sufficiently alleges a scheme and intent to defraud, we REVERSE the district court's dismissal of the indictment and REMAND for proceedings consistent with this opinion.