**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Case No. 4:22-cr-00612 |
| | § § | |
| MITCHELL HENNESSEY, | § § | |
| *Defendant*. | § § | |

**MITCHELL HENNESSEY'S MOTION TO STRIKE
THE GOVERNMENT'S SUPPLEMENTAL BRIEF AND,
IN THE ALTERNATIVE, FOR LEAVE TO FILE A SUPPLEMENTAL REPLY**

Mr. Hennessey moves to strike the government's Supplemental Brief in Opposition to Defendant Hennessey's Motion to Dismiss (ECF 793) ("Supplemental Brief"), and in the alternative, requests leave to file a supplemental reply. The government has once again shown a complete disregard for the Court's rules and deadlines by filing the Supplemental Brief—which causes the government's response to exceed the page limit—more than a month after the government's response was due.

**I.    Mr. Hennessey Moves to Strike the Supplemental Brief.**

The government's Supplemental Brief violates the Court's procedures because (1) it causes the government's response to exceed the 20-page limit, and (2) it was not filed within 21 days.

> Absent leave of Court, motions and responses are limited to twenty (20) pages, including the case style, any table of contents or authorities, and signature block. Pursuant to Local Rule 7.4, responses must be filed within twenty-one (21) days unless the Court orders an expedited response[.]

Judge Alfred H. Bennett's Court Procedures and Practices at B.5(e).

First, the Supplemental Brief causes the government's response to exceed the 20-page limit by seven pages. The government's Response in Opposition to Defendant Hennessey's Motion to

1

Dismiss Due to Violations of the Speedy Trial Act and Sixth Amendment ("Government's Response") filed on June 29, 2026, is 16 pages long (ECF 774), and its July 31, 2026, Supplemental Brief is 11 pages (ECF 793). Therefore, the government's total response is 27 pages, significantly exceeding the 20-page limit. The government has not even acknowledged that it exceeded the page limit, much less requested leave or provided a justification. *See* ECF 793. Therefore, the Supplemental Brief should be stricken because it causes the government's response to exceed the page limit.

Second, the government's Supplemental Brief was filed 32 days after the response deadline. "[I]f the concept of a filing deadline is to have any content, the deadline must be enforced." *United States v. Locke*, 471 U.S. 84, 101 (1985). Mr. Henessey filed his motion to dismiss on June 8, 2026, (ECF 759), making the government's response due June 29, 2026. Judge Alfred H. Bennett's Court Procedures and Practices at B.5(e). On June 24, 2026, the government requested a two-week extension of the deadline. ECF 770 at 2. Mr. Hennessey opposed the motion because the government did not provide justification for an extension, and this case has already been delayed for years. ECF 771. The Court did not rule on the government's motion for an extension. The government filed its Response on the due date, June 29, 2026. ECF 774. On July 9, 2026, the Court set a hearing on the motion for August 6, 2026. ECF 778. On July 31, 2026, more than a month after its response was due and less than a week before the scheduled hearing on the motion, the government filed its Supplemental Brief, asserting an entirely new argument that it did not raise in its Response. ECF 793. The Supplemental Brief did not cite any new caselaw or developments to justify its filing more than month after the due date.

The government did not request leave to file the Supplemental Brief after the due date and over the page limit, and it has identified no basis to justify granting such leave. *See Tempur-Pedic*

2

*North America, LLC v. Mattress Firm, Inc.*, No. H-17-1068, 2018 WL 3613148, at *2, (S.D. Tex. July 25, 2018) (striking supplemental brief because "Mattress Firm could have raised its supplemental grounds for excluding Meyer in its timely briefing, but did not."). The government provides no justification at all for exceeding the page limit. The government's only explanation for its tardy filing is that "it identified additional legal authority as it prepared for the upcoming hearing." ECF 793 at 1. But the "additional legal authority" existed and was readily available to the government when it filed its Response on June 29, 2026. There is no question that the government "could have raised its supplemental [arguments] in its timely briefing, but did not." *See Tempur-Pedic*, 2018 WL 3613148, at *2. Thus, the government's Supplemental Brief should be stricken as untimely and over the page limit.

The government's continued refusal to follow the rules or comply with deadlines has been "repetitive, regular, and frequent" and substantially prejudiced Mr. Hennessey. *See United States v. Blevins*, 142 F.3d 223, 226 (5th Cir. 1998). He has been forced to expend time and resources addressing the government's untimely and improper Supplemental Brief. The government filed the Supplemental Brief over a month late and seven pages over the page limit without requesting leave or providing any justification to do so. Therefore, the Supplemental Brief should be stricken.

## II. Mr. Hennessey Moves in the Alternative for Leave to File a Supplemental Reply.

If the Court does not strike the Supplemental Brief, Mr. Hennessey requests, in the alternative, leave to file a supplemental reply and that this filing be accepted as that reply.

Nearly nine months after the last mandate issued, the government now asks the Court to retroactively extend the speedy trial clock from 70 to 180 days. During the entire 70-day period—December 17, 2025, to February 24, 2026—none of the parties nor Judge Hanen indicated that trial within the 70-day window was impractical. The Fifth Circuit has not decided whether the Court can retroactively extend the clock, but both the plain language and the purpose of the Speedy

Trial Act indicate that it cannot. *See, e.g.*, *United States v. Tunnessen*, 763 F.2d 74, 77 (2d Cir. 1985) (collecting cases: "*United States v. Carey*, 746 F.2d 228, 230 (4th Cir. 1984) ('retroactive continuances that are made after expiration of [speedy trial clock] for reasons the judge did not consider before lapse of the allowable time are inconsistent with the Act'); *United States v. Frey*, 735 F.2d 350, 353 (9th Cir. 1984) ('district court erred by making nunc pro tunc findings to accommodate its unwitting violation of the Act'); *United States v. Richmond*, 735 F.2d 208, 215-16 (6th Cir. 1984) (judgment of conviction reversed because 'district court cannot fairly be said to have granted the continuance . . . based on the findings that it set forth' later); *United States v. Brooks*, 697 F.2d 517, 522 (3d Cir. 1982) ('district judge must consider the matter at the outset')").

Even if the Court could retroactively extend the clock, it should not do so here. The clock can be extended only "if the unavailability of witnesses or other factors resulting from the passage of time shall make trial within seventy days impractical." 18 U.S.C. § 3161(d)(2). No witness became unavailable, so the government argues that other factors permit extension. They do not.

The government claims five factors support extending the clock: (1) Judge Hanen's recusal; (2) entry of new counsel on the case; (3) the complexity of this case; (4) the "congested calendars of judges in this district"; and (5) one defendant "has yet to appear." ECF 793. None of these factors resulted from the passage of time or made trial within 70 days impractical, and several did not even occur before or during the 70-day period.

1. <u>Judge Hanen's recusal</u>

Judge Hanen's recusal occurred on February 26, 2026, after the 70-day clock had already expired (ECF 734.), so the recusal itself could not have made trial within 70 days impractical. *See United States v. Shellef*, 718 F.3d 94,102 (2013) ("[T]he factors themselves must arise before or

within the 70-day period, and not thereafter."). Further, there is no indication that Judge Hanen's recusal resulted from the passage of time, and thus, it cannot support extending the clock.

2.   Entry of new counsel on the case

The government cites no support for its argument that entry of new counsel is a factor resulting from the passage of time or that it made trial within the 70-day period impractical. If anything, the passage of time in this case made trial within 70 days *more* practical for new counsel after remand than at the time of indictment in December 2022, when eight new counsel had to wait a month for any discovery, more than three months to learn the stocks at issue, over six months for disclosure of the purportedly false statements at issue, and over a year to obtain the government's trial exhibits and witness list. ECF 759 at 2–5. The four new attorneys started out with all those materials, briefing on legal and evidentiary issues, and the work product of prior counsel.

The government claims that two cases support extending the clock to 180 days due to the entry of new counsel, but neither case provides such support. In *United States v. Hernandez-Urena*, 35 F.3d 572, 1994 WL 502638, at *4 (9th Cir. 1994), the court extended the clock to 180 days "due to the **unavailability of witnesses** and other factors." In *United States v. Arrington*, No. 15-CR-22, 2022 WL 1784808, at *17 (W.D.N.Y. June 1, 2022) the 70-day clock had not run, and the court only extended the clock in the alternative based on a COVID-19 standing order and "motions pending on the Docket [including counsel's motion to withdraw that] automatically excluded time as a matter of law pursuant to 18 U.S.C. § 3161(h)(1)(D)." Thus, these cases do not support extending the clock based on entry of new counsel in this case.

3.   The complexity of this case

The government argues that the complexity of this case warrants extending the clock, but the government simply ignores the requirement that the factor must *result* from the passage of

5

time. Any complexity that existed during the 70-day period after the mandates issued also existed in 2022, when the case was indicted. No complexity has resulted from the passage of time.

The government claims that two cases support its argument, but they do not. In *United States v. Aboh*, 145 F.3d 1326, 1998 WL 196612, *1 (4th Cir. 1998), the day after the mandate issued, the court extended the clock to 180 days because counsel for defendants had scheduling conflicts preventing them from trying the case within 70 days, and "the Government needed additional time to locate its nine witnesses, some of whom were no longer incarcerated and readily available to the Government." *Id. United States v. Akende*, No. 12-0288, 2020 WL 5513437 (D. Md. Sept. 14, 2020) is similarly unavailing. There, the government moved to extend the clock before the defendant appeared or entered a plea. *Id.* at *1. *Akende* involved charges going back eight years, a guilty plea, a motion to withdraw the guilty plea, a motion to withdraw that motion, an unsuccessful appeal, an unsuccessful 28 U.S.C. § 2255 motion, and finally, another appeal, which resulted in the judgement being reversed. *Id.* The court extended the clock not just due to "the complexity and age of this prosecution," but also due to COVID restrictions, "the need to locate case agents and witnesses, and to retrieve evidence," and "active plea negotiations." *Id.* at *2. No such factors existed in this case, and these cases do not support extending the clock here.

Further, any extension must be based on factors *resulting* from the passage of time, but if anything, the passage of time has only made this case *less* complex. As this case progressed toward trial in 2023 and 2024, the government substantially streamlined its case, reducing the trading episodes that would be presented at trial from 402 to 54 (ECF 759 at 2–5) and conceding that it would not prove causation at trial (*id.* at 12–13). The government's concession that it would not prove causation makes this case much simpler than a typical securities fraud case because "[i]n the Fifth Circuit, 'the testimony of an expert—along with some kind of analytical research or event

6

study—is required to show loss causation.'" *See In re Key Energy Servs. Sec. Litig.*, 166 F. Supp. 3d 822, 837 (S.D. Tex. 2016). Thus, the passage of time actually simplified this case.

While many securities fraud cases are complex, this one is not. The government alleges that the defendants: (1) bought a publicly traded stock on the open market, (2) posted on Twitter or Discord that they bought the stock (which was true) and also posted positive statements about the stock (which the government alleges the defendants did not believe), and (3) sold the stock without posting that they sold. ECF 134. This is not complex. And certainly, any complexity that did exist within the 70-day period also existed at the time of indictment and did not result from the passage of time, nor did it make trial within 70 days impractical.

4. <u>The "congested calendars" in this district</u>

The government argues that a high caseload in the Southern District of Texas made trial within 70 days impractical, but it fails to demonstrate that the District-wide caseload made trial of *this case* during the 70-day period impractical or that the caseload resulted from the passage of time. The government's argument is that general "calendar congestion" in a district permits any Court in that district to extend the speedy trial clock to 180 days. *See* ECF 793 at 3, 6. It does not. The government claims that *United States v. Holley*, 986 F.2d 100, 103 (5th Cir. 1993) supports its argument, but it does not. *Holley* focused on the specific calendar of the assigned judge, not general caseload statistics for an entire district. *Id.* The assigned judge in *Holley* was in a seven-week trial at the time of remand, the resident judge where the case was to be tried recused himself, and the district was short four of ten judges. *Id.* None of those factors existed here. The government is noticeably silent on the specific circumstances of Judge Hanen's calendar—the only relevant calendar when deciding whether trial within the 70-day period was impractical.

5. One defendant "has yet to appear"

The government argues that Mr. Constantinescu's absence from the May 8, 2026, status conference supports an extension. But the 70-day clock expired on February 24, 2026—73 days *before* the conference—so his nonappearance could not have made trial within 70 days impractical.

6. Conclusion

The speedy trial clock has expired, and the government's last-ditch argument that the clock can be extended to 180 days now, nearly nine months after the mandates issued, is without merit. The Superseding Indictment must be dismissed. The lengthy delay, caused in large part by the government's deliberately delayed discovery productions and disclosures as well as its persistent violations of rules and deadlines, has substantially prejudiced Mr. Hennessey. While he waits, his job opportunities are curtailed, his financial resources drained, and he and his family live under a cloud of anxiety and suspicion. The Superseding Indictment should be dismissed with prejudice.

Respectfully submitted,

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova
State Bar No. 24128031, S.D. Tex. No. 1117332
JACKSON WALKER LLP
1401 McKinney St, Suite 1900
Houston, Texas 77010
(713) 752-4449
lcordova@jw.com

**Attorney for Defendant Mitchell Hennessey**

### CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2026, a true and correct copy of the foregoing was served electronically on all persons via the Court's CM/ECF system.

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova

8